IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DELFINO PEDROZA and LILIANA ANDRADE,

       Plaintiffs,

v.                                    No. 07-CV-591 JB-RHS

LOMAS AUTO MALL, INC.; M. D. LOHMAN d/b/a
LOHMAN MOTORS; WESTERN SURETY COMPANY;
USAA CASUALTY INSURANCE COMPANY d/b/a USAA;
and INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD.,

       Defendants.

LOMAS AUTO MALL, INC. and M. D. LOHMAN d/b/a
LOHMAN MOTORS,

       Third Party Plaintiffs.

v.

INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD. and NEW MEXICO INDEPENDENT
AUTOMOBILE DEALERS' ASSOCIATION, INC.,

       Third Party Defendants.

### SECOND AMENDED COMPLAINT FOR DAMAGES AND
### FOR DECLARATORY RELIEF AND JURY DEMAND

1. Defendant Lomas Auto Mall, Inc. ("LAM"), with Defendant M. D. Lohman d/b/a Lohman

    Motors, sold Plaintiffs Delfino Pedroza and Liliana Andrade a used 2005 GMC Sierra that

    had sustained severe damage and merits a salvage title.  Defendant USAA Casualty Insurance

    Company d/b/a USAA – an insurance company that had paid its insured on the Sierra after it

    had been stolen and recovered with severe damage –  worked with the Dealerships to "wash"

    the Sierra's title – *i.e.*, remove the salvage brand – contrary to New Mexico vehicle titling

law.  Defendant Independent Auto Dealers Service Corporation, Ltd. ("IADSC") operates the title service company that performed the title washing.  Because of USAA's and IADSC's actions, the Dealerships were able to hide the Sierra's severe damage and salvage status from Plaintiffs, and thus sell them the Sierra for much more than the Sierra is worth.  The Dealerships failed to present the Sierra's correct title certificate to Plaintiffs, and obtain their signatures on it – in violation of the the Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §§ 32101 and 32701-32711 ("MVICSA") – in order to hide the Sierra's salvage status.

## Jurisdiction

2.   This Court has jurisdiction under the MVICSA, 49 U.S.C. § 32710, and under 28 U.S.C. § 1331.  It has jurisdiction for the supplemental state claims under 18 U.S.C. § 1367.

3.   Venue is appropriate in New Mexico because Plaintiffs reside in New Mexico, LAM is a New Mexico corporation located in New Mexico, Defendant M. D. Lohman d/b/a Lohman Motors resides in New Mexico, IADSC is a New Mexico corporation located in New Mexico and all Defendants do business in New Mexico.  Also, the actions and omissions that are the subject matter of this lawsuit occurred in New Mexico.

## Parties

4.   Plaintiffs Delfino Pedroza and Liliana Andrade reside in Albuquerque, New Mexico.  They are "transferees" as defined in 49 C.F.R. § 580.3.

5.   Defendant Lomas Auto Mall, Inc. ("LAM") is a New Mexico corporation and licensed auto dealer, conducting a used auto dealership in Albuquerque, New Mexico.  LAM is a "dealer" as defined by 49 U.S.C. § 32702(2), and a "transferor" as defined by 49 C.F.R. § 580.3.  LAM is a motor vehicle dealer within the meaning of the New Mexico Motor Vehicle

2

Dealers Franchising Act, NMSA 1978, § 57-16-1 *et seq.* ("MVDFA"). *See*, NMSA 1978, § 57-16-3(B).

6.  Defendant M.D. Lohman d/b/a Lohman Motors is an individual that owns and operates a auto dealership in Albuquerque, New Mexico.  Lohman Motors licensed by New Mexico as a dealer.  Lohman Motors is a "dealer" as defined by 49 U.S.C. § 32702(2), and a "transferor" as defined by 49 C.F.R. § 580.3.  Lohman Motors is a motor vehicle dealer within the meaning of the MVDFA.   *See*, NMSA 1978, § 57-16-3(B).

7.  Plaintiffs refer to LAM and Lohman Motors collectively as "the Dealerships."

8.  Defendant Western Surety Company is a foreign corporation that provides auto dealer surety bonds for New Mexico auto dealers.  For the relevant time period, it provided the surety bonds necessary to license LAM and Lohman Motors as auto dealers, pursuant to NMSA 1978 § 66-4-7.

9.  Defendant USAA Casualty Insurance Company d/b/a USAA is an insurance company that does business in New Mexico.

10. Defendant Independent Auto Dealers Service Corporation, Ltd. ("IADSC") is a New Mexico corporation that operates a title service company for auto dealers.  It unlawfully removed the salvage title brand from the Sierra's title certificate.

### Facts

11. In early August, 2006, a 2005 GMC Sierra was stolen out of the driveway of its owners, Robert Buckner and Lori Buckner.

12. On August 14, 2006, the Albuquerque Police Department recovered the Sierra as abandoned.

13. The recovered Sierra had extensive damage including damage to chassis, the undercarriage, the front axle, the suspension and the interior of the cab.

14. As a result of the damage caused by the thieves, the Sierra's front axle is so close to the frame that the Sierra is unsafe to drive.

15. Ms. Buckner made an insurance claim concerning the theft and the damage to USAA, the insurance company that insured the Sierra.

16. USAA estimated the cost of repairs to fix the Sierra as $13,133.32.

17. USAA processed the Buckner's insurance claim as a total loss claim.

18. USAA determined that the Sierra was uneconomical to repair and did not repair the Sierra for the Buckners, nor did it have the Buckners repair the Sierra and reimburse them for the repairs costs, minus any deductible.

19. As a result of the Buckners' claim, USAA issued a check to the finance company that held the loan for the Sierra, paying off in full any obligation the Buckners had towards this loan. The Buckners turned over the Sierra to USAA.

20. USAA had the Sierra transported to CoPart Auto Auctions in Albuquerque, New Mexico, and arranged to have the Sierra sold through a CoPart online auction, in unrepaired condition.

21. USAA requested that the Sierra be sold through the CoPart online auction that would be held on October 26, 2006.

22. On October 13, 2006, IADSC issued a salvage title for the Sierra.  *See*, Exhibit A, title certificate.

23. On October 25, 2006, USAA contacted CoPart and requested that CoPart not try to sell the Sierra through the October 26 online auction.

24. USAA arranged to have a new title certificate issued for the Sierra that would lack the salvage brand.

25. USAA arranged to do so despite its determination the Sierra was a total loss and that is was uneconomical to repair.

26. USAA arranged to do so despite its knowledge that the Sierra had been recovered with severe damage, including chassis damage and undercarriage damage.

27. MVD's regulations do not allow the removal of a salvage brand for a theft recovery vehicle if the vehicle is recovered in damaged condition and this damage includes severe damage, chassis damage or undercarriage damage.

28. USAA knew that it could sell the Sierra for much more if the Sierra had a title certificate that lacked the salvage brand.

29. IADSC issued a title certificate for the Sierra that lacks a salvage brand.  This title certificate bears a date of October 26, 2006.

30. Upon information and belief, the Dealerships assisted USAA in obtaining the "clean" October 26 title certificate for the Sierra, through IADSC.

31. The October 26 title certificate was received by CoPart on October 31, 2006.

32. On November 9, 2006, Lohman Motors purchased the Sierra for $13,300 from USAA through the CoPart online auction.

33. Prior to this auction, CoPart disclosed the Sierra as having damage "all over" and made available to any dealers that can bid at the auction photos that showed the damage

34. Lohman Motors purchased the Sierra in unrepaired, damaged condition.

35. Lohman Motors picked up the Sierra from CoPart on November 10, 2006.

36. Lohman Motors performed repairs, or had others perform repairs to the Sierra, after its purchase of the Sierra.

37. These repairs did not correct the unsafe position of the Sierra's front axle.

38. LAM took physical possession of the Sierra at some point in time after Lohman Motors

    purchased the Sierra from CoPart.

39. The Dealerships were aware that the Sierra merited a salvage title.

40. Lohman Motors holds a security interest in equipment and inventory for LAM.

41. Lohman Motors shares in the profits that LAM generates from the sale of vehicles.

42. LAM and Lohman Motors have long operated a  joint enterprise that involves the sale of

    wrecked, damaged or salvage title vehicles to New Mexico consumers, without disclosing the

    derogatory condition of the vehicles.

43. On December 28, 2006, Plaintiffs visited LAM's lot and spoke with Richard Mares, a

    salesperson, about the Sierra.

44. Mr. Mares did not tell Plaintiffs that the Sierra merited a salvage title.

45. Mr. Mares did not tell Plaintiffs about the severe damage that the thieves had caused to the

    Sierra.

46. The next day – December 29, 2006 – Plaintiffs met with an employee other than Mr. Mares at

    LAM to sign the sales documents for the Sierra.

47. This employee did not tell Plaintiffs that the Sierra merited a salvage title.

48. This employee did not tell Plaintiffs about the severe damage that the thieves had caused to

    the Sierra.

49. Plaintiffs paid $24,992 for the Sierra.  *See*, Exhibit B, finance contract.

50. Plaintiffs paid a $199.50 "dealer's transfer service charge" so that LAM would process the

    title for them, register the Sierra in their names and provide them with license plates.  *See*, *id.*

51. At the time of sale of the Sierra to Plaintiffs, the Dealerships knew or should have known that the Sierra merited a salvage title and that the October 13 title certificate represented the correct title.

52. The Dealerships failed to present any title certificate for the Sierra to Plaintiffs, for their examination, in connection with the sale.

53. The Dealerships failed to obtain the signature of either of Plaintiffs on any title certificate for the Sierra, as required by the regulations under the MVICSA. *See,* 49 C.F.R. § 580.5.

54. Except for the Dealerships' violations of the regulations promulgated under the MVICSA, the Dealerships would not have been able to sell the Sierra to Plaintiffs as Plaintiffs would not have bought the Sierra had Plaintiffs known that the Sierra merited a salvage title.

55. At the time of sale of the Sierra to Plaintiffs, the Dealerships knew or should have known that the Sierra had suffered severe damage as a result of the damage caused by the thieves.

56. At the time of sale of the Sierra to Plaintiffs, the Dealerships knew or should have known that the Sierra's front axle is so close to the frame that the Sierra is unsafe to drive

57. At the time of sale of the Sierra to Plaintiffs, the Dealerships knew or should have known that the repairs to the Sierra exceeded six percent of the price the Dealerships charged the Plaintiffs for the Sierra.

58. Except for the Dealerships' failure to disclose the Sierra's severe damage and unsafe condition, the Dealerships would not have been able to sell the Sierra to Plaintiffs as they would not have bought the Sierra had they known about the severe damage or the unsafe condition.

59. The Dealerships failed to provide Plaintiffs with an affidavit in which they disclosed the damage done to the Sierra or the subsequent repairs.

60. Shortly after the sale to Plaintiffs, LAM sold the finance contract for the Sierra to Wachovia Dealer Services, Inc. d/b/a WFS Financial.

61. WFS Financial's contract with LAM requires LAM to warrant that the finance contracts it sells to WFS Financial do not concern salvage vehicles.

62. WFS Financial's policies require any dealership that sells it a finance contract to provide a copy of the title certificate for the vehicle at issue within 90 days of the date of sale of the finance contract.

63. Before Plaintiffs left LAM's lot with the Sierra on December 29, 2006, the employee who handled the sales documents told them that LAM would telephone them when it had obtained the license plate for the Sierra.

64. At the time of sale, LAM provided Plaintiffs with a temporary license tag for the Sierra. The tag is valid for 30 days.

65. Before the temporary tag became invalid, Mr. Pedroza telephoned LAM and asked about the title certificate for the car. LAM told Mr. Pedroza that it would provide a second temporary license tag for the Sierra.

66. New Mexico law only allows dealers to issue one 30 day temporary license tag.

67. On March 14, 2007, Plaintiffs obtained a Carfax report for the Sierra. Carfax operates a database that collects information about vehicles, including information about a vehicle's title history.

68. The Carfax report shows that MVD issued a salvage title certificate for the Sierra. The Carfax report does not show any title certificates issued for the Sierra after the October 13 salvage title certificate. *See*, Exhibit C, Carfax report.

8

69. Plaintiffs confronted LAM with the fact that it had sold them a vehicle that had a salvage title, without disclosing the salvage title.  LAM claimed that the salvage title was the result of a clerical mistake.

70. LAM never presented Plaintiffs with the October 26 title certificate or any other title certificate for the Sierra.

71. LAM harassed Plaintiffs in attempts to regain possession of the Sierra, including threatening to repossess the Sierra and contacting their family members.

72. After their purchase, Plaintiffs discovered that the Sierra's front axle is so close to the frame that the Sierra is unsafe to drive.

73. After Plaintiffs learned about the Sierra's unsafe condition, they quit driving the Sierra.

74. WFS Financial made repeated efforts to obtain a copy of the Sierra's title certificate from LAM, but never received one.

75. In August, 2007, WFS Financial made LAM buy back the finance contract for the Sierra because it determined that LAM had sold it a finance contract that concerned a salvage vehicle.

76. USAA has tried to cover up its wrongful acts and provide cover for the Dealerships through affidavits and other documents it has produced after the fact, in an effort to legitimize its actions and the actions of the Dealerships.

77. IADSC has tried to cover up its wrongful acts and provide cover for the Dealerships in an effort to legitimize its actions and the actions of the Dealerships.

78.  To date, LAM has not provided Plaintiffs with license plates for the Sierra, nor has it legally registered the Sierra in their names.

79. The Dealerships engage in a pattern or practice of selling defective, wrecked or salvage vehicles without disclosing the defective, wrecked or salvage status to its customers. *See, e.g.*, *Lunceford v. Auto Liquidation Center, Inc. et al.*, No. CV-06-9738 (Bernalillo County District Court); *Marrufo v. Lomas Auto Mall, Inc.*, No. CV-05-8024 (Bernalillo County District Court).

80. LAM has sold other wrecked or salvage vehicles, without disclosure, where – like in this case – Lohman Motors had an interest in the profits derived from the sale of the vehicle.

81. An award of punitive damages is appropriate to deter future similar conduct by the Dealerships and other auto dealers.

82. Sureties of auto dealer consumer protection bonds – here, Western Surety Company – are liable for any damages awarded for fraud or for failure of title caused by their principal dealers – here, LAM and Lohman Motors.  NMSA 1978 § 66-4-7(B) ("bond shall be payable . . . of any loss, damage and expense sustained by the purchaser or his vendees, or both, by reason of failure of the title by the vendor, by any fraudulent misrepresentations or by any breach of warranty by as to freedom of liens").  *See also*, *Prince v. National Union Fire Insurance Company*, 75 N.M. 313, 316, 404 P.2d 137, 140 (N.M. 1965) ("the bond is to protect against failure of title or fraud"); *Kerr v. Schwartz*, 82 N.M. 63, 65, 475 P.2d 457, 459 (N.M. 1970) (the auto dealer bond statute "provides for an automobile dealer's bond and license to protect against the failure of title or fraud at the time of purchase"); *Morey v. Miano, et al.*, 141 F.Supp.2d 1061 (D.N.M. 2001); *Rubio v. Bob Crow Chrysler-Plymouth-Dodge, Inc., et al.*, 145 F.Supp.2d 1248 (D.N.M. 2001).

83. As a result of Defendants' actions and omissions, Plaintiffs suffered actual damages, including:

a.  the difference between the fair market value of the Sierra at the time of sale and the
    amount that they paid;

b.  loss of use of the Sierra;

c.  out-of-pocket expenses;

d.  lost time;

e.  humiliation; and

f.  aggravation and frustration.

### First Claim for Relief: Violations of the MVICSA by the Dealerships

84. The Dealerships violated the MVICSA by failing to present the Sierra's correct title
    certificate to Plaintiffs, and obtain their signature on it, in violation of regulations
    promulgated under the MVICSA. *See*, 49 C.F.R. § 580.5

85. The Dealerships violated the MVICSA with intent to defraud.

86. Except for the Dealerships' violations of the regulations promulgated under the MVICSA, the
    Dealerships would not have been able to sell the Sierra to Plaintiffs as Plaintiffs would not
    have bought the Sierra had Plaintiffs known that the Sierra merited a salvage title.

87. Plaintiffs are entitled to recover an amount equal to three times actual damages or $1,500,
    whichever is greater, plus costs and attorney fees.

### Second Claim for Relief: Fraud by the Dealerships

88. The Dealerships induced Plaintiffs to purchase the Sierra by omissions of material facts,
    including:

a.  failing to disclose that the Sierra had been stolen and severely damaged while in the
    hands of the thieves;

11

b.  failing to disclose that the damage to the Sierra included chassis and undercarriage damage;

c.  failing to disclose that the Sierra's front axle is so close to the frame that the Sierra is unsafe to drive; and

d.  failing to disclose that the Sierra merited a salvage title.

89. The Dealerships had a duty to disclose the omissions set forth above.

90. The Dealerships knew that their omissions were material and important.

91. Plaintiffs are entitled to recover actual damages and punitive damages against the Dealerships.

92. Western Surety – as the surety for LAM's and Lohman Motors' auto dealer consumer protection bond – is liable for all actual damages – including incidental and consequential damages – and attorney fees and costs due to the Dealerships' fraud.

### Third Claim for Relief: Fraud by USAA

93. USAA induced Plaintiffs to purchase the Sierra by affirmative misrepresentation and omission of material fact, including:

a.  stating that the Sierra was not a salvage vehicle; and

b.  failing to disclose that the Sierra merited a salvage title.

94. USAA had a duty to disclose that the Sierra was a salvage vehicle.

95. USAA intended to deceive the eventual New Mexico consumer purchasers of the Sierra – which turned out to be Plaintiffs – and intended that they would rely upon its misrepresentations, which they did, to their detriment, suffering damages.

96. USAA knew that its omission was material and important.

97. Plaintiffs are entitled to recover actual damages and punitive damages against USAA.

## Fourth Claim for Relief: Fraud by IADSC

98. IADSC induced Plaintiffs to purchase the Sierra by affirmative misrepresentation and

omission of material fact, including:

   a.   stating that the Sierra was not a salvage vehicle; and

   b.   failing to disclose that the Sierra merited a salvage title.

99. IADSC had a duty to disclose that the Sierra was a salvage vehicle.

100.   IADSC intended to deceive the eventual New Mexico consumer purchasers of the Sierra

– which turned out to be Plaintiffs – and intended that they would rely upon its

misrepresentations, which they did, to their detriment, suffering damages.

101.   IADSC knew that its omission was material and important.

102.   Plaintiffs are entitled to recover actual damages and punitive damages against IADSC.

## Fifth Claim for Relief: Joint Enterprise by the Dealerships

103.   The Dealerships entered into a joint enterprise that involves the sale of wrecked, damaged

or salvage title vehicles to New Mexico consumers, without disclosing the derogatory

condition of the vehicles.

104.   The Dealerships have a joint proprietary interest in the matter.

105.   The Dealerships have a mutual right to control and exercise control over various aspects

of the activities.

106.   The Dealerships have a right to share in the profits and do, in fact, share in the profits.

107.   An agreement existed between the Dealerships that allowed these wrongful acts to be

carried out and these wrongful acts took place.

108.   As a result, Plaintiffs suffered damages.

**Sixth Claim for Relief:**
**Joint Enterprise by the Dealerships and USAA or Lohman Motors and USAA**

109.    The Dealerships and USAA or Lohman Motors and USAA entered into a joint enterprise

that involved the sale of the Sierra to the eventual New Mexico consumer purchasers of

the Sierra – which turned out to be Plaintiffs – without disclosing the Sierra's damage or

salvage status.

110.    The Dealerships and USAA or Lohman Motors and USAA had a joint proprietary interest

in the matter.

111.    The Dealerships and USAA or Lohman Motors and USAA had a mutual right to control

and exercise control over various aspects of the activities.

112.    The Dealerships and USAA or Lohman Motors and USAA had a right to share in the

profits and did, in fact, share in the profits generated by the sale of the Sierra without

proper disclosure.

113.    An agreement existed between the Dealerships and USAA or Lohman Motors and USAA

that allowed these wrongful acts to be carried out and these wrongful acts took place.

114.    As a result, Plaintiffs suffered damages.

**Seventh Claim for Relief: Fraud by Joint Enterprise by Lohman Motors**

115.    Lohman Motors, in a joint enterprise with LAM, or in a joint enterprise with USAA,

induced Plaintiffs to purchase the Sierra by omission of material facts, as set forth above.

116.    Lohman Motors had a duty to disclose these omissions.

117.    Lohman Motors knew that the omissions were material and important.

118.    Plaintiffs are entitled to actual and punitive damages against Lohman Motors.

14

119.   Western Surety Company– as the surety for Lohman Motors' auto dealer consumer

protection bond – is liable for all actual damages – including incidental and consequential

damages – and attorney fees and costs due to Lohman Motors' fraud.

**Eighth Claim for Relief: Fraud by Joint Enterprise by USAA**

120.   USAA, in a joint enterprise with the Dealerships, or in a joint enterprise with Lohman

Motors, induced Plaintiffs to purchase the Sierra by affirmative misrepresentation or

omission of material fact, as set forth above.

121.   USAA had a duty to disclose that the Sierra was a salvage vehicle.

122.   USAA intended to deceive the eventual New Mexico consumer purchasers of the Sierra –

which turned out to be Plaintiffs – and intended that they would rely upon its

misrepresentations, which they did, to their detriment, suffering damages.

123.   USAA knew that its omission was material and important.

124.   Plaintiffs are entitled to actual and punitive damages against USAA.

**Ninth Claim for Relief:**
**Violations of the Unfair Practices Act by the Dealerships, USAA and IADSC**

125.   The sale of the Sierra occurred in the regular course of the Dealerships' and USAA's

trade or commerce, and their actions are subject to the New Mexico Unfair Practices Act,

NMSA 1978 §§ 57-12-1 *et seq.* ("UPA").

126.   The titling of the Sierra occurred in the regular course of IADSC's trade or commerce,

and their actions are subject to the New Mexico Unfair Practices Act, NMSA 1978 §§ 57-

12-1 *et seq.* ("UPA").

127.    The Dealerships' and USAA's and IADSC's actions and omissions constitute unfair trade

practices, within the meaning of the UPA, NMSA 1978 § 57-12-2(D) generally, and

NMSA 1978 § 57-12-2(D)(14) specifically.

128.    Also, for the Dealerships only, their actions and omissions constitute unfair trade

practices, within the meaning of the UPA, NMSA 1978 § 57-12-6 specifically.

129.    The Dealerships and USAA and IADSC willfully engaged in these unlawful trade

practices.

130.    Plaintiffs are entitled to recover actual or statutory damages, trebled, plus costs and

attorney fees, against the Dealerships and USAA and IADSC.

### Tenth Claim for Relief: Violations of the MVDFA by the Dealerships

131.    The Dealerships willfully defrauded Plaintiffs, within the meaning of the MVDFA. *See*,

NMSA 1978 § 57-16-4(C).

132.    The Dealerships acted maliciously.

133.    Plaintiffs are entitled to recover actual damages and punitive damages not to exceed three

times the actual damages, plus costs and attorney fees, against the Dealerships.

### Eleventh Claim for Relief: Breach of Warranty of Title by the Dealerships

134.    The Dealerships had a legal obligation to transfer valid and legal title for the Sierra to

Plaintiffs.

135.    The Dealerships failed to transfer valid and legal title for the Sierra to Plaintiffs.

136.    Plaintiffs are entitled to recover against the Dealerships all damages caused by the breach

of the warranty of title, including incidental and consequential damages.

137.    Western Surety Company– as the surety for the auto dealer consumer protection bond

held by LAM and Lohman Motors – is liable for all actual damages – including incidental

and consequential damages – and attorney fees and costs due to the breach of warranty of title by the Dealerships.

## Twelfth Claim for Relief: Civil Conspiracy by the Dealerships, USAA and IADSC

138. The Dealerships induced Plaintiffs to purchase the Sierra by omission of material facts and by failure to follow regulations promulgated under the MVICSA.

139. An agreement existed between the Dealerships. USAA and IADSC that allowed these wrongful acts to be carried out.

140. As a result, Plaintiffs suffered damages.

## Jury Demand

141. Plaintiffs request that a six person jury decide all claims and issues that can be decided by a jury.

## Request for Relief

Plaintiffs request that the Court award:

A. Declaratory relief that the Sierra should have a title certificate with a salvage brand;

B. Declaratory relief that the Dealerships operated a joint enterprise to defraud Plaintiffs and others;

C. Declaratory relief that the Dealerships and USAA or Lohman Motors and USAA operated a joint enterprise to defraud Plaintiffs and others;

D. Declaratory relief that the Dealerships, USAA and IADSC were engaged in a civil conspiracy to defraud Plaintiffs and to violate the MVICSA to the detriment of Plaintiffs;

E. Declaratory relief that LAM, Lohman Motors, USAA and IADSC are liable for all actual damages awarded to Plaintiffs for any of the other's fraud or for any of the other's violations of the MVICSA, pursuant to joint and several liability, under civil conspiracy;

F.  Declaratory relief that Western Surety – as the surety for LAM's and Lohman Motors' auto dealer consumer protection bond – is liable for all actual damages – including incidental and consequential damages – and attorney fees and costs due to the Dealerships' fraud and breach of warranty of title;

G.  An amount equal to three times actual damages or $1,500, whichever is greater, against the Dealerships, for violations of the MVICSA;

H.  Actual and punitive damages, against the Dealerships, for fraud;

I.  Actual and punitive damages, against USAA, for fraud;

J.  Actual and punitive damages, against IADSC, for fraud;

K.  Actual and punitive damages, against Lohman Motors, for fraud by joint enterprise;

L.  Actual and punitive damages, against USAA, for fraud by joint enterprise;

M.  Actual or statutory damages, trebled, against the Dealerships, USAA and IADSC, for violation of the UPA;

N.  Actual and punitive damages, not to exceed three times the amount of actual damages, against the Dealerships, for violation of the MVDFA;

O.  Costs and reasonable attorney fees against the Dealerships, USAA and IADSC;

P.  Such other relief as the Court deems just and proper.

Respectfully submitted,

FEFERMAN & WARREN, Attorneys for Plaintiffs

ROB TREINEN
300 Central Avenue SW, Suite 2000 East
Albuquerque, New Mexico 87102
(505) 243-7773
(505) 243-6663 (fax)

18

I CERTIFY that a true and correct copy of the foregoing pleading was mailed to Charles R. Hughson, attorney for Defendants and Third Party Plaintiffs Lomas Auto Mall, Inc. and M. D. Lohman d/b/a Lohman Motors, at William F. Davis & Associates PC, P.O. Box 6, Albuquerque, New Mexico 87103; to Judd C. West, attorney for Defendant Western Surety Company, at Doughty and West PA, 20 First Plaza NW, Suite 412, Albuquerque, New Mexico 87102; to Mark J. Klecan, attorney for Defendant USAA Casualty Insurance Company d/b/a USAA, at Klecan & Childress, 6000 Uptown NE, Suite 301, Albuquerque, New Mexico 87110-4148; and to Michael L. Danoff, attorney for Defendant Independent Auto Dealers Service Corporation, Ltd. and Third Party Defendant Independent Auto Dealers Service Corporation, Ltd., at Michael L. Danoff & Associates PC, 604 Chama St. NE, Albuquerque, New Mexico 87108, on July 9, 2008.

ROB TREINEN