# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DELFINO PEDROZA and LILIANA ANDRADE,

      Plaintiffs,

vs.                                                                              No. CIV 07-0591 JB/RHS

LOMAS AUTO MALL, INC.; M.D. LOHMAN d/b/a
LOHMAN MOTORS; WESTERN SURETY COMPANY; and
USAA CASUALTY INSURANCE COMPANY d/b/a USAA,

      Defendants.

LOMAS AUTO MALL, INC. and M.D. LOHMAN d/b/a
LOHMAN MOTORS,

      Third Party Plaintiffs,

vs.

INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD. and NEW MEXICO INDEPENDENT
AUTOMOBILE DEALERS' ASSOCIATION, INC.,

      Third Party Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiffs' Motion to Compel Lomas

Auto Mall, Inc., filed February 18, 2008 (Doc. 106); and (ii) the Plaintiffs' Motion to Compel M.D.

Lohman d/b/a Lohman Motors, filed February 18, 2008 (Doc. 108).  The Court held a hearing on

April 22, 2008.  The primary issue is whether Defendants Lomas Auto Mall, Inc. and M.D. Lohman

d/b/a Lohman Motors should produce net worth documents that are relevant to the Plaintiffs'

punitive damages claim.  Because the Plaintiffs' punitive damages claim is not spurious, for the

reasons stated on the record and for the reasons stated herein, the Court will grant in part and deny

in part the motions to compel.

## PROCEDURAL BACKGROUND

The Plaintiffs' Amended Complaint indicates that the Plaintiffs bring their fraud claims against Lomas Auto Mall -- which give rise to their punitive damages claims against Lomas Auto Mall -- based on four separate and distinct omissions of material fact. See First Amended Complaint for Damages and for Declaratory Relief and Jury Demand ¶ 85, at 11, filed February 4, 2008 (Doc. 91)("Amended Complaint").  Three of these omissions do not involve the Sierra's salvage title, including: (i) failing to disclose that the Sierra had been stolen and severely damaged while in the hands of thieves; (ii) failing to disclose that the damage to the Sierra included chassis and undercarriage damage; and (iii) failing to disclose that the Sierra's front axle is so close to the frame that it is unsafe to drive.  See id.

In Request for Production No. 16 to Lomas Auto Mall, the Plaintiffs ask Lomas Auto Mall to produce its net worth documents.  See Plaintiffs' Brief in Support of Motion to Compel  Lomas Auto Mall, Inc. at 7, filed February 18, 2008 (Doc. 107)("Brief in Support of Motion to Compel Lomas Auto Mall").  Lomas Auto Mall objects to the Request for Production No. 16, because Lomas Auto Mall argues that the discovery thus far conducted shows that the Plaintiffs' claim for punitive damages against Lomas Auto Mall is likely to be disposed of on summary judgment; therefore, the burden on Lomas Auto Mall to produce such documents outweighs any likely benefit of production to the determination of the issues in this case.  See Defendant Lomas Auto Mall, Inc's Objection to Motion to Compel by Delfino Pedroza ¶ 5, at 2, filed March 5, 2008 (Doc. 126)("LAM's Objections").

In Request for Production Numbers 15 and 16 to M.D. Lohman d/b/a Lohman Motors, the

Plaintiffs request Lohman Motors and M.D. Lohman to produce net worth documents.  See Plaintiffs' Brief in Support of Motion to Compel M.D. Lohman d/b/a Lohman Motors at 3-5, filed February 18, 2008 (Doc. 109)("Brief in Support of Motion to Compel Lohman").  Lohman Motors objects to Request for Production Numbers 15 and 16, stating that the discovery completed thus far shows that the Plaintiffs' claim for punitive damages against M.D. Lohman is likely to be disposed of on summary judgment and thus the burden on M.D. Lohman and Lohman Motors of producing net-worth documents to the Plaintiffs outweighs any likely benefit of production to the just determination of the issues in this case.  See Defendant M.D. Lohman's Objection to Motion to Compel by Delfino Pedroza, filed March 4, 2008 (Doc. 124)("Lohman's Objections").

On February 18, 2008, the Plaintiffs filed a Motion to Compel Lomas Auto Mall, Inc., see (Doc. 108)("Motion to Compel Lomas Auto Mall"), as well as a Motion to Compel M.D. Lohman d/b/a Lohman Motors, see (Doc. 108)("Motion to Compel Lohman").  Both motions requested that the Court order the respective Defendant to produce net worth documents that are relevant to the Plaintiffs' punitive damages claim.  See Motion to Compel Lomas Auto Mall at 2; Motion to Compel Lohman at 2.  The Plaintiffs argue that Lomas Auto Mall is incorrect in refusing to provide the requested net-worth documents because net worth information is relevant.  See Brief in Support of Motion to Compel Lomas Auto Mall at 7.  Plaintiffs further argue, because they seek punitive damages, and their claim for punitive damages is not "spurious," they are entitled to discover the Defendants' new worth.  Id.

On March 19, 2008, the Plaintiffs filed two Reply Briefs.  See Plaintiffs' Reply Brief in Support of Motion to Compel Lomas Auto Mall, Inc, filed March 19, 2008 (Doc. 137)("Reply Brief to Compel Lomas Auto Mall"); Plaintiffs' Reply Brief in Support of Motion to Compel M.D.

Lohman d/b/a Lohman Motors, filed March 19, 2008 (Doc. 138)("Reply Brief to Compel Lohman"). In the Plaintiffs' Reply Brief to Compel Lomas Auto Mall, the Plaintiffs indicated that the disputes concerning Interrogatories 4, 17, and 18 had been resolved.  See Reply Brief to Compel Lomas Auto Mall at 7.  Additionally, in the Plaintiffs' Reply Brief to Compel Lohman Motors, the Plaintiffs stated that the dispute concerning Interrogatory 18 had been resolved.  See Reply Brief to Compel Lohman at 11.  Thus, production of documents related to the net worth of the Defendants is all that is before the Court to decide.  The Court held a telephonic hearing on the motion on April 22, 2008.

**LAW REGARDING PRODUCING NET WORTH DOCUMENTS**
**WHEN THERE IS A PUNITIVE DAMAGES CLAIM**

The Court follows the majority of state and federal courts, and permits discovery of a defendant's net worth without requiring the plaintiff to establish a prima-facie case for punitive damages.  See Clement v. Mountain States Logistics, CIV No. 0590, 2006 U.S. Dist. LEXIS 95650 at *5 (D.N.M. August 28, 2006)(Browning, J.)(stating that "[t]he party requesting the discovery generally does not need to establish a prima facie case on the issue of punitive damages before it can obtain pretrial discovery of the other party's financial statements and tax returns.")(internal quotations omitted)  "'[I]f a plaintiff has alleged sufficient facts to claim punitive damages against a defendant, information of the defendant's net worth or financial condition is relevant because it can be considered in determining punitive damages.'" Roberts v. Shawnee Mission Ford, Inc., No. 01-2113-CM, 2002 U.S. Dist. LEXIS 9525 at *10 (D. Kan. February 7, 2002)(quoting Aerotech Resources, Inc. v. Dodson Aviation, Inc., No. 00-2099, 2001 U.S. Dist. LEXIS 6021 at *2 (D. Kan. April 11, 2001)). The opposing party's interest in nondisclosure and confidentiality "can usually be adequately protected by a protective order restricting dissemination of the documents and the information within." Roberts v. Shawnee Mission Ford, Inc., 2002 U.S. Dist. LEXIS 9525 at *11

-4-

(internal quotations omitted).  "To discover a party's financial condition in light of a claim for punitive damages, requesting parties generally must show the claim for punitive damages is not spurious."  Clement v. Mountain States Logistics, 2006 U.S. Dist. LEXIS 95650 at *6 (internal quotations omitted).

## ANALYSIS

The Court has determined that the Plaintiffs' claim for punitive damages against both Lomas Auto Mall and M.D. Lohman d/b/a Lohman Motors is not spurious.  The Court follows the majority of state and federal courts, and permits discovery of a defendant's net worth without requiring the plaintiff to establish a prima facie case for punitive damages.  Accordingly, the Court will grant in part and deny in part the Plaintiffs' Motions to Compel.

## I.    THE PLAINTIFFS ARE ENTITLED TO NET WORTH DISCOVERY FROM LOMAS AUTO MALL (REQUEST FOR PRODUCTION NO. 16).

As the Court recently held, if a plaintiff's claims for punitive damages are not spurious, then a plaintiff is entitled to net worth information and documents in the discovery phase of the lawsuit.  See Clement v. Mountain States Logistics, 2006 U.S. Dist. LEXIS 95650 at *6.  Lomas Auto Mall refuses to respond substantively to Request for Production No. 16.  Lomas Auto Mall argues that the Plaintiffs' claim for punitive damages concerns only "the supposition that LAM knew about the salvage brand and hid that from Plaintiffs."  LAM's Objections ¶ 6(a) at 3.

Lomas Auto Mall's argument that the Plaintiffs have brought spurious claims concerning punitive damages, however, is without factual support.  Lomas Auto Mall's failure to disclose the Sierra's wrecked and unsafe condition provides a sufficient basis for punitive damages.  Discovery conducted to date has also provided support for the Plaintiffs' punitive damages claim against Lomas Auto Mall.  Lohman Motors purchased the Sierra through CoPart Auto Auction.  The seller

of the Sierra, USAA, had determined that repairs needed for the Sierra would cost $13,133.32.  See Brief in Support of Motion to Compel Lomas Auto Mall, Exhibit E, Salvage Yard Cover sheet (dated October 4, 2006). CoPart disclosed that the Sierra had been damaged "all over," and provided photographs to any prospective buyers.  Brief in Support of Motion to Compel Lomas Auto Mall, Exhibit F, CoPart Assignment Entered Screen and Photographs.

Moreover, Lohman Motors purchased the Sierra for $13,300.00 in damaged and unrepaired condition.  See Reply Brief  to Compel Lomas Auto Mall, Exhibit B, CoPart Sales Receipt/Bill of Sale (dated November 10, 2006).  After performing repairs to the Sierra, Lohman Motors transferred possession of the Sierra to Lomas Auto Mall, who sold it the Plaintiffs for $24,992.00, without disclosing the wreck damage or poor repairs.  See Brief in Support of Motion to Compel Lomas Auto Mall, Exhibit H, Affidavit of Delfino Pedroza ¶ 5, at 1 (taken August 10, 2007); Brief in Support of Motion to Compel Lomas Auto Mall, Exhibit H, Affidavit of Liliana Andrade ¶ 5, at 1 (taken August 10, 2007).  Lomas Auto Mall and Lohman Motors acted in concert on this sale and in numerous other transactions.

Lohman Motors did not list the transfer from it to Lomas Auto Mall on the Sierra's salvage title certificate or on the washed clean certificate -- both in existent at the time of sale to the Plaintiffs -- to allegedly hide its participation in the transaction.  See Brief in Support of Motion to Compel Lomas Auto Mall, Exhibit I, Title Certificates (dated October 13, 2006 & October 28, 2006).  Moreover, Lomas Auto Mall paid Lohman Motors for the Sierra out of the proceeds of Lomas Auto Mall's sale for the Sierra to Plaintiffs, including providing Lohman Motors a share in the sale profits.  See Brief in Support of Motion to Compel Lomas Auto Mall, Exhibit J, Checks (dated March 8, 2007 & May 11, 2007).  The transaction was not an arms-length transaction

between two unaffiliated dealers. Neither Lomas Auto Mall nor Lohman Motors have produced any sales documents concerning the transfer of the Sierra from Lohman Motors to Lomas Auto Mall, documents one would expect to find in any arms-length transaction.  See Brief in Support of Motion to Compel Lomas Auto Mall at 7-8, n.4.

Lomas Auto Mall offered no evidence to rebut the evidence that the Plaintiffs have produced concerning these fraudulent omissions.  Accordingly, the Court cannot say that the Plaintiffs' claim for punitive damages against Lomas Auto Mall is spurious. The Plaintiffs are entitled to obtain net-worth information at this time, because "to deny discovery of net worth until plaintiff can make a showing of a prima facie case at trial would only lead to delay and confusion while plaintiff reviews the information for the first time."  Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149,152 (D.Kan. 1990).

## II.    DENIAL OF THE TITLE-WASHING SCHEME BY LOMAS AUTO MALL'S ALLEGED CO-CONSPIRATORS DOES NOT RENDER THE PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES SPURIOUS.

The evidence that Lomas Auto Mall cites in support of its argument that the Plaintiffs' punitive damages claims are spurious is testimony provided by Lomas Auto Mall's alleged co-conspirators, including Third-Party Defendants Independent Auto Dealers Service Corporation, Ltd., New Mexico Independent Automobile Dealers' Association, Inc., and CoPart.  See LAM's Objections ¶ 6 at 2-4. These entities contend that Lomas Auto Mall had nothing to do with the initial title washing.  See id.

According to the Third-Party Defendants, title washing is defined as "washing it from salvage, removing the salvage title to a clean title."  Reply Brief to Compel Lomas Auto Mall, Exhibit A, Deposition of Guy Appelman at 55:19-25 (taken February 20, 2008)("Appelman Depo.").

There is evidence that the Third-Party Defendants did the initial title washing.  <u>See</u> Reply Brief to Compel Lomas Auto Mall, at 3. The Third-Party Defendants obtained a title certificate for the Sierra, dated October 26, 2006, that lacked the salvage brand which had been present on the Sierra's October 13th title certificate. <u>See</u> <u>id.</u>; Brief in Support of Motion to Compel Lomas Auto Mall, Exhibit I.

The Third-Party Defendants, Lomas Auto Mall, and Lohman Motors, contend that the initial salvage title was incorrect and the result of a clerical error. <u>See</u> Lohman's Objections at 3-5 ; LAM's Objections at 2-4.  The Third-Party Defendants contend that they removed the salvage brand pursuant to unwritten policies, using documents that no one can locate.  <u>See</u> Appelman Depo. at 56:20-57:11.  Other than the testimony of their own employees, the Third-Party Defendants have not provided any evidence concerning the alleged verbal approval they received from New Mexico Motor Vehicle Division ("MVD") to remove the salvage brand.  <u>See</u> Plaintiffs' Reply Brief, Exhibit B, Deposition of Leo Martinez at 38:17-39:13, 41:9-14 (taken February 20, 2008)("Martinez Depo.").  The Plaintiffs contend that this testimony, about what the MVD said to the Third-Party Defendants, is hearsay.  <u>See</u> Plaintiffs' Reply Brief at 3.

The Third-Party Defendants' Supervisor, Leo Martinez, admits that the Third-Party Defendants are required to follow MVD regulations in the processing of titles.  <u>See</u> Martinez Depo. at 23:15-24:10, 26:6-21.  Martinez agrees that the MVD regulations do not allow the removal of a salvage brand where a "clerical error" was made in the issuance of an earlier salvage title certificate. <u>Id.</u> at 30:6-31:23, 33:7-12.  Martinez agrees that the only way a salvage brand can be removed from a title certificate, per the MVD regulations, is if, in the circumstances of a theft-recovery vehicle, proof is provided that the vehicle has only minimal damage and no undercarriage or chassis damage.

See id. at 36:3-37:17.  He states that he did not verbally inform MVD of the Sierra's damage when the Third-Party Defendants issued the clean October 26th title certificate, and that he has no memory of submitting any documents to MVD concerning the extent of the Sierra's damage or concerning whether it had undercarriage damage.  See Martinez Depo. at 61:7-63:3.

A reasonable jury might not find the story about the "clerical error" to be true.  Defendant USAA Casualty Insurance Company d/b/a USAA – the insurance company that had paid its insured on the Sierra after the Sierra had been stolen and recovered with severe damage -- recently filed its answer to the Plaintiffs' amended complaint after the Plaintiffs added USAA as a Defendant.  See Amended Complaint ¶ 15, at 3; Answer to First Amended Complaint for Damages and for Declaratory Relief (Doc. 130)("USAA Answer").  USAA admits that it determined that the Sierra was uneconomical to repair.  See Amended Complaint ¶ 16, at 4; USAA's Answer ¶ 5, at 2.  Per New Mexico titling law, if an insurance company declares a vehicle uneconomical to repair and, in fact, does not repair the vehicle for the insured, then the vehicle must bear a salvage title certificate.  See N.M.S.A. 1978, § 66-1.4-16C(1). N.M.S.A. 1978, § 66-1.4-16C(1) states:

> "salvage vehicle" means a vehicle:
>
> (1) other than a nonrepairable vehicle, of a type subject to registration that has been wrecked, destroyed or damaged excluding, pursuant to rules issued by the department, hail damage, to the extent the owner, leasing company, financial institution or the insurance company that insured or is responsible for repair of the vehicle considers it uneconomical to repair the vehicle and that is subsequently not repaired by or for the person who owned the vehicle at the time of the event resulting in damage; or
>
> (2) that was determined to be uneconomical to repair and for which a total loss payment is made by an insurer, whether or not the vehicle is subsequently repaired, if, prior to or upon making payment to the claimant, the insurer obtained the agreement of the claimant to the amount of the total loss settlement and informed the claimant that, pursuant to rules of the department, the title must be branded and submitted to the department for issuance of a salvage certificate of title for the

vehicle.

N.M.S.A. 1978, § 66-1.4-16C(1). USAA admits that it obtained a salvage title for the Sierra.  See
Amended Complaint ¶ 20, at 4; USAA's Answer ¶ 5,  at 2.  These facts undercut Lomas Auto Mall,
Lohman Motors, and the Third-Party Defendants' argument that the initial salvage title certificate
for the Sierra was the result of clerical error.

A reasonable jury could also conclude that the alleged cover-up in which Lomas Auto Mall,
Lohman Motors, CoPart, and USAA engaged, after the Plaintiff filed this lawsuit, further undercuts
the credibility of Lomas Auto Mall's alleged co-conspirators.  Lomas Auto Mall allegedly worked
closely with CoPart to assemble documents and work with persons it knew inside MVD to convince
MVD to issue a second clear-title certificate for the Sierra.  See Reply Brief to Compel Lomas Auto
Mall, Exhibit C, Letter from Vicki Garcia to Joe Romero at (undated)(stating that, "I have enclosed
one more of the titles that was branded by error by state.  Can you please review the documentation
that is enclosed to remove the salvage brand from this unit."); Reply Brief to Compel Lomas Auto
Mall, Exhibit D, Letter from Yvonne Gonzales (undated)(stating that, "[t]he title should be a clean
title not a salvage title").  These documents include a statement from a USAA employee stating that
USAA did not intend a salvage title certificate for the Sierra.  See Reply Brief to Compel Lomas
Auto Mall, Exhibit D, Letter from Yvonne Gonzales (undated)(stating that, "[t]he title should be a
clean title not a salvage title").  Another document is an inspection report that Lohman Motors
obtained, in which the inspector states that he found nothing wrong with the Sierra.  See Reply Brief
to Compel Lomas Auto Mall, Exhibit E, Exhibit of Manford D. Lohman at 88:7-91:25 (taken
February 28, 2008)("Lohman Depo.").

CoPart submitted the title from October 26th, the vehicle-inspection report, the police report

and the letter from USAA to the MVD.  See Reply Brief to Compel Lomas Auto Mall, Exhibit F, Deposition of Vicki Garcia at 103:23-104:17 (taken February 7, 2008).  MVD was not informed of the extent of the Sierra's damage or the existence of undercarriage damage.  See id. at 96:4-21.  In August 2007, MVD issued a second clean-title certificate for the Sierra.  See Reply Brief to Compel Lomas Auto Mall, Exhibit G, Title Certificate (dated August 2, 2007).  A reasonable jury could reasonably conclude that this second title certificate was fraudulently obtained as the Defendants had, again, failed to notify MVD of the Sierra's extensive damage, including the undercarriage damage.

Moreover, there is some evidence that the Defendants tried to conceal the cover up.  Lomas Auto Mall tried to convince another private title service that it formerly regularly employed -- High Desert Title -- to sign an affidavit in which High Desert would state that it obtained the August 2007 clean title.  See Reply Brief to Compel Lomas Auto Mall, Exhibit H, Proposed Affidavit of Phyllis Dinkel ¶¶ 3-5, at 1-2 (undated).  A reasonable jury could reasonably conclude that this affidavit was intended to hide the Defendants' involvement in obtaining the August 2007 title certificate and hide that a cover up had taken place.  High Desert refused to sign this affidavit, because it apparently contained statements that were not accurate.  See Reply Brief to Compel Lomas Auto Mall, Exhibit I, Deposition of Phyllis Dinkel at 25:24-30:22.

## III.   THERE IS SUFFICIENT EVIDENCE TO SHOW THAT LOMAS AUTO MALL AND LOHMAN MOTORS OPERATE AN ONGOING JOINT ENTERPRISE.

There is evidence that Lohman Motors buys vehicles in wrecked condition, performs minimal repairs, then has Lomas Auto Mall sell the vehicles without disclosure of the damage, with Lohman Motors and Lohman Auto Mall splitting the profits.  Lohman Motors owns the land on which Lomas Auto Mall operates its lot, but does not charge Lomas Auto Mall a set monthly rent.

Lohman Motors does not have any written agreement about Lomas Auto Mall's lot.  <u>See</u> Lohman Depo. at 16:8-25, 18:3-9, 39:20-25.

## IV. THE OTHER DISCOVERY DISPUTES WITH THE DEFENDANTS HAVE BEEN <u>RESOLVED.</u>

Following the Plaintiffs' filing of the motion to compel against Lomas Auto Mall, Lomas Auto Mall provided responsive information concerning Interrogatories Nos. 4, 17, and 18.  <u>See</u> Plaintiffs' Reply Brief at 7. This additional information resolved the disputes concerning these requests.  <u>See</u> <u>id.</u>  Additionally, the Plaintiffs indicated that Interrogatory 18 to Lohman M.D. Lohman d/b/a Lohman Motors had been resolved.  <u>See</u> Reply Brief to Compel M.D. Lohman d/b/a Lohman Motors at 11.

**IT IS ORDERED** for the reasons stated on the record and for the reasons stated herein, that the Plaintiffs' Motion to Compel Lomas Auto Mall, Inc. is granted in part.  The Court will deny the Plaintiffs' request that the Court order Lomas Auto Mall to provide full and complete answers to Interrogatories Nos. 4, 17, and 18, as moot, but orders Lomas Auto Mall to produce all documents responsive to Request for Production No. 16 within ten days of the April 22, 2008  hearing date. For the reasons stated on the record and for the reasons stated herein, the Court will grant in part and deny in part Plaintiffs' Motion to Compel M.D. Lohman d/b/a Lohman Motors.  The Court will deny the Plaintiffs' request that the Court order Lohman Motors to provide a full and complete answer to Interrogatory number 18 as moot, but the Court orders M.D. Lohman d/b/a Lohman Motors to produce all documents responsive to Requests for Production numbers 15 and 16 within 10 days of the April 22, 2008 hearing date.  The Plaintiffs, as well as the Plaintiffs' law firm, are ordered not to use the information received pursuant to these requests for any purposes outside of this law suit.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Rob Treinen
Feferman & Warren
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

William F. Davis
Charles R. Hughson
William F. Davis & Associates PC
Albuquerque, New Mexico

    *Attorneys for Defendants Lomas Auto Mall, Inc.*
     *and M.D. Lohman d/b/a Lohman Motors*

Judd C. West
John A. Degraauw
Doughty and West PA
Albuquerque, New Mexico

    *Attorney for Defendant Western Surety Company*

Michael L. Danoff
Michael L. Danoff & Associates
Albuquerque, New Mexico

    *Attorney for Third-Party Defendants Independent*
     *Auto Dealers Service Corporation, Ltd. and*
     *New Mexico Independent Automobile Dealers*
     *Association, Inc.*

-13-