# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DELFINO PEDROZA and LILIANA ANDRADE,

       Plaintiffs,

vs.                                                                  No. CIV 07-0591 JB/RHS

LOMAS AUTO MALL, INC.; M.D. LOHMAN d/b/a
LOHMAN MOTORS; WESTERN SURETY COMPANY;
USAA CASUALTY INSURANCE COMPANY d/b/a USAA;
and INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD.,

       Defendants.

LOMAS AUTO MALL, INC. and M.D. LOHMAN d/b/a
LOHMAN MOTORS,

       Third Party Plaintiffs,

vs.

INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD. and NEW MEXICO INDEPENDENT
AUTOMOBILE DEALERS' ASSOCIATION, INC.,

       Third Party Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Partial Summary

Judgment, filed October 14, 2008 (Doc. 276). The Court held a hearing on December 17, 2008. The

primary issues are: (i) whether the 2005 GMC Sierra at the center of this case warranted a salvage

title under New Mexico law; and (ii) whether Defendant USAA Casualty Insurance Company d/b/a

USAA violated the New Mexico Unfair Trade Practices Act ("UPA") by securing a clean title for

the Sierra. The Court's recent determination of the meaning of the phrase "considers it

uneconomical to repair" in N.M.S.A. 1978 § 66-1-4.16C largely disposes of the first issue. <u>See</u>

Transcript of Hearing at 3:24-5:4 (taken December 17, 2008)(Court)("Tr.");[1] Memorandum Opinion

and Order at 44, entered January 20, 2009 (Doc. 344)("MOO").  Because the Court concludes that

the undisputed evidence shows that USAA determined that it was uneconomical to repair the Sierra,

the Sierra should have had a salvage title.  Additionally, because USAA was aware of the relevant

facts that made the Sierra salvage, and USAA has not shown grounds for excusing its legal error,

its acquisition of a clean title for the Sierra was a violation of the UPA.  The Court will therefore

grant the motion.

## FACTUAL BACKGROUND

The Court has already discussed the basic background of this case elsewhere.  See MOO at

2-3.  Briefly, the Plaintiffs allege that the used 2005 GMC Sierra they bought had a damaged axle

and a salvage title that was not disclosed to them.  As relevant here, the Sierra had been transferred

to USAA as part of USAA's settlement of an insurance claim.  USAA contends that the Sierra did

not merit a salvage title and that it did not determine that the vehicle was uneconomical to repair.

The Plaintiffs maintain that USAA determined that the Sierra was uneconomical to repair and thus

should have had a salvage title.

Sharon Kunz, the USAA employee who worked on the Sierra claim, testified at her

deposition that she did not believe the Sierra was salvage.  The Plaintiffs, however, point to internal

USAA documents indicating that, when USAA determines a vehicle is uneconomical to repair in

New Mexico, it is salvage.  See Exhibit D to Plaintiffs' Brief in Support of Third Motion to Compel

USAA Casualty Insurance Company d/b/a USAA, New Mexico - Title & Salvage Handling Chart

at 1 (dated July 28, 2006)(Doc. 268-5)("Claims Chart").  Kunz stated that she believed that this

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

-2-

policy did not apply to vehicles, such as the Sierra, that had been recovered after a theft.  See Exhibit A to Exhibits in Support of USAA's Motion for Summary Judgment, Deposition of Sharon Kunz at 159:13-165:16 (taken July 21, 2008)(Doc. 287-2)("Kunz Depo.").

## PROCEDURAL BACKGROUND

The Court's ruling on the meaning of N.M.S.A. 1978 § 66-1-4.16C narrows the scope of the issues on this motion.  The Plaintiffs move the Court for summary judgment on two issues: (i) whether the Sierra warranted a salvage title; and (ii) and, if the Sierra warranted a salvage title, whether USAA's procurement of a clean title violated the UPA.  The Plaintiffs argue that USAA has already admitted that it was uneconomical to repair the Sierra and that it did not repair the Sierra, which they contend is sufficient to establish that the Sierra warranted a salvage title.  See Plaintiffs' Brief in Support of Motion for Partial Summary Judgment at 7-10, filed October 14, 2008 (Doc. 277)("Plaintiffs' Brief").  Additionally, they argue obtaining a clean title for the Sierra amounts to a violation of the UPA, because the Sierra should have been salvage under both New Mexico law and USAA's internal policies.  Failing to follow either the law or USAA's policies, the Plaintiffs contend, means that USAA failed to exercise reasonable diligence and thus violated the UPA.  See Plaintiffs' Brief at 13-14.

USAA contests both issues.  On whether the Sierra warranted a salvage title, USAA principally reiterates its position on the proper interpretation of New Mexico salvage law.  See Response to Plaintiffs' Motion for Partial Summary Judgment at 9-10, filed November 10, 2008 (Doc. 310)("Response").  On the UPA issue, USAA contends that the reasonable-diligence standard the Plaintiffs urge is inappropriate and effectively eliminates the UPA's knowledge requirement.  See Response at 8-9.  USAA also maintains that its employees reasonably and in good faith followed USAA policy, and relied on the New Mexico regulations for determining what vehicles

should be salvage.  See id. at 11-12.[2]

Defendants M.D. Lohman d/b/a Lohman Motors and Lomas Auto Mall, Inc. (collectively, "Dealerships") also filed a brief in opposition to the Plaintiffs' motion.  The Dealerships primarily argue that the Plaintiffs' interpretation of New Mexico salvage law is incorrect and that, regardless, the Plaintiffs' motion is not ripe until the Court rules on the meaning of N.M.S.A. 1978 § 66-1-4.16C.  See Dealership Defendants' Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment at 5-7, filed November 10, 2008 (Doc. 302).  The Dealerships also contend that the Plaintiffs have failed to demonstrate that Sierra deserved a salvage title or that there was a title-washing conspiracy.  See id. at 7-12.

The Plaintiffs counter that they have established the facts necessary for summary judgment in their favor.  See Plaintiffs' Reply Brief in Support of Motion for Partial Summary Judgment at 1-4, filed November 24, 2008 (Doc. 314)("Reply").  They contend that a reasonable jury would necessarily find that the Sierra warranted a salvage title and that USAA violated the UPA.  See Reply at 4-6.  They argue that USAA misinterprets New Mexico law and that they need not show intent, but only that USAA did not act with reasonable diligence.  See id. at 7-8.  The Plaintiffs maintain that, if USAA had reasonably interpreted New Mexico law or followed USAA policy, USAA would have known that the Sierra was a salvage vehicle.  See id. at 9.  The Plaintiffs further contend that there is no evidence that USAA relied on New Mexico regulations when it sought a clean title for the Sierra and that, even if USAA policy treated theft-recovery vehicles different than collision vehicles, this treatment would be contrary to New Mexico law and thus not in line with the

---

[2] The Court has also considered the arguments regarding the UPA that USAA raises in the briefing on Defendant USAA's Motion for [] Summary Judgment, filed October 14, 2008 (Doc. 285), which largely track the arguments USAA raises here.

exercise of reasonable diligence.  See id. at 9-10.

At the hearing, Rob Treinen, the Plaintiffs' attorney, argued that he did not believe that USAA's policy was different for theft-recovery vehicles, but that, even if USAA had a different policy, that policy would conflict with New Mexico law.  See Tr. at 31:5-18 (Treinen).  Mr. Treinen also clarified that the Plaintiffs were only moving for summary judgment for liability under the UPA, not for causation or damages.  See id. at 34:11-22 (Court & Treinen).  Mark J. Klecan, USAA's counsel, argued that the Court should analogize the "knowing" element of the UPA to New Mexico's uniform jury instructions on statutory violations in negligence cases, N.M.R.A., Civ. UJI 13-1501 and 13-1503.  See Tr. at 33:5-12, 41:13-25 (Court & Klecan).  Mr. Klecan contended that a violation of the title laws should be at best evidence of a UPA violation and that the jury should be allowed to hear that USAA tried in good faith to comply with New Mexico law.  See Tr. at 33:13-19, 42:1-43:6 (Court & Klecan).

Since the hearing and the Court's ruling on the meaning of N.M.S.A. 1978 § 66-1-4.16C, USAA has filed two new motions: (i) for supplemental briefing on the Plaintiffs' motion in light of the Court's recent ruling, see Defendant USAA's Expedited Motion for Supplemental Briefing on Plaintiffs' Motion for Partial Summary Judgment, filed January 21, 2009 (Doc. 345); and (ii) to withdraw its response to Request for Admission No. 8, see Defendant USAA's Motion to Withdraw Admission No. 8 and Supporting Memorandum Brief, filed January 23, 2009 (Doc. 352).  The Court is aware of these pending motions, but believes that it would be best to issue its opinion now.  If the Court decides to grant either new motion, the Court can deal with any consequences at that time and the Court's present opinion should help narrow the issues from the new motions.  If the Court does not grant either motion, then the parties will have had the Court's present opinion for a longer period of time, allowing them to better prepare for trial.

<u>ANALYSIS</u>

In light of the Court's recent ruling, many of the issues in this motion fall readily into place. The evidence shows that USAA considered the Sierra uneconomical to repair. The Sierra, therefore, should have been branded salvage. Additionally, USAA's decision to seek a clean title for the Sierra, despite its determination that the Sierra was uneconomical to repair, is a violation of the UPA, because USAA was aware of the relevant facts that made the Sierra salvage, and USAA has not shown grounds for excusing its legal error.

**I.     THE SIERRA WARRANTED A SALVAGE TITLE.**

One way in which a vehicle warrants a salvage title in New Mexico is if it is "wrecked, destroyed or damaged . . . to the extent that . . . the insurance company that insured or is responsible for repair of the vehicle considers it uneconomical to repair the vehicle and that is subsequently not repaired . . . ." N.M.S.A. 1978, § 66-1-4.16C(1). The Court has determined that an insurance company's decision that it is uneconomical to repair a vehicle would fit within the language "considers it uneconomical to repair the vehicle . . . ." MOO at 44. USAA's responses to requests for admission and answers to the Amended Complaints establish that USAA considered the Sierra uneconomical to repair and that the Sierra was not repaired, but instead auctioned off. Accordingly, the unrepaired Sierra should have been branded with a salvage title.

Although, at the hearing, USAA asserted that it did not concede the issue, its statements conclusively establish that it considered the Sierra uneconomical to repair. The Plaintiffs sent USAA a Request for Admission stating: "Before the sale of the Sierra to Lohman Motors, USAA had decided that the Sierra was uneconomical to repair." Exhibit E to Plaintiffs' Opposition Brief to Dealerships' Motion for Partial Summary Judgment on Salvage and Title Washing Claims, Response to Request for Admission ¶ 8, at 2 (Doc. 201-6). USAA admitted the statement. <u>See id.</u>

Because USAA has not been granted leave to amend or withdraw the admission, the statement is "conclusively established . . . ." Fed. R. Civ. P. 36(b). While the statement does not exactly track the language of the statute -- it uses "decided" rather than "considered" -- the Court does not view that difference as being material. In this context, both words denote that a judgment was made.

USAA's Answer to the First Amended Complaint also admitted that USAA considered the Sierra uneconomical to repair and that it did not repair the Sierra. See First Amended Complaint for Damages and for Declaratory Relief and Jury Demand ¶ 16, at 4, filed February 4, 2008 (Doc. 91)("FAC")(alleging that "USAA determined that the Sierra was uneconomical to repair and did not repair the Sierra . . ."); Answer to First Amended Complaint for Damages and for Declaratory Relief ¶ 5, at 2, filed March 7, 2008 (Doc. 130)(admitting same). When the Plaintiffs filed their Second Amended Complaint, it contained a paragraph identical to the paragraph USAA admitted in the First Amended Complaint. Compare FAC ¶ 16, at 4, with Second Amended Complaint for Damages and for Declaratory Relief and Jury Demand ¶ 18, at 4, filed July 9, 2008 (Doc. 193). Despite its earlier answer, USAA denied determining that the Sierra was uneconomical to repair, although it continued to admit that it did not repair the Sierra. See Answer to Second Amended Complaint for Damages and for Declaratory Relief and Jury Demand, filed August 18, 2008 ¶ 12, at 3 (Doc. 237)(admitting that USAA "did not repair the Sierra," but denying remainder of paragraph 18 of the Second Amended Complaint). Regardless whether this reversal is justified, USAA's response to the Request for Admission has not been retracted and conclusively establishes that USAA reached the conclusion that it was uneconomical to repair the Sierra. Moreover, in its Response, USAA did not dispute the Plaintiffs' undisputed material fact on the issue. See USAA Reply at 6-8 (making no mention of the Plaintiffs' listing as an undisputed fact USAA considering the Sierra uneconomical to repair). Combined with the Sierra not being repaired, this conclusion establishes that the Sierra

-7-

warranted a salvage title.

II.   **USAA VIOLATED THE UPA BY SEEKING A CLEAN TITLE FOR THE SIERRA.**

The remaining question is whether, because the Sierra warranted a salvage title, USAA's procurement of a clean title for the Sierra is a violation of the UPA. To show a violation of the UPA, the Plaintiffs must prove four elements: (i) that USAA "made an 'oral or written statement, visual description or other representation . . . ' that was either false or misleading"; (ii) that "the false or misleading representation must have been 'knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or . . . collection of debts'"; (iii) that the representation "must have occurred in the regular course of the representers['] trade or commerce"; and (iv) that the "representation must have been of the type that 'may, tends to or does, deceive or mislead any person.'" Ashlock v. Sunwest Bank of Roswell, N.A., 107 N.M. 100, 101, 753 P.2d 346, 347 (1988), overruled on other grounds by Gonzales v. Surgidev Corp., 120 N.M. 133, 899 P.2d 576 (1995)(quoting N.M.S.A. 1978 57-12-2D).[3]  USAA contests only the third element: that the false or misleading representation was knowingly made.

Because the Sierra warranted a salvage title, the question becomes whether USAA seeking a clean title for the Sierra was "knowingly made."  USAA argues that its employees' good-faith reliance on the New Mexico regulations and their following USAA's internal policies preclude such a finding.  The Plaintiffs argue that the knowingly made standard does not require actual knowledge of falsity, but only that with reasonable diligence the falsity should have been discovered.  The Plaintiffs contend that USAA ignored New Mexico law and its own policies without justification, and thus should be liable for acquiring a clean title for the Sierra.

---

[3]  Ashlock v. Sunwest Bank of Roswell, N.A. quoted N.M.S.A. 1978 57-12-2C, which is N.M.S.A. 1978 57-12-2D in the current version of the New Mexico Statutes.

USAA counters that the Plaintiffs are relying on a standard that the New Mexico Court of Appeals has cautioned against.  The decision USAA cites, however, does not go as far as USAA would like.  In Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co., 127 N.M. 603, 985 P.2d 1183 (Ct. App. 1998), overruled in part on other grounds by Sloan v. State Farm Mutual Auto. Ins. Co., 135 N.M. 106, 85 P.3d 230 (2004), the New Mexico Court of Appeals addressed the argument that "knowledge or intent at the time of the transaction is not relevant."  Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co., 127 N.M. at 620, 945 P.2d at 1200 (internal quotation marks omitted).  The Court of Appeals warned against reading Ashlock v. Sunwest Bank of Roswell, N.A. to eliminate the "knowingly made" element from the UPA.  See Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co., 127 N.M. at 621, 945 P.2d at 1201.

The Plaintiffs' approach, however, is not as radical as the argument rejected in Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co.  The reasonable-diligence standard does not erase the words "knowingly made" from the UPA.  The reasonable-diligence standard is laid out in Stevenson v. Louis Dreyfus Corp., 112 N.M. 97, 811 P.2d 1308 (1991).  The Supreme Court of New Mexico interpreted the knowing element to not require actual knowledge: "'Knowledge' does not necessarily mean 'actual knowledge,' but means knowledge of such circumstances as would ordinarily lead upon investigation, in the exercise of reasonable diligence which a prudent man ought to exercise, to a knowledge of the actual facts."  112 N.M. at 100, 811 P.2d at 1311.  The reasonable-diligence test that the Plaintiffs advance would perform the not unusual function of preventing wilful blindness from vitiating the "knowing" element.  See id., 811 P.2d at 1311 ("One who intentionally remains ignorant is chargeable in law with knowledge.").  Accordingly, the UPA's "'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the

statement was false or misleading." Id. at 100-01, 811 P.2d at 1311-12.

Moreover, although USAA contends that the test in Stevenson v. Louis Dreyfus Corp has its roots in the logic of Ashlock v. Sunwest Bank of Roswell, N.A., Teague-Strebeck Motors, Inc. v. Chrysler Ins. does not directly discuss the reasonable-diligence test or Stevenson v. Louis Dreyfus Corp.  More importantly for this Court, Stevenson v. Louis Dreyfus Corp. is a Supreme Court of New Mexico opinion that has not been overruled.  The Court will not use the somewhat tangential concerns the New Mexico Court of Appeals expressed in Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co. -- regarding the argument that knowledge or intent at the time of a transaction is irrelevant to the UPA[4] -- to sharply cut back on the language that the Supreme Court of New Mexico has used to describe the UPA requirements for a misrepresentation being knowingly made.

The final issue is whether the undisputed evidence shows that USAA employees, exercising reasonable diligence, would have known that seeking a clean title for the Sierra was a false or misleading representation.  There is some dispute whether USAA's internal policies, aside from New Mexico's legal requirements, would require USAA to obtain a salvage title for the Sierra.  The New Mexico Claims Chart indicates that the Sierra should have been salvage.  The Claims Chart states that vehicles that are determined to be uneconomical to repair are salvage.  See id. at 1.

On the other hand, Kunz testified at her deposition that she did not believe these policies applied to vehicles recovered after a theft.  See Kunz Depo. at 159:13-165:16.  Kunz stated that this policy was not written, see id. at 163:3-12, and USAA has not presented any documents expressing

---

[4] Although Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co. rejects the argument that "knowledge or intent at the time of the transaction is not relevant," 127 N.M. at 620, 945 P.2d at 1200 (internal quotation marks omitted), intent was not specifically discussed, and it is established that the UPA does not require intent, see Stevenson v. Louis Dreyfus Corp., 112 N.M. at 100, 811 P.2d at 1311 ("We agree that the misrepresentation need not be intentionally made, but it must be knowingly made.").

such a policy.  Nonetheless, the Court cannot discount Kunz' testimony merely because there is no written policy.  On summary judgment, the standard is not who has the most evidence, but whether the movant can show that the facts necessary for judgment it its favor are undisputed.  Kunz' testimony creates a factual dispute whether the USAA policy indicating that the Sierra was salvage would apply to a theft-recovered vehicle like the Sierra.  That factual dispute is for a jury, not the Court, to resolve.

While it is a disputed issue of fact whether USAA complied with its own policies, the Plaintiffs also argue that, regardless of USAA policy, a failure to comply with New Mexico law, even in good faith, is a failure to exercise reasonable diligence.  As the Court has now held, the Sierra legally required a salvage title.  The question then becomes whether a good-faith mistake of the law is consistent with reasonable diligence.  New Mexico courts have not addressed this question.  Questions about ignorance or mistake of law arise more frequently in the criminal context, where such mistakes are generally held not to be defenses or to be defenses only for certain narrow, technical crimes involving the heightened mens rea of willfulness, and not to lesser general-intent requirements.  See, e.g., United States v. Platte, 401 F.3d 1176, 1185 (10th Cir. 2005)("'A defendant charged with a specific-intent, federal criminal tax offense can negate the element of wilfulness necessary to prove the violation, thereby providing a defense to the conduct charged, if the defendant establishes that he or she sought in good faith to comply with the relevant law.'")(quoting United States v. Lindsay, 184 F.3d 1138, 1140 (10th Cir. 1999)).

The New Mexico cases on reasonable diligence all involve diligence in uncovering factual issues.  This tendency gives at least some indication that the reasonable-diligence standard should not be considered to apply to legal interpretations.  Cases specifically involving the "knowing" element of the UPA also discuss factual scenarios.  Stevenson v. Louis Dreyfus Corp. indicates that

the reasonable-diligence investigation is aimed at the facts, not legal conclusions: "'Knowledge' does not necessarily mean 'actual knowledge,' but means knowledge of such circumstances as would ordinarily lead upon investigation, in the exercise of reasonable diligence which a prudent man ought to exercise, to a knowledge of the actual <u>facts</u>."   112 N.M. at 100, 811 P.2d at 1311 (emphasis added).

It would also be a somewhat strange result to hold that reasonable diligence is consistent with legal misinterpretation.  It may be a somewhat harsh at times, but even lay people are charged with knowing what the law is and conforming their actions accordingly, even though a failure to comprehend the law may lead to severe consequences.  <u>See</u>, <u>e.g.</u>, <u>Coslett v. Third Street Grocery</u>, 117 N.M. 727, 735, 876 P.2d 656, 664 (Ct. App. 1994)(holding that ignorance of law will not toll statute of limitations and that limitations period begins to run when person discovers factual basis for cause of action, even if person does not understand legal rights).  Moreover, following USAA's approach would involve submitting an essentially legal question to a jury.  The jury would have to determine whether USAA's legal conclusion was reached with reasonable diligence or whether a reasonably diligent person or company would have come to a different understanding of the law. A jury is not well-suited to that task.  The problems inherent in this situation caution against subsuming questions about legal knowledge into the question whether a defendant's statement was knowingly false under a reasonable-diligence standard.

Additionally, USAA has not identified any case law supporting a misunderstanding of the law, as opposed to a mistaken belief about the facts, vitiating a knowing-falsehood element.  The Court's own research has generally turned up the finding of such an element only in the context of criminal prosecutions involving crimes with an element of willfulness.  The dearth of law on this point suggests that a good-faith, but mistaken, legal conclusion does not prevent a statement from

being knowingly false.

At the hearing, USAA analogized the issue to the New Mexico jury instructions on negligence per se. UJI 13-1501 allows defendants to "justify or excuse a violation of a statute," and thus argue that their actions were not negligence per se, by "showing that [s]he did that which might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." N.M.R.A., Civ. UJI 13-1501. UJI 13-1503 states: "Negligence resulting from a violation of a[n] [statute] [or] [ordinance] is no different in effect from that resulting from other acts or omissions constituting negligence." N.M.R.A., Civ. UJI 13-1503 (brackets in original).

In negligence per se, violation of a separate legal duty is evidence of negligence, but not conclusive of negligence. A car running a red light and hitting another car is the classic example. The violation of the traffic law -- running the red light -- is generally conclusive that the driver was negligent, although the violation is not conclusive of causation. See Pack v. Read, 77 N.M. 76, 78, 419 P.2d 453. 455 (1966). The driver running the red light could argue that a reasonable person in his circumstances would have run the red light, perhaps because of some emergency, thus justifying the violation. The analogy between negligence per se and this case is plausible, but breaks down on closer inspection. The question here is not whether USAA's violation of the title laws is evidence of a failure to use reasonable diligence or whether USAA had reasonable justification for what it knew was a violation of the law. If those were the issues, USAA's analogy would be on firmer ground. The question here, however, is whether USAA's mistaken legal belief is consistent with reasonable diligence. The question is one of the actor's knowledge. A more apt analogy would involve a driver who mistakenly believed running red lights was legal and what the effect of that misconception would be. A driver who argued that he was not aware running red lights was illegal

-13-

would not be able to use that argument as grounds justifying his non-compliance with the law.

USAA's arguments in its briefing are unpersuasive, but its position is not without support. The Court believes it is possible that reliance on advice of counsel or reliance on an actual interpretation of the regulations might either provide an affirmative defense or vitiate the "knowing" element of the UPA. One area of the law where a reasonableness standard interacts with issues of law is in penalty assessments for failure to file federal income-tax returns or pay taxes owed. A penalty may be excused if the failure was "due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(1), (2) & (3). The reasonable-cause standard has been interpreted to excuse failures resulting from reliance on an expert's advice for complicated tax issues, but not for simple issues, such as filing a return on time. See United States v. Boyle, 469 U.S. 241, 251 (1985)("When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. . . . By contrast, one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due.").

Where a taxpayer does not rely on counsel's advice, the circuits are split whether a taxpayer's individual good-faith mistake about the law constitutes reasonable cause. Compare Marrin v. Comm'r of Internal Revenue, 147 F.3d 147, 152-53 (2d Cir. 1998)(finding no reasonable cause because "mistaken belief that it was unnecessary to file a return was not based on competent advice.")(internal quotation marks omitted), and Henningsen v. Comm'r of Internal Revenue, 243 F.2d 954, 958-59 (4th Cir. 1957)(holding good-faith belief no defense because "there is no uncertainty as to the settled rule that uninformed and unsupported belief or an innocent mistake does not of itself constitute reasonable cause"), with Condor Intern., Inc. v. Comm'r of Internal Revenue, 78 F.3d 1355, 1359-60 (9th Cir. 1996)(finding reasonable cause for failure to file and for

understatement of taxes when law was recently changed and initial tax strategy founded on lawyer's advice). The majority rule seems to be that individual error is not excusable -- the taxpayer must elicit an expert's opinion. <u>See</u> Boris I. Bittker & Lawrence Lokken, <u>Federal Taxation of Income, Estates and Gifts</u> ¶ 114.3.2 (2008)(noting general rule, but acknowledging some authority to the contrary).

The UPA is not, of course, the Internal Revenue Code. The Court believes that these tax cases, however, provide some insight regarding how the UPA's reasonable-diligence standard might apply to questions of law. This background information, however, does not change the result here, because USAA has not argued advice of counsel or pointed the Court to any facts demonstrating that Kunz read or interpreted the regulations. Instead, the record before the Court provides some indication that Kunz relied on USAA policy, and USAA argues that the "statutes and regulations <u>support</u> her belief." Response at 11 (emphasis added). Such evidence does not show reliance on advice of counsel or even reliance on a mistaken assessment of New Mexico salvage law.

In sum, the Court does not see any grounds for holding that a good-faith misunderstanding of the law would preclude a statement from being knowingly false in this case. Here, it is undisputed that USAA was aware of the facts that made the Sierra salvage. USAA, after all, was the entity that determined the Sierra was uneconomical to repair. Because USAA knew the necessary facts, its incorrect legal conclusion will not shield it from liability, with the possible exception of advice of counsel or actual reliance on the regulations, neither of which USAA has shown. The Court will thus grant summary judgment in the Plaintiffs' favor on their UPA claim. As noted at the hearing, the Plaintiffs are not moving for summary judgment on either causation or damages. The Court's grant of summary judgment extends only to the issue of liability under the UPA.

**IT IS ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Rob Treinen
Charles S. Parnall
Feferman & Warren
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

William F. Davis
Charles R. Hughson
Brett Steinbook
William F. Davis & Assoc., P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Lomas Auto Mall, Inc.*
      *and M.D. Lohman d/b/a Lohman Motors*

Judd C. West
Michael Neill
Doughty and West PA
Albuquerque, New Mexico

    *Attorneys for Defendant Western Surety Company*

Mark J. Klecan
Klecan & Childress
Albuquerque, New Mexico

-- and --

Charles J. Vigil
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

-- and --

Jeffrey W. McElroy
John Paul Valdez
Ray, Valdez, McChristian & Jeans, PC
El Paso, Texas

-- and --

Robert E. Valdez
Ray, Valdez, McChristian & Jeans, PC
San Antonio, Texas

    *Attorneys for Defendant USAA Casualty Insurance Company*
     *d/b/a USAA*

Michael L. Danoff
Michael Danoff & Associates, P.C.
Albuquerque, New Mexico

    *Attorneys for Third-Party Defendants Independent Automobile*
     *Dealers Service Corporation, Ltd. and New Mexico Independent*
     *Automobile Dealers Association, Inc.*