**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DELFINO PEDROZA and LILIANA ANDRADE,

Plaintiffs,

vs. No. CIV 07-0591 JB/RHS

LOMAS AUTO MALL, INC.; M.D. LOHMAN d/b/a LOHMAN MOTORS; WESTERN SURETY COMPANY; USAA CASUALTY INSURANCE COMPANY d/b/a USAA; and INDEPENDENT AUTO DEALERS SERVICE CORPORATION, LTD.,

Defendants.

LOMAS AUTO MALL, INC. and M.D. LOHMAN d/b/a LOHMAN MOTORS,

Third Party Plaintiffs,

vs.

INDEPENDENT AUTO DEALERS SERVICE CORPORATION, LTD. and NEW MEXICO INDEPENDENT AUTOMOBILE DEALERS' ASSOCIATION, INC.,

Third Party Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant USAA's Motion for [] Summary Judgment, filed October 14, 2008 (Doc. 285). The Court originally held a hearing on December 17, 2008, but was unable to hear this motion. The Court then planned to hear the motion on December 31, 2008, but the parties decided that they would prefer that the Court decide the motion on the briefs. The primary issue is whether there is sufficient evidence to support the five claims the Plaintiffs bring against Defendant USAA Casualty Insurance Company d/b/a USAA: (i) unfair trade practices; (ii) fraud; (iii) civil conspiracy; (iv) joint enterprise; and (v) fraud by joint enterprise.

Because the Court concludes that sufficient evidence supports each of the five claims that the Plaintiffs assert, the Court will largely deny the motion. The Court will, however, grant the motion with respect to the existence of a civil conspiracy between USAA and Defendant and Third-Party Defendant Independent Auto Dealers Service Corporation, Ltd. ("IADSC").

## FACTUAL BACKGROUND

The Court has already discussed the basic background of this case elsewhere. See Memorandum Opinion and Order at 2-3, entered January 20, 2009 (Doc. 344). Briefly, the case involves a used 2005 GMC Sierra that the Plaintiffs bought, which they allege had a salvage title and a damaged axle that were not disclosed to them. The important facts for this motion are: (i) USAA's involvement in auctioning the Sierra on a clean title; and (ii) USAA's involvement in acquiring a second clean title from the New Mexico Motor Vehicle Department ("MVD") after this lawsuit began.

Sharon Kunz, the USAA employee who worked on the Sierra claim, testified at her deposition that she did not believe the Sierra was salvage. The Plaintiffs, however, point to internal USAA documents indicating that, when USAA determines a vehicle is uneconomical to repair in New Mexico, it is salvage. See Exhibit D to Plaintiffs' Brief in Support of Third Motion to Compel USAA Casualty Insurance Company d/b/a USAA, New Mexico - Title & Salvage Handling Chart at 1 (dated July 28, 2006)(Doc. 268-5)("Claims Chart"). Kunz stated that she believed that this policy did not apply to vehicles, such as the Sierra, that had been recovered after a theft. See Exhibit A to Exhibits in Support of USAA's Motion for Summary Judgment, Deposition of Sharon Kunz at 159:13-165:16 (taken July 21, 2008)(Doc. 287-2)("Kunz Depo.").

USAA auctioned off the Sierra on a clean title through CoPart Auto Auctions. CoPart's "Albuquerque facility is strictly for licensed dealers, auto recyclers, and exporters." Exhibit G to

Response, Deposition of Vicki Garcia at 25:13-19 (taken February 7, 2008)(Doc. 308-8)("Garcia Depo."). Defendant and Third-Party Plaintiff M.D. Lohman d/b/a Lohman Motors bought the Sierra from CoPart on November 9, 2006, for the $13,300.00. See id. at 41:18-23.

Despite the earlier clean title issued, the MVD did not allow the Sierra's title to be transferred to the Plaintiffs on a clean title. See Exhibit A to Response, Deposition of Michael Richesin at 82:24-83:11 (taken August 29, 2009)(Doc. 308-2)("Richesin Depo."). Defendant and Third-Party Plaintiff Lomas Auto Mall, Inc. and USAA sought a new clean title from the MVD. See Garcia Depo. at 92:18-21 (discussing Lomas Auto Mall's asking about cleaning title); id. at 103:23-104:17, 116:3-22 (discussing USAA's efforts to get a second title). After this lawsuit began, USAA submitted paperwork to the MVD, seeking a clean title. See Garcia Depo. at 103:23-104:17. There is evidence that the MVD was not informed of the damage to the Sierra. See id. at 96:4-21 (stating that CoPart did not receive a damage estimate to send to the MVD). A vehicle inspection report that did not list any damage to the Sierra was among the documents forwarded to the MVD. See Exhibit B to Response, Value Automotive: Level 1 - Complete Vehicle Inspection Report (dated November 15, 2006)(Doc. 308-3)("Inspection Report").

## PROCEDURAL BACKGROUND

USAA moves for summary judgment on all five counts asserted against it. On the first count, fraud, USAA argues that the Plaintiffs cannot show that USAA made any knowingly false statements and that the Plaintiffs cannot show any intent to deceive, because the only contact USAA had during the chain of events in this lawsuit is with CoPart. See Memorandum in Support of USAA's Motion for Summary Judgment at 7, filed October 14, 2008 (Doc. 286)("Memorandum"). USAA next argues that none of the elements of joint enterprise, the basis of the second and third counts, are present. See id. at 7-8. As to the claim of unfair trade practices, USAA contends that

intentional conduct is required, which cannot be shown. See id. at 8. Finally, USAA maintains that there is no evidence of conspiracy, because Kunz did not know anyone at Lohman Motors or Lomas Auto Mall (collectively, "Dealerships), "let alone conspire with anyone to accomplish an unlawful purpose." Id.

The Plaintiffs undertake an extensive survey of their version of many of the events that led to this lawsuit, which is markedly different from USAA's interpretation. See Plaintiffs' Opposition to USAA's Motion for Summary Judgment at 1-15, filed November 10, 2008 (Doc. 308)("Response"). The Plaintiffs argue that USAA violated New Mexico law and its own internal policies in procuring a clean title for the Sierra, amounting to a violation of the UPA. See id. at 15-16. The Plaintiffs next contend that, for the same reasons, USAA acted with reckless disregard for the truth, which is sufficient to prove intent for fraud. See id. at 16. The Plaintiffs also maintain that USAA ratified CoPart's actions in removing the Sierra's salvage brand, which the Plaintiffs contend shows intent to defraud. See id. at 17-18. The Plaintiffs further assert that USAA's fraudulent intent can be inferred from the circumstances of the case and that the question of USAA's intent should be left for the jury to decide. See id. at 18-19. Finally, the Plaintiffs maintain that USAA, although an "upstream seller" of the Sierra, remains liable to the Plaintiffs for fraud. See id. at 19-21.

On their civil-conspiracy claim, the Plaintiffs argue that USAA increased its profits, and the profits of the Dealerships and of IADSC, by selling the Sierra on a clean title, in violation of New Mexico law and USAA's policies. See id. at 22. The Plaintiffs contend that USAA's procurement of a second clean title, acting through CoPart, in concert with the Dealerships, is evidence of a cover-up of the first title washing. See id. The Plaintiffs maintain that USAA submitted false inspection reports as part of obtaining the second title, in an effort to allow USAA and the other Defendants to retain their fraudulently obtained profits. See id.

The Plaintiffs next argue that the acquisition of the second title shows a joint proprietary interest in the proceeds of the Sierra sale and a mutual right to control the title status of the Sierra. See id. at 23. The Plaintiffs also contend that documents withheld from them will likely provide further evidence of joint enterprise. See id. The Plaintiffs maintain that the withholding of documents provides separate grounds under rule 56(f) for denial of the motion. See Response at 23-24.

USAA counters that the Plaintiffs have failed to rebut USAA's prima facie case for summary judgment. USAA contends that Kunz' belief that New Mexico law and USAA policy did not require a salvage title for the Sierra precludes the culpable mental state that several of the Plaintiffs' causes of action require. See Reply on USAA's Motion for Summary Judgment at 2-3, filed November 20, 2008 (Doc. 313)("Reply"). USAA also argues that the Plaintiffs misrepresent many facts. USAA asserts that there is no evidence that it was aware that the Sierra received a salvage title until July 2007 or that the salvage title was issued because of theft damage. See id. at 3-4. Instead, USAA contends, the salvage title was the result of a clerical error. See id. at 4. USAA further maintains that there is no evidence that USAA gathered documents to help the Dealerships defraud the MVD into issuing a second clean title or any evidence that USAA attempted to conceal the Sierra's condition from the MVD. See id. at 4-5.

USAA maintains that the Plaintiffs' have a fallback theory of fraud -- that USAA ratified CoPart's title washing. USAA contends that CoPart did not commit any fraud that USAA could have ratified and that, regardless, USAA did not ratify CoPart's conduct. See id. at 5. USAA asserts that the undisputed evidence shows that USAA did not know of CoPart issuing a salvage title, and then changing the title to a clean title, until July 2007. See id. The Defendants also maintain that the July 2007 letter that USAA states the Plaintiffs use as proof of ratification was a letter that was

sent after litigation began, in response to a request from information by the original Defendants. See id. at 5-6.

USAA then argues that the Plaintiffs have offered only vague allegations of conspiracy, with generic references to "fellow defendants." Id. at 6 (internal quotation marks omitted). In particular, USAA contends that the Plaintiffs have failed to rebut its evidence that Kunz did not believe that the Sierra merited a salvage title. See id. at 6-7. USAA maintains that, even if the Court disagrees with its view on New Mexico salvage law, Kunz and USAA followed the regulations and USAA policy, making Kunz' decision, at most, negligent. USAA contends that there is thus no evidence of reckless disregard of the truth that would support a fraud or UPA claim. See Response at 7-9. USAA further contends that this lack of wilfulness prevents USAA from being held liable for downstream fraud. See id. at 9. Finally, USAA argues that the Plaintiffs are advocating a standard for liability under the UPA that New Mexico has rejected. See id. at 10-11.

At the December 17, 2008 hearing, while the Court did not specifically hear argument on the present motion, the Court heard argument on other, related motions in this case. In arguing against IADSC and Third-Party Defendant New Mexico Independent Automobile Dealers' Association's ("NMIADA") motion for summary judgment on conspiracy, Rob Treinen, the Plaintiffs' attorney, clarified the Plaintiffs' position. Mr. Treinen stated that the alleged conspiracy ran between IADSC and the Dealerships. See Transcript of Hearing at 76:3-5 (taken December 17, 2008)("Tr.")(Treinen).[1] When the Court asked if USAA was relevant to the Plaintiffs' claims involving IADSC, Mr. Treinen said that USAA was no longer relevant to those claims. See id. at 76:6-11 (Court & Treinen).

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain different page and/or line numbers.

**NEW MEXICO LAW REGARDING FRAUD**

The elements of fraud are: "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." Cain v. Champion Window Co. of Albuquerque, LLC ¶ 22, 142 N.M. 209, 216, 164 P.3d 90, 97 (Ct. App. 2007)(internal quotation marks omitted). Fraudulent "[i]ntent may be inferred from the circumstances surrounding the dealings . . . ." Maxey v. Quintana, 84 N.M. 38, 42, 499 P.2d 356, 360 (Ct. App. 1972). While New Mexico courts have not discussed third-party liability for fraud, the general rule is:

> The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

Restatement (Second) of Torts § 533.

**ANALYSIS**

USAA moves for summary judgment on all five claims the Plaintiffs raise against it: (i) violation of the New Mexico Unfair Trade Practices Act ("UPA"); (ii) fraud; (iii) civil conspiracy; (iv) joint enterprise; and (v) fraud by joint enterprise. Contrary to USAA's contentions, the Court finds that there is sufficient evidence to support each of these claims, with the exception of conspiracy between USAA and IADSC, which the Plaintiffs concede is no longer relevant. Accordingly, the Court will grant the motion with respect to the conspiracy claim between USAA and IADSC, but will otherwise deny USAA's motion for summary judgment.

## I. THE COURT'S RECENT MEMORANDUM OPINION AND ORDER ON THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT LARGELY DISPOSES OF USAA'S MOTION ON THE UPA CLAIM.

The Court's recent opinion on the Plaintiffs' motion for summary judgment deals with the UPA claim advanced against USAA. The Court -- considering the arguments raised in the briefing on this motion, as well as the arguments raised directly in opposition to the Plaintiffs' motion for summary judgment -- held that USAA violated the UPA and that the Plaintiffs were therefore entitled to summary judgment. See Memorandum Opinion and Order at 6, 15, entered January 28, 2009 (Doc. 356)("MOO"). The Court also reiterates here that the UPA does not require a showing of intent, but only a showing of knowledge. See Stevenson v. Louis Dreyfus Corp., 112 N.M. 97, 100, 811 P.2d 2308, 1311 (1991)("We agree that the misrepresentation need not be intentionally made, but it must be knowingly made."). Because the Court has concluded that USAA violated the UPA, USAA is not entitled to summary judgment on the UPA claim.

## II. THERE IS SUFFICIENT EVIDENCE TO SUBMIT THE FRAUD CLAIM TO A JURY.

The elements of fraud are: "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." Cain v. Champion Window Co. of Albuquerque, LLC ¶ 22, 142 N.M. at 216, 164 P.3d at 97 (internal quotation marks omitted). USAA directly challenges two of the elements of fraud: (i) knowing misrepresentation; and (ii) intent. USAA also contends, as the Court understands its argument, that it cannot be liable because it was never in contact with the Plaintiffs and did not act wilfully.

It is not quite clear what the Plaintiffs are arguing in response when they contend that USAA

ratified CoPart's title washing, thus showing an intent to defraud. To the extent that the Plaintiffs argue that USAA cannot hide behind CoPart, the Court agrees with the Plaintiffs. While the case most directly on point that the Plaintiffs cite refers to corporations ratifying the fraudulent acts of employees, see Chavarria v. Fleetwood Retail Corp. ¶ 30, 140 N.M. 478, 488, 143 P.3d 717, 727 (Ct. App. 2006), the Court believes that the Plaintiffs are correct that USAA cannot use CoPart as a shield. It is undisputed that CoPart faithfully carried out USAA's instructions, and USAA does not seem to suggest that CoPart acted against USAA's wishes or somehow otherwise relieves USAA of liability. The Court does not, however, necessarily view either CoPart's faithful execution of USAA's requests or USAA's statements that CoPart acted as USAA intended CoPart to act as having some independent significance indicating a fraudulent intent beyond what the orders to CoPart themselves might show.

While USAA's alleged ratification might not demonstrate intent or knowledge, there is a genuine factual dispute whether Kunz and USAA followed USAA policy. Fraudulent "[i]ntent may be inferred from the circumstances surrounding the dealings . . . ." Maxey v. Quintana, 84 N.M. at 42, 499 P.2d at 360. As the Court has already held, whether USAA followed its internal policies is a disputed issue. See MOO at 10-11. USAA's written policies indicate that the Sierra should have had a salvage title, see Claims Chart at 1, while Kunz testified that unwritten policy treats theft-recovery vehicles differently than collision vehicles, see Kunz Depo. at 159:13-165:16. If a jury were to resolve the dispute in favor of the written policy applying to all vehicles, a jury could infer that USAA deliberately ignored its own policy when seeking a clean title for the Sierra. From this conduct a jury could infer the necessary deceitful intent, as well as the requisite knowledge.

USAA also maintains that it did not mislead the Plaintiffs, who were downstream consumers. The Plaintiffs argue that "[a]n upstream seller of a motor vehicle is liable to the ultimate consumer

purchaser of the vehicle for the fraud that the upstream seller originates and that the intermediate sellers repeat." Response at 19. In its Reply, USAA mentions only that the "Plaintiffs cannot establish that USAA's conduct was wilful." Reply at 9. In other words, USAA argues that, because it did not commit fraud in the beginning, it cannot be liable for downstream events. Because there is evidence from which a jury could infer that USAA acted knowingly and with a fraudulent intent, this argument fails.

As the Plaintiffs point out, the Restatement (Second) of Torts provides for third-party liability in fraud:

> The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

Id. § 533. On the facts of this case, there is evidence supporting USAA either intending or having reason to expect that its alleged misrepresentations would be repeated as the Sierra made its way down the stream of commerce. As discussed below, there is evidence supporting a conspiracy between USAA and the Dealerships, which would provide evidence of USAA's intent. If USAA and the Dealerships conspired to unlawfully sell the Sierra on a clean title, it would necessarily follow that USAA intended the Dealerships to misrepresent the Sierra's condition and title to the Plaintiffs. Moreover, even if USAA were acting alone, USAA would have reason to expect, when it sold the Sierra at auction, that the Sierra would eventually be resold to someone else. See Garcia Depo. at 25:13-19 (stating CoPart's "Albuquerque facility is strictly for licensed dealers, auto recyclers, and exporters"). If a jury found that USAA had the requisite knowledge and intent to commit fraud, a jury could also find that USAA reasonably expected its fraud to be successful and

its misrepresentations to be repeated to the ultimate purchaser, whomever that purchaser might be. See Restatement (Second) of Torts § 533 cmt. g. ("[I]t is not necessary that [the maker of a representation] have any particular person in mind. It is enough that he intends or has reason to expect to have it repeated to a particular class of persons and that the person relying upon it is one of that class.").

Neither party has cited to the Court any case from New Mexico state court -- or from a federal court applying New Mexico law -- regarding liability to third-parties for fraud. The Court's research has also not uncovered any such cases. Nonetheless, USAA has not disagreed with the applicability of the rule articulated in the Restatement (Second) of Torts, nor does the Court see any reason to believe that New Mexico would not adopt this basic principle. Refusing to apply the Restatement's rule on liability to future parties would permit using intermediaries -- including innocent third-parties who could not themselves be held liable -- as conduits for misrepresentation, insulating fraudulent behavior from liability. Because the Court believes that the Supreme Court of New Mexico would follow the Restatement approach, and because there is sufficient evidence satisfying that rule, the Court will deny summary judgment on the fraud claim.

## III. THERE IS SUFFICIENT EVIDENCE FOR THE CIVIL CONSPIRACY CLAIM TO SURVIVE.

While civil conspiracy may not be a separate claim, but rather a collection device designed to hold one party liable for the actions of another party, there is sufficient evidence of a civil conspiracy to let the theory proceed to the jury. In New Mexico, the elements of civil conspiracy are: "(1) the existence of a conspiracy; (2) wrongful act done pursuant to the conspiracy; and (3) resulting damages." Saylor v. Valles ¶ 25, 133 N.M. 432, 439, 63 P.3d 1152, 1159 (Ct. App. 2002). A civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or

to accomplish a lawful purpose by unlawful means." Las Luminarias of the New Mexico Council of the Blind v. Isengard, 92 N.M. 297, 300, 587 P.2d 444, 447 (Ct. App. 1978). USAA argues that Kunz did not know anyone at the Dealerships, much less conspire with anyone. The Plaintiffs counter that the existence of a conspiracy can be inferred from USAA's alleged decision to ignore its policies and to obtain a clean title for the Sierra, allowing USAA and the other Defendants to profit from the Sierra's sale. The Plaintiffs also contend that the "Defendants' joint efforts to obtain a second clean title for the Sierra," which the Plaintiffs maintain involved submitting false documentation to the MVD, could lead a reasonable jury to conclude that a cover-up had occurred, bolstering the Plaintiffs' assertion that the Defendants were involved in a title-washing conspiracy. Response at 22.

The Court does not believe that, standing alone, the Plaintiffs' evidence regarding USAA ignoring its own policies or disregarding New Mexico salvage law in auctioning off the Sierra on a clean title is sufficient evidence of a conspiracy. In particular, the evidence does not demonstrate the existence of an agreement. Without further evidence, a jury could not rationally infer from the auction sale and the Dealerships' subsequent decision to sell the Sierra to the Plaintiffs that there was an agreement or understanding between USAA and the Dealerships to improperly sell the Sierra on a clean title. Rather, in the light most favorable to the Plaintiffs, the evidence could support two separate, individual episodes of misconduct, connected causally, but not necessarily connected because of a common purpose: (i) USAA improperly auctioning off the Sierra on a clean title; and then (ii) the Dealerships taking advantage of the Sierra's clean title to sell the Sierra to the Plaintiffs for an inflated sum.

There is, however, evidence supporting the Plaintiffs' allegations of a cover-up. Unlike the evidence regarding the auction, there are signs of coordination and awareness in the acquisition of

the second title that would support the existence of an agreement. The Dealerships and USAA worked in concert, at least to a degree, in acquiring a second clean title for the Sierra. See, e.g., Garcia Depo. at 92:18-21. There is also evidence that the MVD may not have been given an accurate picture of the Sierra's state of disrepair. See id. at 96:4-21; Inspection Report at 1. Given that both USAA and the Dealerships had physical possession of the Sierra at some point, and thus had access to facts that could indicate the Sierra warranted a salvage title, and given that both USAA and the Dealerships sold the Sierra on a clean title, a reasonable jury could infer an agreement between USAA and the Dealerships to cover-up that the Sierra deserved a salvage title, to protect their selling the Sierra on a clean title. The evidence is not direct, but evidence of a conspiracy will rarely be obvious. Instead, evidence of conspiracy will generally be circumstantial. What is important is that the evidence is not speculative. Here, there is sufficient evidence of concealment, without resort to pure conjecture, to put the issue to a jury.

Moreover, in addition to providing evidence of a conspiracy regarding the second clean title, a reasonable jury finding that a cover-up took place could further infer that there was a conspiracy pre-dating the acquisition of the second clean title. If a jury decided that there was a cover-up, one rational inference from the evidence would be that USAA and the Dealerships both performed similar misdeeds and joined together to bury evidence of their misconduct. Another rational inference, however, would be that the conspiracy to cover-up is indicative of a pre-existing agreement to commit the underlying act. Efforts at concealment can be evidence of a conspiracy. See, e.g., United States v. Gacnik, 50 F.3d 848, 852 (10th Cir. 1995)(noting that, in the criminal context, concealment is not an element of conspiracy, but "the act of concealment may be taken as evidence of a conspiracy"). This additional evidence of a possible cover-up also changes how the earlier evidence could reasonably be viewed. When all the evidence is taken together, a reasonable

jury could determine that USAA decided to sell the Sierra on a clean title, that the Dealerships had an implicit or express agreement with USAA that the Dealerships would buy the Sierra, and that the Dealerships then bought the Sierra at auction so that they could turn around and sell the Sierra again, on a clean title. A reasonable jury might conclude that USAA and the Dealerships then tried to conceal their actions by getting a new clean title directly from the MVD when their plans ran into trouble.[2] That chain of events and logic is sufficient evidence of civil conspiracy to survive summary judgment. The Court will, however, grant summary judgment to the limited extent of conspiracy between USAA and IADSC. At the hearing, Mr. Treinen stated that the Plaintiffs were not asserting conspiracy between USAA and IADSC. See Tr. at 75:20-77:2 (Court & Treinen).

## IV. THE COURT WILL ALLOW THE JOINT ENTERPRISE AND FRAUD BY JOINT ENTERPRISE CLAIMS TO PROCEED.

The Plaintiffs assert two related claims against USAA: (i) for joint enterprise; and (ii) for fraud by joint enterprise. The Plaintiffs and USAA both state that the New Mexico Court of Appeals has described the elements of joint enterprise or joint venture liability:

> [I]n order to constitute a joint adventure there must be a community of interest in the performance of a common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and a duty to share in any losses which may be sustained.

Response at 23 (quoting Cooper v. Curry, 92 N.M. 417, 421, 589 P.2d 201, 205 (Ct. App. 1978))(brackets added by Response); Memorandum at 7-8 (citing Cooper v. Curry). While the Court has some reservations about the cause of action, there is evidence supporting the elements that

---

[2] The Court notes that this evidence of a potential cover-up is the evidence that makes the difference between the Court's grant of summary judgment to IADSC and NMIADA on conspiracy, see Memorandum Opinion and Order at 9-11, entered January 21, 2009 (Doc. 349), and the Court's denial of summary judgment here. The Plaintiffs' evidence does not implicate IADSC or NMIADA in obtaining the second clean title, and it is this evidence of a potential cover-up that creates a genuine issue of material fact about the existence of a conspiracy.

the parties have described to the Court, precluding summary judgment.

The same evidence underlying the civil-conspiracy claim is evidence of a common purpose between USAA and the Dealerships. USAA's efforts to procure a second clean title for the Sierra after having sold the Sierra to the Dealerships provides evidence of a joint interest and right to control. This same evidence also supports the elements of sharing profits and loss. A reasonable jury could conclude that, similar to the civil-conspiracy claim, USAA and the Dealerships together sought to sell the Sierra on a clean title, and thus would each shoulder some of the financial losses or reap some of the financial benefit from such a transaction.

While there is evidence supporting the elements of joint enterprise as the parties have framed the claim, the Court has some reservations. Joint enterprise or joint venture is often considered to be a legal relationship similar to partnership, denoting a certain common purpose between parties. See 46 Am. Jur. 2d Joint Ventures § 4; Restatement (Second) of Torts § 491 cmt. b ("A 'joint enterprise' is in the nature of a partnership, but is a broader and more inclusive term.). In a joint enterprise, each member of the enterprise "is the agent or servant of the others, and . . . the act of any one within the scope of the enterprise is to be charged vicariously against the rest." Restatement (Second) of Torts § 491 cmt. b.

It is possible that joint-enterprise liability is limited to negligence. The Supreme Court of New Mexico stated: "If two or more persons unite in a joint prosecution of a common purpose, under such circumstances that each has the authority to control the means employed to execute such purpose, the negligence of one is chargeable to the other . . . ." Schall v. Mondragon, 74 N.M. 348, 352, 393 P.2d 457, 460 (1964)(internal quotation marks omitted). Moreover, joint-enterprise liability is founded on agency principles. Vicarious liability from agency, with some exceptions, generally does not extend to intentional torts. See Ocana v. American Furniture Co., 135 N.M. 539,

551-52, 91 P.3d 58, 70-71 (2004)(noting general rule that employers usually not liable for employee's intentional torts).[3] The Plaintiffs are pleading a cause of action for fraud by joint enterprise, as well as a more nebulous claim of just "joint enterprise," but do not seem to be pleading negligence.

There is little discussion in New Mexico cases regarding joint-enterprise liability. The Court is concerned, however, that a cause of action for joint enterprise would generally not be available except for imputing liability to others for claims sounding in negligence. To the extent that joint enterprise embraces intentional conduct, the Court is concerned that it simply duplicates a cause of action for civil conspiracy. The Court may well have missed something, however, and the parties have not briefed this issue. The Court here only notes some of its reservations about the uncertain contours of joint enterprise in New Mexico. Because there is sufficient evidence supporting the elements of joint enterprise as both USAA and the Plaintiffs understand the claim, the Court will deny summary judgment.

**IT IS ORDERED** that Defendant USAA's Motion for [] Summary Judgment is granted in part and denied in part. The Court grants summary judgment with respect to the claim regarding a civil conspiracy between Defendant USAA Casualty Insurance Company d/b/a USAA and Defendant and Third-Party Defendant Independent Automobile Dealers' Service Corporation, Ltd., but will otherwise deny the motion.

---

[3] The Court notes that ratification of fraud may be one of those exceptions. See Chavarria v. Fleetwood Retail Corp. ¶ 30, 140 N.M. at 488, 143 P.3d at 727 (holding that corporation was liable for ratifying its employees' fraud).

UNITED STATES DISTRICT JUDGE

*Counsel*:

Rob Treinen
Charles S. Parnall
Feferman & Warren
Albuquerque, New Mexico

*Attorneys for the Plaintiffs*

William F. Davis
Charles R. Hughson
Brett Steinbook
William F. Davis & Assoc., P.C.
Albuquerque, New Mexico

*Attorneys for Defendants Lomas Auto Mall, Inc. and M.D. Lohman d/b/a Lohman Motors*

Judd C. West
Michael Neill
Doughty and West PA
Albuquerque, New Mexico

*Attorneys for Defendant Western Surety Company*

Mark J. Klecan
Klecan & Childress
Albuquerque, New Mexico

-- and --

Charles J. Vigil
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

-- and --

Jeffrey W. McElroy
John Paul Valdez
Ray, Valdez, McChristian & Jeans, PC
El Paso, Texas

-- and --

Robert E. Valdez
Ray, Valdez, McChristian & Jeans, PC
San Antonio, Texas

*Attorneys for Defendant USAA Casualty Insurance Company d/b/a USAA*

Michael L. Danoff
Michael Danoff & Associates, P.C.
Albuquerque, New Mexico

*Attorneys for Third-Party Defendants Independent Automobile Dealers Service Corporation, Ltd. and New Mexico Independent Automobile Dealers Association, Inc.*