IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DELFINO PEDROZA and LILIANA
ANDRADE,

      Plaintiffs,

vs.                                            No. CIV 07-0591 JB/RHS

LOMAS AUTO MALL, INC.; M.D. LOHMAN d/b/a
LOHMAN MOTORS; WESTERN SURETY COMPANY;
and USAA CASUALTY INSURANCE COMPANY d/b/a USAA,

      Defendants.

LOMAS AUTO MALL, INC. and M.D.
LOHMAN d/b/a LOHMAN MOTORS,

      Third Party Plaintiffs,

vs.

INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD. and NEW MEXICO
INDEPENDENT AUTOMOBILE DEALERS'
ASSOCIATION, INC.,

      Third Party Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant USAA's Motion in Limine and Response to Plaintiffs' Notice of Title Washing Evidence and Evidence of 264 "Concealed" Vehicles to be Offered Against USAA, filed May 11, 2009 (Doc. 416). The Court held a hearing on May 12, 2009. The primary issue is whether the Court should exclude from the trial evidence of three alleged instances of Defendant USAA Casualty Insurance Company d/b/a USAA flipping titles on vehicles in Oregon. In its motion in limine, USAA also seeks to exclude evidence concerning 264 vehicles USAA sold through CoPart Auto Auctions in Albuquerque, New Mexico

for which USAA did not produce documents to the Plaintiffs, but during the hearing USAA withdrew this aspect of the motion. Because the Court does not see a basis on which rational jurors could infer that the three title-flipping incidents implicate USAA in any title fraud, the Court will grant the remaining aspect of the motion and exclude those incidents.

## PROCEDURAL BACKGROUND

In an earlier motion in limine, USAA sought to exclude evidence concerning other instances in which USAA procured salvage titles for vehicles, but the Court held that the motion was premature because of the ongoing discovery on those events. See Memorandum Opinion and Order at 10, entered April 2, 2009 (Doc. 395). The Court set out a timeframe for the parties to resolve the issue if possible, with instructions that the issue could be re-raised later if those discussions were not fruitful. See id. After the Court granted an extension of time because of a medical emergency, see Stipulated Order to Extend Deadlines at 1-2, entered April 27, 2009 (Doc. 404), the Plaintiffs filed a notice of the alleged title-washing evidence that they intend to offer at trial, see Plaintiffs' Notice of Title Washing Evidence to be Offered Against USAA, filed April 28, 2009 (Doc. 406)("Notice").

The Plaintiffs state that they will seek to introduce at trial evidence that "USAA sometimes 'flips' wrecked vehicles it sells in New Mexico through Oregon." Notice at 2. Title flipping involves converting a title into the name of a new owner -- in this case from the insured to USAA. According to the Plaintiffs, USAA obtains salvage titles in Oregon for vehicles that an insured in New Mexico owned, and then sells those vehicles through CoPart. See id. at 2. The Plaintiffs say that they have uncovered evidence that at least three of those vehicles had their Oregon salvage brands removed in subsequent New Mexico titles. See id. at 3. Additionally, the Plaintiffs assert that USAA has failed to produce documents for 264 vehicles, that the Plaintiffs should be allowed

to present evidence about those vehicles on the grounds that a jury could conclude that USAA is withholding evidence of title washing, and that they will seek a spoliation instruction. See id. at 3-4 & n.5.

  USAA moves to exclude both sets of evidence. Evidence regarding the title flipping through Oregon, USAA contends, is irrelevant, unfairly prejudicial, and will confuse the jury. USAA argues that all three incidents are irrelevant and distinguishable from the alleged title washing in this case. In each incident, USAA asserts, it obtained a salvage title in Oregon for a vehicle and then sold the vehicle in New Mexico on a salvage title. Only later, USAA contends, did the subsequent owners apply for clean titles, which distinguishes the scenarios from the alleged conduct in this case, in which the Plaintiffs allege that USAA sold a 2005 GMC Sierra on a clean title despite its meriting a salvage title. See Motion in Limine at 2-5. USAA also argues that the only relevance these incidents would have is if the Plaintiffs mischaracterized the evidence and that evidence of possible title washing by others would confuse the jurors in a way no limiting instruction or explanation could cure. See id. at 5-6. Finally, USAA maintains that admitting the evidence would necessitate a series of mini-trials, particularly as some of the documents on which the Plaintiffs rely are not properly authenticated. See id. at 6.

  Regarding the 264 vehicles, USAA argues that it initially identified 2,783 vehicles as responsive to the Court's discovery order, but that the correct number is 2,519, and that the documents for these vehicles were produced. See id. at 6-7. According to USAA, the 264-vehicle discrepancy is the result of erroneous filtering when CoPart searched its databases, because the search failed to account for vehicles that were sold on New Mexico titles but which were sold outside of New Mexico. See id. at 7. USAA contends that it is not withholding evidence, that no spoliation jury instruction is appropriate, and that it "will agree to produce the data for the vehicles

which were inadvertently included in USAA's original 2,783 calculation." Id. at 8.

At the hearing, the Court asked the Plaintiffs why USAA would get salvage titles in Oregon at all if USAA wanted to sell wrecked vehicles on clean titles. See Transcript of Hearing at 57:1-6 (Court)(taken May 12, 2009)("Tr.").[1]  Rob Treinen, the Plaintiffs' attorney, stated that he believed that USAA was acting like a fence, providing cover for title washing. See id. at 57:12-21 (Treinen). Mr. Treinen explained that what he thought happens is that USAA removes itself from the chain of title through a salvage title in Oregon and then allows the car to be sold in New Mexico under a clean New Mexico title -- a practice sometimes called title skipping. See id. at 58:3-20 (Treinen & Court).  Mr. Treinen contended that USAA's policies required that vehicles sold in New Mexico should be titled in New Mexico and not out-of-state. See id. at 57:12-17 (Treinen). Mr. Treinen contended that the incidents were similar to this case, because the Sierra originally bore a salvage title as well and because USAA employee Sharon Kunz was involved in all four incidents, and that this evidence would help show a pattern and practice and thus be relevant for fraudulent intent and for punitive damages. See id. at 58:22-60:4 (Treinen & Court).

Charles Vigil, USAA's counsel, contended that the facts in this case were distinguishable because the salvage title the Sierra originally had was a mistake and was removed before USAA sold the Sierra, and not after the Sierra was sold. See id. at 60:17-61:11 (Vigil & Court). Mr. Vigil also contended that the Plaintiffs had no evidence, only speculation, to link USAA to the subsequent clean titles on the three vehicles. See id. at 62:5-9 (Vigil). Mr. Vigil requested that USAA be allowed to conduct some discovery on the issue if the Court allowed the evidence to be presented. See id. at 65:14-20 (Vigil & Court).  Robert Valdez, USAA's co-counsel, withdrew the part of the

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain different page and/or line numbers.

motion in limine dealing with the 264 vehicles because USAA, contrary to its offer in the motion, would not be physically able to produce the relevant documents before trial.  See id. at 73:17-23 (Valdez), 74:16-75:10 (Valdez & Court).

## ANALYSIS

With USAA's withdrawal of part of its motion during the hearing, the only issue before the Court is whether to exclude evidence of the three alleged title-flipping or title-skipping incidents. Based upon the information provided to the Court, the Court does not believe that the three incidents are relevant.  Although Mr. Treinen argues that USAA is engaging in title-skipping by procuring out-of-state titles for vehicles from New Mexico, enabling them to be sold on clean New Mexico titles, the documents submitted to the Court do not support this possibility without something more. USAA sold the vehicles on salvage titles and there is little more than speculation to support USAA having any involvement with any later efforts to acquire clean titles.  The primary question for determining relevance here is whether the three incidents make it more likely that USAA committed fraud in this case than it would be without the evidence.  Based upon what the Court has been provided, the evidence would not make it more likely that USAA was committing some sort of fraud here.

Documentation on each of the incidents reveals that USAA sold the vehicles in question on a salvage title. The 1995 Honda Accord was sold to 56976 Carmanny on a salvage title. See Exhibit B to Notice, Final Invoice: Copart Lot #4739396 at 1 (dated June 20, 2006)(noting salvage tile)("Carmanny Invoice").[2] The 1997 Subaru was sold to Mr. P's Sales on a salvage title. See Exhibit B to Notice, Final Invoice: Copart Lot #13281866 at 1 (dated July 28, 2006)(noting

---

[2] Neither party has provided the Court with a copy of the back of this salvage title, which is where the title indicates the buyer.

salvage title); Exhibit C to Notice, Oregon Salvage Title No. 0612585310 (naming USAA as seller and Mr. P's Sales as buyer). The 2000 Toyota was sold to El Gigante Sales on a salvage title. See Exhibit B to Notice, Final Invoice: Copart Lot #4075266 at 1 (dated May 8, 2007)(noting salvage title)("El Gigante Invoice"); Exhibit C to Notice, Oregon Salvage Title No. 0709986306 (naming USAA as seller and El Gigante as buyer).

With USAA selling the vehicles on a salvage title, it is difficult to see how USAA's actions amount to or help further title skipping or some other form of title washing or title fraud. USAA appears in the chain of title. USAA did not obtain a salvage title in one state and then sell a vehicle in a different state on a separate clean title. While documentation reveals what appears to be subsequent owners with clean titles or applying for clean titles, there is nothing to link USAA to these activities. Without some link that would tend to show USAA engaging in improper or fraudulent conduct, the Court cannot see the evidence as being relevant.

On one of the vehicles, the 1995 Honda, the Oregon salvage title is mentioned in the clean New Mexico title as being the previous title. Compare Exhibit C to Notice, Oregon Salvage Title No. 061389618, with Exhibit D to Notice, New Mexico Title for 1995 Honda (stating previous title was number 061389618 from Oregon). This title, listing the Oregon title as the previous title, was transferred from the owner -- not Carmanny, the buyer from USAA, but some subsequent owner -- to a new buyer on December 15, 2008. See id. USAA sold the Honda to Carmanny on June 15, 2006. See Carmanny Invoice at 2. On the 2000 Toyota, a new owner, not El Gigante Sales, applied for a New Mexico title, but listed the Oregon title, number 0709986306, as the previous title. See Exhibit D to Notice, New Mexico Title Application (dated June 21, 2007). The application is dated June 21, 2007, while the sale from USAA to El Gigante Sales took place on July 28, 2006. See El Gigante Invoice at 2. Given that the Oregon salvage titles are disclosed on these later titles or

applications, it is difficult to see these two incidents as being relevant to the Plaintiffs' theory.

More support for the Plaintiffs' version of events can be found in the documents concerning the 1997 Subaru, although there is still an absence of any clear link to USAA. The New Mexico title for the Subaru mentions a New Mexico title as the previous title and lists Mr. P's Sales as the owner and seller of the Subaru, with the transfer to a new owner occurring August 28, 2006. See Exhibit D to Notice, New Mexico Title for 1997 Subaru. USAA sold the Subaru to Mr. P's Sales on July 28, 2006 with an Oregon salvage title. This discrepancy, particularly coming so quickly after the sale from USAA, is suspicious. Nevertheless, the Court has difficulty seeing how this suspicion implicates USAA rather than Mr. P's Sales.

Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. One such fact in this case is whether USAA acted with any fraudulent intent. The Court fails to see what it is about any of the three incidents that would make it more likely that USAA acted with a fraudulent intent in this case. The incidents show USAA deliberately acquiring salvage titles and then selling vehicles on those titles. The Plaintiffs have failed to demonstrate what it is about this conduct that makes it more likely that USAA's behavior in this case is an example of intentional fraud. Tied in with this issue is the lack of similarity between the Oregon title situations and this case. Here, USAA allegedly defrauded the Plaintiffs because it sold a vehicle meriting a salvage title on a clean title. In the Oregon incidents, USAA sold vehicles on a salvage title. The differences between the Oregon incidents and the case here are too significant. For similar reasons, the Oregon incidents are not relevant to punitive damages. The incidents are too dissimilar from the allegations in this case and also fail to show USAA participating in or contributing to any potentially fraudulent conduct.

The Plaintiffs' only argument is that down the road these vehicles appear to have clean titles and that Kunz was involved in all three incidents and this case as well. USAA, however, sold the titles on salvage titles, so something more must be shown to demonstrate how USAA has helped contribute to title fraud. Perhaps the out-of-state titles make it easier for buyers downstream to commit title fraud. Absent direct evidence, however, to implicate USAA would require something from which at least an inference of culpability would be possible, such as excessive payment amounts for the vehicles USAA sold. Unusually high volumes of salvage vehicles later bearing clean titles might also allow for such an inference. Here, however, there are only three vehicles. And given the disclosure of the Oregon titles on two, it would be more accurate to say one vehicle. Either figure standing alone does not give rise to an inference of fraud, and there is nothing to indicate that one or even three such vehicles would be unusual given the sample size. Kunz' involvement as a common factor also is not sufficient to create relevance. From what the Court has seen in this case, she was involved in many title decisions for USAA in Albuquerque. Having her name on the invoices does not establish relevancy without something more. The Court does not see a sufficient foundation from which an inference that these three incidents implicate in USAA in title washing can be drawn. The incidents are thus not relevant, and the Court will exclude them from trial.

**IT IS ORDERED** that Defendant USAA's Motion in Limine and Response to Plaintiffs' Notice of Title Washing Evidence and Evidence of 264 "Concealed" Vehicles to be Offered Against USAA is granted to the extent it has not been withdrawn.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Richard N. Feferman
Rob Treinen
Charles S. Parnall
Feferman & Warren
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

William F. Davis
Charles R. Hughson
Brett Steinbook
William F. Davis & Assoc., P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants and Third Party Plaintiffs*
      *Lomas Auto Mall, Inc. and M.D. Lohman d/b/a Lohman Motors*

Judd C. West
Michael Neill
Doughty and West, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant Western Surety Company*

Mark J. Klecan
Klecan & Childress
Albuquerque, New Mexico

-- and –

Charles J. Vigil
Leslie McCarthy Apodaca
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

-- and --

Jeffrey W. McElroy
John Paul Valdez
Ray, Valdez, McChristian & Jeans, P.C.
El Paso, Texas

-- and --

-9-

Robert E. Valdez
Lynn Rada
Ray, Valdez, McChristian & Jeans, P.C.
San Antonio, Texas

> *Attorneys for Defendant USAA Casualty Insurance Company
>   d/b/a USAA*

Michael L. Danoff
Michael L. Danoff & Associates, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendant and Third-Party Defendant Independent Automobile
>   Dealers Service Corporation, Ltd. and Third-Party Defendant New Mexico
>   Independent Automobile Dealers Association, Inc.*