# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DELFINO PEDROZA and LILIANA
ANDRADE,

       Plaintiffs,

vs.                                                            No. CIV 07-0591 JB/RHS

LOMAS AUTO MALL, INC.; M.D. LOHMAN, d/b/a
LOHMAN MOTORS; WESTERN SURETY COMPANY;
USAA CASUALTY INSURANCE COMPANY d/b/a USAA;
INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD.

       Defendants.

LOMAS AUTO MALL, INC. and M.D.
LOHMAN d/b/a LOHMAN MOTORS,

       Counterclaimants,

vs.

DELFINO PEDROZA and LILANA
ANDRADE,

       Counter-Defendants.

LOMAS AUTO MALL, INC. and M.D.
LOHMAN d/b/a LOHMAN MOTORS,

       Cross-Claimants,

vs.

USAA CASUALTY INSURANCE COMPANY d/b/a USAA,

       Cross-Claim Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant USAA's Motion for Reconsideration of Plaintiffs' Motion for Partial Summary Judgment on Their UPA Claim and for Reconsideration of USAA's Motion to Withdraw Admission, filed April 13, 2009 (Doc. 399).  The Court held a hearing on May 12, 2009.  The primary issues are: (i) whether the Court should reverse its decision not to allow Defendant USAA Casualty Insurance Company d/b/a USAA to withdraw an admission; and (ii) whether the Court should reverse its grant of summary judgment in favor of the Plaintiffs, in which the Court determined that the 2005 GMC Sierra at the center of this case warranted a salvage title and that USAA violated the New Mexico Unfair Trade Practices Act ("UPA") when it obtained a clean title for the Sierra.  Because the Court believes that allowing USAA to withdraw its admission at this stage of proceedings -- on the eve of trial, after USAA had previously agreed not to withdraw the admission, in a case in which it has long been assumed that USAA considered the Sierra uneconomical to repair -- would cause the Plaintiffs substantial prejudice, the Court will not allow USAA to withdraw its admission.  Moreover, because the Court believes that the admission establishes that USAA considered the Sierra uneconomical to repair, the Court will not reverse its grant of summary judgment for the Plaintiffs.  Thus, while the Court will revisit these issues, the Court will not alter any of its previous rulings.

## PROCEDURAL BACKGROUND

The procedural history relevant to the present motion is rather long and tangled.  This history, however, is the central issue to the Court's ruling, so the Court will therefore explain that history in detail.  Because the Court views the February 4, 2009 hearing as a highly significant occurrence, the Court will separate events into those occurring before the hearing, the hearing itself, and events after the hearing.

1.      <u>**Events From Before the February 4, 2009 Hearing**</u>.

One central element of this motion is an admission USAA made.  But even before USAA made that admission, USAA's Answer to the First Amended Complaint also admitted that USAA considered the Sierra uneconomical to repair and that it did not repair the Sierra.  <u>See</u> First Amended Complaint for Damages and for Declaratory Relief and Jury Demand ¶ 16, at 4, filed February 4, 2008 (Doc. 91)("FAC")(alleging that "USAA determined that the Sierra was uneconomical to repair and did not repair the Sierra . . ."); Answer to First Amended Complaint for Damages and for Declaratory Relief ¶ 5, at 2, filed March 7, 2008 (Doc. 130)("First Answer")(admitting same).  Later, although it is not clear on what date, the Plaintiffs sent USAA a Request for Admission, stating: "Before the sale of the Sierra to Lohman Motors, USAA had decided that the Sierra was uneconomical to repair."  Exhibit E to Plaintiffs' Opposition Brief to Dealerships' Motion for Partial Summary Judgment on Salvage and Title Washing Claims, Request for Admission ¶ 8, at 2 (Doc. 201-6)("Admission No. 8").  USAA admitted the statement.  <u>See</u> <u>id.</u>

Relatively early on in this case, the Plaintiffs were arguing that USAA's admission meant that USAA had determined that the Sierra was uneconomical to repair under New Mexico law.  During a hearing in July 8, 2008 concerning a motion to amend, Rob Treinen, the Plaintiffs' attorney, contended that "USAA has admitted that [the Sierra] was uneconomical to repair," Transcript of Hearing at 31:10-11 (Treinen)(taken July 8, 2008)("July 8, 2008 Hearing"),[1] and that this admission meant that USAA was admitting that the Sierra merited a salvage title, <u>see</u> <u>id.</u> at 31:7-12.  This hearing was also the first hearing at which the meaning of "considers it uneconomical to repair" was an issue.  Defendants Lomas Auto Mall, Inc. and M.D. Lohman d/b/a Lohman Motors

---

[1] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain different page and/or line numbers.

(collectively, "the Dealerships") opposed the Plaintiffs' motion to amend on the grounds that amendment was futile because only when the cost to repair a vehicle equals or exceeds the vehicle's fair market value did the vehicle fall within the "considers it uneconomical to repair" language in N.M.S.A. 1978 §66-1-4.16(C)(1), the statute governing when vehicles require salvage titles.  The Court indicated that it was inclined to disagree with this one-hundred percent rule because the Court thought the regulations on which the interpretation was based were not consistent with the statute. See July 28 Hearing at 42:24-43:2 (Court).  The Court granted the Plaintiffs leave to file a Second Amended Complaint.  See July 28 Hearing at 50:20-24 (Court).  When the Plaintiffs filed their Second Amended Complaint, it contained a paragraph identical to the paragraph USAA admitted in the First Amended Complaint.  Compare FAC ¶ 16, at 4, with Second Amended Complaint for Damages and for Declaratory Relief and Jury Demand ¶ 18, at 4, filed July 9, 2008 (Doc. 193). Despite its earlier answer, USAA denied determining that the Sierra was uneconomical to repair, although it continued to admit that it did not repair the Sierra.  See Answer to Second Amended Complaint for Damages and for Declaratory Relief and Jury Demand, filed August 18, 2008 ¶ 12, at 3 (Doc. 237)("Second Answer")(admitting that USAA "did not repair the Sierra," but denying remainder of paragraph 18 of the Second Amended Complaint).

Immediately before the July 8, 2008 hearing, the Dealerships had filed a motion for summary judgment also premised on their theory that New Mexico salvage law espoused a one-hundred percent rule.  See Motion for Partial Summary Judgment on Salvage and Title Washing Claims, filed July 7, 2008 (Doc. 189). On September 8, 2008, discovery formally closed, although various aspects of discovery remained ongoing.   On September 10, 2008, the Court held a hearing on the Dealerships' motion.  The Court indicated that it was still inclined to believe that the one-hundred percent rule was inconsistent with the statutory language. See Transcript of Hearing at 38:25-39:15

-4-

(Court)(taken September 10, 2008).

In October 2008, the Plaintiffs filed a motion for summary judgment.  See Plaintiffs' Motion for Partial Summary Judgment, filed October 14, 2008 (Doc. 276)("UPA Motion").  In their motion, the Plaintiffs asked that the Court grant them summary judgment on two issues: (i) that the Sierra merited a salvage title; and (ii) that the USAA's obtaining a clean title for the Sierra was a violation of the UPA.  See UPA Motion at 3.  Part of the evidence the Plaintiffs asserted in support of their motion was Admission No. 8 and USAA's Answers to the Complaint.  See UPA Motion ¶ 3, at 4. The paragraph setting this assertion forth read, in its entirety:

> USAA considered the Sierra to be uneconomical to repair and did not repair it. *See* Docket No. 130, USAA's answer to first amended complaint, ¶ 5 (admitting ¶¶ 16 and 18 of the first amended complaint, *see*, Docket No. 91); Docket No. 201, brief, Exhibit E, USAA's discovery responses, response to Request for Admission No. 8; Docket No. 237, USAA's answer to second amended complaint, ¶ 12.

See UPA Motion ¶ 3, at 4.

Mark Klecan, USAA's initial lead counsel, filed a response for USAA. This response did not contest the Plaintiffs' asserting as an undisputed fact that USAA considered the vehicle uneconomical to repair.  See Response to Plaintiffs' Motion for Partial Summary Judgment at 6-8, filed November 10, 2008 (Doc. 310)("UPA Response")(specifically contesting several of the Plaintiffs' factual assertions, but not the paragraph stating that USAA considered the Sierra uneconomical to repair).  Instead, USAA briefly argued that, reading N.M.S.A. 1978 §66-1-4.16C in conjunction with the New Mexico regulations, the Sierra did not warrant a salvage title under the governing standards, and that any misrepresentation was innocent and not knowingly made.  See UPA Response at 8-12.

On November 17, 2008, the first new counsel for USAA, Jeffrey McElroy of Ray, Valdez, McChristian & Jean, PC, entered his appearance.  See Entry of Appearance (Doc. 12).  On January

16, 2009, Charles Vigil, the first new counsel from Rodey, Dickason, Sloan, Akin & Robb, P.A., the other new law firm representing USAA, entered his appearance.  <u>See</u> Entry of Appearance (Doc. 341).  Although USAA has new firms representing it, Mr. Klecan, USAA's initial attorney, remains on the case.

On December 17, 2008, the Court held a hearing on the UPA Motion.  The Court explained that its understanding of the case was that, until the briefing on the UPA Motion, it "was a given in this case, that USAA did make a determination it was uneconomical to repair," and the Court therefore "thought the issue was whether that had any sort of legal effect, which I've determined it [does]."  Transcript of Hearing at 47:17-20 (Court)(taken December 17, 2008).  The Court stated it was inclined to grant the motion.  <u>See</u> <u>id.</u> at 46:20-47:24.

On January 20, 2009, the Court issued a written opinion on the Dealerships' motion for summary judgment, which embodied the same views the Court had indicated in earlier hearings it was inclined to adopt.  Construing N.M.S.A. 1978 § 66-1-4.16C, the Court found that the phrase "considers it uneconomical to repair" means that "a vehicle must bear a salvage title when an insurer, or other relevant actor as appropriate, determines that it would be economically wasteful to repair a vehicle that has been 'wrecked, destroyed, or damaged . . . .'"  Memorandum Opinion and Order at 44, entered January 20, 2009 (Doc. 344)(quoting N.M.S.A. 1978 § 66-1-4.16C).  At the time the Court issued this opinion, several other motions were pending, including the UPA Motion.

One day after the Court issued its opinion interpreting New Mexico salvage law, USAA moved for supplemental briefing on the UPA Motion.  USAA requested that, in light of the Court's ruling, the parties be allowed to submit additional briefing now that the law had been determined. <u>See</u> Defendant USAA's Expedited Motion for Supplemental Briefing on Plaintiff's Motion for Partial Summary Judgment ¶ 7, at 3, filed January 21, 2009 (Doc. 345).  USAA indicated that, in

particular, it wanted to show that a factual question existed regarding whether it determined that the Sierra was uneconomical to repair.  See id. ¶ 9, at 3.

Shortly after its motion for additional briefing, USAA filed a separate motion seeking to withdraw its Admission No. 8.  USAA argued that the admission was erroneous because it did not believe that the Sierra warranted a salvage title and that its admission was based on a good-faith but ultimately incorrect interpretation of New Mexico law.  See Defendant USAA's Motion to Withdraw Admission No. 8 and Supporting Memorandum Brief at 3-4, filed January 23, 2009 (Doc. 352).  The Plaintiffs opposed the motion and noted that the motion came over five months after the close of discovery and one month before -- at the time -- the date for trial.  See Plaintiffs' Opposition to USAA's Motion to Withdraw Admission No. 8 at 1, filed January 26, 2009 (Doc. 353).

Five days after USAA's motion, the Court entered its opinion on the UPA Motion.  The Court granted the Plaintiffs' motion, finding that the Sierra warranted a salvage title and that USAA violated the UPA by seeking a clean title for the Sierra.  See Memorandum Opinion and Order at 7-8, 15, entered January 28, 2009 (Doc. 356)("UPA MOO").  In particular, the Court determined that it was undisputed that USAA had considered the Sierra uneconomical to repair, based upon Admission  No. 8 and USAA's failure to dispute the Plaintiffs' statement of undisputed material facts on the issue in its UPA Response.  See UPA MOO at 7.

A few days later, USAA filed a motion to continue the trial setting.  USAA contended that Sharon Kunz, its corporate representative and principal witness, had been diagnosed with cancer and required immediate treatment, making her unavailable for a trial in February.  See Defendant USAA Casualty Insurance Company d/b/a USAA's Motion for Continuance of Trial Date Due to Grave Illness of Principal Witness and Brief in Support ¶¶ 6-7, at 3-4, filed February 3, 2009 (Doc. 364).  Thus, when the Court held a hearing on February 4, 2009: (i) the Court had ruled on the meaning

-7-

of the phrase "considers it uneconomical to repair" and had, based upon Admission No. 8 establishing that USAA considered the Sierra uneconomical to repair, ruled that the Sierra warranted a salvage title and USAA's procuring a clean title violated the UPA; (ii) USAA's new counsel had entered their appearances; and (iii) there were pending motions for supplemental briefing on the UPA Motion, to withdraw Admission No. 8, and to continue the trial.

## 2.    The February 4, 2009 Hearing.

On February 4, 2009, the Court held a hearing on USAA's motion to withdraw Admission No. 8.  The Court began the hearing by proposing a solution:

> Let's take up USAA's motion to withdraw admission number 8.
>
> * * * *
>
> Let me see if I can work out something that maybe doesn't require everybody to withdraw . . . this admission.
>
> . . . Let [m]e say these things a[nd] then I'll certainly hear what  anybody wants to say on this motion.
>
> It seems to me that USAA has known for a long time this request for admission number 8 and its response was out there and that it wasn't an error.  And I don't think anybody . . . treated it as an error or thought it was an error.
>
> What I think USAA did early in this case was be very frank that within the company . . . it had made a decision at one point that it was not economical to repair the vehicle.  I don't think that probably at the time that it answered the RFA that it was thinking in technical terms of the statute and how it was . . . going to construe it or even [was] thinking in those terms.
>
> So it seems to me that if I am correct in the way I sort of see how this case has evolved, . . . there's no harm to USAA to still have the admission to . . . RFA number 8.  If we all understand going in[to] the trial that it had this meaning when USAA answered the interrogatory . . . [,] [a]nd if we have an agreement that it will still [have] that meaning [at trial], then it seems to me that we don't have to reach the point [of deciding whether USAA admitted] the way I construed the statute . . . .
>
> And so I'm wondering if rather than having you withdraw the admission and creating problems that that may create at this point, could we just have an agreement that it

-8-

means . . . simply and impractical[ly] uneconomical to repair . . . .

. . . Mr. Treinen . . . it doesn't seem to me that hurts you because [of] the way I've construed the statue . . . . [A]s long as they're not admitting that it's uneconomical under the regs . . . or under the statute, but it's this practical [decision it made], then we all [can] use the RFA in that way.

. . . I think we know what USAA was trying to say [--] that it had practically decided it was uneconomical to repair and yet it had the other legal argument all along, that the statute required it to be a hundred percent. And I think those are two different issues. I'm wondering if we could just have an agreement on that rather than the withdrawal. But, Mr. Valdez, it's your motion[,] [i]f you wish to speak [in] support of it.

Transcript of Hearing at 6:4-8:9 (Court)(taken February 4, 2009)("February 4, 2009 Hearing"). Mr.

Valdez, representing USAA at the hearing, said:

Your Honor, let me first say that in substance I think the Court has got a good idea there. From a legal perspective, I want to be able to demonstrate with my witness when they are asked, does USAA consider this uneconomical to repair, that they have the opportunity to explain what they meant by uneconomical to repair, that it wasn't the legal definition of the term.

THE COURT: You weren't . . . agreeing -- when you were doing that, you weren't . . . making a decision that it was uneconomical to repair in the way I've interpreted the statute[,] right[?]

MR. VALDEZ: That's absolutely correct.

THE COURT: That's all you want to avoid.

MR. VALDEZ: That's all I want to avoid, Your Honor, and I think that your . . . splitting the baby so to speak, suggestion is a good one. I just need to be able to present my witnesses in such a fashion that if they are impeached or attempt impeachment with that request for admission, that I'm not foreclosed but saying, all right, madam witness, what did you understand by that language when you were making this determination? If I'm free to do that, Your Honor, I have no problem with the Court's . . . proposal.

Id. at 8:11-9:8.

The Court then asked some questions of Mr. Klecan, who had been USAA's primary counsel

when the admissions were made:

Mr. Klecan, . . . when you signed or admitted this RFA number 8, what was your thinking?  What were you thinking that you were admitting?

MR. KLECAN: I would say the distinction was not being drawn between the vehicle being declared a total loss for customer service, customer relations purposes and the vehicle being uneconomical to repair in terms of the dollar and cents of repairs versus fair market value of the vehicle.  So I think the mistake on my part was not recognizing that distinction between the fact that USAA had declared the vehicle a total loss for purposes of allowing the insured to receive compensation for the full value of the vehicle and then the comparison of that decision to what the repair costs were versus the market value.  But I agree with the second part of the Court's analysis, that it was not being admitted in connection with or in consideration of the statute or regs in terms of the legal ramifications.

THE COURT: . . .  I want to ask you about whether you thought it was a mistake . . . , but just as simply as you can, when you admitted that it was uneconomical to repair, what did you think you meant by that statement?

[MR. KLECAN]: [T]hat USAA had declared the vehicle a total loss.

THE COURT: Total loss?  Okay.  And nothing more about that? . . .  [Y]ou just thought it was a total loss.

MR. KLECAN: That's my recollection of how the RFA was answered.

THE COURT: Okay.  Did you at any point when you were sort of the lead attorney on this case thin[k] that . . . was a mistake or did you always know that you were kind of going [on] parallel tracks here; you had this admission, which was a total loss, with the fact that you were maintaining the position [that] the regs required a hundred percent – or the regs required a hundred percent and therefore the statute required a hundred percent?

MR. KLECAN:  I think in retrospect I would consider it an error in the way the RFA was initially responded to by . . . with that distinction not being drawn [between] declaration of total loss versus the economical to repair issue.  So from my perspective I think in retrospect . . . it was erroneous to admit the RFA without qualification . . . .

THE COURT: . . . [Y]ou now think that it may have been error to do that.  Did you ever thin[k] it was error during the time that you were lead attorney[?]

MR. KLECAN:  Yes.  Yes.  By the time we got to discovery and answering [the] amended Complaint and [the] Sharon Kunz deposition and [D]en[ise] [S]haver's deposition, it became apparent to me that the parties were looking at that request from different perspectives, and so the USAA witnesses in their  testimony and in

-10-

subsequent responsive pleadings gave the explanation of what they meant by or what the factors were that l[ed to] the declaration of total loss . . . .

THE COURT:  Okay.  And why did you not then attempt to withdraw that admission during the time that you were lead counsel?

> MR. KLECAN:  I don't have a good explanation for that  other than the testimony of the witnesses seemed to be explanatory of the basis for the decision.  So as Mr. Valdez was addressing, I guess I was envisioning that in [the] subpoenaing of the RFA response, that witnesses would be given an opportunity to explain an admission and have that opportunity been given I didn't feel it was all that critical.

February 4, 2009 Hearing at 10:3-12:18.  Mr. Valdez described some of the witnesses' deposition

testimony and then stated:

> So when we're admitting that it's uneconomical to repair, if the court wants to approach it in the way it suggested, my position would be, that is fine as long as I have the ability to call on these witnesses and have them explain their lay interpretation and what their mental process was when they were determining this a total loss and uneconomical to repair.

Id. at 15:9-15.  None of the other parties had any problem with the Court's proposal.  In particular,

Mr. Treinen stated:

> Your Honor, [P]laintiffs wouldn't have a problem with that as long as it's understood that both sides would be able to [present] their full argument about that point.  So USAA could say, we did admit that it was uneconomical to repair, but here's what we meant, we meant something different than the words say.  But we could also say that.

Id. at 17:21-18:1.  The Court summed up the result of the agreements:

> I think what Mr. Valdez was saying and correct me if I'm wrong -- is that I issue some opinion . . . saying I'm denying this motion without prejudice to . . . USAA . . . explaining what they meant when they signed [the admission] and then the [P]laintiffs not be precluded from arguing that in fact they meant something else.

Id. at 19:10-17.  Mr. Treinen and Mr. Valdez agreed.  Mr. Valdez said: "[It is] as you explained it,

Your Honor."  Id. at 19:23-24.  The Court then concluded: "All right. So I will deny the motion

without prejudice to USAA at a trial explaining what it meant when it signed that, and that will also

-11-

not preclude the plaintiffs from arguing that, in fact, it meant something else, but we'll leave the RFA in place."  February 4, 2009 Hearing at 20:5-8.  The Court also denied the motion for supplemental briefing without prejudice, explaining that the issues USAA mentioned in its motion were not issues with which the Court was having any problem and that the Court therefore thought it was better for the resolution of the case to issue the opinion rather than wait for more briefing. See id. at 5:9-25.  The Court stated that it would make more sense for USAA to file a motion to reconsider, if it wished, with the opinion now in place and the parties could go through normal briefing rather than having all the parties filing supplemental responses at the same time.  See id.

      **3.**    **Events After the February 4, 2009 Hearing.**

Following the February 4, 2009 hearing, the Court entered a pair of orders memorializing its rulings at the hearing.  In denying USAA's motion for supplemental briefing, the Court said:

> As the Court stated at the hearing, because the Court has ruled on the motion for partial summary judgment, the Court will deny the motion to supplement the briefing on that motion, but will allow USAA to file a motion to reconsider if it continues to disagree with the Court's decision.

Order at 1-2, entered February 5, 2009 (Doc. 368).  In denying USAA's motion to withdraw Admission No. 8, the Court explained:

> [T]he Court will deny the motion without prejudice to USAA explaining at trial how it understood its actions with respect to the treatment of the Sierra claim, how it understood the meaning of the phrase "uneconomical to repair," and what it understood its response to Request for Admission No. 8 to entail. The admission itself, however, will remain in place.

Order at 1-2, entered February 5, 2009 (Doc. 369).

A week after the February 4, 2009 hearing, the Court held a hearing to receive updates about USAA's motion to continue the trial.  At the hearing, the Court continued the trial until May 19, 2009.  See Transcript of Hearing at 13:12-18 (Court)(taken February 11, 2009).  At the February 11,

-12-

2009 hearing, the parties also discussed the Court's ruling denying USAA's motion to withdraw Admission No. 8 while allowing USAA to explain what Kunz "meant by uneconomical to repair." February 11, 2009 Hearing at 12:23-24 (Valdez). Mr. Valdez expressed his concerns that Mr. Treinen would seek to limit any new corporate representative -- should Kunz not be the representative at trial -- to only being able to explain what USAA meant by uneconomical to repair to what was explained in Kunz' deposition testimony. See id. at 12:17-13:11 (Valdez). The Court stated it had already ruled on the issue, that any new corporate representative would be allowed to contradict Kunz, and that the Plaintiffs' could use Kunz' deposition to impeach a new representative. See id. at 14:21-25 (Court). No other relevant activity took place in the case until over two months later when USAA filed its motion to reconsider.

USAA now requests that the Court reconsider its rulings in the UPA opinion that the Sierra warranted a salvage title and that USAA violated the UPA, as well as its decision not to allow USAA to withdraw Admission No. 8. USAA contends that the admission was a mistake, that the record demonstrates that USAA did not consider the Sierra uneconomical to repair, and that, at a minimum, there is a disputed factual issue on this subject. See Motion at 8-19. As an alternative, USAA asks that the Court, if it is unconvinced after the trial, rule with a directed verdict rather than on summary judgment. In their Response, the Plaintiffs stress what they see as USAA changing course after losing on the law and the prejudice granting USAA's motion would cause to the Plaintiffs. See Plaintiffs' Opposition to USAA's Motion for Reconsideration of Plaintiffs' Motion for Partial Summary Judgment on Their UPA Claim and for Reconsideration of USAA's Motion to Withdraw Admission at 1-15, filed May 4, 2009 (Doc. 407)("Response"). In Reply, USAA emphasizes that, in its view, the only prejudice that could result would be if the Court denied its motion. See USAA's Reply in Support of its Motion for Reconsideration of Plaintiffs' Motion for

Partial Summary Judgment on Their UPA Claim and for Reconsideration of USAA's Motion to Withdraw Admission at 1-7, filed May 8, 2009 (Doc. 412)("Reply").

The Court held a hearing on the present motion on May 12, 2009. At the hearing, the Court focused on an issue that was not addressed in the briefing: whether it made a difference under New Mexico law if USAA's reasons for not repairing the Sierra were related to customer service. Mr. Vigil took the position that USAA did not consider the Sierra uneconomical to repair and that its customer-service decision was a distinct from whether it was economical to repair the Sierra. See Transcript of Hearing at 5:12-17 (Vigil)(taken May 12, 2009)("May 12, 2009 Hearing"). Mr. Vigil also contended that the request to withdraw Admission No. 8 and to have the Court reconsider its UPA opinion were not intertwined, and that the Court could grant the reconsideration on the UPA issue without granting the request for withdrawal. See May 12, 2009 Hearing at 11:5-11. Mr. Valdez stated that he believed that at the February 4, 2009 hearing the Court's determination was without prejudice to re-raising whether to withdraw the admission and that he would not have agreed with the Court's resolution otherwise. See id. at 18:18-19:3 (Court & Valdez).

Mr. Treinen argued that a customer-relations decision would be an economic decision. See id. at 29:25-30:4 (Treinen). Mr. Treinen contended that the Plaintiffs would have to undertake significant discovery if the admission were withdrawn, because they had not focused on the issue because of the admission and because of Kunz agreeing that USAA determined the Sierra was uneconomical to repair. He maintained that the Plaintiffs had not explored how the determination was made or deposed other USAA employees involved in the process. See id. at 35:1-23.

## LAW REGARDING MOTIONS TO RECONSIDER

Motions to reconsider that are not specifically authorized under the Federal Rules of Civil Procedure fall into three categories: (i) a motion to reconsider filed within ten days of the entry of

judgment is treated as a motion to alter or amend the judgment under rule 59(e); (ii) a motion to reconsider filed more than ten days after judgment is considered a motion for relief from judgment under rule 60(b); and (iii) a motion to reconsider any order that is not final is a general motion directed at the Court's inherent power to reopen any interlocutory matter in its discretion.  See Price v. Philpot, 420 F.3d 1158, 1167 & n.9 (10th Cir. 2005).  Rule 59(e) motions may be granted if there has been an intervening change in controlling law, new evidence is available, or there is a need to correct clear error or prevent manifest injustice, and only if they are filed no later than ten days after entry of the judgment.  See Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000); Chaara v. Intel Corp., 2006 WL 4060670 at *3 (D.N.M.)(Browning, J.).  Rule 60(b) motions must fit within one of the enumerated categories listed in that rule.  See Thompson v. THI of New Mexico at Casa Arena, 2008 WL 5999653 at *12 (D.N.M.)(Browning, J.).  In contrast to these more limited forms of reconsideration for final orders and judgments, "district courts generally remain free to reconsider their earlier interlocutory orders."  Been v. O.K. Industries, Inc., 495 F.3d 1217, 1225 (10th Cir. 2007).  See Vondrak v. City of Las Cruces, 2009 WL 1300946 at *7 (D.N.M.)(Browning, J.).  As rule 54(b) states, if a court does not enter final judgment as to particular claims or parties in a multi-party or multi-claim case, then "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b) (emphasis added).

## LAW REGARDING WITHDRAWING ADMISSIONS

Rule 36(a)(1) of the Federal Rules of Civil Procedure provides that "[a] party may serve upon any other party a written request for the admission" of the truth of certain matters.  If a matter

is admitted, it "is conclusively established unless the court on motion permits withdrawal or amendment of the admission."  Fed. R. Civ. P. 36(b).  "The court may permit such withdrawal or amendment 'when [1] the presentation of the merits of the action will be subserved thereby and [2] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.'"  Raiser v. Utah County, 409 F.3d 1243, 1246 (10th Cir. 2005)(quoting Fed. R. Civ. P. 36(b))(brackets in Raiser v. Utah County).

A district court has considerable discretion whether to permit withdrawal or amendment of an admission.  That "discretion must be exercised within the bounds of th[e] two-part test." American Auto Association v. AAA Legal Clinic, 930 F.2d 1117, 1119 (5th Cir. 1991).  Rule 36(b)'s provision for withdrawal or amendment of an admission "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice."  Fed. R. Civ. P. 36(b) Advisory Committee Notes (citation omitted).  In deciding whether to grant a rule 36(b) request to withdraw or amend a discovery response, "[t]he court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than [] on the moving party's excuses for an erroneous admission."  Kirtley v. Sovereign Life Ins. Co. of California, 212 F.3d 551, 556 (10th Cir. 2000)(citations and internal quotations omitted).

Inconvenience alone does not constitute prejudice.  See Raiser v. Utah County, 409 F.3d at 1246.  "The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission now has to convince the jury of its truth.  Something more is required."  Id. (citations and internal quotations omitted).  Specifically, "preparing a summary judgment motion in reliance upon an erroneous admission does not constitute prejudice."  Id. (citation and internal quotations omitted).  The prejudice that rule 36(b) contemplates "relates to the difficulty a party may face in proving its

case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted."  Id. (citation and internal quotations omitted).

**ANALYSIS**

There are two separate issues before the Court: (i) whether the Court should change its rulings on the UPA Motion; and (ii) whether to allow USAA to withdraw Admission No. 8.  The Court believes that these two issues are related.  Given the wording of Admission No. 8, the Court cannot soundly change its ruling on the UPA Motion without allowing USAA to withdraw that admission.  Because the Court believes that withdrawal of the admission would cause substantial prejudice to the Plaintiffs, the Court will keep the admission in place.  Consequently, the Court will also not change its ruling on the UPA Motion.  Consistent with the parties' agreement at the February 4, 2009 hearing, however, the Court will allow USAA to present evidence and argument on what it meant by uneconomical to repair at the trial and will not give conclusive effect to the admission during the trial.

**I.     THE COURT HAS THE DISCRETIONARY POWER TO RECONSIDER ITS INTERLOCUTORY RULINGS, ALTHOUGH PREJUDICE TO THE PLAINTIFFS CAUTIONS AGAINST EXERCISING THAT POWER.**

As an initial matter, the Court must decide whether it should entertain either aspect of USAA's motion to reconsider.  The Plaintiffs contend that there are three grounds upon which a motion to reconsider may be based -- change in controlling law, new evidence, or the need to correct an error or prevent manifest injustice -- and that none of these grounds are present here.  See Response at 16.  These standards, however, are the standards to be applied to rule 59(e) motions to alter or amend a judgment.  See Servants of Paraclete v. Does, 204 F.3d at 1012.  No final judgment has been entered on the issues that USAA wants revisited.  Reconsidering these issues

-17-

therefore remains within the Court's discretionary power.  See Been v. O.K. Industries, Inc., 495 F.3d at 1225.

While the Court thus retains the discretion to reconsider its earlier decisions, the question is whether the Court should exercise that discretion.  While the Court has the discretion to reconsider its earlier ruling, and while the Court will carefully review certain aspects of its earlier rulings, other aspects should not be reviewed so close to trial; reversal at this late date would cause prejudice to the Plaintiffs, and ultimately the Court will not reverse its two prior rulings at this late date.  The Court will fully explain why, given the circumstances of this case, it concludes that it should not reverse its earlier rulings.

Thus, in the end, the Court believes that full reconsideration and reversal of its earlier rulings, immediately before trial, would prejudice the Plaintiffs for the same reasons that withdrawal of the admission would prejudice the Plaintiffs.  This prejudice cautions against the Court using its discretion to reconsider and reverse its rulings, particularly given that USAA could have raised these issues earlier.  Although the Court will explain its other reasons for not reversing the earlier decisions, this prejudice is an alternative ground on which the motion could be denied.

## II.     REVERSAL OF THE COURT'S GRANT OF SUMMARY JUDGMENT WOULD REQUIRE WITHDRAWING ADMISSION NO. 8.

At the hearing on May 12, 2009, the Court asked USAA whether, to reverse its decision on the UPA Motion, USAA would need to successfully have Admission No. 8 withdrawn and also prevail on its legal argument about customer-service decisions not being part of the uneconomical to repair calculus.  Mr. Vigil asserted that the two requests were severable and that, in particular, even if the Court did not allow USAA to withdraw the admission, the Court could nonetheless reverse its grant of summary judgment.  See May 12, 2009 Hearing at 5:12-17 (Vigil).  The Court

cannot agree.  Moreover, Mr. Vigil ultimately conceded that it would be difficult to grant its motion to reconsider the summary judgment with the admission still in place.  See May 12, 2009 Hearing at 16:10-11 (Vigil).  Because of the language in Admission No. 8, the Court can reasonably reverse its grant of summary judgment on the UPA Motion only if the Court first allows USAA to withdraw its admission.

Although Mr. Klecan indicated that he did not have the statute in mind when responding to the Plaintiffs' Request for Admission, see February 4, 2009 Hearing at 10:3-12:18 (Court & Klecan), the Court has difficulty viewing the admission as avoiding the statutory language.  Indeed, it appears to the Court that the distinction USAA is now making is not one that USAA was thinking of at the time of the admission.  Mr. Klecan stated at the hearing:

> I would say the distinction was not being drawn between the vehicle being declared a total loss for customer service, customer relations purposes and the vehicle being uneconomical to repair in terms of the dollar and cents of repairs versus fair market value of the vehicle.  So I think the mistake on my part was not recognizing that distinction between the fact that USAA had declared the vehicle a total loss for purposes of allowing the insured to receive compensation for the full value of the vehicle and then the comparison of that decision to what the repair costs were versus the market value.

Id. at 10:6-16 (Klecan).  At the hearing, the parties agreed that the admission would not have any conclusive effect for trial.  See id. at 19:10-20:8 (Court, Valdez & Treinen); Order at 1-2, entered February 5, 2009 (Doc. 369)("[T]he Court will deny the motion without prejudice to USAA explaining at trial how it understood its actions with respect to the treatment of the Sierra claim, how it understood the meaning of the phrase 'uneconomical to repair,' and what it understood its response to Request for Admission No. 8 to entail.").  This agreement, however, did not cover any previous use of the admission, which the Court had just recently used in granting summary judgment.  Despite the Court having just granted summary judgment, USAA's counsel agreed to

-19-

keep the admission in place so long as USAA was allowed to later argue at trial its reasons for making the admission.

Comparing the language in Admission No. 8 and the language in the New Mexico statute shows they are almost identical. The statute uses the phrase "considers it uneconomical to repair," N.M.S.A. 1978 § 66-1-4.16C(1), while the admission states that USAA "decided that the Sierra was uneconomical to repair," Admission No. 8. As the Court noted when granting summary judgment earlier, this minor distinction between decided and considered is not relevant. See UPA MOO at 7.

Nor do USAA's more recent arguments persuade the Court that there is a difference in the language. For USAA's argument to work, customer-service decisions must not be treated as decisions falling within the ambit of economical-to-repair decisions. If the customer-service rationale is no more than an explanation about why USAA determined something to be uneconomical to repair then, from the standpoint of the salvage law, USAA has nonetheless made a determination that a vehicle is uneconomical to repair. Only if the customer-service decision is not a decision that the Sierra was uneconomical to repair can USAA escape the statute. This approach is a possible one, but it contradicts the admission's language that USAA made a determination that the Sierra was uneconomical to repair. Because the Court's order and the parties' agreement only relieves USAA of the conclusive consequences of its admission for the trial, the language in Admission No. 8 precludes USAA from making an argument for purposes of the UPA Motion that it did not consider the Sierra uneconomical to repair. Thus, for the Court to properly reverse its grant of summary judgment on the UPA Motion, the Court must first allow USAA to withdraw Admission No. 8.

-20-

**III.    THE COURT WILL NOT ALLOW USAA TO WITHDRAW ITS ADMISSION THE <u>WEEK BEFORE TRIAL</u>.**

Whether to allow withdrawal of an admission turns upon a two-part test.  First, the Court must determine whether withdrawal will help the action to be resolved on the merits.  Second, the Court must determine whether the party that requested the admission will be prejudiced in maintaining its action.  Determining the first factor is a complicated inquiry in this case.  There are good arguments on both sides.  The Court will assume that the first factor is met because USAA's success on the first prong would not change the outcome here.  Withdrawal of the admission here would cause substantial prejudice to the Plaintiffs because it would come on the eve of trial, after discovery has closed, and two months after USAA had agreed that it would not withdraw its admission.

**A.    THE COURT WILL ASSUME THAT WITHDRAWAL WILL FURTHER THE MERITS HERE.**

Whether allowing USAA to withdraw Admission No. 8 would contribute to resolving this case on the merits is a complicated question.  The Court believes that there is evidence in the record that USAA decided not to repair the Sierra because of customer-relations reasons.  If that were the only issue, the first part of the test would be easy.  The parties have already agreed that USAA can explain these facts at the trial.  Whether such explanation would make a difference legally on whether the Sierra warranted a salvage title is more complicated.  And it is that legal difference that is important to the UPA Motion and the issue whether USAA considered the Sierra uneconomical to repair.  According to the Plaintiffs, USAA's customer-relations argument is still an economic decision, so the admission is actually accurate.  USAA's argument is that a customer-relations decision is not an economical-to-repair decision under the statute.  Which argument is right is not a simple question, and the answer to that question is necessary for the Court to determine whether

withdrawing the admission would further resolution on the merits.  Because of the Court's decision on the second prong, however, the Court need not resolve this issue and can instead assume that the first prong is met.  The Court will, however, explain what it believes are the potentially persuasive arguments on each side of this question.

A couple of main points support of the Plaintiffs' position that a customer-service decision is a decision regarding whether it is economical to repair a vehicle.  The first is textual.  Typically, when a person or business makes a decision whether it is economical to do something, that decision encompasses a range of factors.  Customer service being important to most businesses, that will be a factor in a business' economic decision.   If the customer-service benefit of not repairing the vehicle were high enough, then an insurance company might decide not to repair a vehicle with rather minimal damage.  On the other hand, if the customer-service benefit were low, then an insurance company might find it worthwhile to repair even an extensively damaged vehicle.  Customer service being part of an economic-to-repair decision thus seems to follow naturally from the language of the statute.

The second point is policy-based.  New Mexico law seems to attempt to set up a structure that avoids the sorts of gaming possible in a system that relies on percentages and cosmetic, versus non-cosmetic repairs, by creating a system that asks whether the insurance company made a determination or not and is otherwise agnostic about the reasons why.  If the law allowed an insurance company to parse out various decisions as being non-economic, then an insurer could say that most of its decision were based on customer service and never have to acquire salvage titles for vehicles.

There are also two main arguments in support of USAA's position.  The first is also a textual argument.  To give effect to every word in the statute, USAA contends, would require narrowing

the situations where an insurer's decision about a vehicle falls under the statute.  Without some narrowing, the statute would effectively ask whether a determination was made not to repair a vehicle, for whatever reason, eliminating the word "uneconomical" from the statute.

USAA's second main point is also rather textual and related to the first point.  In the context of the salvage law, it is more natural to read "uneconomical to repair" as being focused on the damage to the vehicle and the repair costs.  In this reading, a customer-service decision is an economic decision that can result in not repairing a vehicle, but it is not a decision that the vehicle itself is "uneconomical to repair."  This reading helps to give effect to all the language of the statute while employing a sensible reading of uneconomical in the context of the statute.

The Court need not decide which interpretation is correct.  The Court will assume for the purposes of the request to withdraw the admission that USAA is correct.  If USAA is correct on the law, however, there would still be prejudice to the Plaintiffs precluding USAA from fulfilling both parts of the test.[2]

### B.   ALLOWING USAA TO WITHDRAW ADMISSION NO. 8 WOULD CAUSE SUBSTANTIAL PREJUDICE TO THE PLAINTIFFS.

For the Court to allow USAA to withdraw its admission, the withdrawal must both serve to further litigation on the merits and must not prejudice the Plaintiffs.  See Raiser v. Utah County, 409 F.3d at 1246.  The test is conjunctive.  Even if allowing withdrawal of the admission would help resolve this action on the merits rather than on procedural grounds, the Court should not allow

_____

[2] At the hearing on May 12, 2009, the Court also discussed whether the issue was purely legal, which might initially appear to impact whether the Plaintiffs would be prejudiced -- without a need for more evidence, the Plaintiffs would not be prejudiced.  While the Court believes that whether USAA's customer-relations decision would fall within the statute or not is a purely legal question, the Plaintiffs have indicated that they do not believe that USAA's decision was based upon or based solely upon customer relations.  This issue would be factual.

withdrawal if it would cause prejudice to the Plaintiffs.  Given the procedural history of this case, the Court concludes that allowing USAA to withdraw Admission No. 8 would cause substantial prejudice to the Plaintiffs and so the Court will deny USAA's request.  Admission No. 8 will remain. Consistent with the parties' agreement at the February 4, 2009 hearing, however, USAA will still be able to give its side of the story at trial about why it did not repair the Sierra and what it meant by the phrase "uneconomical to repair."  The Plaintiffs may use the admission to impeach USAA's witnesses, but the admission will not be conclusive at trial.

Not permitting USAA to withdraw its admission will undoubtedly strike USAA as harsh. Procedural rules, however, exist for a reason.  These rules help ensure the efficient and fair resolution of disputes.  It is not the Court's practice to lightly apply procedural rules when it could mean preventing a resolution on the merits.  The Court strongly prefers to seek the truth and to resolve cases on the merits, and if there were more time before trial, the Court might once again revert to its usual practice of being lenient about the rules if they block the Court's path to the truth. Nonetheless, the Court believes such liberal treatment is not warranted here.  USAA has had ample opportunity to withdraw its admission.  Its decision to reverse course and seek withdrawal for a second time at the eleventh hour will cause substantial prejudice to the Plaintiffs.  In such a situation, rule 36(b) is not satisfied.  Indeed, the prejudice the Plaintiffs would suffer would effectively prevent them from presenting their case with all the evidence they might have been able to marshal had USAA not followed the course it did.  Granting USAA's request would in fact not serve to further resolution on the merits but would instead create an artificially unbalanced scenario favoring USAA rather than the Plaintiffs.  USAA made the admission and then chose a course of action that would prejudice the Plaintiffs.  Any burden should therefore fall on USAA and not on the Plaintiffs.

Understanding why the Plaintiffs would suffer prejudice requires a review of the progress of the case that has led to this point. In particular, USAA's actions will cause the Plaintiffs prejudice for three main reasons: (i) because the long understanding in this case was that USAA determined that the Sierra was uneconomical to repair and the question was whether that had any legal effect; (ii) USAA's decision at the February 4, 2009 hearing implied that the point that USAA is now raising would not be an issue; and (iii) because this motion comes on the eve of trial, there is no reasonable way to cure the prejudice at this late date. These three factors are intertwined. Any factor alone might allow the Plaintiffs to avoid prejudice. Taken together, however, substantial prejudice is unavoidable.

1.   **For Much of This Case, the Issue Was Not Whether USAA Had Determined that the Sierra Was Uneconomical to Repair.**

First, a substantial amount of time in this case passed with the admission in place and with the general understanding being that USAA considered the Sierra uneconomical to repair, but that whether this fact had any legal effect was unresolved. This case began on June 16, 2007, when the Plaintiffs filed their first Complaint. See Complaint for Damages and for Declaratory Relief and Jury Demand (Doc. 1). At that time, USAA was not named as a Defendant. USAA first became a Defendant with the First Amended Complaint on February 4, 2008. See FAC at 1 (naming USAA as a Defendant). In its initial Answer, on March 7, 2008, USAA admitted that it determined that the Sierra was uneconomical to repair. See FAC ¶ 16, at 4 (alleging that "USAA determined that the Sierra was uneconomical to repair and did not repair the Sierra . . ."); First Answer ¶ 5, at 2 (admitting same).

It is not clear when USAA responded to the Plaintiffs' Requests for Admissions. At some point, however, USAA made Admission No. 8. The Request for Admission read: "Before the sale

of the Sierra to Lohman Motors, USAA had decided that the Sierra was uneconomical to repair." Admission No. 8.  USAA admitted the statement.

This case progressed with the admissions in the Answer and Admission No. 8 in place. When the meaning of the salvage statute became the prominent issue being argued to the Court, the focus was on whether the statute created a one-hundred percent rule, as the Dealerships and USAA were advocating.  In its written response to the UPA Motion, filed on November 10, 2008, USAA did not contest the Plaintiffs' asserting that it was undisputed that USAA determined that the Sierra was uneconomical to repair.  USAA began to expound upon the idea in its briefing that the Sierra was not repaired because the insureds did not want it, but it hewed to its original legal theory that the Sierra was not salvage because of the New Mexico regulations and focused on Kunz' actions as showing that USAA acted in good faith.  See UPA Response at 8-12.  As the Court noted at the December 17, 2008 hearing, it was surprised when USAA argued that it did not consider the Sierra uneconomical to repair, because the Court always thought it "was a given in this case, that USAA did make a determination it was uneconomical to repair," and the Court therefore "thought the issue was whether that had any sort of legal effect, which I've determined it [does]."  December 17, 2008 Hearing at 47:17-20 (Court).

From its own review of the record and its time presiding over this case, the Court agrees with the Plaintiffs that USAA's current stance is of recent vintage.  Although there were indications that USAA took the position that it acted for customer-relations reasons, for most of this case USAA did not assert that because of this reason the Sierra was not salvage.  Instead, USAA took the position that the one-hundred percent rule determined when a vehicle was salvage.  The Plaintiffs argue that USAA, having lost on its legal theory, is now campaigning to change the facts.  The Court partially agrees with this statement.  It appears to the Court, however, that USAA, having lost on one legal

theory, is not trying to change the facts but rather change what those facts mean.  In other words, USAA is advancing a second legal theory.  At first, USAA staked its success on the Court finding that New Mexico used a one-hundred percent rule for determining when a vehicle was salvage. Having lost on that issue, USAA is now relying on a new theory that makes customer-service decisions distinct from economic-to-repair decisions.  USAA is correct that it has long stated both that it did not repair the Sierra for customer-service reasons and that it did not think the Sierra was salvage.  Both observations, however, are beside the point.  The former fact was never an important point until recently.  The latter fact may have been true, but USAA's reason for that position was that New Mexico law had a one-hundred percent rule.  Because USAA advanced this argument, the customer-relations issue was not an important part of this case throughout discovery.

The upshot is that the Court agrees that the Plaintiffs have been unable to conduct adequate discovery on this issue.  When USAA starting advancing its new position, the relevance of various facts changed.  USAA contends that the Plaintiffs have had adequate discovery because they have deposed Kunz and Dennis Schafer, USAA's field appraiser.  These depositions, however, were reasonably conducted with a different understanding of the case in mind.

For example, USAA emphasizes that the Plaintiffs questioned Schafer about his inspection and decision.  This deposition took place on July 14, 2008.  See Exhibit B to Motion, Deposition of Dennis Schafer (taken July 14, 2008)(Doc. 399-3).  Schafer explained that he would not expect all the vehicles he found to be a total loss would end up with salvage titles:

> I think I just gave you an example of a car than can be a theft recovery, with virtually no damage on it, that becomes USAA property.  I might look at it and put a determination of total loss because of the circumstances that got it into my assignment log and then pass it on to the people at Total Loss so they can do the proper stuff with the title so I would have determined it as a total loss, but the car is clearly not a total loss.

See id. at 96:10-19.  Under USAA's new theory, why Schafer would have made this determination, and even more importantly, why "the people at Total Loss" would have decided to nonetheless not obtain a salvage title becomes highly important.  There is no indication that Mr. Treinen followed up with this line of questioning, perhaps because of the admission.

At the May 12, 2009 hearing, Mr. Treinen contended that the Plaintiffs would have to undertake significant discovery if the admission were withdrawn, because they had not focused on the issue because of the admission and because of Kunz agreeing that USAA determined the Sierra was uneconomical to repair.  He maintained that the Plaintiffs had not explored how the determination was made or deposed other USAA employees involved in the process.  See May 12, 2009 Hearing at 35:1-23 (Treinen).  The Court believes that Mr. Treinen's assessment is correct. Given the shift in the legal theory USAA is espousing to a theory that distinguishes between customer-relations and other decisions, new information would be necessary if the Plaintiffs are going to have a fair opportunity to attempt to rebut USAA's new legal theory and its factual underpinning.

USAA also argues that there will be no prejudice because the Plaintiffs have now had the opportunity to depose USAA's new corporate representative with this new theory in mind.  As Mr. Treinen stated at the hearing, however, USAA's new corporate representative, Kevin Bryant, had not worked in the salvage department or supervised the employees there.  See May 12, 2009 Hearing at 24:2-12 (Treinen).  Rebutting USAA's new theory would require an investigation into what the people actually involved in the Sierra claims at various levels thought and did.

Because much of this case progressed with a different theory in mind, the Court agrees with the Plaintiffs that they do not have adequate evidence to attempt to rebut this new theory.  USAA cannot point to the discovery conducted thus far as precluding any prejudice argument the Plaintiffs

might make.  USAA's posture throughout much of this case has helped create prejudice to the Plaintiffs.

> **2.      USAA Reversed Its Decision Not to Seek Withdrawal of the Admission.**

Second, USAA had previously sought to withdraw Admission No. 8.  On February 4, 2009, however, USAA affirmatively decided not to withdraw the admission and instead agree with the other parties that the admission would remain but that USAA would be free to explain the admission at trial.  This decision contributed to the prejudice to the Plaintiffs because it indicated that the Plaintiffs would not need to seek discovery on USAA's new theory.  Also, if USAA had persisted with its motion at that time, and had been successful, there would have been more time before trial than there is with the current motion.

It is important to place the February 4, 2009 hearing in context.  At that point, all the relevant consequences of the admission remaining should have been clear.  The Court had ruled on the meaning of the phrase "considers it uneconomical to repair" and had also granted the UPA Motion. In granting the UPA Motion, the Court expressly said that its determination that the Sierra warranted a salvage title and that USAA therefore violated the UPA were grounded in Admission No. 8. See UPA MOO at 6-8, 15.  The Court made it clear that USAA having determined the Sierra to be uneconomical to repair was conclusively established "[b]ecause USAA has not been granted leave to amend or withdraw the admission."  Id. at 7.  USAA should therefore have been fully aware of what the consequences of abandoning its request to withdraw the admission would be.  This result is particularly clear given that the Court had yet to continue the trial at the time that the February 4, 2009 hearing.

By relinquishing its request and instead acceding to the agreement at the February 4, 2009 hearing, USAA helped ensure that the Plaintiffs would suffer substantial prejudice with its later

request.  Over three months remained after the February hearing until the new trial date.  With that much time, the Plaintiffs might have been able to secure more evidence in advance of the trial.  After USAA dropped the motion, there was no need for the Plaintiffs to do so.  The manner in which the motion was denied only furthered the prejudice.  If the Court had denied the motion because it ruled against USAA on the merits, the Plaintiffs might have had some reason to attempt to reopen discovery and pursue evidence on this issue, because of the possibility of a motion to reconsider.  Even that assumption is an unlikely one, however, as it would be asking a considerable amount of a party to predict that their opponents, after losing a motion, would try to reconsider the ruling on the eve of trial.  Whatever merit this line of reasoning might have evaporates given that USAA willingly dropped its request and chose to instead agree to keep the admission, but be allowed the freedom to argue at trial.  The Court can hardly fault the Plaintiffs for taking USAA at its word and relying on an agreement reached in open court.

Mr. Valdez stated that he believed that the agreement was without prejudice to USAA renewing the issue later and that he would not have made the agreement otherwise.  See May 12, 2009 Hearing at 18:18-19:3 (Court & Valdez).  The agreement was not, however, as Mr. Valdez says he remembers it.  Reviewing the transcript of the hearing makes clear that the parties and the Court were focused on the effect of the admission at trial and that the Court's "without prejudice" decision meant that by keeping the admission on the record, the Court was not precluding USAA from contradicting that admission at trial.  The Court believes that the Plaintiffs reasonably relied on the decision and agreement at the hearing being binding.

Moreover, any lingering mistaken impressions should have been cured when the Court issued its written Order.  The Court's Order reads:

[T]he Court will deny the motion without prejudice to USAA explaining at trial how

> it understood its actions with respect to the treatment of the Sierra claim, how it understood the meaning of the phrase "uneconomical to repair," and what it understood its response to Request for Admission No. 8 to entail. The admission itself, however, will remain in place.

Order at 1-2, entered February 5, 2009 (Doc. 369)(emphasis added).  This language should have removed any doubt about the scope and nature of the Court's ruling.

Denying a motion without prejudice is one thing.  It makes little sense, however, for the Court and the parties to engage in a lengthy colloquy and agree on a resolution if that agreement has no binding effect.  Arguably, it might be justifiable to set aside such an agreement for changed circumstances or similar reasons.  Nothing supports that being the case here.  To the contrary, USAA had all the information it needed about the consequences coming into the hearing and nothing has changed since then to warrant a reversal.

The transcript of the hearing makes it clear that an agreement was reached that USAA would not withdraw Admission No. 8, but would be allowed the freedom to argue its version of the facts at trial.  The Plaintiffs were justified in relying on this understanding of what occurred.  Even if the Court could view what happened at the hearing as not being an agreement, the Court's subsequent Order makes matters clear.  If that Order embodied an incorrect understanding of what occurred, USAA should have notified the Court in a timely manner and not waited until shortly before trial. Notably, USAA's motion to reconsider apparently reads what happened during the February 4, 2009 hearing the same way the Court and the Plaintiffs do: "USAA acknowledges that the Court's decision denying its request to withdraw the admission nevertheless provides USAA the opportunity to explain at trial the basis for its admission and its understanding of the phrase 'uneconomical to repair.'" Motion at 6.  The Court cannot help but conclude that USAA's position at this time is

inconsistent with its earlier agreement and position.[3]

### 3.   The Timing of this Motion Ensures That the Plaintiffs Will Suffer Substantial Prejudice.

Finally, the timing of the motion will result in substantial prejudice to USAA.  Any prejudice might have been curable at an earlier time -- although the illness of Kunz, whose role as a central decision-maker is more important under USAA's new theory, might have closed the window for curing prejudice several months ago.   The timing of USAA's renewed attempt to withdraw Admission No. 8, however, which effectively guaranteed that a ruling would be made on the eve of trial, forecloses that possibility of curing prejudice at this point.

Over two months passed since the February 4, 2009 hearing.  On February 11, 2009, the Court moved the trial to a starting date of May 18, 2009.[4]  By February 11, 2009, then, it should

---

[3] In addition to causing prejudice to the Plaintiffs in a more general manner, USAA's change in position may well be subject to judicial estoppel.  Judicial estoppel prevents a party from advancing a position inconsistent with an earlier position in certain circumstances.

> Though there is no precise formula, in order to determine whether to apply judicial estoppel, courts typically inquire as to whether: 1) a party's later position is clearly inconsistent with its earlier position; 2) a party has persuaded a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and 3) the party seeking to assert the inconsistent position would derive an unfair advantage if not estopped.

Bradford v. Wiggins, 516 F.3d 1189, 1194 (10th Cir. 2008)(internal quotation marks omitted).

[4] The Court moved the trial from February 23, 2009 to May 18, at USAA's request and over the Plaintiffs' strong opposition.  The Court cannot help but note, however, that USAA would not have been able to even file this motion had the Court not moved the trial date.  Moreover, as the Court and the Plaintiffs noted at the hearing, Kunz is not able to testify at the May trial, so the delay has benefitted no one but USAA, which used it to file this motion.  The Court is concerned that USAA, reluctant to seek another delay on its own, is trying to get the Court to grant the motion and put the Plaintiffs in the position of having to ask for more time and to themselves seek to postpone the trial.  This continuous delay is additional prejudice to the Plaintiffs.

have been clear that, to avoid a ruling on any motion falling on the eve of trial, a motion should be filed as soon as possible.  Instead, over two months passed before USAA filed its motion.  USAA filed its motion on April 13, 2009 and its Reply on May 8, 2009.  Even without factoring in time for a decision from the Court, the briefing on this motion was not complete until ten days before trial.  Avoiding such timing is usually a good idea.  This principle is particularly true when one of the issues is going to be prejudice to the opposing party.  Even though USAA disagrees that withdrawing Admission No. 8 would cause prejudice to the Plaintiffs, USAA should have been aware that the Plaintiffs and the Court might have different views and sought to help cure such prejudice through prompt filing.

While the Court did not preclude USAA from moving the Court to reconsider its opinion on the UPA, what USAA has primarily raised here is an argument based upon withdrawal of Admission No. 8.  It was after the Court issued its UPA opinion that the Court held the February 4, 2009 hearing and USAA decided not withdraw the admission.  The Court finds it surprising that any motion for reconsideration would thus be based upon withdrawal of the admission rather than on some other argument about the Court's decision.

The circumstances here are materially different from other circumstances in which withdrawal has been allowed.  The Court does not view the prejudice here as stemming from the Court's earlier grant of summary judgment on the UPA Motion on the basis of the admission.  See Raiser v. Utah County, 409 F.3d at 1246 (noting preparing summary judgment motion in reliance on admission is not grounds for prejudice).  Nor is this a situation where the withdrawal would come with ample time left.  See id. (finding no prejudice where party moved to withdraw admission two weeks after request and before motion for summary judgment filed); Security Ins. Co. of Hartford v. Clovis Ins. Center, Inc., 2006 WL 4109678 at *7 (D.N.M.)(Browning, J.)(finding no prejudice

where time remained for reopening discovery).  The withdrawal would come immediately before trial, essentially foreclosing any opportunity for the Plaintiffs to conduct further discovery and alleviate the prejudice.  This case is much more in line with the situation in <u>Banos v. City of Chicago</u>, 398 F.3d 889, 893 (7th Cir. 2005), where the plaintiffs advanced one theory, then vowed not to litigate that theory, only to attempt to resurrect the theory after discovery closed.

The Court concludes that the Plaintiffs would suffer substantial prejudice if the Court were to allow USAA to withdraw Admission No. 8 at this late stage.  This case has generally been litigated and discovery conducted with the assumption that USAA considered the Sierra uneconomical to repair.  What USAA contested was that this decision had any legal effect under New Mexico law.  Only once it became increasingly clear at the hearings that the Court was inclined to reject that proposition did USAA begin to argue that a customer-service determination would be outside the statute even if the Court rejected USAA's original argument.  USAA then sought to withdraw its admission, but on February 4, 2009 abandoned that goal.  Nonetheless, about a month before trial, USAA again sought to withdraw the admission, with the motion's timing ensuring that the any ruling would fall immediately before trial.  In these circumstances, the Plaintiffs would face substantial prejudice if the admission were withdrawn.  Because of this prejudice, the second prong of rule 36(b) is not met, and the Court will therefore not allow USAA to withdraw the admission.

## IV.    BECAUSE THE COURT IS NOT ALLOWING USAA TO WITHDRAW ADMISSION NO. 8, THE COURT WILL NOT CHANGE ITS RULING ON THE UPA MOTION.

As the Court noted earlier, a reversal on the UPA Motion would require the withdrawal of Admission No. 8.  Because the Court will not allow USAA to withdraw the admission, the Court will not change its earlier decision to grant the UPA Motion.  The agreement from February 4, 2009, however, remains in place.  USAA may present all its evidence and arguments on these issues to the

jury.  The Plaintiffs can use the admission for impeachment, but not for conclusive effect at trial.

Contrary to USAA's fears, the Court believes that a jury will be able to fairly consider the evidence

and will not be confused.  The Court does not believe it will confuse a jury for USAA to argue that

it made what the Court determined was a mistake about what the law meant, but that this mistake

was in good faith, without any intent to deceive or defraud anyone.  Any concerns about the jury

instructions can be addressed in the context of the argument over those instructions.

   **IT IS ORDERED** that USAA's Motion for Reconsideration of Plaintiffs' Motion for Partial

Summary Judgment on Their UPA Claim and for Reconsideration of USAA's Motion to Withdraw

Admission is denied.


_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Richard N. Feferman
Rob Treinen
Charles S. Parnall
Feferman & Warren
Albuquerque, New Mexico

   *Attorneys for the Plaintiffs and Counter-Defendants*

William F. Davis
Charles R. Hughson
Brett Steinbook
William F. Davis & Assoc., P.C.
Albuquerque, New Mexico

   *Attorneys for Defendants, Counterclaimants, and Cross-claimants*
   *Lomas Auto Mall, Inc. and M.D. Lohman d/b/a Lohman Motors*

Judd C. West
Michael Neill
Doughty and West, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant Western Surety Company*

Mark J. Klecan
Klecan & Childress
Albuquerque, New Mexico

-- and --

Charles J. Vigil
Leslie McCarthy Apodaca
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

-- and --

Jeffrey W. McElroy
John Paul Valdez
Ray, Valdez, McChristian & Jeans, P.C.
El Paso, Texas

-- and --

Robert E. Valdez
Lynn Rada
Ray, Valdez, McChristian & Jeans, P.C.
San Antonio, Texas

    *Attorneys for Defendant and Cross-claim Defendant USAA Casualty*
     *Insurance Company d/b/a USAA*

Michael L. Danoff
Michael L. Danoff & Associates, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Independent Automobile Dealers Service*
     *Corporation, Ltd. and New Mexico Independent Automobile Dealers*
     *Association, Inc.*

-36-