## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DELFINO PEDROZA and LILIANA
ANDRADE,

       Plaintiffs,

vs.                                                                                          No. CIV 07-0591 JB/RHS

LOMAS AUTO MALL, INC.; M.D. LOHMAN, d/b/a
LOHMAN MOTORS; WESTERN SURETY COMPANY;
USAA CASUALTY INSURANCE COMPANY d/b/a USAA;
and INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) USAA's Motion for Judgment as a Matter

of Law on Plaintiffs' Claims for Punitive Damages, Fraud, Civil Conspiracy and Joint Enterprise,

filed May 25, 2009 (Doc. 447); (ii) Defendants Lomas Auto Mall, Inc.'s, and M.D. Lohman d/b/a

Lohman Motors' oral motion for judgment as a matter of law during the trial on May 26, 2009; and

(iii) Defendant Independent Auto Dealers Service Corporation, Ltd.'s oral motion for judgment as

a matter of law during the trial on May 26, 2009. The Court held a hearing on May 26, 2009. The

primary issues are: (i) whether Plaintiffs Delfino Pedroza and Liliana Andrade have presented

sufficient evidence of civil conspiracy among Defendants Lomas Auto Mall, Inc., M.D. Lohman

d/b/a Lohman Motors, and USAA Casualty Insurance d/b/a USAA to proceed to the jury; (ii)

whether the Plaintiffs have presented sufficient evidence of joint enterprise among those three

Defendants to survive a motion for judgment as a matter of law; (iii) whether the Plaintiffs have

presented sufficient evidence that USAA committed fraud; (iv) whether the Plaintiffs should be

allowed, on the trial record, to ask the jury for punitive damages; (v) whether there is sufficient evidence to allow the claims against Lomas Auto Mall and Lohman Motors to go the jury; and (vi) whether there is sufficient evidence to allow the claims against IADSC to go to the jury.  The Plaintiffs state that the joint-enterprise claim against USAA, the conspiracy claim against USAA with respect to events occurring before the efforts to obtain a second clean title for the 2005 GMC Sierra truck, and the New Mexico Motor Vehicle Dealers Franchising Act ("MVDFA") claim against Lomas Auto Mall and Lohman Motors should be dismissed.  As stated at the hearing, the Court will dismiss those claims.  For the reasons stated during the trial and at the hearing on the motions, for other reasons consistent with those already stated, and because there is legally sufficient evidence on the remaining claims against the various Defendants, the Court will otherwise deny the motions.

## PROCEDURAL BACKGROUND

On May 18, 2009, the Court began a jury trial in this case.  After five days of trial, the Plaintiffs rested on May 22, 2009 and the Court recessed for the weekend.  USAA then filed a written motion for judgment as a matter of law.  When the trial resumed on May 26, 2009, the remaining Defendants orally moved for judgment as a matter of law.

USAA moves the Court for an order under rule 50(a) of the Federal Rules of Civil Procedure for judgment as a matter of law on the Plaintiffs' claims for civil conspiracy, joint enterprise, fraud, and punitive damages.  Lomas Auto Mall and Lohman Motors move the Court for judgment as a matter of law on the Plaintiffs' claims against them for fraud, violations of the New Mexico Unfair Trade Practices Act ("UPA"), civil conspiracy, and joint enterprise.  It is unclear from the hearing whether their oral motion also includes the claims against them under the Motor Vehicle Information and Cost Savings Act ("MVICSA") and the MVDFA, and for breach of warranty of

title.  IADSC moves the Court for judgment as a matter of law on the claims against it for fraud and violating the UPA.  After hearing the parties' arguments, and based upon the Plaintiffs' concessions, the Court granted USAA's motion with respect to the joint-enterprise claim and with respect to any conspiracy claim premised on USAA being involved in a conspiracy before its involvement in obtaining a second clean title for the Sierra, and also dismissed the MVDFA claim against Lomas Auto Mall and Lohman Motors.  The Court indicated it was inclined to otherwise deny the motions, but took them under advisement.  Later, the Court orally denied the remaining portions of the Defendants' motion.  This opinion serves to further explain the Court's oral rulings.

### LAW REGARDING RULE 50(a)

Judgment as a matter of law is proper where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  This standard for a directed verdict mirrors the standard for summary judgment.  See Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986); Wiles v. Michelin No. America, Inc., 173 F.3d 1297, 1303 (10th Cir. 1999).  A court may grant judgment as a matter of law, however, even though it has denied summary judgment, because the parties have been able to address all relevant, available evidence.  See Lee v. Glassing, 51 Fed. Appx. 31, 32 (2d Cir. 2002).

In determining whether to grant judgment as a matter of law, a court may not weigh the evidence or make its own credibility determination, see Shaw v. AAA Eng'g & Drafting, 213 F.3d 519, 529 (10th Cir. 2000), and must draw all reasonable inferences in favor of the nonmoving party, see Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994).  Such a judgment is warranted if the evidence permits only one rational conclusion.  See Crumpacker v. Kansas Dept. of Human Resources, 474 F.3d 747, 751 (10th Cir. 2007).  In other words, "'[t]he question is not

whether there is literally no evidence supporting the [nonmoving] party . . . but whether there is evidence upon which the jury could properly find [for that party]."  <u>Century 21 Real Estate Corp. v. Merj Int'l Inv. Corp.</u>, 315 F.3d 1271, 1278 (10th Cir. 2003)(some alterations in original).

<u>ANALYSIS</u>

For the most part, the Court concludes that judgment as a matter of law is not appropriate in this case.  The Court's job is not to weigh the evidence, but to determine whether there is a legally sufficient basis for submitting the Plaintiffs' claims to the jury.  Most of the Plaintiffs' claims have a legally sufficient basis to go to the jury.  The Court will, however, grant USAA's motion with respect to the Plaintiffs' joint-enterprise claim, part of the Plaintiffs' conspiracy claim, and Lomas Auto Mall's and Lohman Motors' claim with respect to the MVDFA claim.

**I.      THE COURT WILL DISMISS THE JOINT-ENTERPRISE CLAIM AGAINST USAA.**

Rob Treinen, the Plaintiffs' attorney, stated that the Plaintiffs do not oppose dismissing the joint-enterprise claim against USAA.  <u>See</u> Transcript of Trial Day Six at 3:2-3 (Treinen)(taken May 26, 2009)("Tr.").[1]  The Court will therefore dismiss that claim.

**II.     THERE IS A LEGALLY SUFFICIENT EVIDENTIARY BASIS FOR A REASONABLE JURY TO FIND FOR THE PLAINTIFFS ON ONE OF THEIR THEORIES OF CIVIL CONSPIRACY INVOLVING USAA.**

Civil conspiracy claims have three elements: "(1) the existence of a conspiracy; (2) wrongful act done pursuant to the conspiracy; and (3) resulting damages."  <u>Saylor v. Valles</u> ¶ 25, 133 N.M. 432, 439, 63 P.3d 1152, 1159.  In USAA's assessment, the Plaintiffs have two possible theories of conspiracy: (i) that USAA was involved in a conspiracy starting from when it first sought a clean title for the Sierra; and (ii) that USAA became involved in a conspiracy when it, along with Lomas

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

Auto Mall and Lohman Motors, sought to have the New Mexico Motor Vehicle Department ("MVD"), whose internal records listed the Sierra as having a salvage title, issue a new clean title for the Sierra.  At the hearing, Mr. Treinen conceded that the Plaintiffs were no longer asserting that USAA was involved in a conspiracy from when they first sought a clean title for the Sierra.  See Tr. at 9:5-10:4 (Court & Treinen).  Mr. Treinen stated that the Plaintiffs were instead narrowing their claim to USAA being involved in a conspiracy to cover up the Sierra's history.  See id.  Thus, the disputed issue is whether there is sufficient evidence on what USAA has singled out as the Plaintiffs' second theory of conspiracy.

On this issue, the Court believes that there is sufficient evidence to make the question one for the jury.  There is evidence that USAA was working with Lomas Auto Mall and Lohman Motors in procuring a second clean title from the MVD -- a fact which USAA does not appear to dispute. The real issue is whether there is evidence that this concerted activity was aimed towards an unlawful end.

There is testimony that the MVD, as part of the process of having a clean title issued, requested repair estimates.  USAA did not, however, provide its earlier repair estimates, which indicated over $13,000.00 in damage to the Sierra, but rather the MVD was given an inspection report that Tim Lane, a contract inspector, prepared, which indicated no damage to the Sierra. USAA also made statements indicating that it thought that the Sierra should have a clean title. Given USAA's admission during discovery -- which is available as impeachment evidence, although not as a conclusive admission at this point -- and indications in USAA's logbook that the Sierra merited a salvage title, among other evidence, a jury could conclude that USAA thought that the Sierra was salvage but nonetheless told the MVD that the title to the Sierra should be clean.  With evidence that would allow a jury to conclude that USAA considered the Sierra salvage and evidence

that could indicate that USAA, working with Lomas Auto Mall and Lohman Motors, was submitting false or incomplete information to the MVD, a jury could conclude that the three Defendants were working together to cover-up that the Sierra warranted a salvage title.  There is sufficient evidence of a conspiracy to submit the claim to the jury.

III.    **THE PLAINTIFFS HAVE INTRODUCED SUFFICIENT EVIDENCE OF FRAUD BY USAA.**

USAA contends that it is undisputed that USAA always believed that the Sierra was a repairable vehicle that did not deserve a salvage title.  The Court believes, however, that the trial record contains sufficient evidence from which rational jurors could determine otherwise. Accordingly, the Court will allow the fraud claim to proceed.

To prove fraud, the Plaintiffs must show by clear-and-convincing evidence: (i) an omission or misrepresentation of fact; (ii) that was knowingly or recklessly made or omitted; (iii) with intent to deceive; and (iv) that the Plaintiffs relied to their detriment on the misrepresentation or omission. See Krupiak v. Payton, 90 N.M. 252, 253, 561 P.2d 1345, 1346 (1977); NMRA, Civ. UJI 13-1633. Several items of evidence, taken together, would allow a jury to find fraud.  There is evidence in the record that USAA's internal policies call for the Sierra to be salvage.  Dennis Schafer, USAA's inspector, who examined the vehicle for USAA, did not record a shiny spot on the Sierra's axle where the axle was allegedly rubbing on the frame, although M.D. Lohman, who purchased the Sierra from USAA at auction, testified that he saw that spot.  Although USAA's log notes mostly indicate that the Sierra was to be on a clean title, there is at least one entry indicating that a salvage title was appropriate.  The Court believes that such evidence is sufficient to create a question for the jury.

In denying the motion on the fraud claim, the Court recognizes that the Plaintiffs must prove

their fraud claim with clear-and-convincing evidence.  This heightened burden, however, is largely a matter for the jury, not the Court.  USAA cited a case from the United States Court of Appeals for the Tenth Circuit, <u>Roberts v. Wells Fargo AG Credit Corp.</u>, 990 F.2d 1169 (10th Cir. 1993), which seems to place a highly stringent burden on fraud claims.  According to <u>Roberts v. Wells Fargo AG Credit Corp.</u>, a fraud claim may be submitted to the jury only if "facts are produced from which an *irresistible deduction of fraud reasonably arises*."  <u>Id.</u> at 1173 (internal quotation marks omitted, emphasis in original).  If New Mexico followed such an approach, the Court would be more reluctant to let the fraud claim against USAA go to the jury.  <u>Roberts v. Wells Fargo AG Credit Corp.</u>, however, is a case applying Oklahoma law.  That case is not controlling on a fraud claim under New Mexico law.  Under the New Mexico clear-and-convincing evidence standard, which defines such evidence as "evidence that instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true," <u>Chapman v. Varela</u> ¶ 15, 144 N.M. 709, 717, 191 P.3d 567, 575 (Ct. App. 2008)(internal quotation marks omitted, alteration in original), the Court believes that the Plaintiffs are entitled to have the jury decide their fraud claim.  As the New Mexico Court of Appeals has observed, "[e]ven in a case involving issues that must be established by clear and convincing evidence, it is for the finder of fact, and not for reviewing courts, to weigh conflicting evidence and decide where the truth lies."  <u>Id.</u>  (internal quotation marks omitted, alteration in original).

## IV.   THERE IS SUFFICIENT EVIDENCE TO ALLOW THE JURY TO IMPOSE <u>PUNITIVE DAMAGES ON USAA.</u>

USAA's argument against punitive damages is tied to its argument on the fraud claim. Charles Vigil, USAA's attorney, agreed that his arguments against allowing punitive damages were largely the same as his arguments against the fraud claim.  <u>See</u> Tr. at 41:12-17 (Vigil & Court).

Punitive damages may be awarded if the defendant acted willfully, wantonly, maliciously, recklessly, oppressively, or fraudulently.  See Torres v. El Paso Elec. Co., 127 N.M. 729, ¶ 27, 987 P.2d 386, 397 (1999), overruled in part on other grounds by Herrera v. Quality Pontiac, 134 N.M. 43, 73 P.3d 181 (2003).  The same evidence that would allow the jury to find that USAA committed fraud would provide sufficient foundation for an award of punitive damages.

During oral argument, Mr. Vigil raised one issue about punitive damages separate from the arguments against fraud.  He contended that there was no evidence of ratification that would make USAA liable for punitive damages and that Sharon Kunz was not an employee of sufficient rank to serve as a basis for a finding of ratification.  See Tr. at 43:8-44:5 (Vigil & Court).  Under New Mexico law, a company can be liable for punitive damages based upon "the wrongful acts of employees who are acting within the scope of employment and who are employed in a managerial capacity."  Chavarria v. Fleetwood Retail Corp. ¶ 24, 140 N.M. 478, 487, 143 P.3d 717, 726 (2006).  Managerial capacity means "the discretion or authority to speak and act independently of higher corporate authority," and does not require the "upper-level executive authority traditionally considered necessary to trigger imposition of corporate liability for punitive damages."  Id. ¶ 25 (internal quotation marks omitted).  Kunz was the head of the salvage unit involved here, and there is evidence that her decisions on how to treat potential salvage vehicles were decisions made independent of higher authority.  Her involvement is sufficient to provide at least a factual issue for the jury whether the managerial action necessary for punitive damages in New Mexico exists in this case.

## V.   THERE IS SUFFICIENT EVIDENCE TO ALLOW THE CLAIMS AGAINST LOMAS AUTO MALL AND LOHMAN MOTORS TO PROCEED TO THE JURY.

The Plaintiffs have raised a number of claims against Lomas Auto Mall and Lohman Motors:

-8-

(i) fraud; (ii) UPA violations; (iii) MVICSA violations; (iv) MVDFA violations; (v) civil conspiracy; and (vi) joint enterprise.  The fraud and UPA claims overlap to a significant degree, and the Court has little trouble finding sufficient evidence for those claims to go to the jury.  The Court finds that there is sufficient evidence of a conspiracy and a joint enterprise between Lomas Auto Mall and Lohman Motors.  The remaining claims were not specifically discussed, with the exception of the MVDFA claim which the Plaintiffs withdrew, but even assuming that Lomas Auto Mall and Lohman Motors moved for judgment as to those remaining claims, the Court would deny the motion.

### A.     THERE IS SUFFICIENT EVIDENCE OF FRAUD AND VIOLATIONS OF THE UPA TO ALLOW THOSE CLAIMS TO PROCEED.

The fraud and UPA claims are similar.  Both ultimately turn on whether Lomas Auto Mall and Lohman Motors failed to disclose certain information.  Because the Court finds sufficient evidence of relevant non-disclosures, these claims may proceed to the jury.

There is evidence that M.D. Lohman inspected and performed repairs on the Sierra, and that he noticed the shiny spot on the Sierra's axle.  Lomas Auto Mall also had an inspection done.  Although there is no direct evidence that either knew about the title problems at the time of the Sierra's sale, there is evidence that good title had not passed and, given the problems that occurred later, evidence that an inspection of the title history would have uncovered that the MVD had the title listed as salvage.  Thus, a jury could find that the Sierra had damage and was unsafe, that it was a salvage vehicle, and that Lomas Auto Mall and Lohman Motors knew these facts but knowingly, intentionally, or recklessly, failed to disclose them.  Because a jury could reasonably draw these conclusions from the evidence, there is a sufficient basis to submit these claims to the jury.

**B.     THERE IS SUFFICIENT EVIDENCE OF CONSPIRACY AND JOINT ENTERPRISE FOR THOSE CLAIMS TO PROCEED.**

There is considerable evidence that the relationship between Lomas Auto Mall and Lohman Motors was unusual.  There is no master agreement that describes this relationship, so the Court and the jury are left with evidence about their working relationship with each other.  While there is evidence that they were distinct entities, there is also evidence of each of the elements of joint enterprise.  In addition, there is evidence supporting the Plaintiffs' conspiracy claim.

> A joint adventure or joint enterprise
>
> is formed when, by agreement between the parties to the joint adventure, the parties combine their money, property or time in the conduct of some particular business deal, agreeing to share jointly in the profits and losses of the venture, and with a right of mutual control over the subject matter of the enterprise or over the property.

Fullerton v. Kaune, 72 N.M. 201, 204, 382 P.2d 529, 532 (1963).  There is evidence of a joint banking account in Lohman Motors' name, but which Lomas Auto Mall used.  There is also evidence that Lohman Motors used the account to hide assets from a judgment in another case.  The Plaintiffs' expert witness described the relationship between the two dealerships as being highly unusual based upon his experience.  Lane, who had received work from both Lomas Auto Mall and Lohman Motors over the years, testified that he thought they were basically the same entity.  There is evidence that the floor-planning or consignment arrangements between the two was unusual.  There is evidence that the two shared in the profits from vehicle sales and were financially related.  From this and other evidence, a jury could conclude that the two were in a joint enterprise.

By itself, the evidence underlying a joint-enterprise claim is not sufficient for the conspiracy claim.  This evidence, however, helps support a conspiracy claim because it is evidence of a close and unusual relationship between Lomas Auto Mall and Lohman Motors.  And other evidence in the record fills in the gaps sufficiently to allow a rational jury to find a civil conspiracy.

-10-

This additional evidence includes pattern and practice evidence regarding Lohman Motors and Lomas Auto Mall working together on a number of occasions to buy vehicles with various degrees of damage, and then selling those vehicles without disclosing that history. The evidence supporting the fraud and related claims, which supports the two dealerships acting similarly with the Sierra, ties this past practice to the case here. With evidence of non-disclosures in the Sierra case and in similar cases in the past, and with evidence of the close relationship between the two dealerships, a rational jury could find that the two had a tacit agreement to sell vehicles without disclosing damage or title issues, and that the Sierra was one such vehicle that they sold.

C.     **THE COURT WILL DISMISS THE MVDFA CLAIM, BUT THERE IS SUFFICIENT EVIDENCE TO SUBMIT THE REMAINING CLAIMS AGAINST LOMAS AUTO MALL AND LOHMAN MOTORS TO THE JURY.**

Several of the claims were not specifically discussed during the hearing, so it is unclear whether Lomas Auto Mall's and Lohman Motors' oral motion was meant to address all claims or only those claims discussed. The Plaintiffs stated that, because it was essentially the same as the fraud claim, they were not were not pursuing the MVDFA claim. See Tr. at 64:4-21 (Treinen, Court & Steinbook). As stated at the hearing, the Court will therefore dismiss that claim. On the remaining claims, for violations of the MVICSA and for breach of warranty of title, the Court finds that, assuming the motion encompasses those claims, there is sufficient evidence for the claims to proceed. Breach of warranty of title requires that the Plaintiffs prove that they did not receive good title or that title was not rightfully transferred to them. See N.M.S.A. 1978 § 55-2-312(1)(a). Given that the Sierra should have had a salvage title and given the Sierra's title history, a jury could reasonably find for the Plaintiffs on this claim. Violations of the MVICSA, on the Plaintiffs' theory, requires proof that Lomas Auto Mall and Lohman Motors, with an intent to defraud, failed to show the Plaintiffs the Sierra's title certificate or obtain their signature on it. See Yazzie v. Amigo

-11-

Chevrolet, Inc., 189 F.Supp.2d 1245, 1247-48 (D.N.M. 2001); 49 C.F.R. § 580.5(c).  The same evidence supporting the common-law fraud claim can provide evidence of intent here and the testimony of the Plaintiffs, which indicates they did not see the title when buying the Sierra, which apparently was going to be mailed to them later, is sufficient to support the second element.

## VI.     THERE IS SUFFICIENT EVIDENCE THAT IADSC COMMITTED FRAUD AND VIOLATED THE UPA.

As with Lomas Auto Mall and Lohman Motors, the fraud and UPA claims asserted against IADSC are intertwined.  IADSC contends that there is no evidence that its actions were anything more than a mistake.  The Court disagrees.  After listening to the parties' argument, the primary issues are whether Leo Martinez was following or whether he believed he was following MVD policy when he removed the Sierra's salvage brand.  The Court concludes that this issue is a disputed one, and thus the Plaintiffs' case against IADSC should go to the jury.

Section U of the MVD policy manual could be read as precluding a salvage title from being removed.  According to Section U: "Any time a vehicle is transferred and the origin document is a **Certificate of Title branded as 'SALVAGE,'** all subsequent Titles issued must be branded and stamped **'Salvage.'**"  Plaintiffs' Exhibit 40, MVD Policy Manual Excerpt (bold in original).  The portion of the manual provided to the Court does not define origin document and none of the parties have proffered any other regulation or document that purports to define origin document.  Based upon what the Court has before it, because a salvage title can be an origin document, it appears that, when a salvage title is obtained, Section U would preclude the brand from being removed absent some exception.  By its terms, Section U does not state that it admits of exceptions, but the Court is persuaded that Section U is not an absolute prohibition.  First, the existence of Section T, describing the procedure for removing a salvage brand from a recovered theft vehicle where the

vehicle was recovered after being issued a salvage title, indicates that there are situations in which a salvage title can be removed.  Second, if read as an absolute ban, Section U would lead to the absurd result that, if a version of events such as what IADSC argues were true, a mistaken salvage title could never be removed despite a simple mistake in transferring the title.

The policy manual does not have any provision allowing for removal of salvage brands -- other than Section T, which the parties seem to agree -- and the Court agrees as well -- is not directly applicable to the situation here.  Leo Martinez, the IADSC employee who worked on the Sierra's title, also testified that he agreed that the manual did not contain any applicable exception, but that he was relying on MVD officials giving him permission over the telephone.  The Court believes that, because Section U could allow for exceptions, MVD would be able to adopt a policy allowing for removal of salvage brands or otherwise grant permission to remove brands.  Whether MVD has such an unwritten policy or gave such permission, however, is a factual issue.  The policy manual appears to be at a level below both statutes and formally promulgated regulations, so the Court does not see a problem with the policy being unwritten or with case-by-case permission being given.  Moreover, minor government regulations, laws, and policies, when not publicly available and when the Court has not been provided with a copy of such policies, are factual issues.  See Chavez-Rodriguez v. City of Santa Fe, 2008 WL 5992271 at *13 (D.N.M.)(discussing municipal law).  While the Court has some of the policy manual, the Court does not have the entire manual, nor, by definition, does it have a definitive statement of any unwritten policy or procedure for obtaining permission to remove a salvage brand.  Martinez' testimony, if believed, would establish that the MVD gave permission to remove the brand.

On the other hand, there is evidence which, taken together, would allow the jury to conclude that Martinez did not have such permission.  First, Martinez testified that there was no written policy

allowing for the removal.  That MVD had no written policy about removing salvage brands -- not even so much as a statement that MVD officials can authorize such removal -- could strike the jury as suspicious, given the detail of the other provisions, including Section T, and that such a fact could create an enormous hole in New Mexico's regulatory scheme: Any time a person "washed" a title from salvage to clean, he or she would simply state he or she got permission from the MVD. Second, Section T, the only example in the record of a policy allowing removal, requires the submission of various documents to ensure that removal of the brand is proper.  Martinez' approach purportedly involved nothing more than calling an MVD official and saying that he made a mistake. A jury might find this approach at odds with the only indication in the record of a formal policy for removal.  Finally, and most importantly, the only other evidence in the record about people attempting to remove a salvage brand concerns the efforts to obtain a second clean title.  In that situation, the MVD apparently required the submission of supporting documentation, which is more in line with the procedure laid out in Section T and contrasts with what Martinez testified MVD allowed him to do.  Considering these items of evidence together, a jury could conclude that Martinez was not following MVD policy or properly getting permission to remove the salvage brand, and that he did so knowingly.

Michael Danoff, IADSC's counsel, also argued that Section U does not apply to IADSC at all and that IADSC thus does not need to rely on any exception.  Nothing in the language of Section U indicates it is of such limited applicability. Mr. Danoff contended that, given IADSC's ministerial role in the title process, which is performed for a few dollars per title, that section should not apply and that, if IADSC had not followed the request to obtain a clean title, it would be sued for refusing. This fear is unlikely to be realized.  The Court sees nothing odd about requiring a title processor to follow MVD policy even if a customer requests otherwise.  If these policies did not apply, it would

-14-

create a loophole in the titling law despite no express language creating such a loophole.  Nor does

the Court believe that, if IADSC refused to procure a clean title, it would be sued.  The Court fails

to see why IADSC could not, if it believed that following that order would run against MVD policy,

decline to follow the order and return the customer's money.  In sum, the Court does not see any

reason why Section U would not be applicable.  IADSC therefore needs to rely on some exception

to justify its actions, which makes the question a factual question.  The Court believes that there is

sufficient evidence on both the Plaintiffs' fraud claim and UPA claim against IADSC to go to the

jury.

**IT IS ORDERED** that USAA's Motion for Judgment as a Matter of Law on Plaintiffs'

Claims for Punitive Damages, Fraud, Civil Conspiracy and Joint Enterprise is granted in part and

denied in part; Defendants Lomas Auto Mall, Inc.'s and M.D. Lohman d/b/a Lohman Motors' oral

motion for judgment as a matter of law during the trial on May 26, 2009 is granted in part and

denied in part; and (iii) Defendant Independent Auto Dealers Service Corporation, Ltd.'s oral

motion for judgment as a matter of law during the trial on May 26, 2009 is denied.  The Court will

dismiss the joint-enterprise claim against USAA and will dismiss the civil conspiracy claim against

USAA with respect to the time before USAA began seeking a second clean title for the Sierra.  The

Court will also dismiss the MVDFA claim against Lomas Auto Mall and Lohman Motors.  The

Court will otherwise deny the motions.

_____
UNITED STATES DISTRICT JUDGE

-15-

*Counsel*:

Richard N. Feferman
Rob Treinen
Charles S. Parnall
Feferman & Warren
Albuquerque, New Mexico

     *Attorneys for the Plaintiffs and Counterclaim Defendants*

William F. Davis
Charles R. Hughson
Brett Steinbook
William F. Davis & Associates, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants and Counterclaimants Lomas Auto Mall, Inc.*
       *and M.D. Lohman d/b/a Lohman Motors*

Judd C. West
Michael Neill
Doughty and West, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant Western Surety Company*

Mark J. Klecan
Klecan & Childress
Albuquerque, New Mexico

-- and --

Charles J. Vigil
Leslie McCarthy Apodaca
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

-- and --

Jeffrey W. McElroy
John Paul Valdez
Ray, Valdez, McChristian & Jeans, P.C.
El Paso, Texas

-- and --

Robert E. Valdez
Lynn Rada
Ray, Valdez, McChristian & Jeans, P.C.
San Antonio, Texas

    *Attorneys for Defendant USAA Casualty Insurance Company d/b/a USAA*

Michael L. Danoff
Michael L. Danoff & Associates, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Independent Automobile Dealers Service*
     *Corporation, Ltd. and New Mexico Independent Automobile Dealers*
     *Association, Inc.*