IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DELFINO PEDROZA and LILIANA ANDRADE,

      Plaintiffs,

vs.                                                                          No. CIV 07-0591 JB/RHS

LOMAS AUTO MALL, INC.; M.D. LOHMAN d/b/a
LOHMAN MOTORS; WESTERN SURETY COMPANY;
USAA CASUALTY INSURANCE COMPANY d/b/a USAA;
and INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD.,

      Defendants.

LOMAS AUTO MALL, INC. and M.D. LOHMAN
d/b/a LOHMAN MOTORS,

      Third Party Plaintiffs,

vs.

INDEPENDENT DEALERS SERVICE
CORPORATION, LTD. and NEW MEXICO INDEPENDENT
AUTOMOBILE DEALERS' ASSOCIATION, INC.,

      Third Party Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Western Surety Company's Motion

for Summary Judgment on Its Cross-Claims, filed October 9, 2009 (Doc. 506).  The Court held a

hearing on March 26, 2010.  The primary issue is whether Defendant Western Surety Company is

entitled to indemnity by Defendants M.D. Lohman d/b/a Lohman Motors and Lomas Auto Mall, Inc.

("the Dealer Defendants"). Because the Court can find as a matter of law that Western Surety is

entitled to indemnification from both Dealer Defendants, because such a claim for indemnification under New Mexico law entitles Western Surety to its reasonable attorneys' fees incurred in the underlying litigation, and because the Court finds that the fees that Western Surety seeks by this motion are reasonable, the Court will grant the motion.  Because the Court's calculation of the total fees that Western Surety incurred, as reflected in its account statements, add up to less than the $68,046.83 that it requests, the Court will award it damages in an amount less than it seeks.

## FACTUAL BACKGROUND

Dealer Defendants are car dealerships in Albuquerque, New Mexico.  Under New Mexico law, to be licensed as a dealer, wholesaler, distributor, auto recycler, or title-service company, the person or entity must first "procure and file with the department a corporate surety bond in the amount of fifty thousand dollars ($50,000)."  NMSA 1978,  § 66-4-7A.  Both Lohman Motors and Lomas Auto Mall sought such a surety bond from Western Surety.  See Affidavit of Tom Snyder ¶¶ 2-3, at 1-2 (executed Oct. 9, 2009), filed October 9, 2009 (Doc. 506-5)("Snyder Aff."); id. at ¶¶ 8-10, at 2.  In seeking those bonds, the Dealer Defendants filled out bond applications on Western Surety's Form 10.  See Motion Exhibits B & E.[1]  Based on those applications, Western Surety, as surety, issued bonds to both Dealer Defendants.  See Motion Exhibits A & C.[2]

---

[1] While Western Surety was able to supply a signed Form 10 for Lohman Motors, the application purporting to be for Lomas Auto Mall is unsigned.  See Response at 4 (citing Motion Exhibit E).  Western Surety does not seek indemnity from Lomas Auto Mall on the basis of the contractual indemnity provision in that application.  Because Western Surety issued a bond on Lomas Auto Mall's behalf, however, the Court finds it likely that Lomas Auto Mall filled out a similar form.  The Court does not, however, base its legal conclusions on this background fact.

[2] The bond requirement is intended to protect consumers.  See Prince v. Nat'l Union Fire Ins. Co., 75 N.M. 313, 316, 404 P.2d 137, 139 (1965)("The reason for the bond is to protect 'purchasers' because of failure of title. . . .  The bond is to protect against failure of title or fraud at the time of the purchase . . . .").  If a customer has certain claims against a dealer, and yet the dealer is insolvent, the customer can recover up to $50,000.00 from surety, who guarantees payment on the bonds.

## PROCEDURAL BACKGROUND

On June 19, 2007, Plaintiffs Delfino Pedroza and Liliana Andrade sued Lohman Motors, Lomas Auto Mall, and several other Defendants, asserting claims for fraud, violation of the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 through 57-12-26 ("UPA"), violation of the New Mexico Motor Vehicle Dealers Franchising Act, NMSA 1978, §§ 57-16-1 through 57-16-16, breach of warranty, and civil conspiracy. See Complaint for Damages and for Declaratory Relief and Jury Demand, filed June 19, 2007 (Doc. 1). Western Surety was a named party to the lawsuit pursuant to NMSA 1978, § 66-4-7B. See Second Amended Complaint ¶ 82, at (Doc. 347). The case was ultimately tried to a jury starting on May 18, 2009. See Clerk's Minutes Before the Honorable James O. Browning, filed May 18, 2009 (Doc. 467). The jury returned a verdict on May 28, 2009, in which the jury found Lohman Motors liable for fraud and willful violation of the UPA, found Lomas Auto Mall liable for breach of warranty of title, and found both Dealer Defendants liable for civil conspiracy to violate the Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §§ 32701 through 32711. See Special Verdict Form at 2-6, filed May 28, 2009 (Doc. 461). The Court entered a judgment on the verdict on September 3, 2009, in which it found Western Surety jointly and severally liable with the Dealer Defendants as guarantor on the above-referenced surety bonds. See Judgment Order ¶¶ 4-6, at 2, filed September 3, 2009 (Doc. 489). The judgment against Western

---

Section 66-4-7 states:

> The bond shall be payable to the state <u>for the use and benefit of the purchaser and the purchaser's vendees</u> [for] failure of the title of the vendor, by any fraudulent misrepresentations or by any breach of warranty as to freedom from liens on the motor vehicle or motorcycle sold by the dealer, wholesaler, distributor, . . . or auto recycler.

NMSA 1978, § 66-4-7 (emphasis added).

Surety arises from the Dealer Defendants' actions.  See id.

**1.     Assertions in the Briefs.**

Western Surety moves the Court for summary judgment on Western Surety's cross-claim for indemnification against Lomas Auto Mall and for summary judgment on its cross-claim for indemnification against M.D. Lohman.  In this motion, Western Surety contends that, within the application for the surety bond, which Lohman signed, there is a clause providing that M.D. Lohman is a guarantor, and will personally hold harmless and indemnify Western Surety for liability, loss, cost, attorney's fees, and expenses which Western Surety sustains as surety or by reason of having been surety on the bond.  See Motion at 2-8, Snyder Aff. ¶¶ 2-5, at 1-2; Motion Exhibit B.  Lohman Motors contends that a genuine issue of material fact exists about this provision, contends that the exhibits upon which Western Surety relies do not prove that the language Western Surety asserts is in the application is truly present.  Specifically, Lohman contends that the substantive provisions in the application are illegible.

Western Surety issued a Vehicle Dealer or Dismantler Bond to Lohman.  See Snyder ¶ 6, at 2;  Motion Exhibit A.  The bond issued to Lohman was in effect as of February 6, 2004, and was in effect on the date of the sale of the vehicle to the Plaintiffs.  See Snyder Aff. ¶ 7, at 2; Motion Exhibit A.  Western Surety contends that Lohman is a guarantor of the bond, and agreed to personally hold harmless and indemnify Western Surety for liability, loss, cost, attorney's fees, and expenses that Western Surety sustains as surety or by reason of having been surety on the bond.  See Snyder Aff. ¶ 3, at 1-2; Motion Exhibits B & E.  Lohman again contends that a genuine issue of material fact exists as to the existence of a guarantee from Lohman.  Lohman asserts that the documents which Western Surety references do not establish Lohman's guaranty liability.  Lohman maintains that the application is illegible, and that Exhibit E is an unsigned form and has nothing

to do with Lohman.  Lohman asserts that it is incumbent on Western Surety to produce a legible signed document, especially where the original should be obtainable from Western Surety's agent. See Dealership Defendants' Response to Western Surety Company's Motion for Summary Judgment on its Cross-Claims at 2, filed January 11, 2010 (Doc. 528)("Response").

Western Surety maintains that every Vehicle Dealer or Dismantler Bond that it issues requires the applicant's personal guarantee.  See Snyder Aff. ¶ 5, at 2.  The Dealership Defendants maintain that a statement of ordinary business practice is insufficient to establish, as an undisputed fact, that the described practice was followed in this instance.  See Response at 3.  The Dealership Defendants did not, however, introduce any evidence to dispute Western Surety's factual assertion, thus the Court will accept the statement as true.  The Dealer Defendants also assert that the bond documents themselves have no indemnity provision and that there is thus no evidence that there is indemnity agreement between Western Surety and the Dealer Defendants.  See Response at 3 (citing Motion Exhibits A & C).

Western Surety issued a bond to "Donald W. Richesin d/b/a Lomas Auto Mall" and not to "Lohman Auto Mall."  Response at 3; Motion Exhibit C; Snyder Aff. ¶ 9, at 2.  The bond issued to Richesin d/b/a Lomas Auto Mall was in effect as of April 1, 2003 and was in effect on the date of the sale of the vehicle to the Plaintiffs.  See Snyder Aff. ¶ 10, at 2; Motion Exhibit C.  The Dealer Defendants assert that Lomas Auto Mall, the Defendant in this matter, is a different entity than Richesin d/b/a Lomas Auto Mall, and thereby implicitly argue that the surety bond that Western Surety attached to its motion does not evidence a legal relationship between Western Surety and Lomas Auto Mall.  See Response at 4.  The Dealer Defendants also point out that the jury made no findings with respect to Richesin or Richesin d/b/a Lomas Auto Mall.  See id.

Western Surety initially asserted that it is jointly and severally liable to the Plaintiffs for

actual damages in the amount of $13,202.95 based on the jury's finding of liability and damages as to Lohman Motors, and jointly and severally liable to the Plaintiffs for $3,210.95 based on the jury's finding of liability and damages as to Lomas Auto Mall.  See Motion at 7 (citing Judgment Order ¶¶ 4-5, at 2).  It also asserts that, in defending this action, Western Surety incurred attorneys' fees and costs of $68,046.83.  See Motion at 7 (citing Snyder Aff. ¶ 12, at 3).  The Dealer Defendants respond that Western Surety is no longer liable to the Plaintiffs because Lohman Motors has satisfied the judgments against both Dealer Defendants, and that Western Surety has failed to provide the necessary documentation to prove that it incurred the attorneys' fees and costs that it seeks in its motion.  See Response at 3.  The Dealer Defendants affirmatively assert that Lohman Motors has paid all actual and punitive damages awarded to the Plaintiffs and that Western Surety's liability was limited to the terms of the surety bond.  See id.

       **2.**       **Arguments in the Briefs**.

In their briefs, Western Surety asserts essentially three arguments, and those arguments are somewhat difficult to disentangle.  It appears that Western Surety asserts a right to indemnity against the Dealer Defendants because: (i) there is a pre-existing legal relationship between Western Surety and the Dealer Defendants; (ii) Western Surety was held liable without fault; and (iii) there is a contractual indemnity provision in both the bond applications and the bonds themselves.  See Motion at 8-10.  Western Surety then asserts that it is entitled to indemnity even if there was no preexisting legal relationship.  See Motion at 10-11.

The Dealer Defendants respond first by asserting that Western Surety cannot have a right to indemnity when they are no longer liable to the Plaintiffs because Lohman Motors satisfied the judgment.  See Response at 5 (citing Partial Satisfaction of Judgment as to M.D. Lohman d/b/a Lohman Motors Only, filed December 11, 2009 (Doc. 523)).  They then assert: (i) that Western

Surety has not shown a contractual relationship between it and Lomas Auto Mall; (ii) that the contract with Lohman Motors is illegible and therefore does not establish as a matter of law that an indemnity provision exists therein; (iii) that there is no factual basis for an implied contractual indemnity provision; (iv) that Western Surety did not participate at trial and therefore had no reason to incur defense costs, so the Dealer Defendants should not be liable for them; (v) that the Dealer Defendants are not, between themselves, jointly and severally liable for indemnity; and (vi) that Western Surety should not be entitled to recover $68,046.83 in attorneys fees and costs "without substantiation of that amount or its reasonableness."  Response at 5-9.

### 3. Concessions and Arguments at the Hearing.

At the Court's March 26, 2010 hearing, Judd West, Western Surety's attorney, conceded that, since the filing of the motion, Lohman Motors had satisfied the judgments against both Dealer Defendants.  See Transcript of Hearing at 4:7-5:1 (taken March 26, 2010)("Tr.")(West);[3] Tr. at 8:5-14 (Court, Davis); id. at 10:7-11 (Court, West).  Mr. West thus agreed that the only issue to be resolved is whether Western Surety is entitled to its defense costs and attorneys' fees.  See Tr. at 4:7-13, 5:2-4 (West)("[A]t this point in time the only outstanding issue is Western Surety Company's right to indemnification of its defense costs and fees.").  Mr. West explained that, to the extent that Western Surety had ever asserted a claim for contractual indemnity against Lomas Auto Mall, it has withdrawn that claim and seeks indemnity only under a common-law theory.  See Tr. at 4:14-5:1 (West).  Western Surety's claim of indemnity against Lohman Motors, however, remains contractual in nature, and Mr. West argued that the combination of evidence of the content of the indemnity provision in Lohman Motors' bond application overcomes the legibility problem that the

---

[3] The Court's citations to transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Dealer Defendants assert.  <u>See</u> Tr. at 5:5-25 (West).  Mr. West cited the Court to an alleged concession in Lohman Motors' Answer to Western Surety's cross-claim, wherein Lohman Motors conceded that the bond application included an indemnity provision with the language that Western Surety asserts.

Mr. West argued, regarding the distinction between Defendant Lomas Auto Mall and Richesin d/b/a Lomas Auto Mall, that a rider to the bond agreement issued to Lomas Auto Mall bridged the gap and demonstrated that it is Lomas Auto Mall, Inc., the Defendant in this case, that was the other party to the bond agreement with Western Surety.  <u>See</u> Tr. at 10:21-11:3 (West). Mr. West also clarified, in response to a concern expressed by the Dealer Defendants' attorney William Davis, that it considered its claims against Lohman Motors and Lomas Auto Mall to be independent claims, and did not seek joint and several liability as between the Dealer Defendants. <u>See</u> Tr. at 11:4-13:12 (West).

<u>**NEW MEXICO LAW REGARDING INDEMNITY**</u>

Indemnification can take several forms in New Mexico.  "Under traditional indemnification an indemnitee is entitled to be made whole by a third party such as the primary wrongdoer."  <u>In re Consol. Vista Hills Retaining Wall Litig.</u>, 119 N.M. 542, 545, 893 P.2d 438, 441 (1995)(citing <u>Rio Grande Gas Co. v. Stahmann Farms, Inc.</u>, 80 N.M. 432, 436, 457 P.2d 364, 368 (1969)).  "The right to indemnification may be established through an express or implied contract, or 'may . . . arise without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory.'"  <u>In re Consol. Vista Hills Retaining Wall Litig.</u>, 119 N.M. at 546, 893 P.2d at 442 (quoting W. Keeton, <u>Prosser and Keeton on the Law of Torts</u> § 51, at 341 (5th ed. 1984)).  Although some preexisting legal relationship is thought to be required for traditional indemnification, the Supreme Court of New Mexico has "observe[d] that no New Mexico case actually has denied

indemnification to a passive wrongdoer because of the absence of an independent, preexisting legal relationship." In re Consol. Vista Hills Retaining Wall Litig., 119 N.M. at 546, 893 P.2d at 442.

"In essence, traditional indemnification is a judicially created common-law right that grants to one who is held liable an all-or-nothing right of recovery from a third party." Id. at 545, 893 P.2d at 441.  "The purpose of traditional indemnification is to allow a party who has been held liable without active fault to seek recovery from one who was actively at fault.  Thus the right to indemnification involves whether the conduct of the party seeking indemnification was passive and not active or in pari delicto with the indemnitor." Id. at 546, 893 P.2d at 442.  New Mexico courts have defined "active" and "passive" conduct:

> Active conduct is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had a duty to perform. Passive conduct occurs when the party seeking indemnification fails to discover and remedy a dangerous situation created by the negligence or wrongdoing of another.

Id. at 547, 893 P.2d at 443.  Where a party fails to discover and remedy a dangerous situation, the conduct is passive; where a party does nothing after discovering the dangerous condition, the conduct is active.  See id. at 547, 893 P.2d at 443.  Indemnification is appropriate only where the party seeking indemnification was passively negligent -- or, presumably, non-negligent; if the party was actively negligent, indemnification is barred.  See id. at 546, 846 P.2d at 442.

In addition to traditional indemnification, New Mexico also recognizes what is called proportional indemnification.  In line with New Mexico's general policy favoring the equitable apportionment of fault, the Supreme Court of New Mexico in In re Consolidated Vista Hills Retaining Wall Litigation "adopt[ed] the doctrine of proportional indemnification under which a defendant who is otherwise denied apportionment of fault may seek partial recovery from another

-9-

at fault." Id. at 552, 893 P.2d at 448.  Proportional indemnification is necessary only in situations where fault is not apportioned among parties.  For example, actions for negligence are governed by comparative fault, which apportions fault among tortfeasors, so traditional indemnity principles apply because each tortfeasor is liable only for his or her share of the fault, and will never pay more damages than his or her share.  See id. at 552, 893 P.2d at 448  Proportional indemnity applies when the one seeking indemnification "has been adjudged liable for full damages on a third-party claim that is not susceptible under law to proration of fault among joint tortfeasors." Id. at 552, 893 P.2d at 448.  "[P]roportional indemnification applies only when contribution or some other form of proration of fault among tortfeasors is not available." Id. at 552-53, 893 P.2d at 448-49.  Thus, for example, when a plaintiff chooses to sue under breach of contract, a defendant "should be able to seek proportional indemnification for that percentage of fault attributable to" another. Id. at 552-53, 893 P.2d at 448-49.

## AVAILABILITY OF ATTORNEYS' FEES
## IN ACTIONS FOR INDEMNIFICATION

As the Court has recently explained:

> "In a diversity action, a party's right to attorney fees under a contract is determined by reference to state law." Rockwood Ins. Co. v. Clark Equip. Co., 713 F.2d 577, 579 (10th Cir. 1983).  See Mangold v. Calif. Pub. Utils. Comm'n, 67 F.3d 1470, 1478-79 (9th Cir. 1995)(stating that state law controls the method of calculating attorneys' fees awarded in state-law cases in federal court under diversity jurisdiction).  New Mexico applies the American Rule regarding attorneys' fees, where, absent some reason to divert from the general rule, "the prevailing party . . . does not receive attorney fees." Key v. Chrysler Motors Co., 128 N.M. 739, 745, 998 P.2d 575, 581 (Ct. App. 2000)(quoting Schroeder v. Mem'l Med. Ctr., 123 N.M. 719, 721, 945 P.2d 449, 451 (1997)).  See ACLU of N.M. v. City of Albuquerque, 128 N.M. 315, 324, 992 P.2d 866, 875 (1999)("Generally, absent statutory or other authority, each party is responsible for their own attorney fees.").

Mountain Highlands, LLC v. Hendricks, No. CIV 08-0239 JB/ACT, 2010 WL 1631856, at *3 (D.N.M. Apr. 2, 2010)(Browning, J.).  Under New Mexico law, in some circumstances, a plaintiff

can recover attorneys' fees in an indemnity action as an element of damages.  The Supreme Court

of New Mexico has cited approvingly to a section of <u>American</u> <u>Jurisprudence</u> dealing with this

issue:

> It is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages.

> In action of indemnity, brought where the duty to indemnify is either implied by law or arises under a contract, reasonable attorneys' fees incurred in resisting the claim indemnified against may be recovered as part of the damages and expenses.

<u>Dinkle v. Denton</u>, 88 N.M. 108, 112-13, 859 P.2d 345, 349-50 (1961)(quoting 15 <u>Am. Jur.</u> *Damages*

§ 144, at 552).  The United States Court of Appeals for the Tenth Circuit, interpreting New Mexico

law, has also found that an indemnity-plaintiff can recover attorneys' fees spent in defense of an

action in which the indemnitee's liability to the underlying plaintiff was established.  Citing case

law from across the nation, the Tenth Circuit stated: "It is true that in connection with indemnity

claims recovery may generally be had for attorneys' fees and expenses incurred in defense against

the principal claim, but not for those incurred in establishing the right of indemnity."  <u>Vallejos v.</u>

<u>C.E. Glass Co.</u>, 583 F.2d 507, 510 (10th Cir. 1978).

## RELEVANT LAW ON THE NECESSITY OF EVIDENCE
## OF REASONABLENESS OF ATTORNEYS' FEES

Other questions raised by this case are: (i) whether an award of attorneys' fees must be

reasonable, even when the contract under which they are awarded does not, on its face, require them

to be reasonable; and (ii) what evidence must be provided for the court to determine whether the fees

are reasonable.  While there does not appear to be any New Mexico case law on the former question,

the Court finds that the answer is: yes, under New Mexico law, attorneys' fees awards may be given

only if they are reasonable.  New Mexico law governs what evidence is necessary to decide whether fees are reasonable.

The Court has found no New Mexico case stating that contractual attorneys' fees must be reasonable where the contract does not expressly require that such fees be reasonable.  The only cases on point from other jurisdictions that the Court has found, however, uniformly hold that, based on public policy, the word "reasonable" should be implied in contractual attorneys-fee provisions. Kurtz v. Kurtz, 158 S.W.3d 12, 18 (Tex. App.–Houston [14th Dist.] 2004)("Courts in other jurisdictions have also determined that, as a matter of public policy, reasonableness is an implied term in any contract for attorney's fees. . . .  We agree with this reasoning."); Cooperative Finance Ass'n, Inc. v. Garst, 927 F. Supp. 1179, 1189 (N.D. Iowa 1996)("Even where a contract does not expressly limit the prevailing party's fee claim to fees reasonably incurred, an attorney is only entitled to fees which are fair and just and which adequately compensate him for his services.")(applying Missouri law and quoting Missouri ex rel. Chase Resorts, Inc. v. Campbell, 913 S.W.2d 832, 835 (Mo. Ct. App.1995))(internal quotation marks and alterations omitted); State ex rel. Chase Resorts, Inc. v. Campbell, 913 S.W.2d 832, 835 (Mo. App. E.D. 1995)("Although the policy does not expressly limit Relator's reimbursement to fees reasonably incurred, '[a]n attorney is only entitled to fees which are fair and just and which adequately compensate him for his services.'"); Crest Plumbing and Heating Co. v. DiLoreto, 12 Conn. App. 468, 480, 531 A.2d 177, 183 (App. 1987)("We construe the term "attorney's fees" as an award for *reasonable* attorney's fees" in this case because the term "*reasonable*" is implied by law even when it is absent in the contractual provision")(emphasis in original)(citing  Storm Assocs., Inc. v. Baumgold, 186 Conn. 237, 246, 440 A.2d 306 (1982)); Girard Fire & Marine Ins. Co. v. Koenigsberg, 65 S.W.2d 783, 785 (Tex. Civ. App.–Dallas 1933, no writ)("Where the parties do not expressly agree as to the amount,

-12-

the law raises a promise to pay that which is reasonable.").  Given the careful scrutiny that the Supreme Court of New Mexico mandates for the award of fees, the Court believes that, if it were to face the question whether an award of contractual attorneys' fees must be reasonable, even in the absence of the word "reasonable" in the contract, the Supreme Court would agree with these other courts and find that the word "reasonable" is implied in all attorneys-fee provisions.

There are sound policy reasons for such an implied term.  While it is generally appropriate to interpret a contract as the parties have written it, there is no sound reason to have one party incur fees merely so the other party must to pay them.  Such a plain-meaning construction would occasionally give one party's lawyers a windfall or lead to other monkey business.  Allowing recovery of unreasonable fees might lead to vindictive litigants incurring exorbitant attorneys' fees litigating slam-dunk cases for the sole purpose of gouging their opponents.  Some courts have noted that the attorney is in a fiduciary relationship with his client, and thus cannot charge unreasonable fees because the presumption under our American rule is that the client will be the one to pay them.  See State ex rel. Chase Resorts, Inc. v. Campbell, 913 S.W.2d at 835.  Given this reasoning and the analysis the Supreme Court of New Mexico requires for an award of fees, the Court believes the Supreme Court would adopt this majority rule and read the requirement of "reasonable and necessary" into contractual attorneys-fee clauses.

As to what evidence is necessary to establish the reasonableness of fees, New Mexico law is more established.  Some courts from other jurisdictions have found awards of attorneys' fees reasonable without detailed evidence regarding how the fees were incurred or what services were provided.  The New York Appellate Court stated in Mohawk-Schoharie Production Credit Association of Fultonville v. Wilber, 71 A.D.2d 720, 419 N.Y.S.2d 762 (App. Div. 1979):

[W]hile the record is devoid of specific proof of the work involved and its value, we

find that the preparation and filing of the complaint and amended complaint together
with the appearances in court would justify at least a fee of $2,500 and the plaintiff
is entitled to recover such amount.

71 A.D.2d at 720-21, 419 N.Y.S.2d at 763.  In Ranta v. German, 1 Wash. App. 104, 459 P.2d 961

(App. 1969), the Washington Court of Appeals stated:

We feel competent to pass upon the reasonableness of the attorney's fee on appeal
even though respondents did not detail their services; however, a failure to detail
their services may result in a more modest fee than would have been allowed if
respondents had expended any unusual amount of effort and so advised this court.

1 Wash. App. at 108, 459 P.2d at 964.  And in Phoenix Insurance Co. of Hartford v. Fleenor, 104

Ark. 119, 148 S.W. 650, 654 (1912), the Supreme Court of Arkansas stated:

[T]he record does not show that any proof was taken upon the question of a
reasonable attorney's fee before one was fixed by the court, but he had the whole
matter before him, was familiar with the case, and the service done by the attorneys
therein, and we cannot say that there was no evidence warranting his fixing the
amount of the fee, which was a matter within the discretion of the court. Neither do
we think the amount allowed is excessive.

148 S.W. at 654.

The Court has found no such case from a New Mexico court.  Rather, New Mexico law

requires courts to undertake a detailed five-factor analysis.  See Rivera-Platte v. First Colony Life

Ins. Co., 143 N.M. 158, 184, 173 P.3d 765, 791 (Ct. App. 2007)("In New Mexico, a court

determines the reasonableness of attorney fees by applying the Fryar factors found in Rule 16-

105.")(citing In re N.M. Indirect Purchasers Microsoft Corp. Antitrust Litig., 140 N.M. 879, 908,

149 P.3d 976, 1005 (Ct. App. 2006)).  The relevant factors are:

(i) the time and labor required -- the novelty and difficulty of the questions involved
and skill required; (ii) the fee customarily charged in the locality for similar services;
(iii) the amount involved and the results obtained; (iv) the time limitations that the
client or the circumstances imposed; and (v) the experience, reputation, and ability
of the lawyer or lawyers performing the services.

Mountain Highlands, LLC v. Hendricks, 2010 WL 1631856, at *4 (citing State ex rel. Conley Lott

Nichols Mach. Co. v. Safeco Ins. Co. of Am., 100 N.M. 440, 446, 671 P.2d 1151, 1157 (Ct. App.),

cert. denied, 100 N.M. 327, 670 P.2d 581 (1983)).  It is possible that a court could, in some

circumstances, evaluate the work in a relatively small case without substantial documentation, such

as affidavits or timesheets.  The trial judge has, after all, played a part in the litigation and seen

much of the work product of the attorneys.  On the other hand, in most cases, particularly larger

cases, the attorneys perform much work that the court never sees.  To make an informed analysis

of these five factors, therefore, the court must be aware not only of the total fees incurred, but also

the work performed and the time taken to perform it.  The court will likely already be aware of the

fees customarily incurred for similar services and the result obtained.  The court must be informed,

however, if there were any time limitations that the client or circumstances imposed.  Finally, unless

the bar for that particular legal work in the jurisdiction is small or already known to the judge, the

court will need help -- most likely by affidavit testimony from other attorneys -- to properly assess

the experience, reputation, and ability of the lawyers seeking fees.

## ANALYSIS

Western Surety has been dragged through the course of the underlying litigation because a

surety bond made it jointly and severally liable for up to $50,000.00 of damages against the Dealer

Defendants.   Because  the  Dealer  Defendants  were  found  liable,  Western  Surety  sought

indemnification for any amounts that it might eventually pay in damages to the Plaintiffs and for the

attorneys' fees and costs incurred in engaging in the litigation process to ensure that its interests

were protected.  Western Surety now moves for summary judgment on its indemnity claims, asking

the Court to find as a matter of law that Lohman Motors and/or Lomas Auto Mall must indemnify

it for any amount of the judgment that it pays and for the costs of its defense in this litigation.  At

the hearing, the issue was narrowed to whether it is entitled to indemnification or, more properly

stated, reimbursement, of its costs and fees expended in defense of the underlying litigation. Because a provision in the bond application obligated it to reimburse Western Surety's attorneys' fees and costs, the Court finds that both Dealer Defendants are liable to Western Surety for whatever amount Western Surety can prove was reasonable and necessary to defense of the underlying litigation. Lomas Auto Malls, however, against which Western Surety asserts only traditional, common-law indemnity, is not liable to Western Surety for any fees incurred in pursuing its rights of indemnification.

**I.     LOHMAN MOTORS' SATISFACTION OF THE JUDGMENT DOES NOT RELIEVE IT OF POTENTIAL LIABILITY IF WESTERN SURETY IS ENTITLED TO ITS DEFENSE COSTS.**

The Dealer Defendants spend a paragraph of their response to pointing out that Western Surety is no longer subject to any liability to the Plaintiffs because Lohman Motors has satisfied in full the judgment against the Dealer Defendants, and therefore satisfied the judgment against Western Surety. At the hearing, Western Surety conceded this point and agreed that it appeared that the judgment had been settled. See Tr. at 4:7-5:1(West); id. at 10:7-11 (Court, West). Mr. West insisted, however, that the issue whether Western Surety is entitled to recover its attorneys' fees and costs is still live and, because entitlement to those fees is premised on entitlement to indemnity, the indemnity issue still requires resolution. See Tr. at 4:7-13, 5:2-4 (West). The Court agrees. Because Western Surety is entitled to its reasonable attorneys' fees and costs incurred in defending the underlying litigation if it is entitled to common-law or contractual indemnification, see Vallejos v. C.E. Glass Co., 583 F.2d at 510; Dinkle v. Denton, 88 N.M. at 112-13, 859 P.2d at 349-50, the Court must still decide the indemnification issue. See 1 R. Rossi, Attorneys' Fees § 8:4 (3d ed. 2009)("In actions involving indemnity, brought where the duty to indemnify is either implied by law or arises under a contract, reasonable attorney's fees incurred in resisting the claim

-16-

indemnified against may be recovered as part of the damages and expenses [but] do not extend to services rendered in establishing the right to indemnity.").

## II.     THE BOND APPLICATION THAT LOHMAN MOTORS SIGNED OBLIGATES IT TO INDEMNIFY WESTERN SURETY FOR WESTERN SURETY'S REASONABLE ATTORNEYS' FEES AND COSTS.

The first major issue is whether Western Surety is entitled to indemnification from Lohman Motors.  Against Lohman Motors, Western Surety asserts rights to indemnity arising from the bond application contract and under the common law.  Because the Court finds that the bond application provides Western Surety a right to indemnity, the Court need not address whether traditional, common-law indemnity would also entitle Western Surety to indemnification from Lohman Motors.  As the Court will discuss with respect to Lomas Auto Mall, however, the common law would also provide Western Surety with the relief it seeks.

The Dealer Defendants' primary argument against the liability of Lohman Motors is the alleged unreadability of the indemnity provision in the bond application.  See Response at 6.  They argue that the copy of the bond application that Western Surety provided to the Court is illegible and thus does not establish as a matter of law that an indemnity provision exists that would entitle Western Surety to its attorneys' fees defending the underlying suit against the Dealer Defendants.  Western Surety has attacked this argument from two directions.  First, Western Surety admits that the application it submitted is difficult to read because it had been sent by facsimile transmission back and forth between Lohman Motors, the insurance agency, and Western Surety.  It further admits that it does not have a completely clear copy of the application, but provided the Court with another copy of the bond application, which it asserts is more legible.  See Defendant Western Surety Company's Reply in Support of its Motion for Summary Judgment on its Cross-Claims at 2-3, filed February 12, 2010 (Doc. 541)("Reply"); Reply Exhibits A & B.  Second, Western Surety

-17-

argues that Lohman Motors has already admitted the contents of the bond application in its Answer to Western Surety's cross-claim.  See id. at 3.

The Court finds Western Surety's concession argument compelling.  In its cross-claim, Western Surety made the following factual allegation:

> 12.     The Application for Bond completed by each of the Dealer Defendants provide that Dealer Defendants agreed "[t]o completely INDEMNIFY [WSC] from and against any liability, loss, cost, attorney's fees and expenses whatsoever which [WSC] shall at any time sustain as surety or by reason of having been surety on this bond or any other bond issued for applicant, or for the enforcement of this agreement, or in obtaining a release or evidence of termination under such bonds, regardless of whether such liability, loss, costs, damages, attorney's fees and expenses are caused, or alleged to be caused, by the negligence of [WSC]."

Western Surety Company's Cross-Claim for Indemnification Against Lomas Auto Mall, Inc. and for Indemnification Against M.D. Lohman d/b/a Lohman Motors ¶ 12, at 9, filed July 24, 2008 (Doc. 208).  The Dealer Defendants filed a combined Answer to Western Surety's cross-claims.  The first paragraph of that Answer stated: "Defendants admit paragraphs 1, 3, 4, 5, 6, 7, 8, 11, 12, and 13 of the Cross-Claim."  Answer of Lomas Auto Mall, Inc. and M.D. Lohman to Western Surety Company's Cross-Claims for Indemnification ¶ 1, at 1, filed August 14, 2008 (Doc. 232).  The Dealer Defendants denied the allegations in paragraphs 2, 9, 10, 14, and 15 of Western Surety's cross-claim, but did not object to or deny the assertion in paragraph 12, effectively admitting that each Dealer Defendant signed a bond application with the text asserted in that paragraph.  See id. ¶¶ 2-5, at 2.[4]  Such admissions are binding on a party under both New Mexico and federal law. Under New Mexico law, "[a] defendant is bound by the admissions of its attorney and the same are

---

[4] This admission appears to be equally applicable to Lomas Auto Mall as to Lohman Motors. The Court believes that Western Surety may be relying upon traditional/common-law indemnity against Lomas Auto Mall because it is unable to locate a signed bond application binding Lomas Auto Mall.

an adequate substitute for evidence." Snyders v. Hale, 89 N.M. 734, 736, 557 P.2d 583, 585 (Ct. App. 1976)(citing case law from California, Maryland, and Arizona).   It is even more well-established that, under federal procedural law, any fact alleged in a complaint that is not denied is considered admitted.  See Legal Aid Soc'y of Alameda County v. Brennan, 608 F.2d 1319, 1334 (9th Cir. 1979)("[A]llegations are to be treated as admitted [if] not denied."); McComb v. Blue Star Auto Stores, 164 F.2d 329, 331 (7th Cir. 1947)("Failure to deny the violations alleged constituted an admission of the facts alleged."); Fed. R. Civ. P. 8(b)(6) ("An allegation -- other than one relating to the amount of damages -- is admitted if a responsive pleading is required and the allegation is not denied."); Fed. R. Civ. P. 12(a)(1) ("A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.")(emphasis added).  This alone is likely sufficient to find that Lohman Motors' bond application included the challenged indemnity provision, but there is more.

In addition to Lohman Motors' admission to the contents of the bond application, the Court notes that it has two exhibits -- Exhibits B and E to the motion -- entitled "Application for Bond -- Any Kind," both of which purport to be "Form 10."   While it is true that the fine print of the indemnity provision of Exhibit B, the Form 10 that was signed by M.D. Lohman and which would bind Lohman Motors is illegible on its own, Exhibit E can be easily read.  The Court notes that, although the two forms appear to originate from different surety companies -- Exhibit E bears the logo of CNA Surety and Exhibit B bears the logo of Western Surety, every other field on the two forms appears to be identical.  The word "INDEMNITY" appears in roughly the middle of each form and is followed by an unnumbered paragraph and eleven numbered paragraphs, these paragraphs being in the smallest font of any text on the form.  The relevant language of the indemnity provision of Exhibit E states:

The undersigned applicant and indemnitors hereby request Western Surety Company or any affiliate company . . . to become surety for the above bond. The undersigned hereby certify the truth of all statements in the application, authorize the Company to verify this information and to obtain additional information from any source, including obtaining a credit report at the time of application, in any review or renewal, at the time of any potential or actual claim, or for any other legitimate purposes as determined by the Company in its reasonable discretion, and jointly and severally agree:

* * * *

(2)     To completely INDEMNIFY and the Company from and against any liability, loss, cost, attorneys' fees and expenses whatsoever which the Company shall at any time sustain as surety or by reason of having been surety on this bond or any other bond issued for applicant, or for the enforcement of this agreement, or in obtaining a release or evidence of termination under such bonds; regardless of whether such liability, loss, costs, damages, attorneys' fees and expenses are caused, or alleged to be caused, by the negligence of the Company.

Motion Exhibit E. The Court has compared the otherwise-illegible text of Exhibit B to the motion, and Exhibits A and B to the reply, to the legible text of Exhibit E. With Exhibit E as a guide, the Court was able to identify each of the above words as the words found in the application that M.D. Lohman signed. The Court finds Exhibit E is highly persuasive evidence that the signed application -- Exhibit B to the motion -- contains the same indemnity provision as the legible, unsigned application. The Court concedes that it would not be able to read the signed application without this aid, but is confident that it now knows what each word in Exhibit B is and that there is no question of material fact about its contents.

As further evidence of the content of the application that M.D. Lohman signed, Western Surety provided an affidavit of Tom Snyder, a claims consultant for Western Surety. See Snyder Aff. ¶ 1, at 1. In the affidavit, Snyder states:

[t]he application for the surety bond, which was signed by M.D. Lohman, provides that M.D. Lohman is a guarantor and will personally hold harmless and indemnify Western Surety for liability, loss, cost, attorney's fees and expenses which Western Surety sustains as a surety or by reason of having been a surety on the bond.

-20-

Snyder Aff. ¶ 3, at 1-2.  He further states: "Every Vehicle Dealer or Dismantler bond issued by Western Surety requires a personal guarantee by the applicant."  Id. ¶ 5, at 2.[5]  This affidavit provides further evidentiary support that Lohman Motors' bond application with Western Surety included the asserted indemnity provision.

The Dealer Defendants provide no evidence to the contrary.  They provide no affidavit or other declaration stating that the bond application did not contain the challenged indemnity provision.  Rather, they provide only arguments that the Court should discount the evidence that Western Surety has provided.  Based upon the weight and nature of Western Surety's evidence, the Court finds that there is no genuine issue of material fact that the bond application that M.D. Lohman signed, and which Western Surety attached as Exhibit B to its motion, contains an indemnity provision making M.D. Lohman -- i.e., Lohman Motors -- liable to indemnify Western Surety for the costs and attorneys fees "sustain[ed] . . . by reason of having been surety on this bond . . . , or for the enforcement of this agreement."  Motion Exhibit B; id. Exhibit E.

## III.    COMMON-LAW INDEMNITY PROVIDES A BASIS FOR WESTERN SURETY TO RECOVER ITS DEFENSE COSTS FROM LOMAS AUTO MALL.

As to Lomas Auto Mall, Western Surety does not seek contractual indemnification; rather, it seeks only traditional, common-law indemnification from Lomas Auto Mall.  See Tr. at 4:14-5:1 (West)("The claim against Lomas Auto Mall's a little different in that it's a common-law indemnification cause of action.").  Western Surety takes this approach likely because it has been

---

[5] The Dealer Defendants argue that this general practice "is insufficient to establish, as an undisputed fact, that the described practice was followed in this instance."  Response at 3.  The Court need not take this statement of general practice as conclusively establishing the fact, because there is other circumstantial evidence that further supports a conclusion that there is no genuine issue of material fact that the contract which M.D. Lohman signed contained the indemnification provision which Western Surety asserts that it did.

unable to provide the Court with a signed copy of the bond application relating to Lomas Auto Mall.

In their response, the Dealer Defendants assert:

> Western Surety has failed to demonstrate, as a matter of law, the existence of an express contract between Western Surety and Dealer Defendant Lomas Auto Mall, Inc.  The bond itself is issued to "Donald W. Richesin dba Lomas Auto Mall."  The bond application . . . also identifies the Applicant as Donald W. Richesin dba Lomas Auto Mall.  Further, [the application] is unsigned.

Response at 5.  Nevertheless, the Court finds that traditional indemnification applies in this case and entitles Western Surety to indemnification of attorneys' fees expended in defense of the underlying litigation.

"Under traditional indemnification an indemnitee is entitled to be made whole by a third party such as the primary wrongdoer."  In re Consol. Vista Hills Retaining Wall Litig., 119 N.M. at 545, 893 P.2d at 441 (citing Rio Grande Gas Co. v. Stahmann Farms, Inc., 80 N.M. at 436, 457 P.2d at 368).  "The right to indemnification may . . . arise . . . by operation of law to prevent a result which is regarded as unjust or unsatisfactory.'"  In re Consol. Vista Hills Retaining Wall Litig., 119 N.M. at 546, 893 P.2d at 442 (quoting W. Keeton, supra § 51, at 341).

> The purpose of traditional indemnification is to allow a party who has been held liable without active fault to seek recovery from one who was actively at fault.  Thus the right to indemnification involves whether the conduct of the party seeking indemnification was passive and not active or in pari delicto with the indemnitor.

Id. at 546, 893 P.2d at 442.

The "purpose of traditional indemnification" is fully applicable because Western Surety was held liable without active fault.  Id.  Western Surety's only conduct in connection with the Plaintiffs' loss was its willingness to be surety on a bond that New Mexico law required the Dealer Defendants to obtain.  Nevertheless, the Court's judgment found them jointly and severally liable to the Plaintiffs for the damages incurred.  The purpose of the bond was not to protect the Dealer

Defendants from taking full responsibility for their wrongdoing, but, rather, to protect the consumers -- the Plaintiffs in this case -- from the potential danger that the Dealer Defendants would be insolvent and unable to make them whole.  Because Western Surety knew that it might be held liable to the Plaintiffs, it engaged in the litigation process to protect its interests, but it was in no way at fault for the Plaintiffs' damages.  To force Western Surety to absorb the litigation costs that it incurred because of the Dealer Defendants' wrongful conduct would be a result that the Court would consider "unjust or unsatisfactory."  Id. at 546, 893 P.2d at 442.

To the extent that New Mexico law requires an existing legal relationship before finding a cause of action for traditional indemnity, the Court notes that Lomas Auto Mall admitted to such a legal relationship in response to an interrogatory propounded by Western Surety.  Western Surety asked the Dealer Defendants to "[i]dentify the company that issued the surety bond that covers Lomas Auto Mall for actions undertaken at any time during calendar years 2006 or 2007, the full name of the dealer on this surety bond, the guarantor on this surety bond and the effective dates of this surety bond."  Reply Exhibit C.  The Dealer Defendants' answer to this question, after making some stock objections, was: "A Western Surety bond was in effect at the time of sale to Plaintiffs. Donald W. Richesin is the guarantor on the Western Surety bond for Lomas Auto."  Id. Furthermore, the Court notes again that the Supreme Court of New Mexico has "observe[d] that no New Mexico case actually has denied indemnification to a passive wrongdoer because of the absence of an independent, preexisting legal relationship."  In re Consol. Vista Hills Retaining Wall Litig., 119 N.M. at 546, 893 P.2d at 442.[6]  The Court thus finds, based on the uncontested facts and

---

[6] The Court finds unpersuasive the Dealer Defendants' argument that Western Surety should not be entitled to traditional indemnification because it is not a "passive wrongdoer," arguing that it is not a wrongdoer at all.  See Response at 7 ("In the instant case, Western Surety was never a tortfeasor, active or passive.")(citing Budget Rent-A-Car Systems, Inc. v. Bridgestone Firestone N.

the record before it, that Western Surety has established, as a matter of law, that it is entitled to

traditional indemnification against Lomas Auto Mall.

IV.     **THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT WESTERN SURETY INCURRED ATTORNEYS' FEES OR THE AMOUNT OF THOSE FEES, AND THE COURT CONCLUDES THE FEES WERE REASONABLE.**

The Dealer Defendants argue that, because Western Surety did not participate in the trial of

this matter, it cannot possibly have incurred defense costs, and thus it cannot be awarded those costs.

See Response at 7-9.  It also argues that, if Western Surety incurred $68,046.83 in defense costs, it

cannot recover those costs without providing evidence thereof and proving the reasonableness of

that amount.   See id.  Western Surety's response is that, with its money on the line, it engaged in

defensive litigation even if it did not participate in the trial.  According to Western Surety, it

> was required to participate in discovery and defend its interests in this case.  Western Surety had to respond to Interrogatories and Requests for Production.  Western Surety was required to attend mediation.  Regarding the depositions in this case, Western Surety had to attend these depositions because Western Surety's interests were not the same as the Dealer Defendants as evidenced by the pending cross-claim for indemnification.  Additionally, Western Surety had to participate to protect its interests because Western Surety was informed that Dealer Defendants did not intend to depose Plaintiffs or Plaintiffs' expert.

Reply at 5-6.

As an initial matter, the Court notes that, under New Mexico law, an indemnity-plaintiff can

recover its attorneys' fees spent in defense of suit from which indemnification is sought under both

traditional and contractual indemnity theories.  See Dinkle v. Denton, 88 N.M. at 112-13, 859 P.2d

_____

Am. Tire LLC, 145 N.M. 623, 627, 203 P.3d 154, 158 (Ct. App. 2009).  While Western Surety may not have done anything wrong, it is a proper Defendant liable to the Plaintiffs, and the Court believes that status is sufficient to be considered a "passive wrongdoer" as New Mexico law uses that term.  Western Surety is certainly passive, and, in a very real sense, is in the shoes of a wrongdoer.  This fact, rather than undercutting an argument for indemnification, makes the need for indemnification all the more acute.

at 349-50.  See also Vallejos v. C.E. Glass Co., 583 F.2d at 510 (applying New Mexico law).  The

Court is familiar with the expenses of litigation and understands that much of that expense,

especially in litigation between sophistical entities, can occur pre-trial.  Snyder's affidavit, attached

to Western Surety's motion for summary judgment, stated that Western Surety had incurred

$68,046.83 in attorneys' fees and costs up to the date of filing that motion.  See Snyder Aff. ¶ 12,

at 3.  Western Surety then attached to its reply brief a status sheet purporting to represent fees

incurred in its defense of this suit, which appears to show a total of $66,060.00 in fees that it was

billed, all of which it paid.  See Reply Exhibit F.[7]

### A.   THERE IS NO GENUINE ISSUE OF MATERIAL FACT WHETHER WESTERN SURETY INCURRED FEES.

The first question is whether there is a genuine issue of material fact whether Western Surety

incurred fees or the amount of those fees.  The status sheet and affidavit provide evidence that

Western Surety incurred attorneys' fees, and the amount of those fees.  In response, the Dealer

Defendants provide no evidence to contradict the affidavit or status sheet; rather, they assert only

that the attorneys fees are not properly awarded on summary judgment, and that the fees are

"without substantiation of [the] amount or its reasonableness."  Response at 8.  They do not assert

that the amount is excessive or assert that the fees might not have been incurred in relation to this

suit.  With no evidence to the contrary and no indication that the fees were incurred otherwise than

in defense of the underlying claims against the Dealer Defendants and Western Surety, the Court

finds no genuine issue of material fact whether Western Surety incurred substantial attorneys' fees

and costs.  Nevertheless, because the Court concludes that all awards of attorneys' fees under New

---

[7] As the Court will discuss below, the Court's own calculation of Western Surety's fees and costs, using the accounting statements that Western Surety provided, show that it incurred $64,356.83 in fees and costs during the period of time relevant to this motion.

Mexico law must be reasonable and necessarily incurred, the Court must additionally find that the fees that Western Surety incurred were reasonable and necessarily incurred before it can grant this motion.

> **B.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT THE ATTORNEYS' FEES WESTERN SURETY INCURRED WERE REASONABLE AND NECESSARY.**

The next issue is whether the fees must be reasonable and necessarily incurred, and whether the Court can find, from the evidence before it, that the fees Western Surety incurred in the underlying litigation were reasonable and necessary. The bond application does not provide that the "liability, loss, cost, attorneys' fees and expenses" that Western Surety incurred must be reasonable or necessary for the Dealer Defendants to be liable therefor, but the Court believes that New Mexico law would imply the requirement that the fees be "reasonable and necessarily incurred" into the agreement. E.g., Coop. Fin. Ass'n, Inc. v. Garst, 927 F. Supp. at 1189; Kurtz v. Kurtz, 158 S.W.3d at 18; State ex rel. Chase Resorts, Inc. v. Campbell, 913 S.W.2d at 835; Crest Plumbing and Heating Co. v. DiLoreto, 12 Conn. App. at 480, 531 A.2d at 183; Girard Fire & Marine Ins. Co. v. Koenigsberg, 65 S.W.2d at 785. The Court thus concludes that Western Surety must prove that the fees it incurred defending the underlying claims were reasonable.

"In New Mexico, a court determines the reasonableness of attorney fees by applying the Fryar factors found in Rule 16-105." Rivera-Platte v. First Colony Life Ins. Co., 143 N.M. at 184, 173 P.3d at 791. That rule demands the Court take consideration of

> (i) the time and labor required -- the novelty and difficulty of the questions involved and skill required; (ii) the fee customarily charged in the locality for similar services; (iii) the amount involved and the results obtained; (iv) the time limitations that the client or the circumstances imposed; and (v) the experience, reputation, and ability of the lawyer or lawyers performing the services.

Mountain Highlands, LLC v. Hendricks, 2010 WL 1631856, at *4.

The evidence attached to the motion tells the Court only the lump sum total of fees that Western Surety incurred.  Snyder's affidavit does not purport to assert that the fees incurred were reasonable.  Other documents on file, however, provide the Court with the detail it needs to assess the reasonableness of the attorneys' fees and thereby assess whether a genuine issue of material fact exists regarding Western Surety's damages.  See Defendant Western Surety Company's Motion for Fees and Costs Exhibit B, filed February 12, 2010 (Doc. 542).  The motion for fees was filed on February 12, 2010.  As of April 30, 2010 -- 77 days after the motion for fees was filed -- the Dealer Defendants have not responded to the motion, and the time for a response has long since passed.  See D.N.M. LR-Civ. 7.4(a) (limiting time to respond to a motion to 14 days, unless other law or rule provides otherwise).  Nor have the Dealer Defendants objected to the Court's consideration of the billing statements as evidence of what fees and costs Western Surety incurred, in reference to this motion or the motion for fees.  This tells the Court that the Dealer Defendants do not contest -- and essentially concede --  the accuracy of the records or the reasonableness and necessity of the fees they reflect.  See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979)(stating that a district court ruling on a motion for summary judgment "may: consider stipulations, concessions of counsel, transcripts, exhibits and other papers, [and] take judicial notice, whether requested or not . . . of its own records and files, and facts which are part of its public records.").  The Court will thus consider the statements as a part of the record, to which there has been no objection.  The account statements that Western Surety attached to its motion for fees breaks down the attorneys' fees that it incurred in great detail.  Using this document, the Court believes it can make the final determination necessary to resolve this motion and bring this aged case to a conclusion.

Regarding Western Surety's account statements, the Court notes that Western Surety's

attorneys engaged in block billing, which always makes a reasonableness determination more difficult. For instance, on July 21, 2008, attorney MBN – page 28 of the statement tells the Court that acronym stands for Michael B. Neill -- spent 9.7 hours on the following tasks:

> Final review of documents to prepare for deposition of Sharon Kunz; draft outline of topics to cover and inquire about at deposition of Sharon Kunz; Attend deposition of Sharon Kunz and USAA representative; draft attorney's notes re: deposition of Sharon Kunz/USAA representative.

Statement of Account at 7, filed February 12, 2010 (Doc. 542-2). Insurance companies today generally preclude block billing, but there is nothing unlawful about the practice. When broken down, 9.7 hours is a reasonable time to spend on these tasks. Several times, the Court took its calculator and tried to determine how long it would take a reasonable attorney, in the Court's estimation, to perform the tasks in a block-billed entry, and then compared that sum to the time Western Surety's attorneys took to perform those tasks. Sometimes the Court's estimate was high, other times it was low, but the particular discrepancies did not give the Court substantial concern.

On the other hand, the Court notes that Western Surety's attorneys did not have a stock minimum billing amount -- i.e., if an attorney spent 0.1 hours on a task, he would bill that amount, rather than always billing at least 0.3 hours no matter how little time was actually spent on the task. See, e.g., Statement of Account at 3 (2/27/2008 entry by JWC billed at 0.1 hours); id. at 4 (5/7/2008 entry by MBN billed at 0.1 hours); id. at 8 (entries for 8/15/2008, 8/20/2008, 8/25/2008, and 8/26/2008 billed at 0.1 hours). Overall, the account statements are very detailed. The first entry is on January 2, 2008, and there are 317 entries from that date until the date of the judgment on September 3, 2009. The statements also reflected the total hours and total amount of fees the attorneys billed Western Surety each month. The statements appear to reflect every document that an attorney read, each document that an attorney drafted, and every phone conversation in which

-28-

an attorney participated, but the time billed for each of these services appears to be reasonable.

With respect to the time and labor required, and the novelty and difficulty of the questions involved, and the skilled required, the Court notes that the case involved some complex issues of state and federal law.  The case had several parties with relatively complex relationships, and included cross-claims and counterclaims.  There has been, to date, 550 documents or entries on the Court's docket, and just reading and managing the file has taken a lot of time.  Considering the complexities of the case, and reviewing Western Surety's account statements, the Court finds that the number of hours billed was not unreasonable given the work necessary to litigate this case.

Western Surety's attorneys charged a flat fee of $150.00 per hour in increments of 1/10th of an hour.  For commercial litigation in Albuquerque, New Mexico, the Court finds that this hourly rate is very reasonable.  The Court has, numerous times, approved of rates at or above that amount. See Mountain Highlands, LLC v. Hendricks, 2010 WL 1631856, at *9-10 (approving an hourly rate of $170.00 to $210.00 for commercial litigation); Wiatt v. State Farm Ins. Cos., No. CIV 07-0526 JB/KBM, 2008 WL 2229630, at **4-5 (Mar. 24, 2008)(Browning, J.)(holding that a fee of $200.00 per hour for insurance defense work was reasonable); Applied Capital, Inc. v. Gibson, No. CIV-05-0098 JB/ACT, 2007 WL 709054 at *3 (D.N.M. Jan. 30, 2007)(Browning, J.)(approving hourly rate of $210.00 for commercial-litigation dispute); Allahverdi v. Regents of Univ. of N.M., No. CIV05-0277 JB/DJS, 2006 WL 1304874 at *2 (D.N.M. Apr. 25, 2006)(Browning, J.)(finding hourly rate of $225.00 reasonable); Kelley v. City of Albuquerque, No. CIV 03-507 JB/ACT, 2005 WL 3663515, at **15-17 (Doc. 117)(D.N.M. Oct. 24, 2005)(Browning, J.)(finding $250.00 per hour to be a reasonable rate).  The Court continues to find this hourly rate to be reasonable in general and for the Doughty & West lawyers working on this case.

The Court's analysis of the next two factors -- the amount involved and the results obtained,

-29-

and the time limitations that the client or the circumstances imposed -- do not necessarily favor Western Surety, but neither are they particularly unfavorable.  Western Surety was litigating to protect its interests as a party potentially liable for the wrongdoing of the Dealer Defendants.  The Dealer Defendants were held liable, but, as it turns out, Western Surety did not have to satisfy any judgment.  This result appears to be both a win and a loss.  The Court is also not aware of any particular time constraints under which Western Surety's counsel were performing, but it is aware that this case has seemed to drag on interminably and the Court is unaware of any time constraints created by the case's circumstances.  The Court does not find that either of these factors weigh substantially for or against finding Western Surety's attorneys' fees reasonable.  This case is almost three years old, and when cases last that long, even simple ones cost much more.

Finally, the Court must consider "the experience, reputation, and ability of the lawyer or lawyers performing the services." Mountain Highlands, LLC v. Hendricks, 2010 WL 1631856, at *4.  Although the Court is not extremely familiar with any particular attorney, the Court recognizes the firm of Doughty & West, P.A., and is reasonably familiar with its reputation.  Furthermore, the Court has read the attorneys' briefs and listened to their arguments during hearings, and is convinced that they are, at the very least, competent and worthy of an hourly rate of $150.00.  In short, the Court finds that the fees Western Surety incurred and now seeks to recover are reasonable.  The Dealer Defendants apparently did not review the bills as the Court did and analyze every entry for reasonableness and necessity, or did that review and made no objections.  In any case, the Dealer Defendants have not detailed what more it or the Court needs to determine reasonableness, what a trial would gain the Court that it does not already have, or object to any billed work that Western Surety's attorneys did.  And, because the Dealer Defendants have not provided, and likely cannot provide, any evidence that might controvert the Court's findings as to the reasonableness of those

fees, the Court finds there is no genuine issue of material fact as to reasonableness and will find them reasonable as a matter of law.

The Court finds, however, that the amount of those reasonable fees that Western Surety incurred, according to the account statements that it provided in its motion for fees and costs, do not add up to $68,046.83.  Using the accounting statements, the Court has summed the fees charged for the services rendered from the first billing date through September 3, 2009 -- the date on which the Court entered judgment against Western Surety and the Dealer Defendants -- and, including the fees incurred during that period, arrived at a total of $64,356.83.  This total is $3,690.00 less than Snyder's affidavit states Western Surety incurred and the motion requests.  The Court expects that the discrepancy is a result of Western Surety including fees incurred drafting this motion or doing other work after the date of judgment.  The Court is not prohibiting Western Surety from eventually recovering those fees, but finds that only $64,356.83 of the fees they have incurred are properly characterized as damages flowing from their defense of the underlying claims against the Dealer Defendants.  The Court thus grants Western Surety's motion in all respects except as to the amount of damages, which the Court finds to be $64,356.83.

**IT IS ORDERED** that Defendant Western Surety Company's Motion for Summary Judgment on its Cross-Claims is granted in part and denied in part.  The motion is denied with respect to the amount of damages sought.  The Court finds that the appropriate amount of damages is $64,356.83.  The Court grants the remainder of the motion.

_____
UNITED STATES DISTRICT JUDGE

-31-

*Counsel*:

Richard N. Feferman
Charles S. Parnall
Rob Treinen
Feferman & Warren
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

William F. Davis
Albuquerque, New Mexico

 *Attorney for Defendant Lomas Auto Mall and M. D. Lohman d/b/a Lohman Motors*

Judd C. West
Michael B. Neil
Doughty & West, P.A.
Albuquerque, New Mexico

 *Attorneys for Defendant Western Surety Company*

Mark J. Klecan
Klecan & Childress
Albuquerque, New Mexico

-- and --

Charles J. Vigil
Leslie McCarthy Apodaca
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

-- and --

Jeffrey W. McElroy
John Paul Valdez
Ray, Valdez, McChristian & Jeans, P.C.
El Paso, Texas

-- and --

Robert E. Valdez
Ray, Valdez, McChristian & Jeans, P.C.
San Antonio, Texas

*Attorneys for Defendant USAA Casualty Insurance Company d/b/a USAA*

Michael L. Danoff
Michael L. Danoff & Associates, P.C.
Albuquerque, New Mexico

*Attorneys for Defendant and Third-Party Defendant Independent
    Automobile Dealers Service Corporation, Ltd. and New Mexico
    Independent Automobile Dealers Association, Inc.*