# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DELFINO PEDROZA and LILIANA ANDRADE,

     Plaintiffs,

vs.                                                                    o. CIV 07-0591 JB/RHS

LOMAS AUTO MALL, INC.; M. D. LOHMAN d/b/a
LOHMAN MOTORS; WESTERN SURETY COMPANY;
USAA CASUALTY INSURANCE COMPANY d/b/a USAA;
and INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD.,

     Defendants.


LOMAS AUTO MALL, INC. and M.D.
LOHMAN d/b/a LOHMAN MOTORS,

     Third-Party Plaintiffs,

vs.

INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD. and NEW MEXICO
INDEPENDENT AUTOMOBILE DEALERS'
ASSOCIATION, INC.,

     Third-Party Defendants.

## <u>MEMORANDUM OPINION AND ORDER ENFORCING SETTLEMENT AGREEMENT</u>

**THIS MATTER** comes before the Court on M.D. Lohman d/b/a Lohman Motors' and

Lomas Auto Mall, Inc.'s Motion for Enforcement of Indemnity Provisions of Settlement

Agreement with USAA Casualty Company, filed April 2, 2010 (Doc. 546)("Motion to Enforce

Settlement").  The Court held a hearing on January 25, 2012.  The primary issues are: (i) whether

the Court should re-open this matter under rule 60(a) of the Federal Rules of Civil Procedure; (ii)

whether the Court has jurisdiction over the Motion to Enforce Settlement; (iii) whether the indemnification provision of the Settlement Agreement which Defendants M.D. Lohman d/b/a Lohman Motors ("Lohman Motors"), Lomas Auto Mall, Inc., and USAA Casualty Insurance Company d/b/a USAA ("USAA Casualty") executed requires that a jury find USAA Casualty legally liable or award damages against it before USAA Casualty's indemnification obligations are triggered; and (iv) whether the Settlement Agreement requires USAA Casualty to indemnify Lohman Motors and Lomas Auto Mall (collectively, "the Dealerships") for the jury award against them, the Plaintiffs' Delfino Pedroza and Liliana Andrade's attorneys' fees and costs, Defendant Western Surety Company's attorneys' fees and costs, and the Dealerships' attorneys' fees and costs. Although the Court has entered Final Judgment in this matter and did not expressly retain jurisdiction over the Settlement Agreement, the Court determines that it entered Final Judgment out of an oversight, and it should vacate the Final Judgment under rule 60(a). The Court also determines that it has diversity jurisdiction over the Motion to Enforce Settlement. The Court determines that the Settlement Agreement does not require a finding of legal liability or a jury to award damages against USAA Casualty to trigger USAA Casualty's indemnification obligations in the indemnification provision. Additionally, the Court determines that the Settlement Agreement is unambiguous, that it requires USAA Casualty to indemnify the Dealerships for the jury award against them, and for the Plaintiffs' attorneys' costs and fees, and that it also requires USAA Casualty to indemnify the Dealerships for Western Surety's attorneys' costs and fees and the Dealerships' attorneys' costs and fees, which are attributable to, or arise from actions attributable to, USAA Casualty's titling of a 2005 GMC Sierra truck which the Plaintiffs purchased. On the other hand, the Settlement Agreement does not provide for a blanket

indemnification of all losses the Dealerships incurred after USAA Casualty placed the Sierra truck into the stream of commerce. Accordingly, the Court will not require USAA Casualty to indemnify the Dealerships for the entire sum of their defense costs, unless further evidence is provided to the Court. The Motion to Enforce Settlement is granted in part and denied in part.

## **FACTUAL BACKGROUND**

This matter relates to the Plaintiffs' purchase of the Sierra truck from Lomas Auto Mall on December 29, 2006. At the time of purchase, Lomas Auto Mall did not disclose to the Plaintiffs that the Sierra truck previously had a salvage title and had gone through an eventful history. The Sierra truck was stolen from its original owner, Lori Buckner, in August, 2006. USAA Casualty took title to the Sierra truck in a settlement with Buckner. When CoPart Auto Auctions applied for a title in USAA Casualty's name, the Sierra truck was initially issued a salvage title, but the title was later changed to a clean title. The reasons for this change were at the center of the Plaintiffs' case. See Memorandum Opinion and Order at 2, filed January 20, 2009 (Doc. 344)("Jan. 20, 2009 MOO").

When USAA took title to the Sierra truck, it was damaged, but USAA Casualty considered it uneconomical to repair. See Memorandum Opinion and Order at 3, filed May 16, 2009 (Doc. 437)("May 16, 2009 MOO"); Jan. 20, 2009 MOO at 2-3. CoPart Auction applied for a title for the Sierra truck through Defendant Independent Auto Dealers Service Corporation, Ltd. ("IADSC"), a New Mexico Motor Vehicle Department ("MVD") fee agent, authorized to issue title on the MVD'S behalf. Jan 20, 2009 MOO at 2-3. The Dealerships contended that USAA Casualty authorized CoPart Auction to apply for a clean title, but the Plaintiffs alleged that USAA Casualty initially instructed IADSC to obtain a salvage title. CoPart Auction first received a

salvage title, but then requested a clean title from IADSC.   IADSC then issued a clean title to the

Sierra truck.   Lohman Motors purchased the Sierra truck in an auction from USAA Casualty, and

the Sierra truck was eventually transferred to Lomas Auto Mall, from whom the Plaintiffs

purchased the Sierra truck.   Jan. 20, 2009 MOO at 3; Seconded Amended Complaint for Damages

and for Declaratory Relief and Jury Demand ¶ 38, at 6 (filed July 9, 2008)(Doc. 193).

In April, 2009, USAA Casualty offered to indemnify Lomas Auto Mall and Lohman so

that these three Defendants could "be on the same side" at trial.   Electronic Mail Transmission

from Brett Steinbook to William Davis (April 8, 2009, 9:19 a.m.) at 1, filed May 20, 2010 (Doc.

551-1)("April 8 Steinbook/Davis Email")(Counsel for Lomas Auto Mall, Mr. Steinbook,

indicating that USAA has offered to indemnify Lomas Auto Mall and Lohman Motors so that the

Defendants are "on the same side at trial").   USAA Casualty and the Dealerships distilled a

settlement agreement, including an indemnification provision, into writing on May 15, 2009.   See

Motion to Enforce Settlement ¶ 6, at 3; Electronic Mail Transmission from Charles Vigil to Brett

Steinbook and Robert Valdez (May 15, 2009, 3:22 p.m.) at 15, filed May 20, 2010 (Doc.

555-1)("May 15 Vigil/Steinbook/Valdez Email"); Electronic Mail Transmission from Charles

Vigil to Brett Steinbook (May 15, 2009, 3:50 p.m.), filed May 20, 2010 (Doc. 555-1)("May 15

Vigil/Steinbook Email").   The Settlement Agreement provides, in paragraph 3:

> 3. Indemnification. USAA hereby agrees to indemnify the Dealerships,
> LAM and Lohman, and Western Surety and hold them individually and/or jointly
> harmless from any damages, liability, loss, direct or indirect awarded to Plaintiff or
> any other party to the Case, plus defense costs including attorneys' fees, taxes, and
> costs attributable to USAA's or CoPart Auto Auction's ("CoPart") actions in
> securing a clean title at the time of the sale of the 2005 silver GMC Sierra, VIN
> #2GTEK13T551364583 (the "Sierra") to the Dealerships, including the following
> claims of Plaintiffs' Second Amended Complaint for Damages and for Declaratory
> Relief and Jury Demand [Docket No. 193]: First Claim for Relief: Violations of the
> MVICSA by the Dealerships [¶¶ 84-87] for failure to present the salvage title

certificate at the time the Sierra was sold to Plaintiffs; [¶¶ 120-124];

> USAA hereby agrees to indemnify the Dealerships and hold them harmless from any damages, liability, or loss awarded to Plaintiff or any other party to the Case, plus defense costs including attorneys' fees, taxes, and costs attributable to USAA's or CoPart's actions in obtaining a clean title at the time of the sale of the Sierra to the Dealerships, including the failure to disclose the salvage title to Plaintiffs at the time of the sale, failure to provide or present the salvage title to Plaintiffs at the time of the sale, fraud related to USAA's or CoPart's conduct in securing a non-salvage title at the time of the sale of the Sierra to the Dealerships, violations of the New Mexico Unfair Practices Act related to the titling actions of USAA at the time of the sale of the Sierra to the Dealerships, and breach of warranty of title due to USAA's titling actions at the time of the sale of the Sierra to the Dealerships.  Should any party to the Case win a judgment against Lohman, LAM, or Western Surety individually or jointly for any actions attributable to USAA or CoPart or arising out of actions attributable to USAA, or CoPart, USAA hereby agrees to pay the award, including any award of costs and attorneys fees, and pay the defense costs in full and in a timely manner, subject to any appeals as contemplated by the parties in paragraph 14.

Final Draft of Settlement Agreement at 17-18, filed May 20, 2010 (Doc. 555-1)("Settlement Agreement").[1]   The Settlement Agreement required the Dealerships to dismiss with prejudice their claims against USAA Casualty and the Plaintiffs, and required USAA Casualty to pay $42,500.00 to the Dealerships.   See Motion to Enforce Settlement ¶¶ 7-8, at 3.

The Dealerships and USAA Casualty finalized the Settlement Agreement on May 19, 2009, one day after trial started, and the Dealerships subsequently dismissed their counterclaims against the Plaintiffs and their cross-claims against USAA Casualty.   See Motion to Enforce Settlement ¶ 6, at 3; Stipulated Order Dismissing With Prejudice Dealership Defendants' Cross Claims Against USAA, filed June 17, 2009 (Doc. 475)("Stipulated Order").   USAA Casualty paid the Dealerships $42,500.00 on May 19, 2009.   See Motion to Enforce Settlement ¶ 8, at 3.

---

[1] The Court's citations to the Settlement Agreement refer to the page numbers attached when the document was filed with the Court's CM/ECF system, in the upper-right-hand corner of the document.

because of the Settlement Agreement, the Dealerships and USAA Casualty did not present testimony or other evidence against each other at trial.

## PROCEDURAL BACKGROUND

On July 9, 2008, the Plaintiffs filed a Second Amended Complaint against the Dealerships for fraud, violations of the New Mexico Unfair Practices Act, N.M.S.A. 1978, §§ 57-12-1 through 57-12-26 ("UPA"), breach of warranty of title, and civil conspiracy; and against USAA Casualty for violations of the UPA, fraud, civil conspiracy, joint enterprise, and fraud by joint enterprise, in connection with the sale of the Sierra truck.   See Second Amended Complaint for Damages and for Declaratory Relief and Jury Demand, filed July 9, 2008 (Doc. 193)("Complaint").   The Dealerships filed cross-claims against USAA Casualty for indemnification, fraud, and violation of the UPA.   See First Amended Answer of Lomas Auto Mall, Inc. and M.D. Lohman to Plaintiffs' Second Amended Complaint for Damages and Declaratory Relief and Jury Demand ¶¶ 72-78, at 14-17, filed July 29, 2008 (Doc. 215)("Dealerships' Answer").   The Dealerships alleged that

> [i]f LAM and Lohman are found liable to Mr. Pedroza and Ms. Andrade . . . then under the law of New Mexico, USAA will be liable to the LAM and Lohman because USAA, not the LAM and Lohman, was actively at fault by selling, through its agent CoPart, the Sierra truck on the clean October 26, 2006 title certificate.

Dealerships' Answer ¶ 75, at 14.   The Dealerships further alleged that USSA Casualty "knew at the time it sold the Sierra to Lohman that the Sierra had been damaged" to the extent that USAA Casualty considered repairs uneconomical, USAA Casualty knew that the Sierra truck should have had a salvage title under New Mexico law, and USAA knowingly instructed CoPart Auction to sell the Sierra truck to Lohman unrepaired with an improper clean title in violation of NMSA 1978, §§ 57-12-2(D), 57-12-3, and 57-12-6.   Dealerships' Answer ¶¶ 78-80, at 15.   The Dealerships also contended that Lohman relied on USAA Casualty's representation of clean title and would not

have sold the Sierra truck to the Plaintiffs had USAA Casualty not stated it had a clean title.   See Dealerships' Answer ¶¶ 82-83, 85, 88 at 16 -17.

1.      **The Proceedings Relating to the Trial and Damages.**

On January 28, 2009, the Court granted the Plaintiffs' motion for partial summary judgment against USAA Casualty, finding, as a matter of law, that the Sierra truck warranted a salvage title and that USAA Casualty violated the UPA by securing a clean title for the Sierra truck.   See Memorandum Opinion and Order at 7-8, 15, filed January 28, 2009 (Doc. 356).   The Court also determined that IADSC could not be liable to the Dealerships for indemnification, because USAA Casualty is liable for obtaining the clean title.   See Order at 1-2, filed January 28, 2009 (Doc. 357)("Doc. 357 MOO").

Also on January 28, 2009, the Court dismissed the Plaintiffs' alleged conspiracy claim involving USAA Casualty and IADSC, based on the Plaintiffs' concession that this particular conspiracy claim should be dismissed.   See Memorandum Opinion and Order at 6-7, filed January 28, 2009 (Doc. 358)("Doc. 358 MOO").   The Court found that the "important facts for this motion are: (i) USAA's involvement in auctioning the Sierra on a clean title; and (ii) USAA's involvement in acquiring a second clean title from the . . . MVD . . . ."   Doc. 358 MOO at 2.   As to fraud, the Court found that "a jury could infer that USAA deliberately ignored its own policy in seeking a clean title . . . ," Doc. 358 MOO at 9, and that evidence existed that USAA Casualty had reason to expect its alleged misrepresentations would be repeated in the stream of commerce, see Doc. 358 MOO at 10.

Trial on the remaining issues was ultimately set for May 18, 2009.   See Minute Order, filed February 12, 2009 (Doc. 378).   At this point, the Dealerships' remaining claims against USAA Casualty were for:

- 7 -

> Actual and punitive damages for fraud; [] Statutory or actual damages trebled for violations of the UPA; [] Attorney fees and costs under the UPA; [] Indemnity equal to any liability of LAM or Lohman to Mr. Pedroza and Ms. Andrade based on nondisclosure of salvage title, their attorney fees and costs in having to defend in this action and prosecute this cross claim.

Pretrial Order at 5, filed May 13, 2009 (Doc. 418).  The Court subsequently refused to grant USAA Casualty's motion permit USAA Casualty to withdraw its admission that it had determined that it was economically unfeasible to repair the GMC Sierra truck, but, "[c]onsistent with the parties' agreement at the February 4, 2009 hearing," allowed "USAA to present evidence and argument on what it meant by uneconomical to repair at the trial and will not give conclusive effect to the admission during the trial."   May 16, 2009 MOO at 17.

The jury returned its verdict on May 28, 2009, finding that Lomas Auto Mall, but not Lohman Motors, breached the warranty of title.  See Special Verdict Form ¶¶ 24-26, at 4-5.  It also found against Lohman Motors -- but not against Lomas Auto Mall or USAA Casualty -- for fraud, awarding actual and punitive damages against Lohman Motors.  See Special Verdict Form ¶¶ 5, 7, 8, 9, 35, 43, at 2, 6, 8.   In addition, the jury found that Lohman Motors -- but not Lomas Auto Mall -- violated the UPA, and also found that the two Dealerships -- but not USAA Casualty -- conspired to violate the UPA.   See Special Verdict Form at ¶¶ 13, 16-18, 32-33, at 3-4, 6.   It found that USAA Casualty's violation of the UPA, which the Court had already found to exist as a matter of law, "was not a cause of any of Plaintiffs' damages."   Special Verdict Form ¶ 19, at 4. The jury awarded $15,702.95 in compensatory damages, and $33,000.00 in punitive damages against the Dealerships for fraud.  See Special Verdict Form ¶¶ 35-45, at 6-8.

Pursuant to the jury's verdict, the Court ordered that Lohman Motors must pay $15,702.95 for the actual damages its fraud and violations of UPA caused, and $33,000.00 in punitive damages for fraud.  See Judgment Order ¶¶ 1,2, at 1, filed September 3, 2009 (Doc. 489).   The

- 8 -

Court ordered that Lomas Auto Mall and Lohman Motors are jointly and severally liable to the Plaintiffs for actual damages of $5,710.95 for the breach of warranty of title.   See Judgment Order ¶ 3, at 1.   The Court ordered that Western Surety[2] and Lohman Motors are jointly and severally liable for $13,202.95 of the Plaintiffs' actual damages for fraud.   See Judgment Order ¶ 4, at 2. The Court ordered that Lomas Auto Mall and Western Surety are jointly and severally liable for $3,210.95 of the Plaintiffs' damages from Lomas Auto Mall's breach of warranty of title.   See Judgment Order ¶ 5, at 2.   The Court also awarded $100.00 in statutory damages against USAA Casualty for its UPA violations.   See Judgment Order ¶ 7, at 2.

The Plaintiffs requested an award of $73,364.87 in attorneys' fees from USAA Casualty and an award of $122,872.17 in attorneys' fees from the Dealerships.   See Plaintiffs' Motion for Award of Attorney Fees, filed September 30, 2009 (Doc. 499).   The Plaintiffs also requested an award of $5,796.84 in costs from USAA Casualty and $22,879.02 from the Dealerships.   See Plaintiffs' Motion for Award of Costs at 1, filed September 30, 2009 (Doc. 501).

Lohman Motors paid the Plaintiffs' damages of $48,748.61 in full on December 11, 2009. See Partial Satisfaction of Judgment As to M.D. Lohman d/b/a Lohman Motors Only, filed December 11, 2009 (Doc. 523).   On April 30, 2010, the Court ordered that Lohman Motors indemnify Western Surety in the amount of $64,356.83 for its "loss, cost, attorney's fees, and expenses which Western Surety sustain[ed] as a surety or by reason of having been surety on" a

---

[2] Western Surety issued a surety bond to the Dealerships and was named as a party to the lawsuit under NMSA 1978, § 66-4-7B, and the Court found "Western Surety jointly and severally liable with the Dealer Defendants as guarantor on the above-referenced surety bonds." Memorandum Opinion and Order at 2-3, filed April 30, 2010 ("April 30, 2010 MOO").   The Court found that the Dealerships were "liable to Western Surety for whatever amount Western Surety can prove was reasonable and necessary to defense of the underlying litigation."   April 30, 2010 MOO at 16.   The Court concluded that the Dealerships are liable to Western Surety for the amount of $64,356.83.   See April 30, 2010 MOO at 31.

surety bond for Lohman Motors.   Memorandum Opinion and Order at 4, 13, filed April 30, 2010 (Doc. 551).   Lohman Motors satisfied this judgment on November 10, 2010.   See First Amended Satisfaction of Judgment, filed November 10, 2010 (Doc. 561).   The Court entered Final Judgment in this matter on April 30, 2010.   See Doc. 552 (finding that the Court's Memorandum Opinion and Order, filed April 30, 2010 (Doc. 551) "disposed of the final claims and parties in this case," and that "entry of final judgment is appropriate").

2.      **The Dealerships' Demands for Indemnity Under the Settlement Agreement.**

The Dealerships contend that, under the unambiguous provisions of the Settlement Agreement, USAA Casualty must indemnify them for all of the damages that the jury awarded to the Plaintiffs.   See Motion to Enforce Settlement ¶¶ 16, 22 at 5-6.   The Dealerships also contend that the Settlement Agreement requires USAA Casualty to indemnify the Dealerships and Western Surety for any attorneys' fees and costs awards.   See Motion to Enforce Settlement ¶ 18, at 5-6. The Dealerships demanded on February 5, 2010, that USAA Casualty indemnify them, but USAA Casualty has refused.   See Motion to Enforce Settlement ¶ 21, at 6; Defendant USAA's Response in Opposition to Motion of M.D. Lohman and Lomas Auto Mall, Inc. for Enforcement of Indemnify Provisions of Settlement Agreement with USAA Casualty Insurance Company at 23, filed April 29, 2010 (Doc. 550)("Response").

USAA Casualty contends that, because the jury found that it did not cause the Plaintiffs' damages, the Settlement Agreement does not require it to indemnify the Dealerships.   See Response at 2.   USAA Casualty contends that a "plain reading of the indemnity paragraph demonstrates that USAA is obligated to indemnify" the Dealerships only for the Plaintiffs' damages which are "'attributable to USAA's . . . actions in securing a clean title at the time of the sale.'"   Response at 3 (quoting Settlement Agreement at 18).   USAA Casualty contends that it

- 10 -

interprets the Special Verdict Form to not award any damages based upon USAA Casualty's conduct.   USAA Casualty states that it assumed that the Dealerships viewed the Special Verdict Form in the same manner, because the Dealerships did not contact USAA Casualty until February 5, 2010, to demand indemnification.   See Response at 3.

First, USAA Casualty contends that the Dealerships have failed to demonstrate by a preponderance of the evidence that the jury awarded damages based upon USAA Casualty's conduct.   USAA Casualty contends that the Dealerships have failed to articulate "even one fact from the trial record or the court file" to support their contention that USAA Casualty's conduct caused the jury to award damages for the Plaintiffs.   Response at 4-5.   Second, USAA Casualty contends that the jury found that it was not liable for the Plaintiffs' damages.   USAA Casualty notes that the jury found Lohman Motors liable for fraud based upon Lohamn Motors' failure to disclose the extent of the Sierra truck's damage, failure to disclose that the Sierra truck merited a salvage title, and failure to disclose that the Sierra truck was unsafe, and that the jury did not find that USAA Casualty committed fraud or that USAA Casualty conspired with the Dealerships, and found that USAA Casualty did not cause "'any of Plaintiffs' damages.'"   Response at 5-6 (emphasis in original)(quoting Special Verdict Form ¶ 1, at 2)(citing Court's Final Jury Instructions at 22, filed May 27, 2009 (Doc. 464)("Jury Instructions").   USAA Casualty also points out that the jury found that Lohman Motors' fraud and UPA violations, but not USAA Casualty's, caused the Plaintiffs' damages.   See Response at 6 (citing Special Verdict Form ¶¶ 7 16-17, at 2, 3).   Last, USAA Casualty contends that there is no evidence that the jury found Lomas Auto Mall liable for damages for breach of warranty of title based on USAA Casualty's conduct. USAA Casualty contends that the jury found Lomas Auto Mall liable for its own, independent conduct, as the jury found Lomas Auto Mall, and not Lohman Motors, liable for breach of

warranty of title.   See Response at 7-8 (citing Special Verdict Form ¶¶ 24-27, at 5).

In reply, the Dealerships assert that, "but-for" USAA Casualty's conduct, the Plaintiffs' case would have been untenable.  Dealerships' Reply to USAA's Response in Opposition to Dealerships' Motion for Enforcement of Indemnity Provisions of Settlement Agreement at 3, filed May 20, 2010 (Doc. 555)("Reply").   The Dealerships note that "[s]ubstantially all of Plaintiffs' claims flowed from their allegations that when USAA sold the Sierra to the Dealerships through Co-Parts auction," the Sierra truck should have had a salvage rather than clean title.   Reply at 2-3.

The Dealerships first contend that the jury awarded damages for conduct that is "'attributable'" to USAA Casualty within the meaning of the Settlement Agreement.   Reply at 6.  The Dealerships contend that the Settlement Agreement does not require the jury to find USAA Casualty legally liable to trigger the indemnification provision.  The Dealerships note that the Indemnification provision uses the term "'attributable'" three times, and also includes indemnification for liability "'arising out of" USSA Casualty's conduct.  Reply at 6 (quoting Settlement Agreement at 16-17).   The Dealerships contend that the terms "attributable" and "arising under" connote causation.   Reply at 7.   The Dealerships note that "attributable" does not have a legal definition, but contend that the term is commonly understood to imply causation.  Reply at 7.   Similarly, the Dealerships assert that the term "arising under," according to Black's Law Dictionary, is a concept of causation.   Reply at 7.

The Dealerships assert that the Settlement Agreement does not require that USAA Casualty be legally liable to the Plaintiffs to trigger the indemnification provision.   The Dealerships assert that "[t]here can be no doubt" that, if USAA Casualty had not obtained a clean title for the Sierra truck, the Plaintiffs' case would have been untenable.  Reply at 8.   The Dealerships assert that "[e]ach and every one of Plaintiffs' claims against USAA and the

Dealerships resulted from, was caused by, or originated in USAA's actions in securing or obtaining a clean title instead of salvage title and then selling the Sierra, with a clean title, to the Dealerships."   Reply at 8.   The Dealerships contend that the Settlement Agreement explicitly provides for USAA Casualty to indemnify the Dealerships for nondisclosure of the salvage title, fraud, and other claims "'related to the titling actions of USAA . . . .'"   Reply at 8-9 (quoting Settlement Agreement at 18).

The Dealerships contend that USAA Casualty's refusal to indemnify them defeats the Settlement Agreement's purpose and intent.   The Dealerships note that, in accordance with New Mexico's "'contextual approach of contract interpretation,'" USAA Casualty's inability to sever its conduct from the Plaintiffs' allegations is relevant to interpretation of the Settlement Agreement.   Reply at 9 (quoting Branch v. Chamisa Development Corp., 2009-NMCA-131, ¶ 33, 147 N.M. 397, 223 P.3d 942).   The Dealerships contend that, because they and USAA Casualty faced significant exposure at trial, they entered into the Settlement Agreement so as to present a unified front and limit the likelihood that each other would be required to pay heavy damages. See Reply at 9.   The Dealerships contend that they did not present allegations against USAA Casualty, because of the Settlement Agreement, and, therefore, that the jury found USAA Casualty was not liable to the Plaintiffs demonstrates that the goal of the Settlement Agreement was achieved.   See Reply at 10.   The Dealerships contend that USAA Casualty is now attempting to deny the Dealerships their benefit of the bargain by refusing to indemnify them as the Settlement Agreement requires.   The Dealerships contend that, had the Settlement Agreement not existed, they would not have dismissed their cross-claims with prejudice against USAA Casualty.   See Reply at 10.

The Court held a hearing on January 25, 2012.   See Transcript of Hearing (taken January

- 13 -

25, 2012)("Tr.").[3]   The Dealerships began by pointing out that the Court already found that USAA Casualty's conduct was wrongful title washing, but stated that "[i]t's not necessary for purposes of our argument regarding indemnity that the Court even find that these actions were wrongful."   Tr. at 3:18-14:14 (Davis).   The Dealerships stated that all that is necessary for the Court to grant their Motion to Enforce the Settlement is for the Court to find that their damages and defense costs were the "results of these actions of USAA."   Tr. at 4:14 (Davis).   The Dealerships also noted that Special Verdict Form assumes that USAA Casualty violated the UPA, given that question nineteen asks whether USAA Casualty's violation caused the Plaintiffs' damages.   See Tr. at 4:17-24 (Davis)(citing Special Verdict Form ¶ 19, at 4).   The Dealerships asserted that the Settlement Agreement disposed of the Dealerships' claims against USAA Casualty in addition to providing for indemnification.   See Tr. at 5:7-18 (Davis).   The Dealerships contended that the indemnification provision addresses USAA Casualty's conduct in obtaining the clean title.   See Tr. at 6:14-25 (Davis).   The Dealerships contended that the statement "'any damages awarded to plaintiff or any other party'" does not mean that the jury had to find USAA Casualty legally liable for damages to trigger the indemnification provision, as USAA Casualty seems to be suggesting. Tr. at 7:1-5 (Davis)(quoting Settlement Agreement at 17).   The Dealerships contended that the phrase that USAA Casualty will indemnify them for "'any actions attributable to USAA or Copart [or] arising out of actions attributable to USAA'" is intended to be interpreted as broad as possible, "so that in return for the dealerships releasing their cross-claims for indemnify [] they are covered for any exposure that they have in this lawsuit."   Tr. at 8:14-23 (Davis)(quoting Settlement Agreement at 18).   The Dealerships contended that this term must be interpreted broadly, because

---

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and/or line numbers.

they released viable cross-claims against USAA Casualty in exchange for its indemnification. See Tr. at 8:23-9:2 (Davis).

The Dealerships stated that they believe that the Settlement Agreement is "absolutely clear on its face" and unambiguous.  Tr. at 9:11-13 (Davis).  The Dealerships contended that the Settlement Agreement provides that USAA Casualty will indemnify them for all conduct based on obtaining the clean title, and that all of the Dealerships' liability to the Plaintiffs' arises from having purchased a "vehicle at the auto action with a clean title, which it should not have had." Tr. at 9:18-10:5 (Davis).   The Dealerships asserted that the Court's finding that USAA Casualty should have obtained a clean title is sufficient to find that USAA Casualty must indemnify them for the entire jury award.   See Tr. at 10:6-9 (Davis).

The Dealerships contended, further, that the jury's award was based on USAA Casualty's actions in changing the title to clean.  See Tr. at 10:9-11 (Davis).  The Dealerships explained that, the Judgment Order finds that Lohman Motors is liable for $15,000.00 in actual damages, that Lomas Auto Mall is jointly and severally liable for Lohman Motors' UPA violations, and that the Complaint's claim of fraud against the Dealerships was based, in part, upon their failure to disclose that the Sierra truck merited a salvage title, indicates that USAA Casualty's conduct was a cause of the jury's award.  See Tr. at 10:18-11:17 (Davis)(citing Judgment Order ¶¶ 1, 3, at 1; ¶ 88, at 11-12).  The Dealerships noted that the Complaint alleges that USAA Casualty is liable for violating the UPA through unfair trade practices, and the Dealerships contended, therefore, that USAA Casualty's title washing contributed to their liability for UPA violations.  See Tr. at 12:10-25 (Davis)(citing Complaint ¶ 127, at 14).   The Dealerships asserted, thus, that the jury's award of $15,000.00 for fraud and UPA violations is based, "at least in part," on USAA Casualty's title washing.  Tr. at 13:1-8 (Davis).   The Dealerships asserted that a plain reading of the

Settlement Agreement would lead to the Court awarding them at least their defense costs in the case. <u>See</u> Tr. at 13:9-15 (Davis). The Dealerships noted that, just as the Court found that USAA Casualty should have known that putting the Sierra truck into the stream of commerce would cause problems, all of the damages the jury awarded to the Plaintiffs arise from or are attributable to USAA Casualty's conduct. <u>See</u> Tr. at 13:16-14:6 (Davis)(citing May 16, 2009 MOO).

The Dealerships also contended that USAA Casualty should not rely on the Special Verdict Form to disclaim indemnification, because, had they not entered into a Settlement Agreement, the Dealerships would have introduced evidence against USAA Casualty at trial. <u>See</u> Tr. at 14:7-16 (Davis). The Dealerships asserted that USAA Casualty's benefit from the Settlement Agreement was their agreement to not introduce evidence against USAA Casualty at trial, and, therefore, USAA Casualty's current position undermines the intention of the Settlement Agreement, because USAA Casualty is attempting to deprive the Dealerships of their benefit of the bargain. <u>See</u> Tr. at 14:17-15:12 (Davis). The Dealerships contend that, because the jury found them liable for fraud based upon the clean title, the jury award against them is traceable to USAA Casualty's conduct and the Court should award the Dealerships the entire amount they seek in the Motion to Enforce the Settlement. <u>See</u> Tr. at 15:13-25 (Davis).

The Court inquired whether the Dealerships believe that the parties are contesting the interpretation of the Settlement Agreement, or, rather the parties are contesting whether USAA Casualty's conduct caused the actions for which the jury found the Dealerships liable. <u>See</u> Tr. at 16:2-17 (Davis). The Dealerships stated that they understand USAA Casualty to be arguing that its indemnification obligations are predicated upon the proposition that the jury had to finding it legally liable for damages. <u>See</u> Tr. at 16:17-21 (Davis). The Court inquired whether the Dealerships need a hearing to provide extrinsic evidence of an ambiguity in the Settlement

Agreement and whether the Dealerships have evidence of an ambiguity, and the Dealerships stated that they do have evidence of an ambiguity in the indemnification provision.   See Tr. at 17:11-18 (Court, Davis).   The Dealerships stated that there were five drafts of the Settlement Agreement and that the attorneys who negotiated the Settlement Agreement could testify regarding its drafting.   See Tr. at 17:19-18:5 (Davis).   The Court inquired whether testimony is needed in addition to the five drafts, and the Dealerships stated that they do not know whether testimony would be necessary for the Court to interpret the Settlement Agreement.   See Tr. at 18:6-11 (Court, Davis).   The Dealerships stated that they would not request a trial if the Court determined, as they assert the Court should, that the Settlement Agreement requires USAA Casualty to pay their defense costs without a jury award against USAA Casualty.   See Tr. at 18:12-18 (Davis). The Dealerships stated that, "otherwise," evidence would be necessary to interpret the Settlement Agreement.   Tr. at 18:18-22 (Davis).

The Court inquired whether the Dealerships' interpretation of the Settlement Agreement would change if the phrase "attributable to" and the language following it were removed from the first paragraph of the indemnification provision, but the Dealerships stated that they would still need to demonstrate that the damages were attributable to USAA Casualty to recover from it.   Tr. at 18:23-19:12 (Court, Davis).   The Court inquired whether the Dealerships' interpretation is dependent upon interpreting "'securing a clean title'" to include "putting the Sierra into the stream of commerce," and the Dealerships stated that it is.   Tr. at 19:13-17 (Court, Davis)(quoting Settlement Agreement   17)(citing May 16, 2009 MOO).   The Dealerships stated that they would have not purchased the Sierra truck if it did not have a clean title, that they would not have repaired the Sierra truck if it did not have a clean title, and, therefore, even the jury's award of damages for insufficient repairs is attributable to USAA Casualty's conduct.   See Tr. at 20:1-6 (Davis).

The Court inquired how the Dealerships and USAA Casualty contemplated the trial would resolve whether fees and costs were attributable to the Sierra truck's clean title, and the Dealerships stated that they always anticipated that USAA Casualty would indemnify them for defense costs.  See Tr. at 20:7-21 (Court, Davis).  The Dealerships stated that they anticipated that USAA Casualty would indemnify them for defense costs, because USAA Casualty was "really responsible for this lawsuit," and, through the Settlement Agreement, the Dealerships disposed of their claims against USAA Casualty.  Tr. at 20:22-25 (Davis).  The Dealerships stated that they would not have released their indemnification claim if they believed they would still be liable for defense costs after trial.  See Tr. at 21:1-8 (Davis).  The Court responded that it does not know why the Dealerships agreed to the Settlement Agreement if they intended to seek indemnification for all of their defense costs.  See Tr. at 21:9-14 (Court).  The Dealerships stated that they viewed damages and defense costs differently, that they did not believe that the jury had to find USAA Casualty legally liable to receive defense costs, and that they would have brought evidence against USAA Casualty at trial if proving its legal liability was necessary to effectuate the Settlement Agreement.  See Tr. at 21:15-22:1 (Davis).  The Dealerships stated that the goal of the Settlement Agreement was to avoid having the Dealerships and USAA Casualty present evidence against each other at trial.  See Tr. at 22:3-6 (Davis).  The Dealerships contended, therefore, that the Settlement Agreement would have been defeated if they had needed to prove USAA Casualty's liability to receive defense costs.  See Tr. at 22:7-15 (Davis).  The Dealerships pointed out that the indemnification provision covers a broad range of conduct -- beyond securing a clean title -- including "failure to[] disclose the salvage title to the plaintiffs at the time of the sale, failure to provide or present the salvage title to the plaintiffs at the time of the sale, and then violations of the New Mexico Unfair Practices Act," which basically agrees to indemnify the

Dealerships for "presenting this clean title and putting this vehicle into the stream of commerce." Tr. at 22:16-23:8 (Davis).

USAA Casualty stated that the standard for the Court to apply under New Mexico law is whether the Dealerships have demonstrated by a preponderance of the evidence that they are entitled to indemnification under the Settlement Agreement. See Tr. at 23:17-25 (Vigil). USAA Casualty asserted that there is no evidence that the Dealerships would not have agreed to the Settlement Agreement had they not been entitled to full indemnification. See Tr. at 24:1-6 (Vigil). USAA Casualty stated that the Settlement Agreement is unambiguous, and that the Dealerships do not like its unambiguous meaning. See Tr. at 24:7-10 (Vigil). USAA Casualty stated that nothing prevented the Dealerships from bringing evidence against USAA Casualty at trial. See Tr. at 24:11-22 (Vigil). USAA Casualty contended that all of the evidence before the Court indicates that the Dealerships are not entitled to indemnification. See Tr. at 24:22-25:3 (Vigil). USAA Casualty stated that much of the evidence admitted at trial regarding the Dealerships' failure to repair the Sierra truck and failure to notify the Plaintiffs' of the Sierra truck's damage had no relation to USAA. See Tr. at 25:4-17 (Vigil). USAA Casualty asserted that it anticipated that the Dealerships would request a special verdict question for the jury to answer whether it awarded damages based upon USAA Casualty's conduct. See Tr. at 25:18-26:4 (Vigil).

The Court inquired whether USAA Casualty argued that the Dealerships could not establish that the jury award was attributable to USAA Casualty's conduct, and USAA Casualty stated that was its argument. See Tr. at 26:5-12 (Court, Vigil). USAA Casualty stated that it intended only to pay attorneys' fees or costs attributable to its conduct. See Tr. at 26:16-25 (Vigil, Court).

- 19 -

The Court inquired how it could find by a preponderance of the evidence, at this point in the proceeding, that attorneys' fees and costs are attributable to USAA Casualty's conduct.  See Tr. at 27:10-13 (Court).  USAA Casualty stated that it does not believe that the parties' dispute can be decided on a motion.  See Tr. at 27:14-17 (Vigil).  USAA Casualty stated that, in its opinion, normally a claim like the Dealerships' would be brought as a breach of contract case and would include discovery separate from the underlying suit.  See Tr. at 27:17-21 (Vigil).  USAA Casualty stated that, nonetheless, the Court may use the Jury Instructions and the Special Verdict Form to determine whether USAA Casualty's conduct caused the jury's award.  See Tr. at 27:22-28:5 (Vigil).  The Court responded that the trial included more allegations beyond USAA Casualty's failure to secure a clean title, and the Court inquired of USAA Casualty how it could parse damages at this point.  See Tr. at 28:6-14 (Court).  USAA Casualty stated that the Court would be required to speculate, and would "have to reach out of thin air to come up with some sort of division of defense costs or even judgment costs" based upon a trial which transpired several years before the hearing.  Tr. at 28:15-19 (Vigil).  USAA Casualty stated that it believes it would be better to use the Special Verdict Form and the Plaintiffs' allegations to determine whether the jury award was attributable to USAA Casualty's conduct.  See Tr. at 28:20-29:10 (Vigil).  USAA Casualty noted that some of the Plaintiffs' allegations of fraud had no relation to the clean title -- such as the Dealerships' failure to disclose the extent of damage and repairs to the Sierra truck.  See Tr. at 29:11-18 (Vigil).  USAA Casualty explained that, because the Jury Instructions allowed the jury to find that USAA Casualty's representation of a clean title was fraud, and the jury did not find USAA Casualty liable for fraud, USAA Casualty's conduct did not contribute to the Plaintiffs' damages.  See Tr. at 29:19-30:8 (Vigil)(citing Jury Instruction ¶ 20, at 24).  USAA Casualty similarly argued that, because the jury did not find it liable for violating the UPA, its

conduct did not contribute to the jury's award against the Dealerships for UPA violations.   See Tr. at 30:9-17 (Vigil)(citing Jury Instructions ¶ 24, at 28).

The Court stated that it understands the Dealerships' main contention to be that USAA Casualty should indemnify them for their attorneys' fees, given that "part of what everybody was having to defend against was attributable to USAA's securing of that clean title."   Tr. at 30:18-31:4 (Court).   The Court stated that a reasonable interpretation of the Settlement Agreement is that USAA Casualty will indemnify the Dealerships for attorneys' fees, irrespective of an award of damages, because the indemnification provision provides for attorneys' fees and costs separate from discussion of an award of damages attributable to USAA Casualty's conduct. See Tr. at 31:10-18 (Court)(citing Settlement Agreement at 17).   USAA Casualty responded that it does not see how it can be required to indemnify the Dealerships for attorneys' fees separately from an award of damages.   See Tr. at 31:19-21 (Vigil).   USAA Casualty maintained that, even if the Dealerships had presented evidence against them at trial, and the jury returned no award of damages against USAA Casualty, the Settlement Agreement would not require USAA Casualty to indemnify the Dealerships for their attorneys' fees.   See Tr. at 32:2-25 (Vigil, Court).   The Court inquired why the Settlement Agreement includes the last sentence stating that, "'[s]hould any part to the case win a judgment against Lomas LAM or [W]estern [S]urety then USAA agrees to pay the award,'" which contemplates that the Settlement Agreement provides indemnification separately from a jury award.   Tr. at 33:1-13 (Court)(quoting Settlement Agreement at 17). USAA Casualty contested the Court's reading of the Settlement Agreement and stated that the Dealerships have failed to separate their defense of the claims arising from USAA Casualty's conduct from the Dealerships' defense of the case generally.   See Tr. at 33:14-19 (Vigil).   The Court stated that separating costs amongst claims is a separate issue which it is not sure how it may

adjudicate at this stage, but that the Settlement Agreement appears to contemplate that USAA Casualty would indemnify the Dealerships without a judgment against the Dealerships.   See Tr. at 33:20-34:1 (Court).   USAA Casualty contended that the Settlement Agreement does not allow for an award of attorneys' fees without an award of damages against it.   See Tr. at 34:2-8 (Vigil). USAA Casualty noted that the indemnification provision allows for an award of damages "'plus'" attorneys' fees, and therefore, the Settlement Agreement requires USAA Casualty to indemnify the Dealerships for damages "plus your fees for that."   Tr. at 34:11-20 (Vigil)(quoting Settlement Agreement at 18).   The Court stated that it is skeptical of USAA Casualty's interpretation, because the attorneys' fees of the Dealerships are attributable to USAA Casualty's securing a clean title.   See Tr. at 34:21-25 (Court).

USAA Casualty stated that, if the Court determines that the Settlement Agreement is ambiguous, it would want an opportunity to present additional evidence and a hearing to interpret the Settlement Agreement.   See Tr. at 35:2-15 (Court, Vigil).   USAA Casualty stated that, if a hearing was held to interprets the Settlement Agreement, USAA Casualty would have its in-house counsel testify regarding the negotiation of the Settlement Agreement and would present additional electronic mail transmissions to support its interpretation.   See Tr. at 35:17-25 (Vigil). USAA Casualty maintained that the Settlement Agreement is not ambiguous and that the Dealerships can only speculate that they would not have been brought into the Plaintiffs' suit without USAA Casualty's titling actions.   See Tr. at 36:2-10 (Vigil).

The Court stated that it is troubled by USAA Casualty's position that the three sentences of the Settlement Agreement regarding indemnification all state the same thing and that USAA Casualty's interpretation requires the Court to not give any independent meaning to the separate sentences in the indemnification provision.   See Tr. at 36:11-15 (Court, Vigil).   USAA Casualty

maintained that the "plain reading" of the Settlement Agreement is that it will indemnify the Dealerships for damages attributable to USAA Casualty, plus fees for those damages as well.   Tr. at 36:16-37:1 (Vigil).

The Dealerships contended that their agreement to release cross-claims against USAA Casualty is central to the interpretation of the Settlement Agreement.   See Tr. at 37:9-17 (Davis). The Dealerships contended that, had the Settlement Agreement intended for USAA Casualty to indemnify the Dealerships only for defense costs related to a judgment against them, the Settlement Agreement would have so stated.   See Tr. at 37:18-25 (Davis).   The Dealerships conceded that the trial did not involve allegations related only to the clean title, but the Dealerships contended that the Sierra truck would not have been in the stream of commerce had the title been accurately represented.   See Tr. at 38:2-10 (Court, Davis).   The Court responded that the Settlement Agreement seems to be very "convoluted" in its drafting if the parties intended for USAA Casualty to pick up all of the Dealerships' defense costs on the eve of trial.   Tr. at 38:11-20 (Court).   The Dealerships contended that the three sentences in the indemnification provision are not redundant, and that the second paragraph indicates that USAA Casualty will indemnify the Dealerships beyond a jury award and beyond costs arising from the Sierra truck's clean title.   See Tr. at 38:21-39:16 (Davis, Court).   The Dealerships stated that the Settlement Agreement requires USAA Casualty to indemnify the Dealerships for the award and costs arising from putting the Sierra truck into the stream of commerce.   See Tr. at 39:17-40:1 (Davis).   The Dealerships asserted that the Settlement Agreement provides that USAA Casualty will "pay everything," and the last sentence provides that, "if there's a judgment," USAA Casualty will pay that as well.   Tr. at 40:2-11 (Davis).   The Dealerships contended, therefore, that the Settlement Agreement covers their attorneys' fees and costs "irrespective of whether there's a judgment[]."   Tr. at 40:12-14

(Davis).

The Dealerships also contended that their liability for fraud is premised upon USAA Casualty's provision of a clean title to them.   See Tr. at 40:15-22 (Davis).   The Dealerships suggested that, if the Court determined that the Settlement Agreement provides for defense costs without a jury award against USAA Casualty, then the parties could negotiate a fee agreement for a specific amount.   See Tr. at 41:4-11 (Davis).

In response to the Court's inquiry whether the parties believe that the Settlement Agreement is unambiguous, the Dealerships stated that their position is that it is unambiguous. See Tr. at 41:12-25 (Court, Davis).   USAA Casualty responded that it is troubled with the electronic mail transmissions presented in the Reply because it did not have an opportunity to respond to the Reply.   See Tr. at 42:9-13 (Court, Vigil).   USAA Casualty asserted that the Dealerships raise a new argument in the Reply -- that the Court must look at the intent of the parties as evidenced in electronic mail transmissions in interpreting the Settlement Agreement. See Tr. at 42:15-23 (Vigil).

The Court stated that it is reluctant to resolve the Motion to Enforce the Settlement without a Mark V[4] hearing because, although the parties maintain that the Settlement Agreement is unambiguous, the parties dispute its meaning.   See Tr. at 43:2-10 (Court).   The Court stated that it is inclined to set the matter for a hearing so that the parties may present additional evidence for interpretation of the Settlement Agreement.   See Tr. at 43:11-17 (Court).   The Court also stated that it is uncertain whether it may determine the meaning of the Settlement Agreement under New Mexico law or whether interpretation is a jury's task.   See Tr. at 43:18-44:1 (Court).   The Court

---

[4] According to the Supreme Court of New Mexico in Mark V, Inc. v. Mellekas, 114 N.M. 778, 845 P.2d 1232 (1993), a district court may take extrinsic evidence to determine whether a contract is ambiguous.   See 114 N.M. at 781-82, 845 P.2d at 1235-36.

further stated, on the other hand, that if it can interpret the Settlement Agreement, it is troubled by the breadth of the second sentence, and that it is inclined to determine that the Dealerships' interpretation is reasonable.  See Tr. at 44:2-19 (Court).  The Court stated that the Settlement Agreement does not appear to be limited to situations where a jury awards damages against USAA Casualty.  See Tr. at 44:20-22 (Court).  The Court stated that, if the parties "think of some other issues or want to proceed a different way than me deciding this motion without a hearing, then let me know."  Tr. at 44:24-45:2 (Court).

The Court inquired whether USAA Casualty can think of any issues covered at trial which the second sentence of the indemnity provision does not cover, and USAA Casualty stated that "all the stuff with the failure by M.D. Lohman and Lomas [M]otors to disclose the condition on the physical condition," were unrelated to the clean title.  Tr. at 46:6-12 (Vigil).  USAA Casualty requested the Court to examine the transcripts of the trial so as to determine the scope of indemnification required under the Settlement Agreement.  See Tr. at 46:12-20 (Vigil).  No parties have filed motions with additional evidence regarding the Settlement Agreement or requested a Mark V hearing to present extrinsic evidence.

## LAW REGARDING FINAL JUDGMENTS

"A final decision is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."   Rekstad v. First Bank Sys., 238 F.3d 1259, 1261 (10th Cir. 2001)(internal quotation marks omitted).   Rule 58 of the Federal Rules of Civil Procedure provides, in relevant part:

> (a)    **Separate Document.**  Every judgment and amended judgment must be set out in a separate document, but a separate document is not required for an order disposing of a motion:
>
>> (1)    for judgment under Rule 50(b);

(2)      to amend or make additional findings under Rule 52(b);

(3)      for attorney's fees under Rule 54;

(4)      for a new trial, or to alter or amend the judgment, under Rule 59; or

(5)      for relief under Rule 60.

. . . .

(d)      **Request for Entry.**   A party may request that judgment be set out in a separate document as required by Rule 58(a).

Fed. R. Civ. P. 58.

The Supreme Court has recognized that the separate-document rule must be "mechanically applied" in determining whether an appeal is timely, <u>Bankers Trust Co. v. Mallis</u>, 435 U.S. 381, 386 . . . (1978)(internal citation omitted), and has stated further that, "absent a formal judgment," a district court's order remains appealable.   <u>Shalala v. Schaefer</u>, 509 U.S. 292, 303 . . . (1993).   Although parties may waive Rule 58's separate-document requirement by allowing an appeal to go forward, <u>see</u> <u>Bankers Trust</u>, 435 U.S. at 384 . . . , such waiver cannot be used to defeat appellate jurisdiction.   <u>Clough v. Rush</u>, 959 F.2d 182, 186 (10th Cir. 1992).

<u>Allison v. Bank One-Denver</u>, 289 F.3d 1223, 1232-33 (10th Cir. 2002).

The separate document rule is a technical one.   But, as its name implies, it generally requires that judgment be entered in a separate document, one that is "not made part of the opinion and order" of the court.   <u>Mondragon v. Thompson</u>, 519 F.3d 1078, 1082 (10th Cir. 2008).   A combined document denominated an "Order and Judgment," containing factual background, legal reasoning, as well as a judgment, generally will not satisfy the rule's prescription.   <u>See</u>, <u>e.g.</u>, <u>Clough v. Rush</u>, 959 F.2d 182, 185 (10th Cir. 1992) (holding that a district court's summary judgment order did not meet Rule 58's requirements because it was "fifteen pages long [and] it contain[ed] detailed legal analysis and reasoning") . . . .

<u>In re Taumoepeau</u>, 523 F.3d 1213, 1217 (10th Cir. 2008)(footnote omitted)(Gorsuch, J.).   The

Supreme Court has stated that the separate-document requirement "must be mechanically applied

in order to avoid new uncertainties as to the date on which a judgment is entered."   <u>United States</u>

<u>v. Indrelunas</u>, 411 U.S. 216, 221-22 (1973)(per curiam), <u>disavowed in part on other grounds by</u>

- 26 -

Bankers Trust Co v. Mallis, 435 U.S. at 386 n.7.   The separate-document requirement was imposed to remove the "considerable uncertainty over what actions of the District Court would constitute an entry of judgment, and occasional grief to litigants as a result of this uncertainty."

United States v. Indrelunas, 411 U.S. at 220.

> The separate-document requirement was thus intended to avoid the inequities that were inherent when a party appealed from a document or docket entry that appeared to be a final judgment of the district court only to have the appellate court announce later that an earlier document or entry had been the judgment and dismiss the appeal as untimely.   The 1963 amendment to Rule 58 made clear that a party need not file a notice of appeal until a separate judgment has been filed and entered.

Bankers Trust Co. v. Mallis, 435 U.S. at 385.

"A judgment must be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition, which should appear in the court's opinion."   In re Taumoepeau, 523 F.3d at 1217 (internal quotation marks omitted).   Besides its importance in determining when the time clock starts ticking for purposes of an appeal, "[s]trict application of Rule 58 eliminates any question as to when the clock for filing post judgment motions . . . begins to tick.   Orders disposing of certain enumerated motions, including post judgment motions under Fed. R. Civ. P. 59 and 60, are excepted from Rule 58's separate judgment requirement."   Warren v. Am. Bankers Ins. of Fla., 507 F.3d 1239, 1242 (10th Cir. 2007).   Thus, the Tenth Circuit "strictly adhere[s] to the Supreme Court's directive to apply Rule 58 'mechanically.'"   Warren v. Am. Bankers Ins. of Fla., 507 F.3d at 1243.

## LAW REGARDING RULE 60(a)

Under Rule 60(a), a court "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.   The Court may do so on motion or on its own, with or without notice."   Fed. R. Civ. P. 60(a).   "It is

axiomatic that courts have the power and the duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake." Sec. Mut. Cas. Co. v. Century Cas. Co., 621 F.2d 1062, 1065 (10th Cir. 1980).   Rule 60(a) may be used to correct "what is erroneous because the thing spoken, written or recorded is not what the person intended to speak, write or record." Allied Materials Corp. v. Superior Products Co., 620 F.2d 224, 225-26 (10th Cir. 1980).   "A district court is not permitted, however, to clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect." Burton v. Johnson, 975 F.2d 690, 694 (10th Cir. 1992).   Rather, a court's correction under rule 60(a) must "reflect the contemporaneous intent of the district court as evidenced by the record." Burton v. Johnson, 975 F.2d at 694.   A correction should not require additional proof. See McNickle v. Bankers Life & Cas. Co., 888 F.2d 678, 682 (10th Cir. 1989); Trujillo v. Longhorn Mfg. Co., 694 F.2d 221, 226 (10th Cir. 1982).   Rule 60(a) is not available to correct "something that was deliberately done" but "later discovered to be wrong." McNickle v. Bankers Life & Cas. Co., 888 F.2d at 682 (citations omitted).   See 12 Thomas D. Rowe, Jr., Moore's Fed. Practice -- Civil § 60.11(2)(b) at 60-38 (3d ed. 2013)("Although Rule 60(a) clearly reaches errors of omission, it will not reach an omission that accurately reflects what the court decided.").   "Rule 60(a) finds application where the record makes apparent that the court intended one thing but by merely clerical mistake or oversight did another." Wheeling Downs Race Track v. Kovach, 226 F.R.D. 259, 262 (N.D.W. Va. 2004)(quoting Dura-Wood Treating Co. v. Century Forest Indus., 694 F.2d 112, 114 (5th Cir. 1982)).   "Under the Rule changes have been made in the judgment where the trial court recognized that they were necessary to correct an oversight or omission." Sec. Mut. Cas. Co. v. Century Cas. Co., 621 F.2d at 1065 (citing Kelley v. Bank Bldg. & Equip. Corp., 453 F.2d 774, 778 (10th Cir. 1972)).   "[W]hile the appeal is pending [such mistakes] may

be so corrected with leave of the appellate court."   Fed. R. Civ. P. 60(a).   See Copar Pumice Co.

v. Morris, No. CIV 07-0079 JB/ACT, 2010 WL 4928966, at *6 (D.N.M. Oct. 25, 2010)(Browning,

J.)(pursuant to the Tenth Circuit's leave, as required under rule 60(a) to amend an order after

appeal, amending a final judgment because the record before the Court made "'apparent that the

court intended one thing but by merely clerical mistake or oversight'" did another, when the Court

erroneously listed a particular defendant liable for damages to a plaintiff (quoting Wheeling

Downs Race Track & Gaming Ctr. v. Kovach, 226 F.R.D. at 262)(citing Burton v. Johnson, 975

F.2d at 694)).

### LAW REGARDING JURISDICTION TO ENFORCE SETTLEMENT AGREEMENTS

"Once a lawsuit is settled and dismissed, the district court does not generally have

'ancillary jurisdiction to enforce the parties' settlement agreement.   A district court can, however,

retain jurisdiction over a settlement agreement if the order of dismissal shows an intent to retain

jurisdiction or incorporates the settlement agreement.'"   McKay v. United States, 207 F. App'x

892, 894 (10th Cir. Nov. 14, 2006)[5](quoting Morris v. City of Hobart, 39 F.3d 1105, 1110 (10th

Cir. 1994)(citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 380-81 (1994)(Scalia,

---

[5] McKay v. United States is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .   However, if an unpublished opinion . . .   has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."   United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that McKay v. United States and Beetle Plastics Inc. v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., No. 96-6031, 1996 WL 531924 (10th Cir. Sept. 19, 1996)(table), have persuasive value with respect to a material issue in a case and will assist the Court in its disposition of this Memorandum Opinion and Order.

J.)).    Accordingly, a federal court does not, <u>ipso</u> <u>facto</u>, have jurisdiction over a settlement agreement by virtue of the settlement agreement resolving claims which the federal court previously entertained.   See <u>In re Burlington N. Santa Fe Rail Corp.</u>, No. CIV-04-0836 JB/RLP, 2007 LW 5685129, at *12 n.5 (D.N.M. Oct. 11, 2007)(Browning, J.)("The Court has, however, no ancillary jurisdiction over the settlement agreement of the parties, because the Court did not explicitly retain such jurisdiction in its order dismissing this case with prejudice pursuant to joint motion.").

Reference to the settlement agreement in the order dismissing a case is necessary for a court to retain jurisdiction over the agreement after dismissing parties' claims which the settlement resolved, unless the Court has an independent basis for jurisdiction over the agreement.   "Unless incorporated into a judgment of the court, a settlement agreement is 'a contract, part of the consideration for which [i]s dismissal of a[] suit.'"   <u>Beetle Plastics Inc. v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus.</u>, No. 96-6031, 1996 WL 531924, at *1 (10th Cir. Sept. 19, 1996)(table)(quoting <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. at 381). "Without reservation by the court . . . there must be an independent basis for federal jurisdiction." <u>Morris v. City of Hobart</u>, 39 F.3d at 1110-11 (citing <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. at 382).   If the parties' "obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal -- either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order," the situation is different.   <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. at 381.   "In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."   <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. at 381.   On the other hand, "[t]he judge's mere awareness

and approval of the terms of the settlement agreement do not suffice to make them part of his

order."   <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. at 381.

<b>RELEVANT NEW MEXICO LAW REGARDING CONTRACT INTERPRETATION<br>AND SETTLEMENT AGREEMENTS</b>

A district court has the authority to enforce settlement agreements that litigants reach.   <u>See</u>

<u>United States v. Hardage</u>, 982 F.2d 1491, 1496 (10th Cir. 1993).   A settlement agreement is a

contract, and it is construed "in the same manner as a contract to determine how it should be

enforced."   <u>Republic Res. Corp. v. ISI Petroleum West Caddo Drilling Program 1981</u>, 836 F.2d

462, 465 (10th Cir. 1987).   <u>See</u> <u>United States v. McCall</u>, 235 F.3d 1211, 1215 (10th Cir.

2000)("Issues involving the formation, construction and enforceability of a settlement agreement

are resolved by applying state contract law.").

In contract cases, "the role of the court is to give effect to the intention of the contracting

parties."   <u>Bogle Farms, Inc. v. Baca</u>, 1996-NMSC-051, ¶ 22, 122 N.M. 422, 925 P.2d 1184.

"The primary objective in construing a contract is not to label it with specific definitions or to look

at form above substance, but to ascertain and enforce the intent of the parties as shown by the

contents of the instrument."   <u>Bogle Farms, Inc. v. Baca</u>, 1996-NMSC-051, ¶ 22, 122 N.M. 422,

925 P.2d 1184 (citing <u>Shaeffer v. Kelton</u>, 95 N.M. 182, 185, 619 P.2d 1226, 1229 (1980)).   "The

parol evidence rule 'bars admission of evidence extrinsic to the contract to contradict and perhaps

even supplement the writing.'"   <u>Memorial Med. Ctr., Inc. v. Tatsch Const., Inc.</u>,

2000-NMSC-030, ¶ 16, 129 N.M. 677, 12 P.3d 431 (citation omitted).   On the other hand, New

Mexico has "adopted the contextual approach to contract interpretation, in recognition of the

difficulty of ascribing meaning and content to terms and expressions in the absence of contextual

understanding."   <u>Mark V, Inc. v. Mellekas</u>, 114 N.M. at 781, 845 P.2d at 1235 (internal quotation

- 31 -

marks and citation omitted).

The question whether an agreement contains an ambiguity is a matter of law.   See Mark

V., Inc. v. Mellekas, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993)(citing Levenson v. Mobley,

106 N.M. 399, 401, 744 P.2d 174, 176 (1987)).   When the "evidence presented is so plain that no

reasonable person could hold any way but one, then the court may interpret the meaning as a

matter of law."   Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235.   A contract "is not

rendered ambiguous merely because a term is not defined; rather, the term must be interpreted in

its usual, ordinary, and popular sense . . . and may be ascertained from a dictionary."   Battishill v.

Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111 (applying principle

to insurance policy)(internal quotation marks omitted).   "A contract is deemed ambiguous only if

it is reasonably and fairly susceptible of different constructions.   The mere fact that the parties are

in disagreement on the construction to be given does not necessarily establish ambiguity."

Vickers v. North Am. Land Dev., Inc., 94 N.M. 65, 68, 607 P.2d 603, 606 (1980).

"An ambiguity exists in an agreement when the parties' expressions of mutual assent lack

clarity."   Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235 (citation omitted).   If the

court finds that the contract is "reasonably and fairly susceptible of different constructions, an

ambiguity exists."   Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235 (citing Vickers v.

North Am. Land Dev., Inc., 94 N.M. 65, 68, 607 P.2d 603, 606 (1980)).

> [I]n determining whether a term or expression to which the parties have agreed is
> unclear, a court may hear evidence of the circumstances surrounding the making of
> the contract and of any relevant usage of trade, course of dealing, and course of
> performance. . . .   It is important to bear in mind that the meaning the court seeks to
> determine is the meaning one party (or both parties, as the circumstances may
> require) attached to a particular term or expression at the time the parties agreed to
> those provisions.
>
> . . . .

- 32 -

> It may be that the evidence presented is so clear that no reasonable person would determine the issue before the court in any way but one.   In that case, to the extent the court decides the issue, the question then may be described as one of law.

C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. 504, 508-10, 817 P.2d 238, 242-44 (1991)

(affirming trial court because it "considered all evidence adduced in response to the motion for

summary judgment, including collateral or extrinsic evidence of the circumstances surrounding

the execution of the lease amendment, and quite properly found no ambiguity").   In addition, in

determining whether an ambiguity exists,

> [a] court may employ the many rules of contract interpretation that do not depend on evidence extrinsic to the contract.  *See, e.g., Smith v. Tinley*, 100 N.M. 663, 665, 674 P.2d 1123, 1125 (1984) (reasonable interpretation of contract is favored); *Schultz & Lindsay Constr. Co. v. State*, 83 N.M. 534, 536, 494 P.2d 612, 614 (1972) (uncertainties construed strictly against drafter); *Id.* at 535, 494 P.2d at 613 (each part of contract is to be given significance according to its place in the contract so as to give effect to the intentions of the parties).

C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. at 510 n.5, 817 P.2d at 244 n.5.   Once the

Court finds that an ambiguity exists, the resolution of that ambiguity becomes a question of fact.

See Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235.   To decide the meaning of any

ambiguous terms, "the fact finder may consider extrinsic evidence of the language and conduct of

the parties and the circumstances surrounding the agreement, as well as oral evidence of the

parties' intent."   Mark V, Inc. v. Mellekas, 114 N.M. at 782, 845 P.2d at 1236.   "[I]f the court

finds ambiguity, the jury (or court as the fact finder in the absence of a jury) resolves the ambiguity

as an issue of ultimate fact before deciding breach and damages."   C.R. Anthony Co. v. Loretto

Mall Partners 112 N.M. at 507, 817 P.2d at 241.

"It is the policy of the law and of the State of New Mexico to favor settlement agreements,"

including those agreements reached during litigation.   Navajo Tribe of Indians v. Hanosh

- 33 -

Chevrolet-Buick, Inc., 106 N.M. 705, 707, 749 P.2d 90, 92 (1988).  New Mexico courts "are

bound by the unambiguous language of the settlement agreements."   Burden v. Colonial Homes,

Inc., 79 N.M. 170, 173, 441 P.2d 210, 213 (1968).   See Montoya v. Villa Linda Mall, Ltd., 110

N.M. 128, 129, 793 P.2d 258, 259 (1990)("It is black letter law that, absent an ambiguity, a court is

bound to interpret and enforce a contract's clear language and cannot create a new agreement for

the parties."); Richardson v. Farmers Ins. Co. of Am., 112 N.M. 73, 74, 811 P.2d 571, 572

(1991)("Absent ambiguity, provisions of a contract need only be applied, rather than construed or

interpreted.").

> In a settlement agreement containing an indemnity provision,
>
> the indemnitee's right to recover necessarily turns upon the language of the
> indemnitor's undertaking.  While the indemnitor is liable only for what the
> indemnitee shows by a preponderance of the evidence to have been a loss or other
> condition contemplated by the undertaking, and that condition is often liability
> and/or costs and fees of defense, the condition contemplated by the undertaking
> may be loss of any kind.

Bergerson Plumbing & Heating, Inc. v. Poole, 111 N.M. 525, 527, 807 P.2d 223, 224 (1991).

Additionally, "[w]hen the purpose of the agreement is to indemnify against loss or harm, damage

as contemplated must be sustained and proved."   Bergerson Plumbing & Heating, Inc. v.

Poole,111 N.M. at 578, 807 P.2d 226.

### LAW REGARDING RAISING NEW ISSUES IN A REPLY BRIEF

The local rules govern motion practice in this Court and permit the parties to file a

dispositive motion, a response to the motion, and a reply.   See D.N.M.LR-Civ. 7.1(a).   The local

rules, consistent with the federal rules, require every motion to "state with particularity the

grounds" for seeking the order.   D.N.M.LR-Civ. 7.1(a); Fed. R. Civ. P. 7(b)(1)(B).   The local

rules further require motions, responses, and replies to specifically "cite authority in support of the

- 34 -

legal positions advanced."  D.N.M.LR-Civ. 7.3(a).  Thus, motions that "state with particularity the grounds" on which they are based allow other parties to decide whether to oppose them and, if they oppose them, to file thorough, researched responses.  "[R]eply briefs reply to arguments made in the response brief -- they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."  Pac. Gas & Elec. Co. v. United States, 69 Fed. Cl. 784, 817 (Fed. Cl. 2006).

A surreply may be filed only with leave of Court.  See D.N.M. LR-Civ. 7.4(b).  "The inequity of a court considering arguments and issues that were raised for the first time in a reply brief should be apparent," because the respondent will not have had an opportunity to respond to the new arguments.  Glad v. Thomas Cnty. Nat'l Bank, No. 87-1299-C, 1990 WL 171068 , at *2 (D. Kan. Oct 10, 1990)(Crow, J.).  See Wagher v. Guy's Foods, Inc., 765 F. Supp. 667, 671 (D. Kan. 1991)(Crow, J.)("In pursuit of fairness and proper notice," the court generally summarily denies or excludes "all arguments and issues first raised in reply briefs.").  Thus, the United States Court of Appeals for the Tenth Circuit has held that, in resolving a summary-judgment motion, a district court need not consider new issues or arguments raised in a reply brief, but if it "relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to these new materials."  Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1192 (10th Cir. 2006)(internal quotation marks   omitted).  There is yet another good reason why movants may not save issues and legal arguments until their reply brief, which, if considered, would necessitate permitting a surreply and encourage the moving party to request permission to file a surresponse to the surreply: "The paper exchanges between parties must have an end point and cannot be permitted to become self perpetuating."  EEOC v. Int'l Paper Co., No. 91–2017–L, 1992 WL 370850, at *10 (D. Kan. Oct. 28, 1992)(Lungstrum, J.).  As the district court stated in City of

Fairview Heights v. Orbitz, Inc., No. 05-CV-840-DRH, 2008 WL 895650 (S.D. Ill. March 31, 2008),

> [a]s a general rule, the Court will not consider arguments or evidence raised for the first time in a reply brief.   It is the practice of this Court . . . to strike this type of newly-raised material, unless there is some legitimate reason why the argument or evidence could not have been raised earlier. . . . It would be unfair for the Court to allow the amended definition [in the reply brief] to stand without giving Defendants the opportunity to respond.   This type of endless back-and-forth is precisely the reason why the Court does not allow new issues in reply briefs and sur-replies.   At this point, the class definition should not be a moving target.

2008 WL 895650 at *3.   In short, a party "may not hold [a] specific . . . [argument] in reserve until it is too late for the [other side] to respond."   United States v. Lewis, 594 F.3d 1270, 1285 (10th Cir. 2010).   "[T]he general rule in [the Tenth] circuit is that a party waives issues and arguments raised for the first time in a reply brief . . . ."   M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 768 n.7 (10th Cir. 2009).

## ANALYSIS

The Court will grant in part and deny in part the Motion to Enforce Settlement.   The Court determines that it should, under rule 60(a), vacate the Final Judgment and re-open this matter so that it may rule on the Motion to Enforce Settlement.   Even though the Court dismissed the Dealerships' cross-claims with prejudice and has entered final judgment in this matter, 28 U.S.C. § 1332's requirements are met for the Court to have diversity jurisdiction over the Motion to Enforce Settlement.   The Settlement Agreement's indemnification provision does not mention a jury finding USAA Casualty legally liable or awarding damages against it before indemnification obligations are triggered.   The Court determines, therefore, that Settlement Agreement requires USAA Casualty to indemnify the Dealerships notwithstanding that the jury did not find USAA Casualty legally liable for the Plaintiffs' damages.   Regarding the scope of the indemnification

provision, USAA Casualty would have the Court delve into issues of causation -- issues which the Dealerships did not raise at trial because of the Settlement Agreement.   Causation issues, however, are predicated upon another issue: the interpretation of term "arising out of actions attributable to USAA, or CoPart."   Settlement Agreement at 18.   On one hand, this term is not dependent upon a jury finding of liability against USAA Casualty, but, on the other hand, the Plaintiffs brought allegations against the Dealerships in addition to and possibly separate from the allegations related to a misrepresentation of the Sierra truck's title.   Both parties maintain that this term is not ambiguous, but they assert conflicting interpretations.   The Court determines that the scope of this term is not ambiguous when viewed in the context of the parties' negotiations and other evidence before the Court, and the Dealerships' interpretation prevails.   The Dealerships presented evidence in the Reply which leads the Court to believe that the parties intended for USAA Casualty to indemnify the Dealerships of all damages, attorneys' fees and costs, and defense costs attributable to or arising out of actions attributable to USAA Casualty's titling actions.   Although USAA Casualty contended that the Court should not consider new information presented for the first time in the Reply, USAA Casualty put the interpretation of the indemnification provision at issue in the Response.   Moreover, the Court invited the parties, at the hearing, to provide additional evidence necessary for interpreting the Settlement Agreement, or to request a <u>Mark V</u> hearing, if they so desired.   Neither party has filed motions or provided the Court with additional evidence since the hearing, which was over one year ago.   Accordingly, the Court has used the evidence before it to interpret the Settlement Agreement, and concludes that the parties' intention in entering into the Settlement Agreement was for USAA Casualty to indemnify the Dealerships of damages, Plaintiffs' attorneys' fees and costs, and defense costs, which USAA Casualty's titling actions caused, even if the Dealerships' conduct, in addition to and independent

of USAA Casualty's conduct, contributed to the jury award against them.

## I.       THE COURT WILL VACATE THE FINAL JUDGMENT.

"A final decision is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Rekstad v. First Bank Sys., 238 F.3d at 1261 (internal quotations omitted). The Court has reviewed the record, and determines that it entered the Final Judgment when matters were before the Court requiring more than enforcement of the Final Judgment alone. The Dealerships filed the Motion to Enforce Settlement April 2, 2010, which, in essence, requests the Court to adjudicate a breach-of-contract claims. Accordingly, the Court was not left with "nothing . . . to do but execute the [F]inal [J]udgment," but, rather, the Court had before it a pending motion to interpret the Settlement Agreement. Rekstad v. First Bank Sys., 238 F.3d at 1261. The Court is unable to construct why, over three years ago, it entered Final Judgment in this matter while the Motion to Enforce Settlement was pending. The Court may not have realized that this motion was on its docket at the time, as the Court's electronic docket did not flag the Motion to Enforce Settlement was a pending motion requiring a ruling. Regardless, the Court determines that it erroneously entered Final Judgment before all the work in this case was done. This Court has to complete its work before entering final judgment. Preparing and filing the separate final judgment -- which the Tenth Circuit has encouraged through its opinions, and informally at Tenth Circuit conferences and judges' breakfasts to prepare -- gives the district court the opportunity to carefully review the docket to ensure that it has dealt properly with all claims and parties. The Court did not intent to enter a final judgment with a motion pending. The Court did not intend to overrule the Motion to Enforce Settlement, and re-opening this matter so as to rule on the Motion to Enforce Settlement does not require the parties to submit additional proof. See McNickle v. Bankers Life & Cas. Co., 888 F.2d at 682 (stating that correcting an order under

rule 60(a) should not require additional proof to be submitted to a court).   The Court intended to rule on the merits of the Motion to Enforce Settlement, as its continued grant of motions for extension of time, and its hearing on January 25, 2012, on the Motion to Enforce Settlement indicate.   See Agreed Order Granting Defendant USAA's Motion for Extension of Time in Which to File its Response, filed April 26, 2010 (Doc. 549); Agreed Order Granting M.D. Lohman and Lomas Auto Mall Inc.'s Motion for Extension of Time in Which to File Reply, filed May 13, 2010 (Doc. 554).   The Court may have forgotten or overlooked this motion.   See Tr. at 2:8-20 (Court)("You know we have a pretty good [] system here in federal court that tells us if we're not ruling on a motion or a case.   It's going to show up on our reports.   And for some reason this one's not, and I don't know exactly why.").   Entry of the Final Judgment was an "oversight or omissions . . . in the record."   Fed. R. Civ. P. 60(a).   The Court determines, therefore, that it should vacate the Final Judgment under rule 60(a).   "Under the Rule changes have been made in the judgment where the trial court recognized that they were necessary to correct an oversight or omission."   Sec. Mut. Cas. Co. v. Century Cas. Co., 621 F.2d at 1065.   See Rivera v. PNS Stores, Inc., 647 F.3d 188, 194 (5th Cir. 2011)(holding that a district court properly amended, under rule 60(a), a final judgment entered after summary judgment, where the final judgment stated that claims were dismissed without prejudice, which the United States Court of Appeals for the Fifth Circuit explained was a "rote, typographical error of transcription that could be committed by a law clerk or a judicial assistant" and was not an "error of judgment or legal reasoning"); Gonzalez v. Sec'y for Dep't of Corrs., 366 F.3d 1253, 1278 (11th Cir. 2004)("One circumstance is where the final judgment is recalled or reopened to correct clerical errors in the judgment itself.").   Under rule 60(a), therefore, the Court will vacate the Final Judgment and re-open this matter so as to rule on the Motion to Enforce Settlement.

- 39 -

## II.     THE COURT HAS JURISDICTION OVER THE MOTION TO ENFORCE SETTLEMENT.

"The Court may, and should, address its subject-matter jurisdiction sua sponte." Zamora v. Wells Fargo Home Mortg., 831 F. Supp. 2d 1284, 1297-98 (D.N.M. 2011)(Browning, J.)(citing Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006)("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." (citation omitted))). As the Tenth Circuit has explained, "[o]nce a lawsuit is settled and dismissed, the district court does not generally have 'ancillary jurisdiction to enforce the parties' settlement.'" McKay v. United States, 207 F. App'x at 894 (quoting Morris v. City of Hobart, 39 F.3d at 1110)(citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 380-81). The Dealerships and USAA Casualty stipulated to the dismissal of the Dealerships' cross claims against USAA Casualty on June 17, 2009, and the parties did not request the Court to retain jurisdiction over a settlement agreement, or request that the Court reference the Settlement Agreement, in the Stipulated Order. See Stipulated Order at 1-2. Additionally, the Court dismissed this case on April 30, 2010, and the Court did not retain jurisdiction over the Settlement Agreement in the Final Judgment. See Final Judgment at 1-2.

> If the parties wish to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so. When the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2) . . . the parties' compliance with the terms of the settlement contract (or the court's "retention of jurisdiction" over the settlement contract) may, in the court's discretion, be one of the terms set forth in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 381. The Court, therefore, does not have jurisdiction over the Settlement Agreement by virtue of its incorporation into the Stipulated

Order or Final Judgment, or because the indemnification provision was set forth in either order. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 378 (holding that neither a voluntary dismissal under rule 41(a)(1)(ii) "nor any provision of law provides for jurisdiction of the court over disputes arising out of an agreement that produces the stipulation"); Beetle Plastics Inc. v. United Ass'n of Journeymen and Apprentices of Plumbing & Pipefitting Indus., 1996 WL 531924, at *1 (holding that a district court did not have jurisdiction over a settlement agreement because the district court's order of dismissal stated "simply that the antitrust case was dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(ii)").   "Absent such action . . . enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction."   Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 382.   See Morris v. City of Hobart, 39 F.3d at 1110-11 (same).

Although the parties have not asserted an independent basis for federal jurisdiction, the Court concludes that it may enforce the Settlement Agreement under its diversity jurisdiction. "Unless incorporated into a judgment of the court, a settlement agreement is 'a contract, part of the consideration for which [i]s dismissal of a[] suit.'"   Beetle Plastics Inc. v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., 1996 WL 531924, at *1 (quoting Kokkonen v. Guardian Life Ins. Co., 511 U.S. at 381).   The Court has diversity jurisdiction over cases in which the amount in controversy exceeds $75,000.00, and the parties are citizens of different states.   See 28 U.S.C. § 1332(a)("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between --   citizens of different states . . . .").   Under the diversity statute, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ."   28 U.S.C. § 1332(c)(1).

Lomas Auto Mall is a "New Mexico corporation," and Lomas Motors is an "individual that owns and operates a[n] auto dealership in Albuquerque, New Mexico."  Complaint ¶¶ 5-6, at 2-3. USAA Casualty has its "principal place of business in San Antonio, Texas."  USAA Casualty, Insurance/Important Legal Information, USAA https://www.usaa.com/inet/pages/insurance_ legal_information?akredirect=true (last visited July 25, 2013).  Additionally, the amount-in-controversy requirement appears to be met, as the Dealerships seek $417682.86 in indemnification from USAA Casualty.  See Motion to Enforce Settlement ¶¶ 17, 18, 19, 20, at 5-6.  The Court concludes, therefore, that it has jurisdiction over the Motion to Enforce Settlement.

## III.     THE COURT WILL CONSIDER THE EVIDENCE IN THE REPLY.

The Court will consider the evidence the Dealerships provided in the Reply.  The Dealerships are not raising a new argument for the first time in the Reply, as USAA Casualty contends.  See Tr. at 35:7-10 (Vigil).  The Motion to Enforce Settlement is premised upon an interpretation of the indemnification provision; interpretation of the Settlement Agreement; therefore, this issue has always been before the Court.  See Motion to Enforce Settlement at 5 ("All of the claims on which Plaintiffs were awarded damages are for actions attributable to USAA or its agent, Co-Part for which USAA agreed to provide indemnification under the Agreement."). Further, USAA Casualty specifically put the indemnification provision's interpretation at issue in the Response when it contended that a "plain reading of the indemnify paragraph" supports its interpretation.  Response at 18.  "[R]eply briefs reply to arguments made in the response brief -- they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."  Pac. Gas & Elec. Co. v. United States, 69 Fed. Cl. at 817.  The Dealerships replied to USAA Casualty's argument regarding the indemnification provision's

interpretation and did not improperly raise a new issue for the Court to consider.  The Court

invited the parties to provide additional evidence or request a <u>Mark V</u> hearing at the hearing, and

neither party took advantage of the Court's invitation.  <u>See</u> Tr. at 44:24-45:2 (Court)("If in the

meantime y'all think of some other issues or want to proceed a different way than me deciding this

motion without a hearing, then let me know.").   The Court will, therefore, consider the evidence

presented in the Reply in ruling on the Motion to Enforce Settlement. Were the Court writing

several weeks, or even several months, after the hearing, the Court may have invited the parties to

file motions with additional evidence supporting their interpretation of the Settlement Agreement

before resolving this matter.   Indeed, the Court invited the parties to submit additional motions or

request a <u>Mark V</u> hearing at the hearing.  <u>See</u> Tr. at 44:23-45:2 (Court).   The Court is now

writing several years after the Motion to Enforce Settlement was filed, on April 2, 2010, and

neither party has notified the Court of additional evidence supporting its interpretation of the

indemnification provision.   If either party has additional evidence supporting its interpretation of

the indemnification provision, the party may file a motion to reconsider and request a <u>Mark V</u>

hearing.

**IV.     BASED UPON THE SETTLEMENT AGREEMENT'S UNAMBIGUOUS LANGUAGE, USAA CASUALTY'S INDEMNIFICAITON OBLIGATIONS ARE NOT DEPENDENT UPON THE JURY FINDING IT LIABLE OR AWARDING DAMAGES AGAINST IT AT TRIAL.**

USAA Casualty contends that it is not required to indemnify the Dealerships, because the

jury did not find USAA Casualty liable for any of the Plaintiffs' damages.  <u>See</u> Response at 4-5.

USAA Casualty also contends that the Special Verdict Form proves that it is not liable for the

Plaintiffs' award.  <u>See</u> Response at 5-9.   The Dealerships respond that "USAA never proposed

language to the effect that its indemnify obligation to the Dealerships would be premised on a

- 43 -

finding of legal liability against USAA."   Reply at 8.   USAA Casualty is attempting to confuse

the issue: before determining issues of causation, the Court must interpret the indemnification

provision.   The issue before the Court is whether the "intention of the contracting parties" was

that USAA Casualty's obligations be predicated upon a jury finding of liability or awarding

damages against USAA.   Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 22, 122 N.M. 422, 925

P.2d 1184.

Initially, the indemnification provision makes no mention of USAA Casualty's obligations

being dependent upon a jury finding of liability.   The first sentence of the indemnification

provision specifically provides

> USAA hereby agrees to indemnify the Dealerships . . . from any damages, liability,
> loss, direct or indirect award to Plaintiff or any other party to the Case, plus defense
> costs including attorneys' fees, taxes, and costs attributable to USAA's or Co-Party
> Auto Auction's [] actions in securing a clean title at the time of the sale of the . . .
> Sierra . . . to the Dealerships.

Settlement Agreement at 17.   The second sentence is nearly identical.   See Settlement

Agreement at 18 ("USAA hereby agrees to indemnify the Dealerships from any damages, liability,

or loss awarded to Plaintiff . . . plus defense costs including attorneys' fees, taxes, and costs

attributable to USAA's or CoPart's actions in obtaining a clean title at the time of the sale of the

Sierra to the Dealerships.").   The third sentence is even more broad:

> Should any party to the Case win a judgment against Lohman, LAM, or Western
> Surety individually or jointly for any actions attributable to USAA or CoPart or
> arising out of actions attributable to USAA or CoPart, USAA hereby agrees to pay
> the award, including any award of costs and attorneys fees, and pay the defense
> costs in full and in a timely manner, subject to any appeals . . . .

Settlement Agreement at 18.   Nowhere in the indemnification provision is a jury finding USAA

Casualty liable or awarding damages against USAA Casualty mentioned.   Rather, the

indemnification provision contemplates a jury award against the other Defendants -- Lomas Auto

- 44 -

Mall, Lohman Motors, and Western Surety -- and guarantees that USAA Casualty will indemnify the Dealerships for that award.   Although USAA Casualty contends that the Dealerships are attempting to "come in here and say, yeah, there wasn't any damage award against [USAA Casualty] for anything that the jury awarded but give us our fees for defending this trial because," it is USAA Casualty, and not the Dealerships, which is attempting to imply an omitted term into the Settlement Agreement.   Tr. at 32:2-6 (Vigil).   The only mention of the necessity of a judgment is in reference to the Dealerships' right of indemnification thereof, and not in reference to a condition upon USAA Casualty's obligations.   See Settlement Agreement at 18 ("Should any party to the case win a judgment against Lohman, LAM, or Western Surety . . . USAA hereby agrees to pay the award . . . .").

Moreover, USAA Casualty has not met its burden for implying a term in fact into the Settlement Agreement.   USAA Casualty has presented no evidence of the parties' conduct which would lead to an inference that they intended for USAA Casualty's obligations to be premised upon a finding of legal liability or a jury award.   Under New Mexico law, "[a]n implied-in-fact contract term . . . is one that is inferred from the statements or conduct of the parties.   It is not a promise defined by law, but one made by the parties, though not expressly."   Hartbarger v. Frank Paxton Co., 115 N.M. 665, 669, 857 P.2d 776, 780 (1993)(citation omitted).   The parties' conduct evidences that they did not intend for USAA Casualty's indemnification obligations to be premised upon the jury finding in Nos. 9 and 10 that USAA Casualty was legally liable and a jury awarding in Nos. 44 and 45 damages against USAA Casualty at trial.   See Special Verdict Form ¶¶ 9-10, 44-45, at 2, 8.   Although USAA Casualty stated at the hearing that the Dealerships could have "pointed a finger at USAA" to demonstrate its liability, Tr. at 24:16-18 (Vigil), the Dealerships' consideration for the Settlement Agreement was dismissal of their cross-claims

against USAA Casualty, see Motion to Enforce Settlement ¶ 22, at 6, and the Dealerships did not present evidence against USAA Casualty at trial.   This conduct leads to a reasonable inference that, rather than implying that USAA Casualty's obligation was predicated upon a finding of legal liability, at least one party to the Settlement Agreement did not believe that a jury award or finding of liability was a necessary term of the indemnification provision.   The Court's role is to "give effect to the intention of the contracting parties," and USAA Casualty has presented no evidence that the parties to the Settlement Agreement intended to dispute each other's liability at trial as part of the indemnification provision.   Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 22, 122 N.M. 422, 925 P.2d 1184.   Had the USAA Casualty's indemnification obligations been premised upon the jury finding it legally liable or awarding damages against it, the parties would have, necessarily, disputed each other's role in the Plaintiffs' damages, and not presented a "united front."

The Court, therefore, finds that the plain reading of the Settlement Agreement does not premise USAA Casualty's indemnification obligations upon the jury finding USAA Casualty legally liable in Nos. 9 and 10 or awarding damages against it in No. 44-45.   USAA Casualty has failed to provide evidence that would allow the Court to reasonably infer from the parties' conduct that they intended for such a term -- which is not written into the indemnification provision -- to be implied-in-fact.   To the contrary, the parties' conduct, including that they did not present evidence against each other at trial regarding liability and that the Dealerships dismissed their cross-claims against USAA Casualty after the trial -- evidences that they did not intend for USAA Casualty's obligations in the Settlement Agreement to be premised upon a finding of legal liability or an award of damages against it.   The Court rejects USAA Casualty's proposed interpretation of this aspect of the indemnification provision, and determines that the Dealerships need not have shown

in Nos. 9, 10, 44, and 45 on the Special Verdict Form that USAA Casualty was legally liable or

that the jury awarded damages against it to trigger USAA Casualty's obligations.

**V.     THE SETTLEMENT AGREEMENT REQUIRES USAA CASUALTY TO INDMENIFY THE DEALERSHIPS FOR THE ENTIRE SUM OF THE JURY'S AWARD AND THE PLAINTIFFS' ATTORNEYS' FEES AND COSTS, AND THE DEALERSHIPS' DEFENSE COSTS ATTRIBUTABLE TO USAA CASUALTY'S TITLING ACTIONS.**

The parties dispute whether the Settlement Agreement requires USAA Casualty to

indemnify the Dealerships for the entire sum of the jury's award, the Plaintiffs' attorneys' fees and

costs, and the Dealerships' defense costs in this matter.   Both the Dealerships and USAA

Casualty maintain that the indemnification provision is unambiguous, but they assert that it

unambiguously provides conflicting relief.   The Dealerships assert that, "if USAA Casualty had

not 'obtained' the issuance of a 'clean title' instead of a salvage title 'at the time of the sale of the

Sierra to the Dealerships,' . . . the claims in this case could not have been made, or would have

been substantially different than they were."   Reply at 8 (quoting Settlement Agreement at 17).

The Dealerships contend that, had USAA Casualty not obtained a clean title, Lohman Motors

would not have purchased the Sierra truck and, consequently, the Plaintiffs would not have

purchased the Sierra truck and this lawsuit would not have occurred.   See Tr. at 19:16-21 (Davis).

Accordingly, the Dealerships assert that the term "arising out of actions attributable to USAA"

means that the indemnification provision encompasses the entire jury award, the Plaintiffs'

attorneys' fees and costs, and the Dealerships' defense costs.   Motion to Enforce Settlement ¶ 16,

at 5.   See Response at 8.   USAA Casualty contends that the Jury Instructions and Special Verdict

Form demonstrate that the jury award was "clearly attributable to what the jury believed to be the

Dealer Defendants' independent fraudulent actions and" UPA violations, and therefore, not within

the scope of the indemnification provision.   Response at 5-6.   The Court has reviewed the

Settlement Agreement and the evidence the Dealerships presented in support of their interpretation.   The Court concludes that the term "arising out of actions attributable to" USAA Casualty is not ambiguous, and that the evidence of the Settlement Agreement's formation evidences that the parties did not intend for USAA Casualty's indemnification obligation to encompass only damages for which USAA Casualty's conduct was the sole cause.   The Court, also, concludes that the Dealerships' interpretation of the Settlement Agreement is consistent with the parties' intention.

First, the Court determines that the term "arising out of actions attributable to," and similar phrases in the indemnification provision, are not ambiguous in the context of the indemnification provision.   Settlement Agreement at 18.   "The mere fact that the parties are in disagreement on the construction to be given does not necessarily establish ambiguity."   Vickers v. North Am. Land Dev., Inc., 94 N.M. at 68, 607 P.2d at 606.   That the term "arising out of actions attributable to" and similar terms are not defined does not render the indemnification provision ambiguous; "rather, the term must be interpreted in its usual, ordinary, and popular sense . . . and may be ascertained from a dictionary."   Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111.   "Attributable" is a derivative of the word "attribute," which, in the phrase to "attribute something to," means to "regard something as being caused by (someone or something)."   Attribute, Oxford English Dictionary 104 (3d ed. 2010).   "Arise" means "[t]o originate; to stem (from)" and "[t]o result (from)."   Arise, Black's Law Dictionary 122 (9th ed. 2009).   The indemnification provision also uses the terms "fraud related to USAA's or CoPart's conduct," and UPA violations "related to the titling actions of USAA at the time of the sale of the Sierra to the Dealerships."   Settlement Agreement at 18.   "Related" is an adjective, and means "belonging to the same family, group, or type; connected."   Related, Oxford English Dictionary

1473.   The use of the terms "related to" in reference to the Plaintiffs' claims of fraud and UPA violations, therefore, indicate that USAA Casualty agreed to indemnify the Dealerships for a broad range of losses -- all those "connected" to or in the same "group" as USAA Casualty's titling actions.   To be "connected to" something means to "bring together or into contact so that a real or notional link is established."   Connect, Oxford English Dictionary 368.   "Related to," therefore, implies causation and more association, as all that is necessary to be "related to" is for a "notional link" to be established.   The indemnification provision, therefore states that USAA Casualty will indemnify the Dealerships for losses USAA Casualty's titling actions caused, and, more specifically, for any liability of fraud "connected to" or in the same "group" as USAA Casualty's titling actions.   A plain reading of the indemnification provision, therefore, indicates that USAA Casualty agreed to broad indemnification obligations for the Dealerships' losses originating from USAA Casualty's titling actions and, even more broadly, for the Dealerships' losses based on fraud related to USAA Casualty's titling actions.

The record, however, possibly renders these terms ambiguous.   The Plaintiffs' allegations were not based upon USAA Casualty's titling actions alone.   The Plaintiffs alleged that the Dealerships committed fraud through: (i) failing to disclose that the Sierra truck had been stolen and was severely damaged in the process; (ii) failing to disclose that extent of the Sierra truck's damage; and (iii) failing to disclose that the Sierra truck merited a salvage title.   See Complaint ¶ 88, at 11-12.   The Plaintiffs also alleged that the Dealerships failed to state a material fact which tended to deceive the Plaintiffs, see Complaint ¶ 127, at 16 (citing NMSA 1978, § 57-12-2(D)(14)), and that "only" the Dealerships misrepresented the Sierra truck's condition, Complaint ¶ 128, at 16, in violation of the UPA.   The Plaintiffs contended that the Dealerships breached the warranty of title by failing to transfer a valid and legal title for the Sierra truck to the

Plaintiffs.   See Complaint ¶¶ 134-137, at 16-17.   These allegations are not based upon USAA Casualty's conduct alone.   Rather, the Plaintiffs alleged that the Dealerships failed to disclose the Sierra truck's damage and failed to transfer a clean title to the Plaintiffs.   The jury ultimately awarded the Plaintiffs damages against Lohman Motors for fraud, the Dealerships for UPA violations, and Lomas Auto Mall for breach of warranty of title, and awarded punitive damages against Lohman Motors for its fraud.   See Special Verdict Form ¶¶ 7-8, at 2; id. ¶¶ 16-17, at 3; id. ¶¶ 24-25, at 4-5; id. ¶¶ 35-39, at 6-7; id. ¶ 43, at 8.   While the Dealerships' actions may not have occurred had USAA Casualty not placed the Sierra truck into the stream of commerce, the Dealerships' liability was, in part, based on their independent conduct, additional to that of USAA Casualty's.   Accordingly, although the Court does not believe that the terms "attributable to" and "arising out of"  or "related to" are ambiguous when read in the context of the indemnification provision alone, the record indicates that there may have been multiple causes and the conduct of multiple parties contributing to the jury's award.   On the other hand, the use of the term "related to" indicates that USAA Casualty will indemnify the Dealerships for losses beyond those causally connected to USAA Casualty's titling actions, at least with respect to the fraud and UPA claims. The question, therefore, is whether this extrinsic evidence renders the indemnification provision ambiguous, and if it is ambiguous, whether the parties intended for USAA Casualty to indemnify the Dealerships for only damages arising from USAA Casualty's conduct alone.   "[T]he role of the court is to give effect to the intention of the contracting parties."   Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 22, 122 N.M. 422, 925 P.2d 1184.

USAA Casualty contends that, because the jury awarded damages based upon the Dealerships' conduct, as the Special Verdict Form and Jury Instructions indicate, USAA Casualty is not required to indemnify the Dealerships under the Settlement Agreement.   See 28:20-30:17

(Vigil).   This argument fails for two reasons: (i) the extrinsic evidence before the Court establishes by a preponderance of the evidence that the Settlement Agreement is not ambiguous and the parties did not intend for USAA Casualty to indemnify the Dealerships only for damages which USAA Casualty's conduct alone caused; and (ii) the record demonstrates that the jury's award, the Plaintiffs' attorneys' fees and costs, and the defense costs, are within the indemnification provision's scope.   USAA Casualty correctly cites to Bergerson Plumbing & Heating, Inc. v. Poole for the proposition that the Dealerships must demonstrate by a "preponderance of the evidence" that their losses were "contemplated by" the Settlement Agreement.   Response at 3-4.   USAA Casualty attempts to confuse the issue, however, by asserting that the Dealerships' burden is one of establishing causation, rather than establishing an interpretation of the Settlement Agreement by the preponderance of the evidence.   See Response at 4 ("The Dealer Defendants offer no proof whatsoever in support of their assertion that the jury awarded damages against them because of the conduct of USAA.").   In either case, USAA Casualty's arguments fail.

> **A.     THE PREPONDERANCE OF THE EVIDENCE BEFORE THE COURT DEMONSTRATES THAT THE SETTLEMENT AGREEMENT IS NOT AMBIGUOUS, AND THAT USAA CASUALTY IS REQUIRED TO INDEMNIFY THE DEALERSHIPS FOR LOSSES ORIGINATING FROM USAA CASUALTY'S TITLING ACTIONS.**

Although the record indicates that the Plaintiffs' allegations were based on conduct beyond USAA Casualty's titling activities, the extrinsic evidence related to the Settlement Agreement indicates that it unambiguously requires indemnification of the entire jury award.   "An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity."   Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235 (citation omitted).

[I]n determining whether a term or expression to which the parties have agreed is

unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance. . . .   It is important to bear in mind that the meaning the court seeks to determine is the meaning one party (or both parties, as the circumstances may require) attached to a particular term or expression at the time the parties agreed to those provisions.

. . . .

It may be that the evidence presented is so clear that no reasonable person would determine the issue before the court in any way but one.   In that case, to the extent the court decides the issue, the question then may be described as one of law.

C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. at 508-10, 817 P.2d at 242-44. Additionally, the Court will favor a reasonable interpretation of the Settlement Agreement.   See Smith v. Tinley, 100 N.M. at 665, 674 P.2d at 1125.   The Settlement Agreement relates to three categories of claims on which the jury awarded damages against the Dealerships: (i) fraud; (ii) UPA violations; and (iii) breach of warranty of title.   See Settlement Agreement at 18.   The Court determines that the parties' negotiations and conduct regarding the Settlement Agreement indicates that they did not intend for USAA Casualty's indemnification obligations to be limited to those damages and losses of which its tilting conduct was the sole cause.

First, the Court's "primary objective in constructing a contract is to . . . ascertain and enforce the intent of the parties as shown by the contents of the instrument."   Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 22, 122 N.M. 422, 925 P.2d 1184.   The parties' intention with the Settlement Agreement was to present a "united front" against the Plaintiffs.   If USAA Casualty's indemnification was predicated upon its conduct being the sole cause or proximate cause of any damages award, the Dealerships and USAA Casualty would have presented evidence against each other at trial, undermining the purpose of the Settlement Agreement.   See April 8 Steinbook/Davis Email at 1 ("USAA . . . .   wants us to be on the same side at trial.").   That they

- 52 -

did not present evidence of each other's liability in causing the Plaintiffs' harm evidences that their intention was not to limit USAA Casualty's obligations to those damages of which its titling actions was the sole or proximate cause.   Further, if proximate causation was an issue of contention between the parties, the Settlement Agreement would have likely made mention of the term in the indemnification provision.   That the indemnification provision does not mention "proximate cause" or even that USAA Casualty's conduct must be the "sole cause" indicates that the parties did not intend for USAA Casualty's indemnification obligations to be limited to the losses which their titling actions proximately or solely caused.   Neither party has presented evidence which allows the Court to imply a more strict meaning of "attributable to," "arising out of," and "related to," and, therefore, the Court cannot imply a more strict meaning of these terms than that which a dictionary provides.   See Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111

Second, the Dealerships point out that they required that the term "solely" be deleted from the indemnification provision.   Reply at 5.   The parties' negotiations regarding the Settlement Agreement demonstrate that the term "solely" was, at one point, included in the phrase "breach of warranty of title due solely to USAA's titling actions at the time of the sale."   Settlement Agreement Draft 3 at 3, filed May 20, 2010 (Doc. 555-1).   In response to the addition of the term "solely to" in the third sentence of the indemnification provision, the Dealerships responded that the "insertion of 'solely'" is a "deal breaker[]."   Electronic Mail Transmission from Brett Steinbook to Charles Vigil (May 15, 2009, 12:17 p.m.), filed May 20, 2010 (Doc. 555-1).   USAA Casualty agreed to remove this term, and the term was removed from the final draft.   See Settlement Agreement at 18.   That this term was in the Settlement Agreement, and then expressly removed on the Dealership's requirement, indicates that the parties did not intend for

USAA Casualty to indemnify the Dealerships for breach of warranty damages "solely" caused by USAA Casualty's titling actions.   The Court also notes that the term "solely" is used nowhere else in the Settlement Agreement.   Had USAA Casualty intended to indemnify the Dealerships for losses that its titling actions "solely" caused, the Court believes that USAA Casualty would have attempted to add that term in another sentence, as it did in relation to the breach of warranty of title. Its absence from the remainder of the Settlement Agreement confirms the Court's finding that the indemnification provision is unambiguous, and does not limit USAA Casualty's indemnification obligations to the harm its titling actions solely caused.

On the other hand, to the extent that the Dealerships are arguing that USAA Casualty must indemnify them for all defense costs, irrespective whether the costs are attributable to USAA Casualty's tilting activities, the Court rejects that interpretation.   Defense costs are mentioned in the indemnification provision only in connection with the terms "attributable to USAA's or CoPart's Auto Auctions's [] actions," or as inclusive of indemnification for a jury award "arising out of actions attributable to USAA or CoPart."   Settlement Agreement at 17, 18.   A plain reading of the indemnification provision, therefore, demonstrates that USAA Casualty did not agree to indemnify the Dealerships for costs separately from those attributable to it.   See Bergerson Plumbing & Heating, Inc. v. Poole, 111 N.M. at 527, 807 P.2d at 224 ("[T]he indemnitee's right to recover necessarily turns upon the language of the indemnitor's undertaking.").   Although the Dealerships contend that USAA Casualty's obtaining a clean title is the same as putting the Sierra truck into the stream of commerce, they cite no authority and provide no evidence for this interpretation.   The Dealerships contend that the Sierra truck would not have gone into "the stream of commerce" had USAA Casualty not obtained a clean title for it, but there is no evidence that USAA Casualty would not have attempted to sell the Sierra truck with

a salvage title.   Tr. at 17:5-10 (Davis).   More importantly, there is no evidence that the parties equated the "attributable to" or "arising out of" language regarding USAA Casualty's titling actions with putting the Sierra truck into the stream of commerce.   In the initial electronic mail transmission discussing the Settlement Agreement, Mr. Steinbook states that USAA Casualty may "agree to indemnify Lohman and LAM against any award for titling washing and salvage title claims."   April 8 Steinbook/Davis Email at 1.   Had USAA Casualty intended or agreed to indemnify the Dealerships for putting the Sierra truck into the stream of commerce -- which would possibly encompass a wider swath of conduct -- the Dealerships and the Settlement Agreement would have likely so stated.   The Court does not conclude that the breadth of the terms "attributable to," "arising out of," and "related to" mean that USAA Casualty agreed to indemnify the Dealerships for all liability subsequent to placing the Sierra truck for sale at auction.   In the absence of any basis to imply a different meaning, the Court cannot interpret the indemnification provision to require USAA Casualty to indemnify the Dealerships for all defense costs, irrespective of USAA Casualty's conduct.

The Dealerships have met their burden in establishing, by a preponderance of the evidence, that the parties contemplated USSA Casualty's indemnification obligations to encompass losses originating from USAA Casualty's titling actions, and, more broadly, to encompass losses from fraud related to USAA Casualty's titling actions.   The Court's examination of the Settlement Agreement and the context in which it was executed demonstrates by a preponderance of the evidence that the indemnification provision is unambiguous.   The Court concludes that the intention of the parties was for USAA Casualty to broadly indemnify the Dealerships for damages and defense costs attributable to and arising out of its titling actions, and, even more broadly, for fraud and UPA violations related to its titling actions.   The

- 55 -

indemnification provision does not require USAA Casualty to indemnify the Dealerships for the entire cost of defending this action, but, rather, only for the costs of defense attributable to or arising out of USAA Casualty's titling actions.   There is no evidence that the parties intended a different meaning than that which a dictionary provides, whether more strict or liberal.   These terms imply that USAA Casualty would indemnify the Dealerships for losses that originated from its titling actions, and, therefore, USAA Casualty's indemnification obligations are not limited to only the losses which its titling actions solely caused.

### B.   THE JURY AWARD, PLAINTIFFS' FEES, AND AT LEAST PART OF THE DEALERSHIPS' DEFENSE COSTS AND WESTERN SURETY'S ATTORNEYS FEES ARE ATTRIBUTABLE TO USAA CASUALTY'S TITLING ACTIONS.

The indemnification provision does not limit USAA Casualty's obligations to only those losses its titling actions solely or proximately caused.   Rather, the indemnification provision requires USAA Casualty to broadly indemnify the Dealerships for losses arising out of actions attributable to USAA Casualty, and for losses awarded for fraud and UPA violations related to USAA Casualty's titling actions.   The Jury Instructions and Special Verdict Form demonstrate that USAA Casualty's conduct was a cause of the jury's award, and, therefore, the Court determines that the jury's award is a loss for which the Settlement Agreement requires USAA Casualty to indemnify the Dealerships.   On the other hand, the evidence before the Court is inconclusive regarding the Dealerships' defense costs and Western Surety's attorneys' fees and costs, and the Court cannot parse these attorneys' fees and costs to determine whether the sums are entirely attributable to, or arise from actions attributable to USAA Casualty's titling actions.

First, regarding the Plaintiffs' allegations of fraud, the jury was allowed to find that Lohman Motors committed fraud if it: (i) failed to disclose the extent of the Sierra truck's damage;

(ii) failed to disclose that the Sierra truck merited a salvage title; or (ii) failed to disclose that the Sierra truck was unsafe.   See Jury Instructions ¶ 18, at 22.   USAA Casualty maintains that the jury's award is not attributable to its conduct, because the jury did not find it liable for fraud.   See Response at 6 (citing Special Verdict Form ¶ 9, at 2).   Finding that USAA Casualty committed fraud, however, is a separate inquiry from finding that the jury award was attributable to USAA Casualty's "titling actions."   Settlement Agreement at 18.   Importantly, any one of three actions was sufficient for Lohman Motors to be found liable for fraud, and one of the three actions was failing to disclose that the Sierra truck merited a salvage title.   The Special Verdict Form does not distinguish between the Plaintiffs' theories of fraud.   Had USAA Casualty not obtained a clean title instead of a salvage title for the Sierra truck, as the Court has found it was required to do, Lohman Motors would have had, at least, one less avenue for misrepresenting the Sierra truck's title as clean.   See Doc. 357 MOO at 7-8.   Moreover, the Settlement Agreement provides that USAA Casualty will indemnify the Dealerships for all "fraud related to" USAA Casualty's titling actions, indicating that USAA Casualty's indemnification obligations for fraud are quite broad.   Settlement Agreement at 18.     Accordingly, the Court determines that USAA Casualty's titling actions, in so far as they allowed the Dealerships an additional basis for fraudulently misrepresenting the Sierra truck's title, are connected to the jury finding that the Dealerships committed fraud.   USAA Casualty, therefore, must indemnify the Dealerships for the jury's award based upon the Dealerships' fraud.

Second, the Jury Instructions and Special Verdict Form indicate that the Dealerships' UPA violations was, at least in part, attributable to USAA Casualty's titling actions.   The Jury Instructions allowed the jury to find that the Dealerships violated UPA if they: (i) made a "false or misleading oral or written statement, visual description or other representation of any kind;" (ii)

made the false or misleading statement knowingly, "in connection with the sale of goods;" and (iii) "the representation tended to and did deceive or mislead."   Jury Instructions ¶ 24, at 28.   The Plaintiffs' allegations of UPA violations against the Dealerships were based both on the fact that the Sierra truck merited a salvage title, which was not disclosed to them and that the Dealerships misrepresented the extent of the Sierra truck's damage.   See Complaint ¶¶ 125-130 at 15-16. Accordingly, the jury's award could have been related to the Sierra truck's clean title -- which USAA Casualty's conduct allowed the Dealerships to possess; all that the indemnification provision requires is that USAA Casualty's conduct be related to Lohman Motors' UPA violations.   The Court cannot separate USAA Casualty's titling actions, which provided Lohman Motors an additional basis to misrepresent the Sierra truck' title, from Lohman Motors' UPA violations to the point that the Defendants' conduct is unrelated.   That the jury did not find that USAA Casualty's UPA violations caused the Plaintiffs' damages, therefore, does not foreclose the possibility that jury's award does not "stem from" or is unrelated to USAA Casualty's conduct in acquiring a clean title for the Sierra truck.   Rather, the Jury Instructions and Special Verdict Form indicate that USAA Casualty's titling actions were connected to, or in the same group as Lohman Motors' UPA violations, sufficient to require that USAA Casualty indemnify Lohman Motors for its UPA violations.

Similarly, USAA Casualty's titling actions were a cause of the jury finding that Lomas Auto Mall breached the warranty of title.   The Jury Instructions allowed for an award against either Dealership if either one "failed to transfer good title in the Sierra"; or "did not rightfully transfer title in the Sierra" to the Plaintiffs.   Jury Instructions ¶ 49, at 18.   Notably, the jury did not find against Lomas Auto Mall because it "willfully or knowingly provided bad title."   Jury Instructions ¶ 50, at 56.   That USAA Casualty did not transfer a salvage title to the Dealerships,

therefore, precluded Lomas Auto Mall, at least in part, from transferring the salvage title that the Sierra truck merited to the Plaintiffs.  Moreover, the lack of a state-of-mind element further indicates that Lomas Auto Mall's culpability was not tied to its independent conduct.  USAA Casualty's actions need not have been the sole cause of a finding against Lomas Auto Mall to trigger the indemnification provision.  Accordingly, the Special Verdict Form and the Jury Instructions indicate that USAA Casualty's titling actions was a cause in the jury finding against Lomas Auto Mall for a breach of warranty of title, and that USAA Casualty must indemnify the Dealerships for the jury's award against them based upon breach of warranty of title.

Last, the Special Verdict Form and Jury Instructions indicates that the jury's award of punitive damages was related to or stemmed from USAA Casualty's titling actions.  The Jury Instructions directed the jury to award punitive damages against Lohman Motors if it determined that Lohman Motors' fraud "was malicious, reckless, wanton, fraudulent, or in bad faith."  Jury Instructions ¶ 62, at 71.  On the one hand, it is a stretch to find that Lohman Motors' malicious, reckless, wanton, or fraudulent actions, or its bad faith, was attributable to USAA Casualty's titling actions, as punitive damages are premised upon Lohman Motors' state of mind.  On the other hand, the jury could have awarded punitive damages against Lohman Motors only if it found Lohman Motors committed fraud, and the Jury Instructions allowed the jury to find Lohman Motors to have committed fraud if it failed to disclose that the Sierra truck merited a salvage title.  See Jury Instructions ¶ 18, at 22.  Additionally, the use of the term "fraud related to USAA[ Casualty's] conduct in securing a non-salvage title" indicates an agreement to indemnify the Dealerships broadly -- for all losses in the same "group" or "connected" to USAA Casualty's titling actions.  Settlement Agreement at 18.  The Special Verdict Form did not distinguish between the Plaintiffs' theories of fraud, and that USAA Casualty transferred the Sierra truck to

Lohman Motors with a clean title allowed Lohman Motors, at least in part, to misrepresent the Sierra truck's title.   See Special Verdict Form ¶ 7, at 2.   Accordingly, just as the Court concludes that the jury's award for Lohman Motors' fraud was related to USAA Casualty's titling actions -- in so far as USAA Casualty's actions allowed Lohman Motors to misrepresent the Sierra truck's title -- the Court concludes that the award of punitive damages was connected or related to USAA Casualty's titling actions.

Additionally, the Plaintiffs' ability to seek attorneys' fees and costs is attributable to USAA Casualty's titling actions.   The Court determines that each claim on which the jury found the Dealerships liable originated from, or was related to, USAA Casualty's titling actions, and the Plaintiffs are only able to seek attorneys' fees and costs against the Dealerships because they prevailed against them at trial.   Accordingly, an award of fees and costs was "attributable to" or "arising out of actions attributable to" USAA Casualty's titling actions, because USAA Casualty's titling actions provided the Plaintiffs' an ability to seek an award of attorneys' fees and costs.   See Plaintiffs' Brief in Support of Motion for Award of Attorney Fees at 1-2, filed September 30, 2009 (Doc. 500)(requesting attorneys' fees from the Dealerships on the basis of their jury award against the Dealerships).   USAA Casualty, therefore, must indemnify the Dealerships for any attorneys' fees and costs paid to the Plaintiffs.

In sum, USAA Casualty's titling actions at least allowed the Dealerships to misrepresent the Sierra truck's title, in violation of UPA and in breach of warranty of title -- conduct for which the jury awarded damages to the Plaintiffs.   Although USAA Casualty's conduct may not have been the sole cause of the damages the jury awarded the Plaintiffs, USAA Casualty's titling actions allowed, at least in part, for the Dealerships to cause monetary harm to the Plaintiffs, sufficient to require under the Settlement Agreement that USAA Casualty indemnify the

Dealerships for the jury award and the Plaintiffs' attorneys' costs and fees, because these losses are attributable or related to USAA Casualty's titling actions.

In conclusion, the Settlement Agreement is unambiguous.   USAA Casualty's indemnification obligations are not predicated upon the jury finding in Nos. 9, 10, 44, and 45 legally liable or awarding damages against USAA Casualty.   Additionally, the parties' intent for the Settlement Agreement was that USAA Casualty would indemnify the Dealerships for all losses originating from USAA Casualty's titling actions, and for losses based in fraud and UPA violations related to USAA Casualty's titling obligations.   The evidence before the Court demonstrates that USAA Casualty's titling conduct was the origin of the jury's award against the Dealerships.   The Court orders USAA Casualty to indemnify the Dealerships for: (i) the $48,748.61 which the Dealerships paid to the Plaintiffs to satisfy the judgment, see Partial Satisfaction of Judgment at 1; and (ii) the Plaintiffs' attorneys' fees and costs, see Judgment Order at 2-3.   The Court would order that USAA Casualty must indemnify the Dealerships for: (i) the portion of their $171,397.53 in defense costs attributable to, and arising out of actions attributable to, USAA Casualty's titling actions, see Motion to Enforce Settlement ¶ 19, at 6; and (ii) the portion of the $64,356.83 which the Dealerships paid to Western Surety in attorneys' fees and costs attributable to, and arising out of actions attributable to, USAA Casualty's titling actions. The parties have not presented evidence accounting for the defense costs and attorneys' fees and costs that are attributable to or arise out of actions attributable to USAA Casualty's titling actions. Based on the Court's interpretation of the Settlement Agreement, it is unlikely that much of the attorneys' fees and costs are not attributable to, or did not arise out of actions attributable to, USAA Casualty's titling actions.   The Court cannot, however, rule on the origins of attorneys' fees and costs for which the parties have not accounted.   If the parties are unable, in light of the

Court's guidance regarding the scope of the Settlement Agreement, to determine the amount of defense costs and attorneys' fees for which USAA Casualty must indemnify the Dealerships, the parties may file a motion with the Court and request a hearing to resolve any dispute.

**IT IS ORDERED** that (i) the Final Judgment, filed April 30, 2010 (Doc. 552), is vacated and this matter is re-opened; and (ii) M.D. Lohman d/b/a Lohman Motors' and Lomas Auto Mall, Inc.'s Motion for Enforcement of Indemnity Provisions of Settlement Agreement with USAA Casualty Company, filed April 2, 2010 (Doc. 546), is granted in part and denied in part. Defendant USAA Casualty Insurance Company d/b/a USAA must indemnify the Defendants Lomas Auto Mall, Inc. and M.D. Lohman d/b/a Lohman Motors for: (i) the $48,748.61 paid the Plaintiffs; (ii) the amount paid in attorneys' fees and costs to the Plaintiffs; and (iii) the portion of Lomas Auto Mall and Lohman Motors' defense costs and of the $64,356.83 which Lomas Auto Mall and Lohman Motors paid to Western Surety in attorneys' fees and costs attributable to, and arising out of actions attributable to, USAA Casualty's titling actions, as set forth in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Richard N. Feferman
Rob Treinen
Charles S. Parnall
Feferman & Warren
Albuquerque, New Mexico

 *Attorneys for the Plaintiffs and Counter-Defendants*

William F. Davis
Charles R. Hughson
Brett Steinbook
William F. Davis & Assoc., P.C.
Albuquerque, New Mexico

> *Attorneys for Defendants, Counterclaimants, Cross-Claimants and Cross-Defendants Lomas Auto Mall, Inc. and M.D. Lohman d/b/a Lohman Motors*

Judd C. West
Michael Neill
Doughty and West, P.A.
Albuquerque, New Mexico

-- and --

William F. Davis
William F. Davis & Assoc., P.C.
Albuquerque, New Mexico

> *Attorneys for Defendant and Cross-Claimant Western Surety Company*

Mark J. Klecan
Klecan & Childress
Albuquerque, New Mexico

-- and --

Charles J. Vigil
Leslie McCarthy Apodaca
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

-- and --

Jeffrey W. McElroy
John Paul Valdez
Ray, Valdez, McChristian & Jeans, P.C.
El Paso, Texas

-- and --

Robert E. Valdez
Ray, Valdez, McChristian & Jeans, P.C.
San Antonio, Texas

    *Attorneys for Defendant and Cross-claim Defendant USAA Casualty Insurance Company*

Michael L. Danoff
Michael L. Danoff & Associates, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Independent Automobile Dealers Service Corporation, Ltd. and New Mexico Independent Automobile Dealers Association, Inc.*