# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DELFINO PEDROZA and LILIANA
ANDRADE,

      Plaintiffs,

vs.                                                            No. CIV 07-0591 JB/RHS

LOMAS AUTO MALL, INC.; M.D. LOHMAN
d/b/a LOHMAN MOTORS; WESTERN
SURETY COMPANY; USAA CASUALTY
INSURANCE COMPANY d/b/a USAA and
INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD.,

      Defendants,

LOMAS AUTO MALL, INC. and M.D.
LOHMAN d/b/a LOHMAN MOTORS,

      Third-Party Plaintiffs,

vs.

INDEPENDENT AUTO DEALERS SERVICE
CORPORATION, LTD. and NEW MEXICO
INDEPENDENT AUTOMOBILE DEALERS'
ASSOCIATION, INC.,

      Third-Party Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) USAA's Motion to Dismiss for Lack of

Subject Matter Jurisdiction, filed July 3, 2014 (Doc. 629)("MTD"); (ii) the Motion to Liquidate

Defendants and Third-Party Plaintiffs Lomas Auto Mall, Inc. and M.D. Lohman d/b/a Lohman

Motors' Claim as Set out in the Court's Memorandum Opinion and Order Enforcing Settlement

Agreement, filed April 3, 2014 (Doc. 598)("Motion to Liquidate"); (iii) the Motion to Strike

Plaintiffs' Response to Motion to Liquidate Defendants [sic] Claim, filed May 1, 2014 (Doc. 604)("Motion to Strike"); and (iv) USAA's Motion for Reconsideration, filed April 23, 2014 (Doc. 601)("Motion to Reconsider").  The Court held a hearing on November 4, 2014.  The primary issue is whether the Court has subject-matter jurisdiction to enforce the settlement agreement between Defendants/Third-Party Plaintiffs Lomas Auto Mall, Inc., and M.D. Lohman d/b/a Lohman Motors (collectively, the "Dealerships"), and Defendant USAA Casualty Insurance Company ("USAA Insurance").  Because the two stipulated dismissals under rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure that served as the settlement agreement's consideration neither incorporated the settlement agreement's terms nor retained jurisdiction with the Court -- as <u>Kokkonen v. Guardian Life Insurance Co. of America</u>, 511 U.S. 375 (1994)(Scalia, J.)("<u>Kokkonen</u>"), requires for the Court to exercise ancillary jurisdiction -- the Court lacks subject-matter jurisdiction to enforce the settlement agreement.  The Court will therefore grant the MTD, and deny the Motion to Liquidate, the Motion to Strike, and the Motion to Reconsider for lack of jurisdiction.

## **FACTUAL BACKGROUND**

This matter relates to the Plaintiffs' purchase of a 2005 General Motors Company ("GMC") Sierra truck from Lomas Auto Mall on December 29, 2006.  At the time of the purchase, Lomas Auto Mall did not disclose to the Plaintiffs that the GMC Sierra truck previously had a salvage title and had gone through an eventful history.  The GMC Sierra truck was stolen from its original owner, Lori Buckner, in August, 2006.  USAA Insurance took title to the GMC Sierra truck in a settlement with Buckner.  When CoPart Auto Auctions applied for a title in USAA Insurance's name, the GMC Sierra truck was initially issued a salvage title, but the title was later changed to a clean title.  The reasons for this change were at the center of the

Plaintiffs' case.  See Memorandum Opinion and Order at 2, filed January 20, 2009 (Doc. 344)("Jan. 20, 2009, MOO").

When USAA Insurance took title to the GMC Sierra truck, it was damaged, and USAA Insurance considered it uneconomical to repair.  See Memorandum Opinion and Order at 3, filed May 16, 2009 (Doc. 437)("May 16, 2009, MOO"); Jan. 20, 2009, MOO at 2-3.  CoPart Auction applied for a title for the GMC Sierra truck through Defendant Independent Auto Dealers Service Corporation, Ltd. ("IADSC"), a New Mexico Motor Vehicle Department ("MVD") fee agent, authorized to issue title on the MVD's behalf.  Jan 20, 2009, MOO at 2-3.  The Dealerships contended that USAA Insurance authorized CoPart Auction to apply for a clean title, but the Plaintiffs alleged that USAA Insurance initially instructed IADSC to obtain a salvage title. CoPart Auction first received a salvage title, but then requested a clean title from IADSC. IADSC then issued a clean title to the GMC Sierra truck.  Lohman Motors purchased the GMC Sierra truck in an auction from USAA Insurance, and the GMC Sierra truck was eventually transferred to Lomas Auto Mall, from whom the Plaintiffs purchased the GMC Sierra truck.  Jan. 20, 2009, MOO at 3; Seconded Amended Complaint for Damages and for Declaratory Relief and Jury Demand ¶ 38, at 6 (filed July 9, 2008)(Doc. 193).

## PROCEDURAL BACKGROUND

On July 9, 2008, the Plaintiffs filed a Second Amended Complaint against the Dealerships for fraud, violations of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to 57-12-26 ("UPA"), breach of warranty of title, and civil conspiracy; and against USAA Insurance for UPA violations, fraud, civil conspiracy, joint enterprise, and fraud by joint enterprise, in connection with the sale of the GMC Sierra truck.  See Second Amended Complaint for Damages and for Declaratory Relief and Jury Demand, filed July 9, 2008

(Doc. 193)("Complaint").   The Dealerships filed cross-claims against USAA Insurance for indemnification, fraud, and UPA violations.   See First Amended Answer of Lomas Auto Mall, Inc. and M.D. Lohman to Plaintiffs' Second Amended Complaint for Damages and Declaratory Relief and Jury Demand ¶¶ 72-78, at 14-17, filed July 29, 2008 (Doc. 215)("Dealerships' Answer").   The Dealerships alleged that

> [i]f LAM and Lohman are found liable to Mr. Pedroza and Ms. Andrade . . . then under the law of New Mexico, USAA will be liable to the LAM and Lohman because USAA, not the LAM and Lohman, was actively at fault by selling, through its agent CoPart, the Sierra truck on the clean October 26, 2006 title certificate.

Dealerships' Answer ¶ 75, at 14.   The Dealerships further alleged that USSA Casualty "knew at the time it sold the GMC Sierra to Lohman Motors that the GMC Sierra had been damaged" to the extent that USAA Insurance considered repairs uneconomical, that USAA Insurance knew that the GMC Sierra truck should have had a salvage title under New Mexico law, and that USAA Insurance knowingly instructed CoPart Auction to sell the GMC Sierra truck to Lohman Motors unrepaired with an improper clean title in violation of N.M. Stat. Ann. §§ 57-12-2(D), 57-12-3, and 57-12-6.   Dealerships' Answer ¶¶ 78-80, at 15.   The Dealerships also contended that Lohman Motors relied on USAA Insurance's representation of clean title and would not have sold the GMC Sierra truck to the Plaintiffs had USAA Insurance not stated it had a clean title.   See Dealerships' Answer ¶¶ 82-83, 85, 88 at 16 -17.

### 1.      The Trial and Related Proceedings.

On January 28, 2009, the Court granted the Plaintiffs' motion for partial summary judgment against USAA Insurance, finding, as a matter of law, that the GMC Sierra truck warranted a salvage title and that USAA Insurance violated the UPA by securing a clean title for the GMC Sierra truck.   See Memorandum Opinion and Order at 7-8, 15, filed January 28, 2009

(Doc. 356).  The Court also determined that IADSC could not be liable to the Dealerships for indemnification, because USAA Insurance is liable for obtaining the clean title.  See Order at 1-2, filed January 28, 2009 (Doc. 357).

Also on January 28, 2009, the Court dismissed the Plaintiffs' conspiracy claim involving USAA Insurance and IADSC, based on the Plaintiffs' concession that the Court should dismiss this particular conspiracy claim.  See Memorandum Opinion and Order at 6-7, filed January 28, 2009 (Doc. 358)("Doc. 358 MOO").  The Court found that the "important facts for this motion are: (i) USAA's involvement in auctioning the GMC Sierra on a clean title; and (ii) USAA's involvement in acquiring a second clean title from the . . . MVD . . . ."  Doc. 358 MOO at 2.  As to fraud, the Court found that "a jury could infer that USAA deliberately ignored its own policy in seeking a clean title . . . ," Doc. 358 MOO at 9, and that evidence existed that USAA Insurance had reason to expect its alleged misrepresentations would be repeated in the stream of commerce, see Doc. 358 MOO at 10.

In April, 2009, USAA Insurance offered to indemnify Lomas Auto Mall and Lohman Motors so that these three Defendants could "be on the same side" at trial.  Electronic Mail Transmission from Brett Steinbook to William Davis at 1, filed May 20, 2010 (April 8, 2009, 9:19 a.m.)(Doc. 551-1)("April 8 Steinbook/Davis Email").  USAA Insurance and the Dealerships distilled a settlement agreement, including an indemnification provision, into writing on May 15, 2009.  See Motion of M.D. Lohman and Lomas Auto Mall, Inc. for Enforcement of Indemnity Provisions of Settlement Agreement with USAA Casualty Insurance Company ¶ 6, at 3, filed April 2, 2010 (Doc. 546)("Motion to Enforce"); Electronic Mail Transmission from Charles Vigil to Brett Steinbook and Robert Valdez at 15, filed May 20, 2010 (May 15, 2009, 3:22 p.m.)(Doc. 555-1)("May 15 Vigil/Steinbook/Valdez Email"); Electronic Mail Transmission from

Charles Vigil to Brett Steinbook (May 15, 2009, 3:50 p.m.), filed May 20, 2010 (Doc. 555-1)("May 15 Vigil/Steinbook Email").   The Settlement Agreement provides, in paragraph 3:

> 3.   Indemnification. USAA hereby agrees to indemnify the Dealerships, LAM and Lohman, and Western Surety and hold them individually and/or jointly harmless from any damages, liability, loss, direct or indirect awarded to Plaintiff or any other party to the Case, plus defense costs including attorneys' fees, taxes, and costs attributable to USAA's or CoPart Auto Auction's ("CoPart") actions in securing a clean title at the time of the sale of the 2005 silver GMC Sierra, VIN #2GTEK13T551364583 (the "Sierra") to the Dealerships, including the following claims of Plaintiffs' Second Amended Complaint for Damages and for Declaratory Relief and Jury Demand [Docket No. 193]: First Claim for Relief: Violations of the MVICSA by the Dealerships [¶¶ 84-87] for failure to present the salvage title certificate at the time the Sierra was sold to Plaintiffs; [¶¶ 120-124];

> USAA hereby agrees to indemnify the Dealerships and hold them harmless from any damages, liability, or loss awarded to Plaintiff or any other party to the Case, plus defense costs including attorneys' fees, taxes, and costs attributable to USAA's or CoPart's actions in obtaining a clean title at the time of the sale of the Sierra to the Dealerships, including the failure to disclose the salvage title to Plaintiffs at the time of the sale, failure to provide or present the salvage title to Plaintiffs at the time of the sale, fraud related to USAA's or CoPart's conduct in securing a non-salvage title at the time of the sale of the Sierra to the Dealerships, violations of the New Mexico Unfair Practices Act related to the titling actions of USAA at the time of the sale of the Sierra to the Dealerships, and breach of warranty of title due to USAA's titling actions at the time of the sale of the Sierra to the Dealerships.   Should any party to the Case win a judgment against Lohman, LAM, or Western Surety individually or jointly for any actions attributable to USAA or CoPart or arising out of actions attributable to USAA, or CoPart, USAA hereby agrees to pay the award, including any award of costs and attorneys fees, and pay the defense costs in full and in a timely manner, subject to any appeals as contemplated by the parties in paragraph 14.

Final Draft of Settlement Agreement at 17-18, filed May 20, 2010 (Doc. 555-1)("Settlement Agreement").[1]   The Settlement Agreement required the Dealerships to dismiss with prejudice

---

[1]The Court's citations to the Settlement Agreement refer to the page numbers attached when the document was filed with the Court's CM/ECF system, in the upper-right-hand corner of the document.

their claims against USAA Insurance and the Plaintiffs, and required USAA Insurance to pay $42,500.00 to the Dealerships.  <u>See</u> Motion to Enforce ¶¶ 7-8, at 3.

Trial on the remaining issues was ultimately set for May 18, 2009.  <u>See</u> Minute Order, filed February 12, 2009 (Doc. 378).  At this point, the Dealerships' remaining claims against USAA Insurance were for:

> Actual and punitive damages for fraud; . . . Statutory or actual damages trebled for violations of the UPA; . . . Attorney fees and costs under the UPA; . . . Indemnity equal to any liability of LAM or Lohman to Mr. Pedroza and Ms. Andrade based on nondisclosure of salvage title, their attorney fees and costs in having to defend in this action and prosecute this cross claim.

Pretrial Order at 5, filed May 13, 2009 (Doc. 418).  The Court subsequently refused to grant USAA Insurance's motion to permit USAA Insurance to withdraw its admission that it had determined that it was economically unfeasible to repair the GMC Sierra truck, but, "[c]onsistent with the parties' agreement at the February 4, 2009 hearing," allowed "USAA to present evidence and argument on what it meant by uneconomical to repair at the trial and will not give conclusive effect to the admission during the trial."  May 16, 2009 MOO at 17.

The Dealerships and USAA Insurance finalized the Settlement Agreement on May 19, 2009, one day after trial started, and the Dealerships subsequently dismissed their counterclaims against the Plaintiffs and their cross-claims against USAA Insurance.  <u>See</u> Stipulated Order Dismissing with Prejudice Dealership Defendants' Counterclaim for Breach of Contract, filed June 17, 2009 (Doc. 474); Stipulated Order Dismissing With Prejudice Dealership Defendants' Cross Claims Against USAA, filed June 17, 2009 (Doc. 475)(collectively, "Stipulated Dismissals").  <u>See also</u> Motion to Enforce § 6, at 3.  USAA Insurance paid the Dealerships $42,500.00 on May 19, 2009.  <u>See</u> Motion to Enforce ¶ 8, at 3.  Pursuant to the Settlement

Agreement, the Dealerships and USAA Insurance did not present testimony or other evidence against each other at trial.

The jury returned its verdict on May 28, 2009, finding that Lomas Auto Mall, but not Lohman Motors, breached the warranty of title.  See Special Verdict Form ¶¶ 24-26, at 4-5, filed May 28, 2009 (Doc. 461).[2]  The jury also found against Lohman Motors -- but not against Lomas Auto Mall or USAA Insurance -- for fraud, awarding actual and punitive damages against Lohman Motors.  See Special Verdict Form ¶¶ 5, 7, 8, 9, at 2; id. ¶ 35, at 6; id. ¶ 43, at 8.  In addition, the jury found that Lohman Motors -- but not Lomas Auto Mall -- violated the UPA, and also found that the two Dealerships -- but not USAA Insurance -- conspired to violate the UPA.  See Special Verdict Form ¶¶ 13, 16-18, at 3-4; id. ¶¶ 32-33, at 6.  The jury found that USAA Insurance's violation of the UPA, which the Court had already found to exist as a matter of law, "was not a cause of any of Plaintiffs' damages."  Special Verdict Form ¶ 19, at 4.  The jury awarded $15,702.95 in compensatory damages, and $33,000.00 in punitive damages against the Dealerships for fraud.  See Special Verdict Form ¶¶ 35-45, at 6-8.

Pursuant to the jury's verdict, the Court ordered that Lohman Motors must pay $15,702.95 for the actual damages its fraud and UPA violations caused, and $33,000.00 in punitive damages for fraud.  See Judgment Order ¶¶ 1-2, at 1, filed September 3, 2009 (Doc. 489).  The Court ordered that Lomas Auto Mall and Lohman Motors are jointly and severally liable to the Plaintiffs for actual damages of $5,710.95 for the breach of warranty of title.  See Judgment Order ¶ 3, at 1.  The Court ordered that Defendant Western Surety

---

[2]The Court's citations are to a redacted version of the Special Verdict Form.  The original, unaltered form is restricted to the Court's access, but exists on CM/ECF.  See Special Verdict Form, filed May 28, 2009 (Doc. 460).  The Court concludes that the only difference between the two versions is that the jury foreperson's signature has been expunged in the redacted version.

Company[3] and Lohman Motors are jointly and severally liable for $13,202.95 of the Plaintiffs' actual damages for fraud. <u>See</u> Judgment Order ¶ 4, at 2. The Court ordered that Lomas Auto Mall and Western Surety are jointly and severally liable for $3,210.95 of the Plaintiffs' damages from Lomas Auto Mall's breach of warranty of title. <u>See</u> Judgment Order ¶ 5, at 2. The Court also awarded $100.00 in statutory damages against USAA Insurance for its UPA violations. <u>See</u> Judgment Order ¶ 7, at 2.

The Plaintiffs requested an award of $73,364.87 in attorneys' fees from USAA Insurance and an award of $122,872.17 in attorneys' fees from the Dealerships. <u>See</u> Plaintiffs' Motion for Award of Attorney Fees, filed September 30, 2009 (Doc. 499). The Plaintiffs also requested an award of $5,796.84 in costs from USAA Insurance and $22,879.02 from the Dealerships. <u>See</u> Plaintiffs' Motion for Award of Costs at 1, filed September 30, 2009 (Doc. 501).

Lohman Motors paid the Plaintiffs' damages of $48,748.61 in full on December 11, 2009. <u>See</u> Partial Satisfaction of Judgment as to M.D. Lohman d/b/a Lohman Motors Only, filed December 11, 2009 (Doc. 523). On April 30, 2010, the Court ordered that Lohman Motors indemnify Western Surety in the amount of $64,356.83 for its "loss, cost, attorney's fees, and expenses which Western Surety sustain[ed] as a surety or by reason of having been surety on" a surety bond for Lohman Motors. Memorandum Opinion and Order at 4, 13, filed April 30, 2010

---

[3]Western Surety issued a surety bond to the Dealerships, and the Plaintiffs named it as a defendant to the lawsuit under N.M. Stat. Ann. § 66-4-7B. The Court found "Western Surety jointly and severally liable with the Dealer Defendants as guarantor on the above-referenced surety bonds." Memorandum Opinion and Order at 2-3, filed April 30, 2010 ("April 30, 2010, MOO"). The Court found that the Dealerships were "liable to Western Surety for whatever amount Western Surety can prove was reasonable and necessary to defense of the underlying litigation." April 30, 2010, MOO at 16. The Court concluded that the Dealerships are liable to Western Surety for the amount of $64,356.83. <u>See</u> April 30, 2010, MOO at 31.

(Doc. 551). Lohman Motors satisfied this judgment on November 10, 2010. See First Amended

Satisfaction of Judgment, filed November 10, 2010 (Doc. 561).

>      2.      **The Motion to Enforce and the Court's MOO Vacating Final Judgment**.

The Dealerships filed their Motion to Enforce on April 2, 2010. The Court overlooked

the pending Motion to Enforce and erroneously entered final judgment in the case at the end of

that month. See Final Judgment, filed April 30, 2010 (Doc. 552)(concluding that the Court's

Memorandum Opinion and Order, filed April 30, 2010 (Doc. 551), "disposed of the final claims

and parties in this case," and that "entry of final judgment is appropriate"). After receiving

briefing on the Motion to Enforce, see Defendant USAA's Response in Opposition to Motion of

M.D. Lohman and Lomas Auto Mall, Inc. for Enforcement of Indemnity Provisions of

Settlement Agreement with USAA Casualty Insurance Company, filed April 29, 2010

(Doc. 550); Dealerships' Reply to USAA's Response in Opposition to Dealerships' Motion for

Enforcement of Indemnity Provisions of Settlement Agreement, filed May 20, 2010 (Doc. 555),[4]

and conducting a hearing, see Notice of Motion Hearing Scheduled for January 25, 2012, filed

January 18, 2012 (Doc. 562), the Court issued a Memorandum Opinion and Order Enforcing

Settlement Agreement, filed August 2, 2013 (Doc. 563)("Settlement Enforcement MOO"). In

the Settlement Enforcement MOO, the Court vacated the Final Judgment, re-opened the case,

and granted in part and denied in part the Motion to Enforce:

> Although the Court has entered Final Judgment in this matter and did not
> expressly retain jurisdiction over the Settlement Agreement, the Court determines
> that it entered Final Judgment out of an oversight, and it should vacate the Final
> Judgment under rule 60(a). The Court also determines that it has diversity

---

[4]Although subject-matter jurisdiction was discussed in the briefing on the Motion to
Enforce, other issues -- namely, how to construe the Settlement Agreement -- predominated.
The Court summarized that briefing and hearing in the Settlement Enforcement MOO. See
Settlement Enforcement MOO at 10-25.

jurisdiction over the Motion to Enforce Settlement. The Court determines that the Settlement Agreement does not require a finding of legal liability or a jury to award damages against USAA Casualty to trigger USAA Casualty's indemnification obligations in the indemnification provision. Additionally, the Court determines that the Settlement Agreement is unambiguous, that it requires USAA Casualty to indemnify the Dealerships for the jury award against them, and for the Plaintiffs' attorneys' costs and fees, and that it also requires USAA Casualty to indemnify the Dealerships for Western Surety's attorneys' costs and fees and the Dealerships' attorneys' costs and fees, which are attributable to, or arise from actions attributable to, USAA Casualty's titling of a 2005 GMC Sierra truck which the Plaintiffs purchased. On the other hand, the Settlement Agreement does not provide for a blanket indemnification of all losses the Dealerships incurred after USAA Casualty placed the Sierra truck into the stream of commerce. Accordingly, the Court will not require USAA Casualty to indemnify the Dealerships for the entire sum of their defense costs, unless further evidence is provided to the Court.

Settlement Enforcement MOO at 2-3. The Court concluded that, although it lacked ancillary

jurisdiction to enforce the settlement agreement, it possessed diversity jurisdiction:

> II.    THE COURT HAS JURISDICTION OVER THE MOTION TO ENFORCE SETTLEMENT.
>
>    "The Court may, and should, address its subject-matter jurisdiction sua sponte." Zamora v. Wells Fargo Home Mortg., 831 F. Supp. 2d 1284, 1297-98 (D.N.M. 2011)(Browning, J.)(citing Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006)("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." (citation omitted))). As the Tenth Circuit has explained, "[o]nce a lawsuit is settled and dismissed, the district court does not generally have 'ancillary jurisdiction to enforce the parties' settlement.'" McKay v. United States, 207 F. App'x at 894 (quoting Morris v. City of Hobart, 39 F.3d at 1110)(citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 380-81. The Dealerships and USAA Casualty stipulated to the dismissal of the Dealerships' cross claims against USAA Casualty on June 17, 2009, and the parties did not request the Court to retain jurisdiction over a settlement agreement, or request that the Court reference the Settlement Agreement, in the Stipulated Order. See Stipulated Order at 1-2. Additionally, the Court dismissed this case on April 30, 2010, and the Court did not retain jurisdiction over the Settlement Agreement in the Final Judgment. See Final Judgment at 1-2.

>>    If the parties wish to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so. When the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2) . . . the parties' compliance with the terms of the

settlement contract (or the court's "retention of jurisdiction" over the settlement contract) may, in the court's discretion, be one of the terms set forth in the order.  In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 381.  The Court, therefore, does not have jurisdiction over the Settlement Agreement by virtue of its incorporation into the Stipulated Order or Final Judgment, or because the indemnification provision was set forth in either order.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 378 (holding that neither a voluntary dismissal under rule 41(a)(1)(ii) "nor any provision of law provides for jurisdiction of the court over disputes arising out of an agreement that produces the stipulation"); Beetle Plastics Inc. v. United Ass'n of Journeymen and Apprentices of Plumbing & Pipefitting Indus., 1996 WL 531924, at *1 (holding that a district court did not have jurisdiction over a settlement agreement because the district court's order of dismissal stated "simply that the antitrust case was dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(ii)").  "Absent such action . . . enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 382.  See Morris v. City of Hobart, 39 F.3d at 1110-11 (same).

Although the parties have not asserted an independent basis for federal jurisdiction, the Court concludes that it may enforce the Settlement Agreement under its diversity jurisdiction.  "Unless incorporated into a judgment of the court, a settlement agreement is 'a contract, part of the consideration for which [i]s dismissal of a[] suit.'"  Beetle Plastics Inc. v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., 1996 WL 531924, at *1 (quoting Kokkonen v. Guardian Life Ins. Co., 511 U.S. at 381).  The Court has diversity jurisdiction over cases in which the amount in controversy exceeds $75,000.00, and the parties are citizens of different states.  See 28 U.S.C. § 1332(a)("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between -- citizens of different states . . . .").  Under the diversity statute, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ."  28 U.S.C. § 1332(c)(1).  Lomas Auto Mall is a "New Mexico corporation," and Lomas Motors is an "individual that owns and operates a[n] auto dealership in Albuquerque, New Mexico."  Complaint ¶¶ 5-6, at 2-3.  USAA Casualty has its "principal place of business in San Antonio, Texas."  USAA Casualty, Insurance/Important Legal Information, USAA https://www.usaa.com/ inet/pages/insurance_legal_information?akredirect=true (last visited July 25, 2013).  Additionally, the amount-in-controversy requirement appears to be met, as the Dealerships seek $417682.86 in indemnification from USAA Casualty.  See

> Motion to Enforce Settlement ¶¶ 17, 18, 19, 20, at 5-6.  The Court concludes,
> therefore, that it has jurisdiction over the Motion to Enforce Settlement.

Settlement Enforcement MOO at 40-42 (emphases omitted from opening heading)(other emphases, alterations, and omissions in original).  Approximately eight months after the Court issued the Settlement Enforcement MOO, USAA Insurance and the Dealerships each filed an additional motion in response to the Settlement Enforcement MOO: the Dealerships filed their Motion to Liquidate requesting that the Court liquidate their claim, and USAA filed its Motion to Reconsider.[5]  See Motion to Liquidate at 1; Motion to Reconsider at 1.  The Dealerships filed their Motion to Strike in furtherance of the Motion to Liquidate.  See Motion to Strike at 1-7.

### 3. The MTD Briefing and Renewed Letter-Writing Regarding Whether the Court Has Subject-Matter Jurisdiction over the Settlement Agreement.

The Dealerships and USAA Insurance prepared to take the alleged breach of the Settlement Agreement to trial, with the Dealerships seeking $159,293.51 in attorneys' fees that they say is unrelated to the faulty vehicle repairs.  See Pretrial Order at 3-4, filed June 19, 2014 (Doc. 620).  When the Dealerships and USAA Insurance filed their joint Pretrial Order, they indicated that the Court's basis for jurisdiction over the dispute was federal-question jurisdiction.  See Pretrial Order at 2.  Although the original suit had been brought before the Court under federal-question jurisdiction, the Settlement Enforcement MOO had indicated that the Court had diversity jurisdiction over the Settlement Agreement.  The Court knew that the jury had resolved the sole federal question in the case, and that the Court thus did not have federal-question jurisdiction.  The Court was also concerned that counsel for the Plaintiffs -- who had been absent from the case and no longer attending hearings -- had appeared unexpectedly at a hearing.

---

[5]The Court did not rule on these motions, and its ruling in this Memorandum Opinion and Order -- concluding that it lacks subject-matter jurisdiction over the Settlement Agreement -- obviates the need to rule on the Motion to Reconsider and deprives the Court of jurisdiction to rule on the Motion to Liquidate.

Furthermore, the Plaintiffs had indicated an intent to participate in the forthcoming bench trial on the Settlement Agreement.  See Pretrial Order at 1.  The Court realized that if the Plaintiffs participated in the trial, the Court could not hear the case under its diversity jurisdiction.

This discrepancy caused the Court to direct the parties to each send a letter to the Court indicating whether and why the Court had subject-matter jurisdiction over the pending trial.  See Minute Order, filed June 24, 2014 (Doc. 619).  The Dealerships wrote that the Court has jurisdiction, having vacated the final judgment and having retained jurisdiction in the Settlement Enforcement MOO by writing that, "'[i]f the parties are unable . . . to determine the amount of defense costs and attorneys' fees for which USAA Insurance must indemnify the Dealerships, the parties may file a motion with the Court and request a hearing to resolve any dispute.'" Letter from William F. Davis to the Court at 2, filed June 27, 2014 (Doc. 631)(alteration and omission in Letter but not Settlement Enforcement MOO)(quoting Settlement Enforcement MOO at 62).  USAA Insurance, on the other hand, changed course, contending that the Court lacks subject-matter jurisdiction, because "[n]o federal question remains, and diversity is lacking."  Letter from Charles J. Vigil to the Court at 1, filed June 27, 2014 (Doc. 632).

USAA Insurance followed up its letter by filing the MTD.  It contends that diversity jurisdiction is lacking in this case, because "[w]hen the Court vacated the judgment and re-opened this case -- even for the limited purpose of deciding the motion to Enforce Settlement -- the Plaintiffs remained as parties to this matter."  MTD at 7.  It further asserts that the Plaintiffs' role in the Motion to Enforce has been neither disinterested nor passive, because their attorneys' fees claim remains unresolved and the "Plaintiffs have raised issues of contested material facts in the current pretrial order."  MTD at 7 n.1.  USAA Insurance also argues that ancillary jurisdiction is unavailable, because the Stipulated Dismissals did not retain jurisdiction

with the Court.  See MTD at 5-6.  It asserts that this conclusion is consistent with the Settlement Enforcement MOO, which it says also recognized a lack of ancillary jurisdiction.  See MTD at 5 (citing Settlement Enforcement MOO at 29).

The Dealerships responded, arguing that the Court has ancillary jurisdiction over the Settlement Agreement.  See Defendants and Third-Party Plaintiffs Lomas Auto Mall, Inc. and M.D. Lohman d/b/a Lohman Motors' Response in Opposition to USAA's Motion to Dismiss for Lack of Subject Matter Jurisdiction at 2-4, filed July 28, 2014 (Doc. 635)("Response").  They argue that, because the case is still active, open, and pending, there was no need for the Court to retain jurisdiction in the Stipulated Dismissals, as it already has jurisdiction over the case.  See Response at 2-4.  They concede that the Court's failure to retain jurisdiction was a problem when the Final Judgment was in place, but, now that the Settlement Enforcement MOO has vacated the Final Judgment, the Court has jurisdiction over the Settlement Agreement as a matter of course. See Response at 3.  The Dealerships do not attempt to defend the proposition that the Court has diversity jurisdiction over the Settlement Agreement.

USAA Insurance replied, arguing that "any opportunity for the Court to exercise ancillary jurisdiction was lost on June 17, 2009," the date on which the Stipulated Dismissals were entered.  USAA's Reply to Dealership's Response to USAA's Motion to Dismiss for Lack of Subject Matter Jurisdiction at 5, filed August 14, 2014 (Doc. 636)("Reply").  It acknowledges that,

> [i]n theory, if the parties had agreed and intended that the June 17, 2009, dismissal order would incorporate their settlement terms or reserve jurisdiction for the Court to enforce the agreement, but by mistake such language was omitted from the form of order that was submitted to the Court, the Court could re-open the case pursuant to Fed. R. Civ. P. 60(a) to correct the error and then enforce the judgment.  Here, however, neither USAA nor the Dealerships (nor, indeed, the Court) ever intended to include such additional language in the June 17, 2009 dismissal order.  Manifestly, therefore, there would be no basis for re-opening

*that* order at any time -- before or after April 30, 2010 -- for the purpose of entertaining the Dealerships' motion to enforce.

. . . .

[T]he Court would not have entered final judgment on April 30, 2010 had it been aware of the filing of the Dealerships' Motion to Enforce seven days earlier. Therefore, under Rule 60(a) the Court properly could vacate the final judgment (presumably without altering the judgment that had been entered in Western's favor on its cross-claim against the Dealerships) for the limited purpose of *considering* whether it had jurisdiction to enforce the settlement agreement and thus rule on the April 30, 2010 motion to enforce.  But the Court's "mistake arising from oversight or omission" on that date clearly did not extend to any failure to include in the June 17, 2009 dismissal order (and a fortiori the April 30, 2010 final judgment) language that would establish ancillary jurisdiction to interpret and enforce the settlement agreement.  That is, the Court's April 30, 2010 error does not provide justification, otherwise lacking, for hearing and ruling on the merits of the Dealerships' Motion to Enforce.  The Court never erred in not retaining jurisdiction to enforce the agreement.  In the absence of such error, there was nothing to correct or remedy under either Rule 60(a) or 60(b)(1).  Instead, and respectfully, the Court should have limited its actions to re-opening the case for the limited purpose of considering the motion to enforce the settlement agreement, denying that motion for lack of subject matter jurisdiction, and then reentering final judgment.

Reply at 6-7 (emphases in original)(citing F.A.C., Inc. v. Cooperativa de Seguros de Vida de Puerto Rico, 449 F.3d 185, 191 (1st Cir. 2006)).  USAA Insurance also expounds on its earlier argument that the Court lacks diversity jurisdiction, asserting that "'whether federal diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced . . . [, and] it cannot be created by a . . . potentially diversity-creating event.'" Reply at 4 (second omission in original)(quoting 13E Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Vikram David Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman & Catherine T. Struve, Federal Practice and Procedure § 3607, at 340, 376 (3d ed. 2009)).

At the hearing on the MTD, the parties largely reiterated their arguments in the briefing. See Transcript of Hearing (taken November 4, 2014)("Tr.").[6]  The primary new perspective to arise from the hearing came when the Court asked the parties whether, now that it has properly vacated the Final Judgment, it could amend the Stipulated Dismissals to add a clause retaining jurisdiction.  See Tr. at 26:1-6 (Court).  The Court noted that it was concerned "about the equities here to the dealership[s]," because, if the Dealerships were forced to file a new breach-of-contract case in state court to enforce the Settlement Agreement, there is some question whether the statute of limitation would bar the suit,[7] and, thus, if it could, the Court would be inclined to amend the Stipulated Dismissals to add a jurisdiction-retention clause.  See Tr. at 25:2-5 (Court). USAA Insurance responded that the Court lacked the power to make such an amendment, because "[t]he parties' agreement to a dismissal order . . . did not retain jurisdiction."  Tr. at 26:10-11 (Bohnhoff).

The Court inquired why the fact that the dismissals did not retain jurisdiction mattered once the Final Judgment was vacated, noting that USAA Insurance "agreed that [the Court] properly vacated the final judgment."  Tr. at 26:14-15 (Court).  USAA Insurance responded that such an amendment would be tantamount to altering the parties' Settlement Agreement, because the parties did not agree to have the Court retain jurisdiction.  See Tr. at 26:19-23 (Bohnhoff). The Court then asked whether Kokkonen vested the discretion to retain jurisdiction in the judge or in the parties.  See Tr. at 26:24-27:3 (Court); id. at 27:8-15 (Court) .  USAA Insurance said

---

[6]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

[7]USAA Insurance contends that the statute of limitations would not bar a state-court suit to enforce the Settlement Agreement.  See Tr. at 25:7-12 (Bohnhoff)("[T]he statute of limitations to enforce a written contract in New Mexico is six years.  This written contract was entered into in May of 2009, six years is May of 2015.  So I don't know how a statute of limitations issue could arise.").

that it believed that the parties, not the Court, are the ones empowered to impart the Court with continuing jurisdiction over a settlement agreement, but it could not, at the moment, find case law supporting that position.   See Tr. at 27:18-28:11 (Bohnhoff); id. at 30:2-16 (Court, Bohnhoff)(The Court:   "[The Stipulated Dismissals are] interlocutory.   There is not final judgment in the case, so what would keep me from [amending them to retain jurisdiction]?" Mr. Bohnhoff:   "I can't quote you any authority, but . . . I would submit that the Court does not have authority to now set aside that dismissal with prejudice . . . .").   USAA Insurance conceded that it was unprepared for the Court's suggestion and requested that the Court permit the parties to each write an additional letter outlining its stance on the Court's proposal.   See Tr. at 44:21-24 (Bohnhoff).   The Dealerships agreed with the idea, and the Court permitted an additional round of letter-writing.   See Tr. at 44:25-45:4 (Court, Davis).

The Dealerships wrote a letter to the Court reaffirming their position that the Stipulated Dismissals are interlocutory orders which the Court can amend at any time pursuant to rule 54. See Letter from William F. Davis to the Court at 3-4, filed November 11, 2014 (Doc. 641)("Davis Letter")(citing Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. 1981); High Country Arts & Craft Guild v. Hartford Fire Ins. Co., 126 F.3d 629, 635 (4th Cir. 1997)). They state that "a district court retains jurisdiction over a settlement agreement until all claims, rights and liabilities have been resolved with a final order, and the district court may rescind, reconsider or modify any interlocutory order as it deems necessary, until the final order is entered."   Davis Letter at 4.   The Dealerships also spend some time distinguishing Kokkonen:

> USAA's reliance on Kokkonen is misplaced.   Kokkonen stands for a
> situation where a final judgment that disposed of all claims has been entered and
> remains in force.   In the instant case, the Court and all parties have agreed that a
> final judgment is no longer in force, as it was properly vacated by the Court.
> Several Circuit Courts have addressed whether or not a Court retains jurisdiction

over a settlement agreement in the absence of a final order. These same Courts have used <u>Kokkonen</u> in their decisions.

The Fourth Circuit considered a case in which the parties had entered into a settlement of a counterclaim, the Court entered judgment that made no mention of the settlement, and subsequently one party moved to enforce the settlement. The party opposing the Court's intervention cited <u>Kokkonen</u>, arguing that the Court did not have jurisdiction, as the agreement had not been approved and incorporated into an order of the court. <u>Cott[e]n & Selfon v. Charnock</u>, 10 F. App'x 70, 75 (2001). The Fourth Circuit held that <u>Kokkonen</u> was inapposite because issues remained unresolved in the underlying case, and the "district court retained jurisdiction until it issued a final order . . . finally disposing of the entire case." <u>Id.</u> Unlike <u>Kokkonen</u>, the district court had not relinquished jurisdiction with the entry of a final judgment, and ". . . the district court had jurisdiction to enforce the settlement agreement, and the [Party's] assertions to the contrary are meritless." <u>Id.</u> at 76.

A Third Circuit case took up a jurisdictional challenge, based on <u>Kokkonen</u>, to the court's enforcement to a settlement agreement. The Circuit Court found that <u>Kokkonen</u> did not apply, because in the case before them the underlying case was never dismissed. When the case has not been dismissed, despite a settlement agreement, a party ". . . cannot contend that the District Court lacked jurisdiction to decide whether to enforce the parties' agreement . . . ." <u>Bryan v. Erie Cnty. Office of Children & Youth</u>, 752 F.3d 316,322 (2014).

The United States Court of Appeals for the District of Columbia Circuit heard a case with the same issue: a party filed to enforce a settlement agreement while the underlying lawsuit was pending in district court. The Court held that the district court had jurisdiction over the settlement agreement. The Court discussed <u>Kokkonen</u>, and held that while in <u>Kokkonen</u> the case had been entirely dismissed, if ". . . a party seeks to enforce a settlement while the underlying suit remains pending, then the district court has jurisdiction to enforce the related settlement." <u>T. Street Development, LLC v. Dereje and Dereje</u>, 586 F.3d 6, 11 (2009). <u>See also</u> <u>Autera v. Robinson</u>, 419 F.2d 1197, 1200 (D.C. Cir. 1969)("It is now well established that the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it."); <u>Hyundai Motor America v. Alley</u>, 183 Md. App 261, 271 (2008) (". . . if the case has not been dismissed, the party may move for enforcement. There are no jurisdictional concerns about subsequent enforcement . . . .").

The Seventh Circuit heard a case where there was a settlement agreement and no final order. The Court found "Our own research has revealed that the majority of the other circuits have addressed this issue. These circuits have uniformly stated that a district court possesses the inherent or equitable power

summarily to enforce an agreement to settle a case pending before it."  Wilson v. Wilson, 46 F.3d 660, 664 (1995).

. . . .

There is no question that the underlying case remains pending, and all parties have agreed to this fact.  The Circuit Courts are clear that a district court has jurisdiction to enforce a settlement agreement provided the case is pending.  This Court has jurisdiction to enforce the SA.

Davis Letter at 2-3.

In its letter, USAA Insurance dismisses the Dealerships' case law as "stand[ing] only for the unremarkable proposition that Kokkonen does not prevent a court from enforcing a settlement agreement prior to entry of final judgment."  Letter from Henry M. Bohnhoff to the Court at 6, filed November 11, 2014 (Doc. 640)("Bohnhoff Letter").  It asserts that none of the Dealerships' cases involve a stipulated dismissal under rule 41(a)(1)(A)(ii), and, thus, Kokkonen did not apply in them.  See Bohnhoff Letter at 6.  USAA Insurance contends that Kokkonen bars ancillary jurisdiction whenever a dismissal fails to impart the district court with continuing jurisdiction, regardless whether final judgment has been entered.  See Bohnhoff Letter at 4-6.  USAA Insurance also quotes from Kokkonen to support its contention that only the parties' agreement -- not judicial fiat -- can vest the district court with continuing jurisdiction, noting that the Honorable Antonin G. Scalia, Associate Justice of the Supreme Court of the United States, makes references to whether "'the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement'" and permitting a court to retain jurisdiction even when the dismissal is entered pursuant to rule 41(a)(1)(A)(ii) "*if the parties agree*."  Bohnhoff Letter at 4 (first emphasis in both Bohnhoff Letter and Kokkonen)(second emphasis in Bohnhoff Letter but not Kokkonen).

## LAW REGARDING RULE 41(a)

Rule 41(a) provides the circumstances in which a plaintiff can voluntary dismiss his or her actions:

**(1)     *By the Plaintiff.***

> **(A)     *Without a Court Order.*** Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
>
> > **(i)**     a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
> >
> > **(ii)**    a stipulation of dismissal signed by all parties who have appeared.
>
> **(B)     *Effect.*** Unless the notice or stipulation states otherwise, the dismissal is without prejudice.    But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

**(2)     *By Court Order; Effect.*** Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.  If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication.   Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a).  "The filing of a notice of dismissal pursuant to Rule 41(a)(1)(i)3 does not require an order of the court."  <u>Janssen v. Harris</u>, 321 F.3d 998, 1000 (10th Cir. 2003).  "Under Rule 41(a)(1)(i), a plaintiff has an absolute right to dismiss without prejudice and no action is required on the part of the court."  <u>Janssen v. Harris</u>, 321 F.3d at 1000.  "[O]nce a Rule 41(a)(1) dismissal has been filed, 'the district court loses jurisdiction over the dismissed claims and may not address the merits of such claims or issue further orders pertaining to them.'"  <u>Netwig v. Ga.</u>

Pac. Corp., 375 F.3d 1009, 1011 (10th Cir. 2004).  As the United States Court of Appeals for the

Tenth Circuit has stated:

> The [filing of a Rule 41(a)(1)(i) notice] itself closes the file.  There is
> nothing the defendant can do to fan the ashes of that action into life and the court
> has no role to play.  This is a matter of right running to the plaintiff and may not
> be extinguished or circumscribed by adversary or court.  There is not even a
> perfunctory order of court closing the file.  Its alpha and omega was the doing of
> the plaintiff alone.  The effect of the filing of a notice of dismissal pursuant to
> Rule 41(a)(1)(i) is to leave the parties as though no action had been brought.
> Once the notice of dismissal has been filed, the district court loses jurisdiction
> over the dismissed claims and may not address the merits of such claims or issue
> further orders pertaining to them.

Janssen v. Harris, 321 F.3d at 1000 (alteration in original)(quoting Duke Energy Trading &

Mktg., LLC v. Davis, 267 F.3d 1042, 1049 (9th Cir. 2001)).

When a defendant seeks to reinstate a case that the plaintiff dismissed under rule

41(a)(1)(A)(i) without prejudice, a district court lacks jurisdiction under rule 60(b) to reinstate

the case.  See Netwig v. Ga. Pac. Corp., 375 F.3d at 1010-11 ("[The district court] did not

address the critical issue here -- whether a court may invoke Rule 60(b) to reinstate a voluntarily

dismissed case over plaintiff's objection . . . .  Appellant's dismissal was effective upon filing,

and the Kansas district court lacked jurisdiction to reinstate the Kansas case.").  Nevertheless,

when the dismissal under rule 41(a)(1)(A)(i) is with prejudice, "the voluntary dismissal with

prejudice operates as a final adjudication on the merits and is thus a final judgment."  Schmier v.

McDonald's LLC, 569 F.3d 1240, 1242 (10th Cir. 2009)(citation omitted)(internal quotation

marks omitted).   "Like other final judgments, a dismissal with prejudice under Rule

41(a)(1)(A)(i) can be set aside or modified under Federal Rule of Civil Procedure 60(b)."

Schmier v. McDonald's LLC, 569 F.3d at 1242.  The Tenth Circuit has further held, without

distinguishing between dismissal with prejudice and those without prejudice, "that a plaintiff

who has dismissed his claim by filing notice under Rule 41(a)(1)(A)(i) 'may move before the

district court to vacate the notice on any of the grounds specified in Rule 60(b).'"  Schmier v. McDonald's LLC, 569 F.3d at 1242.  The Tenth Circuit recognized, however, that the plaintiff must still satisfy rule 60(b)'s requirements to warrant relief.  See Schmier v. McDonald's LLC, 569 F.3d at 1242 ("But the merit of the motion is another matter.").

The Tenth Circuit has applied many of these same principles to dismissals under rule 41(a)(1)(A)(ii).  "A stipulation of dismissal filed under Rule 41(a)(1)(A)(i) or (ii) is self-executing and immediately strips the district court of jurisdiction over the merits."  De Leon v. Marcos, 659 F.3d 1276, 1283 (10th Cir. 2011).  While the De Leon v. Marcos opinion could be read as counseling district courts to not enter a final judgment following a voluntary dismissal, when read with the law regarding entering final judgments, see Allison v. Bank One-Denver, 289 F.3d 1223, 1232-33 (10th Cir. 2002)("The Supreme Court has recognized that the separate-document rule must be 'mechanically applied' in determining whether an appeal is timely. . . ."), the better rule may be to allow the district court to enter a final judgment as long as it does not affect the merits of the case in any way, see Janssen v. Harris, 321 F.3d at 1000 (recognizing that any action a district court takes following a voluntary dismissal under rule 41(a)(1) is "superfluous, a nullity, and without procedural effect for purposes of appeal or otherwise"); Rubin v. Schottenstein, Zox & Dunn, 110 F.3d 1247, 1250-53 (6th Cir. 1997)(discussing the potential problems that can arise when there is no separate judgment in the context of a voluntary dismissal), vacated on other grounds by 143 F.3d 263 (6th Cir. 1998)(en banc).

In a case involving dismissal with prejudice under rule 41(a)(1)(ii), the Tenth Circuit has held: "We agree with the Seventh Circuit that '[a]n unconditional dismissal terminates federal jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by [Fed. R. Civ. P.] 60(b).'"  Smith v. Phillips, 881 F.2d 902,

904 (10th Cir. 1989)(alterations in original).   The United States Court of Appeals for the

Eleventh Circuit has questioned whether parties can use rule 60(b) to vacate a rule

41(a)(1)(A)(ii) dismissal, but did not hold that parties cannot use rule 60(b) in these instances.

See State Treasurer of the State of Mich. v. Barry, 168 F.3d 8, 19 & n.9 (11th Cir.

1999)("Arguably, Fed. R. Civ. P. 60(b) may provide such relief.   A stumbling block, however, in

cases such as this one where the parties stipulated to the voluntary dismissal, is that a Rule

41(a)(1)(ii) stipulated dismissal need not be by order of the court.").   The United States Court of

Appeals for the Sixth Circuit has recognized that, when the stipulated dismissal under rule

41(a)(1)(A)(ii) is with prejudice, the stipulation "terminate[s] the district court's 'jurisdiction

except for the limited purpose of reopening and setting aside the judgment of dismissal within

the scope allowed by Rule 60(b)' of the Federal Rules of Civil Procedure."   Hinsdale v. Farmers

Nat'l Bank & Trust Co., 823 F.2d 993, 995-96 (6th Cir. 1987)(quoting McCall-Bey v. Franzen,

777 F.2d 1178, 1190 (7th Cir. 1985)).   Professor James Moore has more broadly stated: "The

court retains jurisdiction to vacate a stipulation of dismissal under Rule 60(b), enabling it to

reopen the case."   8 James Wm. Moore et al., Moore's Federal Practice § 41.34[6][i], at 41-128

(3d ed. 2012).   The Supreme Court of the United States has also suggested that it is permissible

to reopen a case that the parties voluntarily dismissed under rule 41(a)(1)(A)(ii) in some

instances where a party breaches the agreement that predicated the stipulation of dismissal:

> The dismissal in this case issued pursuant to Federal Rule of Civil
> Procedure 41(a)(1)(ii), which provides for dismissal "by filing a stipulation of
> dismissal signed by all parties who have appeared in the action," and causes that
> dismissal to be with prejudice if (as here) the stipulation so specifies.   Neither the
> Rule nor any provision of law provides for jurisdiction of the court over disputes
> arising out of an agreement that produces the stipulation.   It must be emphasized
> that what respondent seeks in this case is enforcement of the settlement
> agreement, and not merely reopening of the dismissed suit by reason of breach of
> the agreement that was the basis for dismissal.   Some Courts of Appeals have held
> that the latter can be obtained under Federal Rule of Civil Procedure 60(b)(6).

Kokkonen, 511 U.S. 375, 378 (1994).

Rule 41(a) refers to dismissing "an action," and not to dismissing individual claims or causes of action.  Fed. R. Civ. P. 41 (title of rule), 41(a)(1)(A), 41(a)(2).  As such, none of rule 41(a)'s methods -- a pre-answer notice of dismissal, a stipulation, or a court order -- can be used to dismiss individual claims within an action.  The Tenth Circuit, handling an appeal in a single-plaintiff, single-defendant case, wrote that rule 41(a)

> speaks to dismissal of an action, not just a claim within an action.  Gobbo offers no authority, and we have found none, to support its contention that Rule 41(a) applies to dismissal of less than all claims in an action.  In fact, other circuits and at least one district court in this circuit have specifically held to the contrary.  See Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1392 (9th Cir. 1988); Mgmt. Investors v. United Mine Workers, 610 F.2d 384, 394 n.22 (6th Cir. 1979); Exxon Corp. v. Md. Cas. Co., 599 F.2d 659, 662 (5th Cir. 1979); In re Wyo. Tight Sands Anti Trust Cases, 128 F.R.D. 121, 123 (D. Kan. 1989).

Gobbo Farms & Orchards v. Poole Chem. Co., Inc., 81 F.3d 122, 123 (10th Cir. 1996)("Gobbo").  At first glance, rule 41(a)'s text and the above-quoted portion of Gobbo would appear to limit rule 41(a)'s applicability to dismissals of the whole case.  An "action," however, for rule 41(a)'s purposes, refers, not to all the claims against all defendants in the case, but to all the claims asserted against a single defendant.  Two of the leading treatises in the field support this interpretation.  Professor Moore writes:

> Rule 41(a) may not be employed to dismiss fewer than all of the claims against any particular defendant.  This is because a voluntary dismissal under Rule 41(a)(1) or (2) terminates an action, which means the totality of all component claims, i.e., legal causes of action, asserted against a single defendant. This interpretation is usually justified by resort to textual interpretation: while the dismissal provisions of Rule 41(a) speak only of an "action," Rule 41(b) specifically distinguishes between "an action or any claim" and permits the involuntary dismissal of either one.  The difference is also highlighted by the language of Rule 41(d) and Rule 41(a)(1)(B), which refers to an "action based on or including the same claim."  Had the drafters intended to authorize the involuntary dismissal of individual claims instead of the entire action, they could have clearly said so.

. . . .

When a defendant is named in some, but not all, of the counts of the complaint, the plaintiff may remove that defendant from the complaint by selectively dismissing the claim or set of claims which comprise the entire action against that defendant.  However, if other defendants are also named in those counts but would remain in the action because they are also named in other counts, the dismissal would not be effective as against them.  Confusion can be avoided by simply identifying the targeted defendant in the notice of dismissal, rather than specifying particular claims.

When some of the claims against a defendant have previously been dismissed by court order, the plaintiff may voluntarily dismiss the remaining ones because the claims remaining after a partial dismissal are deemed to comprise the entire action as against that defendant for Rule 41(a)(1)(A)(i) purposes

Moore et al., supra, § 41.21[1] (footnotes omitted).  Likewise, Professors Charles Wright and

Arthur Miller write:

Both branches of Rule 41(a) refer to the voluntary dismissal of "an action."  This led the Court of Appeals for the Second Circuit to hold that "the word 'action' as used in the Rules denotes the entire controversy, whereas 'claim' refers to what has traditionally been termed 'cause of action.'"  Therefore, a plaintiff may not dismiss with regard to one of several defendants under Rule 41(a) but must proceed under Rule 21.  Although some other courts have followed the Second Circuit, the sounder view and the weight of judicial authority are to the contrary.  As Justice Blackmun noted when he was a member of the Eighth Circuit, "it may not be material whether the court acts under Rule 15(a) which relates to amendments, or Rule 21 which concerns misjoinder, or Rule 41(a)(2)."  The power to drop some plaintiffs or some defendants from the suit plainly exists, either in the Civil Rules or in the inherent power of the district court.  Nevertheless it seems undesirable and unnecessary to invoke inherent power to avoid an artificial limit on Rule 41(a) that is reached only by an overly literal reading of that rule.

Similarly, it has been held that when multiple claims are filed against a single defendant, Rule 41(a) is applicable only to the voluntary dismissal of all the claims in an action.  A plaintiff who wishes to drop some claims but not others should do so by amending his complaint pursuant to Rule 15.

Wright & Miller, supra, § 2362 (footnotes omitted).   Both treatises cite Gobbo for the proposition that an "action" refers to all claims asserted against a single defendant.  See Moore et al., supra, § 41.21[1] n.1; Wright & Miller, supra, § 2362 n.13.

When read in isolation, the above-quoted excerpt from Gobbo appears to follow the Second Circuit's approach -- limiting rule 41(a)'s applicability to dismissal of entire cases. Gobbo itself, however, was a dispute between a single plaintiff and a single defendant, and, thus, Gobbo's text is compatible with either the Second Circuit's interpretation, or the one that Moore's and Wright and Miller adopt.  Moreover, the Circuit-level cases that Gobbo cites for its proposition are from Courts of Appeals that have adopted the Moore's and Wright and Miller approach -- Gobbo does not cite to the Second Circuit.  For these reasons, and because the Court concludes that the Moore's and Wright and Miller interpretation is sounder than the Second Circuit's[8] -- the Court concludes that an "action" under rule 41(a) refers to all the claims asserted against a single defendant, and not necessarily to the entire case.

---

[8]Under the Second Circuit's approach, the proper mechanism for a plaintiff to voluntarily dismiss a defendant is by amending his or her complaint to no longer include the defendant in question.  See Moore et al., supra, § 41.21[1].  See also Carskadon v. Diva Int'l, Inc., CIV 12-1886 RM/KMT, 2013 WL 1876784, at *2 (D. Colo. May 3, 2013)(Tafoya, M.J.)("[A] plaintiff who wishes to dismiss some claims, but not others, should do so by amending the complaint pursuant to Rule 15.").  The problem with this approach is that removing claims from a complaint via amendment is not the same as a disposition on the merits, which is what rule 41(a) provides by giving the option to dismiss with prejudice.  A rule 15 amendment to the pleadings, thus, is not conducive to settlement, as the plaintiff could theoretically amend away the claims and then assert them in a later action -- particularly a later state-court action, where the court would not be bound by a federal disposition, because no disposition exists, and where state procedure may allow plaintiffs to assert claims despite previously abandoning them via amendment.  In such circumstances, the reneging plaintiff would still presumably be liable for breach-of-contract damages -- assuming the settlement agreement was drafted to prevent the plaintiff from reasserting the claims in any forum -- but may still be able to go forward with his or her claims in court.

## LAW REGARDING FINAL JUDGMENTS

"A final decision is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Rekstad v. First Bank Sys., 238 F.3d 1259, 1261 (10th Cir. 2001)(internal quotation marks omitted). Rule 58 of the Federal Rules of Civil Procedure provides, in relevant part:

> **(a)** **Separate Document.** Every judgment and amended judgment must be set out in a separate document, but a separate document is not required for an order disposing of a motion:
>
> > **(1)** for judgment under Rule 50(b);
> >
> > **(2)** to amend or make additional findings under Rule 52(b);
> >
> > **(3)** for attorney's fees under Rule 54;
> >
> > **(4)** for a new trial, or to alter or amend the judgment, under Rule 59; or
> >
> > **(5)** for relief under Rule 60.
> >
> > . . . .
>
> **(d)** **Request for Entry.** A party may request that judgment be set out in a separate document as required by Rule 58(a).

Fed. R. Civ. P. 58.

> The Supreme Court has recognized that the separate-document rule must be "mechanically applied" in determining whether an appeal is timely, Bankers Trust Co. v. Mallis, 435 U.S. 381, 386 (1978)(internal citation omitted), and has stated further that, "absent a formal judgment," a district court's order remains appealable. Shalala v. Schaefer, 509 U.S. 292, 303 (1993). Although parties may waive Rule 58's separate-document requirement by allowing an appeal to go forward, see Bankers Trust, 435 U.S. at 384, such waiver cannot be used to defeat appellate jurisdiction. Clough v. Rush, 959 F.2d 182, 186 (10th Cir. 1992).

Allison v. Bank One-Denver, 289 F.3d 1223, 1232-33 (10th Cir. 2002).

> [T]he separate document rule is a technical one. But, as its name implies, it generally requires that judgment be entered in a separate document, one that is "not made part of the opinion and order" of the court. Mondragon v. Thompson,

- 28 -

> 519 F.3d 1078, 1082 (10th Cir. 2008).  A combined document denominated an "Order and Judgment," containing factual background, legal reasoning, as well as a judgment, generally will not satisfy the rule's prescription.  See, e.g., Clough v. Rush, 959 F.2d 182, 185 (10th Cir. 1992)(holding that a district court's summary judgment order did not meet Rule 58's requirements because it was "fifteen pages long [and] it contain[ed] detailed legal analysis and reasoning").

In re Taumoepeau, 523 F.3d 1213, 1217 (10th Cir. 2008)(footnote omitted).  The Supreme Court has stated that the separate-document requirement "must be mechanically applied in order to avoid new uncertainties as to the date on which a judgment is entered."  United States v. Indrelunas, 411 U.S. 216, 221-22 (1973)(per curiam), disavowed in part on other grounds by Bankers Trust Co v. Mallis, 435 U.S. at 386 n.7.  The separate-document requirement was imposed to remove the "considerable uncertainty over what actions of the District Court would constitute an entry of judgment, and occasional grief to litigants as a result of this uncertainty." United States v. Indrelunas, 411 U.S. at 220.

> The separate-document requirement was thus intended to avoid the inequities that were inherent when a party appealed from a document or docket entry that appeared to be a final judgment of the district court only to have the appellate court announce later that an earlier document or entry had been the judgment and dismiss the appeal as untimely.  The 1963 amendment to Rule 58 made clear that a party need not file a notice of appeal until a separate judgment has been filed and entered.

Bankers Trust Co. v. Mallis, 435 U.S. 381, 385 (1978).

Even before rule 58 was amended in 1963, the Supreme Court held, in the context of the timeliness for filing a petition for certiorari where a second judgment had been reentered, that

> the mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought. Only when the lower court changes matters of substance, or resolves a genuine ambiguity in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew.  The test is a practical one.  The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.

FTC v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 211-12 (1952)(footnotes omitted).

Thus, where a final judgment has been entered, and a timely filed rule 59 motion resulted in the entry of a second judgment that changed the legal rights of the parties, and the parties filed a successive rule 59 motion, the United States Court of Appeals for the Seventh Circuit has held that "[t]he timeliness of the successive motion comes from the alteration of the judgment.  A significant change in a judgment starts all time periods anew, whether the district court alters the judgment at the request of a party or on its own motion." Charles v. Daley, 799 F.2d 343, 348 (7th Cir. 1986)(citing FTC. v. Minneapolis-Honeywell, 344 U.S. at 211).  Accord Kraft, Inc. v. United States, 85 F.3d 602, 605 (Fed. Cir. 1996)(noting that "a motion to reconsider a revised judgment tolls the time for appeal only in instances where the second judgment presents a new significant adverse ruling against the movant which the movant has had no previous opportunity to challenge"), modified on other grounds, 96 F.3d 1428 (Fed. Cir. 1996).  The United States Court of Appeals for the Fifth Circuit has applied a similar standard for determining whether, "in [an] order denying the first motion for reconsideration, the district court amended the judgment," specifically by asking whether "the amendment of the judgment made no change in what the judgment did." Charles v. Ne. Indep. Sch. Dist., 884 F.2d 869, 870-71 (5th Cir. 1989)(emphasis in original).  Thus, the Fifth Circuit recognized that, "even if the district court had purported to grant the first motion for reconsideration but, in the same order, had made it clear that the effect of the judgment was unchanged," there would be no amendment to the judgment. Charles v. Ne. Indep. Sch. Dist., 884 F.2d at 870-71.

Courts have also discouraged successive rule 59(e) motions as wasteful of judicial resources.  As the United States Court of Appeals for the Federal Circuit has explained, "[s]uccessive motions periods, which would encourage piecemeal attack on a judgment and

delay appeals, are not authorized.  Once a district court has denied timely filed tolling motions, the litigants must appeal if they wish to further challenge a judgment, except for the special circumstances recognized in Rule 60(b)."  Kraft, Inc. v. United States, 85 F.3d at 605 (citation omitted).  See Venable v. Haislip, 721 F.2d 297, 299 (10th Cir. 1983)(noting that "a motion to reconsider an order disposing of a motion that tolled the running of the time for appeal typically does not again toll the running of the appeal period").  The Fifth Circuit has also stated that "[t]he interest in finality requires that parties generally get only one bite at the rule 59(e) apple for the purpose of tolling the time for bringing an appeal" and that, even when a district court grants an initial "motion for reconsideration [brought under rule 59] but, in the same order, had made it clear that the effect of the judgment was unchanged," a second motion for reconsideration is "condemned by well-established authority in this and other circuits."  Charles v. Ne. Indep. Sch. Dist., 884 F.2d at 870-71.  Cf. Ysais v. Richardson, 603 F.3d 1175, 1178 (10th Cir. 2010)(holding in case where plaintiff filed a motion seeking reconsideration of an "order denying his motion for reconsideration of the amended final judgment . . . [that] this second motion for reconsideration . . . did not extend the time for filing a notice of appeal from the underlying amended final judgment"); Johnson v. Serelson, 23 F. App'x 949, 951 (10th Cir. 2001)(unpublished)[9](concluding that, where the district court denied a rule 59(e) motion in a

---

[9]Johnson v. Serelson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

case in which an order dismissing a complaint had been entered, but no final judgment had been entered and where the district court subsequently entered a separate final judgment dismissing the complaint, that the plaintiff's "second motion to alter or amend the judgment[, which] was not served within ten days of the district court's judgment, . . . must be construed as a motion for relief from judgment under Fed. R. Civ. P. 60(b)").

"A judgment must be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition, which should appear in the court's opinion." In re Taumoepeau, 523 F.3d at 1217 (internal quotation marks omitted). Besides its importance in determining when the time clock starts ticking for purposes of an appeal, "[s]trict application of Rule 58 eliminates any question as to when the clock for filing post judgment motions . . . begins to tick. Orders disposing of certain enumerated motions, including post judgment motions under Fed. R. Civ. P. 59 and 60, are excepted from Rule 58's separate judgment requirement." Warren v. Am. Bankers Ins. of Fla., 507 F.3d 1239, 1242 (10th Cir. 2007). Thus, the Tenth Circuit "strictly adhere[s] to the Supreme Court's directive to apply Rule 58 'mechanically.'" Warren v. Am. Bankers Ins. of Fla., 507 F.3d at 1243.

## LAW REGARDING RULE 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party from a judgment or order for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6). "Rule 60(b) is an

---

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that Johnson v. Serelson has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order. The Court makes similar findings in this Memorandum Opinion and Order regarding Griffin v. Reid, 259 F. App'x 121 (10th Cir. 2007)(unpublished), Pyeatt v. Does, 19 F. App'x 785 (10th Cir. 2001)(unpublished), and McKay v. United States, 207 F. App'x 892 (10th Cir. 2006)(unpublished).

extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule." <u>Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.</u>, 715 F.2d 1442, 1444 (10th Cir. 1983).  Rule 60(b) "is not a substitute for appeal, and must be considered with the need for finality of judgment." <u>Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.</u>, 715 F.2d at 1444 (citing <u>Brown v. McCormick</u>, 608 F.2d 410, 413 (10th Cir. 1979)).  The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice. <u>Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.</u>, 715 F.2d at 1444.  Once a case is "unconditionally dismiss[ed],"[10] the Court loses all jurisdiction over the case other than the

_____

[10]Rule 41(a)(2), which governs all dismissals undertaken by way of a court order, grants courts discretion to condition dismissal "on terms that the court considers proper," Fed. R. Civ. P. 41(a)(2), formerly, "on terms and conditions as the court deems proper," <u>Smith v. Phillips</u>, 881 F.2d 902, 904-05 (10th Cir. 1989)(quoting Fed. R. Civ. P. 41(a)(2) (1988)).  Such conditions "could include retention of some jurisdiction by the court." <u>Smith v. Phillips</u>, 881 F.2d at 905 (citing <u>McCall-Bey v. Franzen</u>, 777 F.2d 1178, 1188-90 (7th Cir. 1985)).  The Tenth Circuit has stated that, if the dismissal is pursuant to rule 41(a)(1)(A)(ii), undertaken without a court order, then the court "is powerless to condition [the] dismissal . . . upon a retention of jurisdiction." 881 F.2d at 905.  This is likely no longer true post-<u>Kokkonen</u>; the district court can probably attach a condition retaining jurisdiction, but only if the parties agree.

> Even when . . . the dismissal is pursuant to Rule 41(a)(1)[(A)](ii) (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract) [sic] if the parties agree.

<u>Kokkonen</u>, 511 U.S. at 381-82.  <u>See</u> <u>Macias v. N.M. Dep't of Labor</u>, 300 F.R.D. 529, 551-63 (D.N.M. 2014)(Browning, J.)(ruling that the Court lacks jurisdiction to enforce a settlement agreement unless the dismissal order explicitly retains jurisdiction or incorporates the settlement agreement's terms into the order).
    Two factors that militate against the view that a federal court may retain jurisdiction of a case dismissed pursuant to rule 41(a)(1)(A) are: (i) the proclamation in <u>Kokkonen</u> was dicta, and "[i]t is to the holdings of [the Supreme Court's] cases, rather than their dicta, that we must attend," 511 U.S. 375, 379; and (ii) the Court refers to "embody[ing] the settlement contract in its dismissal order," but rule 41(a)(1)(A) provides -- in its very title -- that it pertains to dismissals effectuated "without a court order," Fed. R. Civ. P. 41(a)(1)(A) (emphasis omitted).

ability to hear motions under rule 60(b).  Smith v. Phillips, 881 F.2d 902, 904 (10th Cir. 1989)("We agree with the Seventh Circuit that '[a]n unconditional dismissal terminates federal jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by [Fed. R. Civ. P.] 60(b)." (alterations in original)).

Motions to obtain relief from a judgment or order based on "mistake, inadvertence, surprise, or excusable neglect" must be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).  See Blanchard v. Cortes-Molina, 453 F.3d 40, 44 (1st Cir. 2006)("[R]elief from judgment for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' must be sought within one year of the judgment.").  This deadline may not be extended and is not subject to the court's discretion.  See Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)." (emphasis added)).  The pendency of an appeal does not toll the time requirement for pursuing a motion under rule 60(b).  See Fed. R. Civ. P. 60(c)(1); Griffin v. Reid, 259 F. App'x 121, 123 (10th Cir. 2007)(unpublished); Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll or extend the one-year time limit of Rule 60(b).").  No time limit applies to rule 60(b)(6) other than that the motion be made within a reasonable time.  See Fed. R. Civ. P. 60(c)(1).

---

The Court must, however, interpret Smith v. Phillips in light of the Supreme Court's subsequent decision in Kokkonen, in which the Supreme Court held that a district court's ancillary jurisdiction does not extend to the post-dismissal enforcement of federal case settlement agreements, unless: (i) there is an independent basis of federal subject-matter jurisdiction to hear the claims; (ii) the court incorporated the terms of the settlement agreement into its order of dismissal; or (iii) the court includes a term "'retaining jurisdiction'" in its order of dismissal. Kokkonen, 511 U.S. at 381.  That decision continues to permit district courts to condition dismissals under rule 41(a)(2), see 511 U.S. at 381, and appears to have no bearing on courts' power to reopen cases pursuant to rule 60(b), see 511 U.S. at 378 (noting, without opining on, the practice of "[s]ome Courts of Appeals" to "reopen[ ] . . . dismissed suit[s] by reason of breach of the agreement that was the basis for dismissal").

1.     **Rule 60(b)(1).**

The Tenth Circuit uses three factors in determining whether a judgment may be set aside in accordance with rule 60(b)(1): (i) whether the moving party's culpable conduct caused the default; (ii) whether the moving party has a meritorious defense; and (iii) whether the nonmoving party will be prejudiced by setting aside the judgment.  See United States v. Timers Preserve, 999 F.2d 452, 454 (10th Cir. 1993).

Under some circumstances, a party can rely on rule 60(b)(1) to rectify its attorney's mistake or when its attorney acted without its authority.  See Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when the party has made an excusable litigation mistake or an attorney has acted without authority . . . .").  Mistake in this context entails either acting without the client's consent or making a litigation mistake, such as failing to file or comply with deadlines.  See Yapp v. Excel Corp., 186 F.3d at 1231.  If the alleged incident entails a mistake, then it must be excusable, meaning that the party was not at fault.  See Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. 380, 394 (1993)("This leaves, of course, the Rule's requirement that the party's neglect be 'excusable.'"); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party.").  Cf. Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding attorney carelessness is not a basis for relief under Rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result of an attorney's deliberate litigation tactics.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 577. This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot
> now avoid the consequences of the acts or omissions of this freely selected agent.
> Any other notion would be wholly inconsistent with our system of representative
> litigation, in which each party is deemed bound by the acts of his lawyer agent
> and is considered to have notice of all facts, notice of which can be charged upon
> the attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. at 397 (quoting Link v. Wabash R.R. Co.,

370 U.S. 626, 633-34 (1962))(internal quotation marks omitted).  The Tenth Circuit has held that

there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct"

and has noted that those "who act through agents are customarily bound," even though, when "an

attorney is poorly prepared to cross-examine an expert witness, the client suffers the

consequences."  Gripe v. City of Enid, Okla., 312 F.3d 1184, 1189 (10th Cir. 2002).  The Court

has previously stated:

> There is a tension between how the law treats attorney actions that are without
> authority, thus permitting relief under rule 60(b), and how the law treats those
> attorney actions which are inexcusable litigations decisions, thus failing to qualify
> for relief; although the distinction between those actions may not always be
> logical, it is well established.

Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at *7 (D.N.M. May 10,

2012)(Browning, J.).[11]

---

[11]The Supreme Court has recognized that individuals must be "held accountable for the acts and omissions of their chosen counsel," and that the "proper focus is upon whether the neglect of respondents *and their counsel* was excusable."  Pioneer Inv. Servs. Co. v. Brunswick Assoc. LP, 507 U.S. 380, 397 (1993)(emphasis in original).  At the same time, the Tenth Circuit has held that, when counsel acts without authority, rule 60(b)(1) provides relief from judgment.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 576 ("[A]s a general proposition, the 'mistake' provision in Rule 60(b)(1) provides for the reconsideration of judgment only where . . . an attorney in the litigation has acted without authority from a party . . . .").  "There is a tension between these decisions, because, ordinarily, a client will not authorize his or her attorney to act in a negligent manner or to make a mistake."  Wilson v. Jara, 2012 WL 1684595, at *7 n.7.
   The Court is inclined to conclude that, when the client acknowledges that he or she has hired the attorney, there is a difference between decisions which terminate the litigation, such as settlement or a stipulation of dismissal, and other litigation decisions, because decisions to terminate the litigation are ordinarily left to the client.  See Chavez v. Primus Auto. Fin. Servs.,

- 36 -

125 F.3d 861, 1997 WL 634090, at *4-5 (10th Cir. 1997)(unpublished)(citing Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc., 749 P.2d 90, 92 (1988); Bolles v. Smith, 591 P.2d 278, 280 (1979)).  "Otherwise the Court has difficulty explaining attorney decisions which are made without authority and attorney decisions for which it is acceptable that the client suffer the consequences."  Wilson v. Jara, 2012 WL 1684595, at *7 n.7.  In Chavez v. Primus Auto. Fin. Servs., the Tenth Circuit recognized that "the mere employment of an attorney does not give him the actual, implied or apparent authority to compromise his client's case."  1997 WL 634090, at *4.  Few Tenth Circuit cases analyze whether an attorney has acted without authority.  The cases in which the Tenth Circuit has found a lack of authority appear to fall into two categories: (i) cases in which the attorney entered an appearance without the client's knowledge, see, e.g., FDIC v. Oaklawn Apts., 959 F.2d at 175-76 (finding that there were factual issues which the district court needed to resolve where "[t]here is nothing in the record indicating when Appellants became aware of the lawsuit and of Newcombe's purported representation"); and (ii) cases in which the attorney's actions terminate the litigation, see, e.g., Thomas v. Colo. Trust Deed Funds, Inc., 366 F.2d 136, 139-40 (10th Cir. 1966)(finding that, as to one of the plaintiffs, "the record shows that he did not participate in the transactions and negotiations with the S.E.C. and did not consent to the execution of the stipulation of the judgment"); Cashner v. Freedom Stores, Inc., 98 F.3d at 577 (citing with approval Surety Ins. Co. of Cal. v. Williams, 729 F.2d 581, 582-83 (8th Cir. 1984), which held that a "judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry").  Because decisions that terminate the litigation are ordinarily the client's prerogative, those decisions fit more squarely within rule 60(b)(1)'s "lack of consent" prong.  Decisions where the purported client is unaware of the litigation, or of the attorney's attempt to act on his or her behalf, would also fit within rule 60(b)(1)'s "lack of consent" prong, because an individual has the right to choose his or her own attorney, or whether he or she wishes to have any attorney.  Other litigation decisions are made jointly or are within the attorney's control, see Model Code of Prof'l Conduct R. 1.2 cmt. 1 (2011)("With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client . . . and may take such action as is impliedly authorized to carry out the representation.");  Pittman ex rel. Sykes v. Franklin, 282 F. App'x 418, 427 n.6 (6th Cir. 2008)(unpublished)("[T]he decision to allege comparative fault as an affirmative defense falls within a narrow band of circumstance in which an attorney may act without consulting his or her client."), and, thus, to give final judgments meaning and allow cases to terminate, it is logical that those decisions must fall within the "excusable litigation mistake" prong, or be based on a substantive mistake of law or fact.

Although the Tenth Circuit does not appear to have expressed its views on where the line is drawn between attorneys acting without consent and litigation mistakes, or acknowledged the tension between these two categories, the Court concludes that the appropriate division is, when the client is aware that the attorney is acting on his or her behalf, between decisions which dispose of the case and ordinarily require client consent, and other routine attorney decisions which take place over the course of the case.  The Court also notes that rules of professional conduct require, "[i]n a criminal case," for a lawyer to "abide by the client's decision, after consultation with the lawyer, as to the plea to be entered, whether to waive a jury trial and whether the client will testify."  Model Rules of Prof'l Conduct R. 1.2(a).  While a decision on the plea to be entered in a criminal case is comparable to whether to settle a civil case, the Court has not located any decisions permitting rule 60(b) relief when a civil attorney waives his or her

2.      **Rule 60(b)(6).**

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or

proceeding for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  No time limit

applies to rule 60(b)(6) save that the motion be made within a reasonable time.  See Fed. R. Civ.

P. 60(c)(1).  "Thus, to the extent it is applicable, clause (6) appears to offer a means of escape

from the one-year limit that applies to motions under clauses (1), (2), and (3)."  Wright & Miller,

supra, § 2864, at 490.  In Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507

U.S. 380 (1993), the Supreme Court reasoned that, to avoid abrogating the one-year time limit

for rule 60(b)(1) to (3), rule 60(b)' s "provisions are mutually exclusive, and thus a party who

failed to take timely action due to 'excusable neglect' may not seek relief more than a year after

the judgment by resorting to subsection (6)."  507 U.S. at 393 (citing Liljeberg v. Health Servs.

Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988)).  "If the reasons offered for relief from

judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those

reasons will not justify relief under Rule 60(b)(6)."  Moore et al., supra, § 60.48[2], at 60-182.

Accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 n.11 ("This logic, of

course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are

mutually exclusive.").

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case."

Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks

omitted).  "The Rule does not particularize the factors that justify relief, but we have previously

---

client's right to a jury trial.  One unpublished decision from the United States Court of Appeals for the Fourth Circuit discussed briefly a scenario where, without resolving the merits of the issue, a criminal defendant raised through a rule 60(b) motion in a habeas preceding that "his trial counsel had prevented him from testifying in his defense."  United States v. McMahan, 8 F. App'x 272, 274 (4th Cir. 2001)(unpublished).

noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'"  Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863.  Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief.  See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence.  Subsection 6 of Rule 60(b) has no application to the situation of petitioner.").  Legal error that provides a basis for relief under rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)].  In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured."  Pierce, 518 F.2d at 723.  However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6).  Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

952 F.2d at 1244-45.

"Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'"  Wright & Miller, supra, § 2864, at 483.  The Supreme Court has expounded:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay.  If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable.  In Klapprott, for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control.  Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 393 (1993)(citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 & n.11; Ackerman v. United States, 340 U.S. at 197-200; Klapprott v. United States, 335 U.S. 601, 613-614 (1949)).  See Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."). In Gonzalez v. Crosby, the Supreme Court found a change in the law during the pendency of a habeas petition was not an extraordinary circumstance.  See 545 U.S. at 537.

When the Supreme Court first addressed rule 60(b)(6) a year after it was introduced to the federal rules, while the Justices were sharply divided on other issues, no dispute arose from Justice Black's statement: "[O]f course, the one year limitation would control if no more than 'neglect' was disclosed by the petition.  In that event the petitioner could not avail himself of the broad 'any other reason' clause of 60(b)."  Klapprott v. United States, 335 U.S. at 613.  See Wright & Miller, supra, § 2864, at 493.

Examples where courts apply rule 60(b)(6) include "settlement agreements when one party fails to comply" and courts use the rule "to return the parties to the status quo," or in cases where fraud is used by a "party's own counsel, by a codefendant, or by a third-party witness," which does not fit within rule 60(b)(3)'s provision for fraud by an adverse party.  Wright & Miller, supra, § 2864, at 485, 487.  The most common application is to grant relief "when the losing party fails to receive notice of the entry of judgment in time to file an appeal."[12]  Wright &

---

[12]Professors Charles Wright and Arthur Miller note that

[m]ost of those cases, however, predate the 1991 amendment to Appellate Rule 4(a)(6), which now provides relief from the strict appellate filing rule if the party did not learn of the entry of the judgment.  In light of that change, most courts have held that resort to Rule 60(b) as a means of extending the appeal time no

Miller, supra, § 2864, at 488.  When moving for relief pursuant to rule 60(b)(6), it is not enough to argue the same issues that a court has already addressed.  See Pyeatt v. Does, 19 F. App'x 785, 788 (10th Cir. 2001)(unpublished)("[A] motion to reconsider [that] simply reasserts information considered by the district court in its initial determination . . . does not meet the extraordinary circumstances standard required for Rule 60(b)(6) relief.").

## LAW REGARDING FEDERAL COURT JURISDICTION TO ENFORCE SETTLEMENT AGREEMENTS

"Once a lawsuit is settled and dismissed, the district court does not generally have 'ancillary jurisdiction to enforce the parties' settlement agreement.  A district court can, however, retain jurisdiction over a settlement agreement if the order of dismissal shows an intent to retain jurisdiction or incorporates the settlement agreement.'"  McKay v. United States, 207 F. App'x 892, 894 (10th Cir. 2006)(unpublished)(quoting Morris v. City of Hobart, 39 F.3d 1105, 1110 (10th Cir. 1994)(citing Kokkonen, 511 U.S. at 380-81).  Accordingly, a federal court does not, ipso facto, have jurisdiction over a settlement agreement by virtue of the settlement agreement resolving claims which the federal court previously entertained.  See In re Burlington N. Santa Fe Rail Corp., No. CIV 04-0836 JB/RLP, 2007 WL 5685129, at *12 n.5 (D.N.M. Oct. 11, 2007)(Browning, J.)("The Court has, however, no ancillary jurisdiction over the settlement agreement of the parties, because the Court did not explicitly retain such jurisdiction in its order dismissing this case with prejudice pursuant to joint motion.").

---

longer is appropriate, although the Rule 60(b) approach is still utilized in some courts, primarily in the Sixth Circuit.

Wright & Miller, supra, § 2864, at 489-90 (citations omitted).  See Clark v. Lavallie, 204 F.3d 1038, 1041 (10th Cir. 2000)("Rules 4(a)(6) and 77(d) 'precludes the use of Fed. R. Civ. P. 60(b)(6) to cure problems of lack of notice.'"  (citations omitted)).

Reference to the settlement agreement in the order dismissing a case is necessary for a court to retain jurisdiction over the agreement after dismissing the parties' claims which the settlement resolved, unless the Court has an independent basis for jurisdiction over the agreement.  "Unless incorporated into a judgment of the court, a settlement agreement is 'a contract, part of the consideration for which [i]s dismissal of a[] suit.'"  Beetle Plastics Inc. v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., 97 F.3d 1464, 1996 WL 531924, at *1 (10th Cir. Sept. 19, 1996)(unpublished table decision)(quoting Kokkonen, 511 U.S. at 381).  "Without reservation by the court . . . there must be an independent basis for federal jurisdiction."  Morris v. City of Hobart, 39 F.3d at 1110-11 (citing Kokkonen, 511 U.S. at 382).  If the parties' "obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal -- either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order," the situation is different.  Kokkonen, 511 U.S. at 381.  "In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."  Kokkonen, 511 U.S. at 381.  On the other hand, "[t]he judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order."  Kokkonen, 511 U.S. at 381.

## ANALYSIS

The Court lacks subject-matter jurisdiction to enforce the Settlement Agreement, and for that reason it will grant the MTD, and it will deny the Motion to Liquidate, the Motion to Strike, and the Motion to Reconsider for lack of jurisdiction.  For the Court to have jurisdiction over the Settlement Agreement, it must possess either original jurisdiction or ancillary jurisdiction over the alleged breach of the Settlement Agreement.  In the Settlement Enforcement MOO, the Court

concluded that it had original -- diversity -- jurisdiction to rule on the Motion to Enforce; no party now defends that conclusion, and the Court concludes that it lacks diversity jurisdiction. The Court also lacks ancillary jurisdiction, because the Stipulated Dismissals -- which served as consideration for the Settlement Agreement and are the nexus between the Settlement Agreement and the claims over which the Court has original jurisdiction -- failed to impart the Court with continuing jurisdiction over the Settlement Agreement.  Last, because the Stipulated Dismissals were entered pursuant to rule 41(a)(1)(A)(ii), which does not require a court order, the Court cannot amend them to retain jurisdiction over the Settlement Agreement.

## I.   THE COURT LACKS ORIGINAL JURISDICTION TO ADJUDICATE BREACHES OF THE SETTLEMENT AGREEMENT.

For the Court to have jurisdiction over a case, it must have original jurisdiction -- meaning, most likely, federal-question or diversity jurisdiction -- over at least one of the claims in the suit; from that point, the Court may exercise supplemental jurisdiction over the remainder of the constitutional "case or controversy."  28 U.S.C. § 1367.  Although original jurisdiction, in the form of federal-question jurisdiction, exists in the original case between the Plaintiffs and Defendants, no original jurisdiction inheres in the Dealerships' claims arising from the Settlement Agreement.  Thus, for the Court to have jurisdiction to enforce the Settlement Agreement, it must conclude that enforcement of the Settlement Agreement is within the same case or controversy as the original case -- a question which the Court can answer only by looking to the Supreme Court's and Tenth Circuit's ancillary-jurisdiction jurisprudence, which it will do in the next section.  See Analysis Part II, infra, at 46-54.

The Court lacks original jurisdiction to enforce the Settlement Agreement.  The Court addresses the issue because the Court and the parties have erroneously relied on various forms of original jurisdiction up to this point: the Court ruled that it had diversity jurisdiction over the

Settlement Agreement in the Settlement Enforcement MOO; and the parties agreed that the

Court had federal-question jurisdiction over the Settlement Agreement in their Pretrial Order.

The Court lacks diversity jurisdiction because both the Plaintiffs and the Dealerships are New

Mexico citizens, and, thus, complete diversity -- the statutory requirement there be no overlap

between any plaintiffs' citizenship and any defendants' -- is not met.  See, e.g., Caterpillar, Inc.

v. Lewis, 519 U.S. 61, 68 (1996)(outlining the complete diversity requirement).   The

supplemental-jurisdiction statute makes clear that supplemental jurisdiction may not be used to

circumvent the complete-diversity requirement:

> In any civil action of which the district courts have original jurisdiction
> founded solely on section 1332 of this title [the diversity-jurisdiction statute], the
> district courts shall not have supplemental jurisdiction under subsection (a) over
> claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of
> the Federal Rules of Civil Procedure, or over claims by persons proposed to be
> joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as
> plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction
> over such claims would be inconsistent with the jurisdictional requirements of
> section 1332.

28 U.S.C. § 1367(b).  This dispute between the Dealerships and USAA Insurance is unusual in

that, if the Dealerships were to file a new case for breach of the Settlement Agreement, they

could file it in federal court under diversity jurisdiction: the Dealerships and USAA Insurance

would be the only necessary parties to the case, with the former being the plaintiffs and latter

being the defendant; because the Dealerships are New Mexico citizens and USAA Insurance is a

Texas citizen, complete diversity would exist; and, because the dispute potentially involves over

$75,000.00, the amount-in-controversy requirement would be satisfied.  That this dispute could

be broken off into a separate case under diversity jurisdiction does not, however, mean that the

dispute falls under diversity jurisdiction when brought as a part of this case.  This case was

nondiverse at the point of filing, which is the point at which diversity is determined.

> It has long been hornbook law, applied by courts at all levels of the federal judiciary throughout the nation, that whether federal diversity of citizenship jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced by filing the complaint with the court as prescribed by Federal Rule of Civil Procedure 3.

Wright & Miller, supra, § 3608.  That a portion of a larger nondiverse case could be broken off into a diverse case is not unusual; adding additional parties commonly defeats complete diversity.  This situation is comparable to the relatively common situation in which two plaintiffs, who are citizens of states *A* and *B*, respectively, desire to bring claims against two defendants, who are also citizens of states *A* and *B*.  Each plaintiff could, individually, bring suit against one of the defendants in federal court; likewise, both defendants could, individually, be sued in federal court.  Still, a unified case would be impossible under diversity jurisdiction, because the complete-diversity requirement forbids it.  This outcome may be inefficient, but it respects Congress' limitations on federal-court jurisdiction.  If the Dealerships wish for the Court -- or any federal court -- to hear their case, they must refile a separate diversity suit.  See Rudinger v. Ins. Data Processing, Inc., 816 F. Supp. 371, 373 (E.D. Penn. 1993)(Ditter, J.)("If Mr. Rudinger wishes to enforce his settlement agreement here under 28 U.S.C. § 1332, he may file a separate diversity action for breach of contract and proceed from there.").

The Court also lacks federal-question jurisdiction over the Settlement Agreement, because all claims arising from it are in the nature of breach of contract, and the United States is not a party to the contract.  The only possible federal question that the Motion to Enforce raises is that dismissal of a federal lawsuit -- as the Stipulated Dismissals embody -- serves as the Settlement Agreement's contractual consideration.  The Supreme Court has foreclosed such a basis as a jurisdiction hook.  See Kokkonen, 511 U.S. at 380 (holding that federal courts do not

have "jurisdiction over any agreement that has as part of its consideration the dismissal of a case before a federal court").

## II.     THE COURT LACKS ANCILLARY JURISDICTION OVER THE SETTLEMENT AGREEMENT BECAUSE THE STIPULATED DISMISSALS DO NOT IMPART THE COURT WITH IT, AND THE COURT CANNOT AMEND THE STIPULATED DISMISSALS TO ADD A JURISDICTION-RETENTION CLAUSE.

Only the Stipulated Dismissals -- not the Final Judgment -- can impart the Court with continuing jurisdiction over the Settlement Agreement, and, because they did not do so, the Court's ancillary jurisdiction terminated when the Stipulated Dismissals were entered.  A final judgment terminates the Court's jurisdiction over the main case -- those claims over which the Court has original, pendent, or pendent-party jurisdiction -- and, pursuant to the Settlement Enforcement MOO, no final judgment is in place here.  That the main case is still subject to the Court's jurisdiction, however, is a separate question from the question whether claims involving the Settlement Agreement are jurisdictionally connected back to main case, i.e., whether they are part of the same constitutional "case or controversy" under § 1367(a).

The Court had pendent jurisdiction over the claims and counter-claims of which the Stipulated Dismissals disposed, and those claims and counter-claims formed the only jurisdictional bridge between the Plaintiffs' original claims -- which arise under federal law and are thus subject to the Court's original jurisdiction -- and the Settlement Agreement.  Without those claims, nothing connects the Dealerships' claims involving the Settlement Agreement claims back to the main case.  When the parties terminated those claims by way of the Stipulated Dismissals, they could have preserved this jurisdictional nexus and imparted the Court with continuing ancillary jurisdiction, but they did not do so.  The Supreme Court addressed this matter in Kokkonen:

- 46 -

The short of the matter is this: The suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit.  No federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute.  The facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the conduct of federal-court business.  If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so.  When the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2), which specifies that the action "shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper," the parties' compliance with the terms of the settlement contract (or the court's "retention of jurisdiction" over the settlement contract) may, in the court's discretion, be one of the terms set forth in the order.  Even when, as occurred here, the dismissal is pursuant to Rule 41(a)(1)[(A)](ii) (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree.  Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.

Kokkonen, 511 U.S. at 381-82 (emphasis in original).

The Dealerships cite multiple cases in which courts exercise ancillary jurisdiction over settlement agreements despite there being no dismissal order retaining jurisdiction; the Dealerships contend that these cases allowed ancillary jurisdiction because the main cases were not yet closed.  See Davis Letter at 2-3 (citing Cotten & Selfon v. Charnock, 10 F. App'x 70, 75 (4th Cir. 2001); Bryan v. Erie Cnty. Office of Children & Youth, 752 F.3d at 322; T. Street Dev., LLC v. Dereje & Dereje, 586 F.3d at 11; Wilson v. Wilson, 46 F.3d at 664).  The reasons these cases exercised ancillary jurisdiction over their settlement agreements, however, is not because the cases, as a whole, remained pending, but, rather, because the jurisdiction-bridging claims -- i.e., the claims whose dismissal would serve as the settlement agreements' consideration -- remained pending.  Basically, in each of those cases, ancillary jurisdiction existed, despite there being no dismissal expressly retaining jurisdiction, because there was no

dismissal <u>at all</u>.  <u>Bryan v. Erie County Office of Children and Youth</u> involved a high-low agreement,[13] whereby the claims went to the jury.  <u>See</u> 752 F.3d at 319-21.  The other three cases involved oral settlement agreements which the parties subsequently could not agree to reduce to writing, necessitating the district court's intervention to enforce the oral agreements' terms.  <u>See</u> <u>Cotten & Selfon v. Charnock</u>, 10 F. App'x at 75 ("[T]he parties entered into an oral settlement of the counterclaim, . . . but certain conditions remained unresolved.  The district court retained jurisdiction until it issued a final order on April 7, 2000, in which it enforced the oral settlement and entered a judgment . . . ."); <u>T. Street Dev., LLC v. Dereje & Dereje</u>, 586 F.3d at 9, 11 (holding that a district court erred when it allowed claims to continue to trial rather than conclusively determining whether the parties had entered into a binding oral settlement agreement); <u>Wilson v. Wilson</u>, 46 F.3d at 661 ("Following unsuccessful attempts to reduce this agreement to writing, Bill filed a motion to enforce the oral settlement agreement, which the district court granted.").[14]

When the claims are still before the Court, the jurisdictional bridge is established; when the claims are dismissed, however, the order or stipulation of dismissal must actively preserve the jurisdictional nexus, or else it dies when the claims do.  Support for this proposition exists in <u>Kokkonen</u>, which makes continuous reference to rule 41, the subtypes of dismissals, and the technical steps to which parties or courts must go to vest the court with continuing ancillary jurisdiction -- never once mentioning final judgment.  The United States Courts of Appeals for the Fifth and Eleventh Circuits, however, have directly addressed the question whether final

---

[13]A high-low agreement is "[a] settlement in which a defendant agrees to pay the plaintiff a minimum recovery in return for the plaintiff's agreement to accept a maximum amount regardless of the outcome of the trial."  <u>Black's Law Dictionary</u> 797 (9th ed. 2009).

[14]Additionally, although <u>Wilson v. Wilson</u> was argued and decided slightly after the Supreme Court issued <u>Kokkonen</u>, the opinion does not cite the case.

judgment can retroactively impact ancillary jurisdiction on the Court: "We agree with the Fifth Circuit that a district court cannot retain jurisdiction by issuing a postdismissal order to that effect. A district court loses all power over determinations of the merits of a case when it is voluntarily dismissed." Anago Franchising, Inc. v. Shaz, LLC, 677 F.3d 1272, 1279 (11th Cir. 2012)(citing SmallBizPros, Inc. v. MacDonald, 619 F.3d 458, 463 (5th Cir. 2010)).

The only remaining question is whether the Court may amend the Stipulated Dismissals to add a jurisdiction-retention clause. At this point, the Court must determine under which provision of rule 41(a) the Stipulated Dismissals were entered. Rule 41(a) provides:

**(a)**     **Voluntary Dismissal.**

> **(1)**     *By the Plaintiff.*
>
>> **(A)**     *Without a Court Order*. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
>>
>>> **(i)**     a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
>>>
>>> **(ii)**     a stipulation of dismissal signed by all parties who have appeared.
>>
>> **(B)**     *Effect*. Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.
>
> **(2)**     *By Court Order; Effect*. Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court

considers proper.   If a defendant has pleaded a
counterclaim before being served with the plaintiff's
motion to dismiss, the action may be dismissed over the
defendant's objection only if the counterclaim can remain
pending for independent adjudication.   Unless the order
states otherwise, a dismissal under this paragraph (2) is
without prejudice.

Fed. R. Civ. P. 41(a) (emphases in original).   The Stipulated Dismissals are titled "Stipulated

Order[s]," and bear the Court's signature; they also, however, both bear the signature of all

parties[15] -- not just the Dealerships and USAA Insurance -- and state that they "come[] before the

Court on the Stipulation of the Parties and the Court being fully advised in the premises."

Stipulated Dismissals at 1, 1 (emphasis added).   The Court concludes that the Stipulated

Dismissals operate by way of rule 41(a)(1)(A)(ii) rather than rule 41(a)(2).   Because all parties

stipulated to the dismissal, it was effective before the Court signed it, and would have been

effective regardless whether the Court had signed it, as the Court lacks authority to deny

dismissal if the rule 41(a)(1)(A)(ii)'s requisites are met.   Furthermore, the Stipulated Dismissals

---

[15]The signatures are electronic, and were affixed to the Stipulated Dismissals by the
Dealerships' counsel -- who prepared the Stipulated Dismissals -- after he received authorization
from each party by way of either telephone or electronic mail transmission, as noted on the
signature block.   The signatures each contain all the required information to constitute a
"signature" under the federal rules, including the attorney's name, address, and telephone
number.   Fed. R. Civ. P. 11(a).   Affixing electronic signatures to stipulations of dismissal is
common practice, and the local rules permit it.   See D.N.M.LR-Civ. 11.1.   Regardless, rule
41(a)(1)(A)(ii)'s signature formalities are not stringently enforced:

Several circuits have recognized that even oral assent to dismissal can satisfy Rule
41(a)(1)(ii), Eitel v. McCool, 782 F.2d 1470, 1473 (9th Cir. 1986); Oswalt v.
Scripto, Inc., 616 F.2d 191, 195 (5th Cir. 1980); Pipeliners Local Union No. 798
v. Ellerd, 503 F.2d 1193, 1199 (10th Cir. 1974).   Accordingly, we do not believe
that the rule requires that every signature appear on a single document.   Here, all
parties agreed to a voluntary dismissal -- Ms. Boran through her letter to the
district court and the defendants in their own signed letters agreeing to the
proposed dismissal.

Boran v. United Migrant Opportunity Servs., Inc., 99 F. App'x 64, 67 (7th Cir. 2004).

resemble, in all important respects, the dismissal in <u>Kokkonen</u>, which Justice Scalia held was entered under rule 41(a)(1)(A)(ii).[16]   That dismissal was titled a "Stipulation and Order of Dismissal with Prejudice," and the district judge signed it under the notation "'it is so ordered.'" <u>Kokkonen</u>, 511 U.S. at 377.   Here, too, the Stipulated Dismissals operate under rule 41(a)(1)(A)(ii).   <u>See</u>, <u>e.g.</u>, <u>Hester Indus., Inc. v. Tyson Foods, Inc.</u>, 160 F.3d 911, 916 (2nd Cir. 1998)("The judge's signature on the stipulation did not change the nature of the dismissal.");  <u>Meinecke v. H&R Block</u>, 66 F.3d 77, 82 (5th Cir. 1995)("The district court's order approving the dismissal is of no consequence. . . .  [W]hen the parties file a stipulation of voluntary dismissal . . . , any further actions of the court are superfluous."   (citation omitted)(internal quotation marks omitted));  <u>Solv-Ex Corp. v. Quillen</u>, 186 F.R.D. 313, 316 (S.D.N.Y. 1999)(stating that the court's dismissal following parties' stipulation of dismissal "merely confirmed that the case had been dismissed pursuant to the parties' voluntary agreement");  Moore et al., <u>supra</u>, § 41.34[6][a], at 41-121 to -22 ("A voluntary dismissal by stipulation terminates the action immediately on filing.   Approval or implementation of the stipulation by the court is unnecessary."   (footnote omitted)).

Because the Stipulated Dismissals operate pursuant to rule 41(a)(1)(A)(ii), the Court cannot amend them to add a jurisdiction-retention clause for two reasons, either of which would, alone, be sufficient.   First, the parties here do not agree that the Court should retain jurisdiction.   Justice Scalia indicates, in the above-quoted paragraph of <u>Kokkonen</u>, that, at least with stipulated

---

[16]<u>Kokkonen</u> refers to rule 41(a)(1)(ii), which was how rule 41(a)(1)(A)(ii) was cited before the 2007 stylistic amendments.   <u>See</u> Fed. R. Civ. P. 41 advisory committee's notes (2007 Amendment).

dismissals under rule 41(a)(1)(A)(ii),[17] it is for the parties to decide whether the Court retains jurisdiction.  See Kokkonen, 511 U.S. at 381-82 ("[W]hen . . . the dismissal is pursuant to Rule 41(a)(1)(ii) (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to . . . retain jurisdiction over the settlement contract[] if the parties agree."  (emphasis added)).  Second, because a stipulated dismissal under rule 41(a)(1)(A)(ii) is not an "order," the Court cannot amend it under rule 54(b), Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment

---

[17]This case might be different if the Stipulated Dismissals issued under rule 41(a)(2), e.g., if one of the parties not a signatory to the Settlement Agreement had objected, spoiling rule 41(a)(1)(A)(ii)'s unanimity requirement, and the Court had entered a rule 41(a)(2) order of dismissal upon the Dealerships' and USAA Insurance's motion.  This situation would raise two questions: (i) whether the Court could, at the time it issued the dismissal, retain jurisdiction absent -- or even contrary to -- the parties' agreement; and (ii) under what circumstances the Court could amend this order either to retroactively retain or disgorge jurisdiction over the Settlement Agreement.  The answer to the second question hinges on the answer to the first: a dismissal order under rule 41(a)(2), unlike a stipulated dismissal under rule 41(a)(1)(A)(ii), can be amended pursuant to rule 54(b); thus, whatever the Court could do originally, it could likely also do by way of amendment.

As to the first question, the Court concludes that it could retain jurisdiction in the absence of any or all parties' consent, or even in the face of their joint opposition.  From a functional perspective, this result seems unjustified: Kokkonen makes clear that the parties must consent to the Court's continuing ancillary jurisdiction in the case of a stipulated dismissal; and often the only thing that forces parties who wish to effectuate their settlement via stipulated dismissal to do so via a rule 41(a)(2) dismissal order instead is an objection by a party who is not a signatory to the settlement agreement -- after all, if a signatory wanted to object to the dismissal, then he or she would not have signed the settlement agreement.  The Court can devise of few reasons why a non-signatory's objection to the dismissal -- not even, necessarily, to the settlement agreement or to the Court's retention of jurisdiction of lack thereof -- should have any bearing on the signatories' power to decide whether the Court retains jurisdiction over a contract to which only they are parties.  Still, rule 41(a)(2)'s text is clear, and it empowers the Court to condition the dismissal "on [any] terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  As a practical matter, the Court is unlikely to retain jurisdiction, or decline to, when the signatories to the settlement agreement mutually oppose the decision.

- 52 -

adjudicating all the claims and all the parties' rights and liabilities."), but may amend them only under rule 60.  Rule 60(a) does not apply, because the failure to include a jurisdiction-retention clause was not a "clerical mistake," but rather a substantive, and perhaps deliberate, omission -- at least on USAA Insurance's part.  Fed. R. Civ. P. 60(a) ("The Court may correct a clerical mistake or a mistake arising from oversight or omission . . . .").  Rule 60(b) cannot apply, because no party has moved for an amendment, and such amendments are only available "[o]n motion and just terms" -- the Court cannot make them sua sponte.  Fed. R. Civ. P. 60(b).  Even if the Dealerships were to move under rule 60(b), however, they would be unsuccessful: rule 60(b)(1), (b)(2), and (b)(3) cannot apply, because over a year has passed since the Stipulated Dismissals were entered, see Fed. R. Civ. P. 60(c)(1); rule 60(b)(4) and (b)(5) are inapposite; and rule 60(b)(6) requires an extraordinary showing that the Dealerships cannot mount -- even if they could show to a certainty, for example, that their case would be dismissed if brought now in state court, they would have to demonstrate, under rule 60(c)(1), why they could not have brought their rule 60 motion earlier.  Thus, even if the parties all consented to the Court amending the Stipulated Dismissals to add a jurisdiction-retention clause, the Court would still lack the power to do so.[18]

Last, even if the Stipulated Dismissals had issued under rule 41(a)(2), thus giving the Court the power to amend them to add a jurisdiction-retention clause, see note 17, supra, at 52, the Court would still decline to do so here.  The "default" setting is that federal courts do not

---

[18]The Court distinguishes, however, between a situation in which the parties acknowledge that they intentionally omitted a jurisdiction-retention clause, but now desire the Court to have jurisdiction, and one in which the parties state that they intended to include a jurisdiction-retention clause, but inadvertently failed to include one.  The former situation would leave the parties and the Court without recourse to amend; the latter situation would provide grounds for rule 60(a) correction of a clerical mistake.

enforce settlement agreements unless jurisdiction is specifically retained, and, when parties want to deviate from this default, they typically negotiate to do so.  The Court does not know whether the parties here negotiated for the omission of a jurisdiction-retention clause -- for all the Court knows, USAA Insurance may have demanded better substantive terms in the Settlement Agreement in exchange if the Dealerships had pushed the issue -- or if they merely neglected to think about what forum would adjudicate any potential breach.  Regardless, the Court is disinclined to go back know, at the enforcement stage, and add a term that the Dealerships had the opportunity to add from the beginning.

IT IS ORDERED that: (i) USAA's Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed July 3, 2014 (Doc. 629), is granted; (ii) the Motion to Liquidate Defendants and Third-Party Plaintiffs Lomas Auto Mall, Inc. and M.D. Lohman d/b/a Lohman Motors' Claim as Set out in the Court's Memorandum Opinion and Order Enforcing Settlement Agreement, filed April 3, 2014 (Doc. 598), is denied for lack of jurisdiction; (iii) the Motion to Strike Plaintiffs' Response to Motion to Liquidate Defendants [sic] Claim, filed May 1, 2014 (Doc. 604), is denied for lack of jurisdiction; and (iv) USAA's Motion for Reconsideration, filed April 23, 2014 (Doc. 601), is denied for lack of jurisdiction.  The Court lacks jurisdiction to enforce the settlement agreement between Defendants/Third-Party Plaintiffs Lomas Auto Mall, Inc., and M.D. Lohman d/b/a Lohman Motors, and Defendant USAA Casualty Insurance Company.

_____
UNITED STATES DISTRICT JUDGE

- 54 -

*Counsel*:

Charles S. Parnall
Parnall Law Firm, LLC
Albuquerque, New Mexico

--and--

Richard N. Feferman
Feferman & Warren
Albuquerque, New Mexico

> *Attorneys for the Plaintiffs*

William F. Davis
William F. Davis & Associates PC
Albuquerque, New Mexico

> *Attorneys for Defendant/Third-Party Plaintiffs Lomas Auto Mall, Inc. and M.D. Lohman d/b/a Lohman Motors and Defendant Western Surety Company*

Richard W. Sutten
Whitener Law Firm, PA
Albuquerque, New Mexico

> *Attorneys for Defendant/Third-Party Plaintiff M.D. Lohman d/b/a Lohman Motors*

Judd C. West
West Law Firm, PLLC
Albuquerque, New Mexico

> *Attorney for Defendant Western Surety Company*

John Paul Valdez
El Paso, Texas

--and--

Mark J. Klecan
Law Office of Mark J. Klecan
Albuquerque, New Mexico

--and--

Robert E. Valdez
Jeffrey W. McElory
Ray, Valdez, McChristian & Jeans, PC
El Paso, Texas

--and--

Henry M. Bohnhoff
Charles J. Vigil
Leslie M. Apodaca
Rodey Dickson Sloan Akin & Robb, PA
Albuquerque, New Mexico

 *Attorneys for Defendant USAA Casualty Insurance Company*

Michael L. Danoff
Michael L. Danoff & Associates, PC
Albuquerque, New Mexico

 *Attorneys for Defendant/Third-Party Defendant Independent Auto Dealers Service Corporation, Ltd. and Third-Party Defendant New Mexico Independent Automobile Dealers' Association, Inc.*